SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

ERIC C. BOSSET (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WESCH, DARIUS CLARK, JOHN H. COTTRELL, WILLIAM B. COTTRELL, RYAN HAMRE, GREG HERTIK, DAISY HODSON, DAVID LUMB, KYLA ROLLIER and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>YODLEE, INC., a Delaware corp., and ENVESTNET, INC., a Delaware corp.<br><br>      Defendants. | Civil Case No.: 3:20-cv-05991-SK<br><br>**DEFENDANT YODLEE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hearing Date:  February 1, 2021<br>Hearing Time:  9:30 a.m.<br><br>Honorable Sallie Kim |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II.     ALLEGATIONS OF THE AMENDED COMPLAINT ........................................... 2

III.    LEGAL STANDARD ............................................................................ 4

IV.    ARGUMENT ..................................................................................... 4

        A.    Plaintiffs Fail to State Privacy Claims Under California's Common Law or Constitution (First and Tenth Claims). ...................................................... 4

             1.    Plaintiffs Do Not Have a Reasonable Expectation of Privacy in Anonymized, Aggregated Transaction-Level Data. ................................... 5

             2.    Disclosure of Anonymized Transactional Data Is Not a "Serious Invasion." ..................................................................................... 7

        B.    Plaintiffs Fail to State a Claim Under the Stored Communications Act (Second Claim). ................................................................................... 8

             1.    Plaintiffs Have Not Pleaded Any Elements of a Claim Under the SCA. ... 8

                  a)    Yodlee is Not An "Electronic Communication Service." ............... 9

                  b)    Yodlee Does Not Access the "Contents" of a "Communication." ....................................................................... 10

                  c)    Yodlee Does Not Keep Plaintiffs' Data in "Electronic Storage." ................................................................................ 11

        C.    Plaintiffs Fail to State Claims Under California's Comprehensive Data Access and Fraud Act (Seventh Claim) and the federal Computer Fraud and Abuse Act (Ninth Claim) ....................................................................... 12

             1.    No Private Right of Action Exists For Plaintiffs' Claims......................... 12

             2.    Plaintiffs Do Not Plead the Elements of a CFAA and CDAFA Claim. ... 13

                    a)    Plaintiffs Fail to State any Claim Under the CDAFA................... 13

                  b)    Plaintiffs Gave Yodlee Access To Their Bank Accounts............. 14

c) Plaintiffs Do Not Allege Yodlee Exceeded Authorized Access to a Protected Computer................................................................ 15

d) Plaintiffs Fail to Allege "Damage" to a Computer. ..................... 16

e) Plaintiffs Fail to Allege Intent to Defraud. ................................. 16

f) Plaintiffs Fail to Allege that Yodlee "Trafficked" in Passwords or Similar Information. ................................................................. 17

D. Plaintiffs Fail to State a Claim Under California's Anti-Phishing Statute (Eighth Claim). ............................................................................ 18

E. Plaintiffs Fail to State a UCL Claim (Fifth Claim)................................. 19

F. Plaintiffs Fail to State A Deceit Claim Under California Civil Code § 1709 (Fourth Claim). ....................................................................................... 21

G. Plaintiffs Fail to State an Unjust Enrichment Claim (Third Claim). .................... 22

H. Plaintiffs' Declaratory Judgment Act Claim Should Be Dismissed (Sixth Claim). ...................................................................................................... 23

V. CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.L. Computers & Software, Inc. v. United States*,
   No. 16-CV-01485-SK, 2017 WL 6060267 (N.D. Cal. Mar. 13, 2017), *aff'd*, 727 F.
   App'x 376 (9th Cir. 2018) ...................................................................................................24

*Adkins v. Facebook, Inc.*,
   No. C 18-05982 WHA, No. C 19-00117 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9,
   2019) ...................................................................................................................................19

*In re Apple, Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ..............................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................4, 9, 17

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) .......................................................................................22, 23

*AtPac, Inc. v. Aptitude Sols., Inc.*,
   730 F. Supp. 2d 1174 (E.D. Cal. 2010).................................................................................12

*Belluomini v. Citigroup, Inc.*,
   No. CV 13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013)................................5

*Bittel Tech., Inc. v. Bittel USA, Inc.*,
   No. C 10-00719, 2010 WL 3221864 (N.D. Cal. Aug. 13, 2010)..........................................22

*Brodsky v. Apple, Inc.*,
   No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)......................13, 22

*Campbell v. Facebook, Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................................20

*Casillas v. Cypress Ins. Co.*,
   770 F. App'x 329 (9th Cir. 2019) ..........................................................................................9

*Catsouras v. Dep't of Cal. Highway Patrol*,
   181 Cal. App. 4th 856 (2010) ................................................................................................7

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) .............................................................................................17

*Chevron Corp. v. Donziger*,
   No. 12-mc-80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)....................10

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ...................................................................................9

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ...........................................................................................20

*Delacruz v. State Bar of California*,
   No. 16-cv-06858-BLF, 2018 WL 3077750 (N.D. Cal. Mar. 12, 2018)..............................13

*Dodaro v. Standard Pac. Corp.*,
   No. EDCV 09-01666-VAP, 2012 WL 12948706 (C.D. Cal. Mar. 26, 2012) ...................21

*Doe One v. CVS Pharmacy, Inc.*,
   348 F. Supp. 3d 967 (N.D. Cal. 2018) ............................................................................21

*Ewiz Express Corp. v. Ma Laboratories, Inc.*,
   No. 15-CV-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)..........................16

*Facebook Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) .........................................................................................14

*Facebook, Inc. v. Wallace*,
   No. C 09-798 JF (RS), 2009 WL 3617789 (N.D. Cal. Oct. 29, 2009) .............................18

*Fogelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ...........................................................................................7

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV2000769CJCGJSX, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020)........................20

*Heeger v. Facebook, Inc.*,
   No. 18-CV-06399-JD, 2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ...............................5

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ...........................................................................................4

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..........................................................................13

*In re Google Android Consumer Priv. Litig.*,
   No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..........................12

*Ha v. Bank of Am., N.A.*,
   No. 5:14-CV-00120-PSG, 2014 WL 6904567 (N.D. Cal. Dec. 8, 2014) .........................22

*Hately v. Watts*,
   917 F.3d 770 (4th Cir. 2019) .............................................................................................9

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ......................................................................................................5

*Hill v. MCI WorldCom Commcn's, Inc.*,
    120 F. Supp. 2d 1194 (S.D. Iowa 2000) ........................................................10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) .................................................................................5, 7

*In re Ins. Installment Fee Cases*,
    211 Cal. App. 4th 1395 (2012) ...............................................................6

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................4, 16, 21

*KLA-Tencor Corp. v. Murphy*,
    717 F. Supp. 2d 895 (N.D. Cal. 2010) .................................................11

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) .........................................................................19

*Lackner v. Dep't of Health Servs.*,
    29 Cal. App. 4th 1760 (1994) ..............................................................5

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...............................................58

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ............................................................14

*In re MacBook Keyboard Litig.*,
    No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .........................20

*McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003) ............................................................23

*Moreland Apartments Assocs. v. LP Equity LLC*,
    No. 5:19-cv-00744-EJD, 2019 WL 6771792 (N.D. Cal. Dec. 12, 2019) ..........................19

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
    No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017).............................8

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ..............................................................4

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ..................................................16

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .............................................13, 15

*Oracle Am., Inc. v. TERiX Computer Co., Inc.*,
No. 5:13-cv-03385-PSG, 2014 WL 31344 (N.D. Cal. Jan. 3, 2014) ...................................17

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
379 F. Supp. 3d 857 (N.D. Cal. 2019) ...............................................................................11

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...............................................................................12

*Petrovich v. Ocwen Loan Servicing, LLC*,
No. 15-cv-00033-EMC, 2016 WL 555959 (N.D. Cal. Feb. 12, 2016), *aff'd*, 716 F.
App'x 614 (9th Cir. 2017) ...................................................................................................20

*Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*,
No. 19-1235, 2020 WL 5406118 (6th Cir. Sept. 9, 2020) ...................................................15

*Shvarts v. Budget Group*,
81 Cal. App. 4th 1153 (2000) ............................................................................................21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. Aug. 20, 2020)...........................................................................20, 23

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .............................................................................................14

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
No. 17-cv-02191-SK, 2018 WL 10689420 (N.D. Cal. July 9, 2018)...........................22, 23

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) .........................................................................................................7

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
199 Cal. Rptr. 3d 901 (2016) ............................................................................................22

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...............................................................................4

*In re Toys R Us, Inc. Priv. Litig.*,
No. 00-CV-2746, 2012 WL 34517252 (N.D. Cal. Oct. 9, 2001) ......................................10

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) (en banc) .............................................................................15

*United States v. State of Washington*,
759 F.2d 1353 (9th Cir. 1985) ...........................................................................................23

*United States v. Valle*,
807 F.3d 508 (2d Cir. 2015).................................................................................................15

*Urbaniak v. Newton*,
   226 Cal. App. 3d 1128 (1991) ...................................................................................7

*Valley Bank of Nevada v. Superior Court*,
   15 Cal. 3d 652 (1975) ........................................................................................5, 6

*WEC Carolina Energy Sols. LLC v. Miller*,
   687 F.3d 199 (4th Cir. 2012) ..............................................................................15

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .............................................................................10

*Zaback v. Kellogg Sales Co.*,
   No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020)..................20

**Statutes**

18 U.S.C. §§ 1030(a) ...................................................................................14, 15, 16

18 U.S.C. § 1030(e) .......................................................................................12, 16

18 U.S.C. § 1030(g) ...............................................................................................11

18 U.S.C. § 2510(15) ...............................................................................................9

18 U.S.C. § 2510(17) .......................................................................................10, 11

18 U.S.C. § 2702(a)(1) .......................................................................................8, 10

18 U.S.C. § 2703(a) ...............................................................................................10

28 U.S.C. § 2201(a) ...............................................................................................22

Cal. Bus. & Prof. Code § 17204 ............................................................................18

Cal. Bus. & Prof. Code § 22948.2 .........................................................................18

Cal. Civ. Code § 1798.145(a)(5)..........................................................................6, 7

Cal. Civ. Code § 3515 ............................................................................................18

Cal. Pen. Code §§ 502(c)(1), 502(c)(4) ................................................................15

Cal. Penal Code § 502(c)(1)-(c)(7) .......................................................................14

Cal. Penal Code § 502(e)(1)............................................................................12, 13

California Civil Code § 1709 ................................................................................20

**Other Authorities**

16 C.F.R. § 313.3(o)(2)(ii)(B) ........................................................................................................6

Federal Rule of Civil Procedure 9(b) ....................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................1

Fed. Trade Comm., *Protecting Consumer Privacy in an Era of Rapid Change:*
  *Recommendations for Businesses and Policymakers* 22 (2012) ..........................................6

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 1, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Sallie Kim, located at 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, California 94102, Defendant Yodlee, Inc. ("Yodlee"), will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice Plaintiffs' Amended Complaint (Dkt. No. 30) as asserted against Yodlee.  This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, any other such matters of which the Court may take judicial notice, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiffs' Amended Complaint states a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

According to the Amended Complaint, Plaintiffs linked their PayPal accounts to their bank accounts via the internet.  Defendant Yodlee provides backend software to financial institutions and fintech companies, such as PayPal, for bank account verification and other purposes.  When they linked their accounts, Plaintiffs were informed that "PayPal uses Yodlee to confirm your bank details and to check your balance and transaction as needed, which can help your PayPal payments go through."  Dkt. 30, Amended Complaint ("AC") ¶ 56 (brackets omitted).  Based largely on speculative, hearsay articles, however, Plaintiffs contend that Yodlee uses "login credentials" provided by account holders to obtain purchase transaction data, which Yodlee allegedly resells to third parties only *after* any personally identifiable information has been "masked" and the "anonymized" data has been "aggregated" with anonymized data from other persons.  *Id.* ¶¶ 46, 106-108, 130.  Plaintiffs allege that Yodlee's aggregated, anonymized "datasets," which enable financial institutions and other companies to follow consumer spending trends (*id.* ¶ 115), somehow violate Plaintiffs' rights, and they assert a grab bag of

claims for alleged privacy invasion, hacking, "phishing," fraud, and equitable relief against Yodlee and its parent company, Envestnet, Inc. ("Envestnet").[1]

Plaintiffs' attempt to mold third-party speculation into legal claims falls woefully short. Even generously construing the Amended Complaint, and taking its few non-conclusory "facts" as true, Plaintiffs do not come close to stating any cognizable cause of action. As explained further below, each of Plaintiffs' causes of action suffers from a failure to plead one or more required elements. Indeed, Plaintiffs' pleading strategy is merely to recite the elements of each claim, unaccompanied by any well-pleaded factual allegations. As a result, the Amended Complaint fails both the *Iqbal/Twombly* standard and, as to the claims sounding in fraud, the particularity requirements of Federal Rule of Civil Procedure 9(b).

Moreover, most of Plaintiffs' claims should be dismissed with prejudice for the additional reason that the facts pleaded in the Amended Complaint foreclose any possibility of stating a valid claim. For example, several claims are barred by Plaintiffs' acknowledgement that they linked their PayPal accounts fully aware, from the screenshots reprinted in the Amended Complaint, that Yodlee would access their bank accounts. Further, anonymized, aggregated transactional data cannot support a claim for invasion of privacy under either the California Constitution or common law. Finally, Plaintiffs' equitable Unfair Competition Law and unjust enrichment claims fail at the threshold, because Plaintiffs do not and cannot (based on their own pleading) contend that an adequate remedy at law is unavailable.

For these reasons and many others addressed below, this Court should dismiss the Amended Complaint.

## II.    ALLEGATIONS OF THE AMENDED COMPLAINT[2]

Yodlee is a financial technology (fintech) company whose products are used by over 150 financial companies, such as PayPal, Personal Capital, and numerous banks. AC ¶¶ 45, 47. Yodlee's

---

[1] Envestnet has filed a separate motion to dismiss the Amended Complaint.

[2] This section is based on the Amended Complaint. Although well-pleaded allegations, if any, cannot be technically disputed on a motion to dismiss, Yodlee is not conceding any allegations in the Amended Complaint and considers Plaintiffs' claims to be baseless and without merit.

corporate customers use its application programming interface ("API") to provide various services, like budgeting tools, savings trackers, account history information, and account verification.  *Id.* ¶ 45.

According to the Amended Complaint, "PayPal uses Yodlee's account verification API to validate an individual's bank account so that the individual can use that account with PayPal's services." *Id.* ¶ 55.  This instant verification replaces the "old-fashioned way of authorizing" accounts, which could take multiple days and cause delay.  *Id.* ¶ 65.

Plaintiffs each allege, in identical terms, that they connected their PayPal accounts through Yodlee's API to their banking accounts to "facilitate transfers among those accounts."  *Id.* ¶¶ 22-41. Plaintiffs reprint certain screenshots that PayPal users see when linking their PayPal account to another bank.  *Id.* ¶ 55 (Figure 1).  "The first screen displayed in Figure 1 states that '[PayPal] use[s] Yodlee to confirm your bank details and to check your balance and transactions as needed, which can help your PayPal payments go through.'"  *Id.* ¶ 56.  PayPal's Privacy Statement is hyperlinked in the first screen. *Id.* ¶ 55 (Figure 1).

Plaintiffs allege that Yodlee "surreptitiously" collects "highly sensitive financial data" from their bank accounts for resale to third parties.  *Id.* ¶¶ 2, 4.  According to the Amended Complaint, Yodlee retrieves "bank account balances, transaction history and other data."  *Id.* ¶ 46.  Yodlee publicly explains it "employs 'leading industry standards of de-identification processing'" to the collected data.  *Id.* ¶ 106. "Yodlee's data anonymization process involves 'removing names, email addresses, and other personally identifiable information (PII) from the transaction data . . . . includ[ing] 'masking patterns of numbers such as account numbers, phone numbers, and SSNs and replacing them with 'XXX' symbols' and 'mask[ing] the financial institution's name in the transaction description.'"  *Id.* ¶ 107.  This anonymized transaction-level data is then "aggregated with that of other individuals" and offered for sale to "investment firms and some of the largest banks in the United States."  *Id.* ¶¶ 46, 52.

According to the Amended Complaint, Yodlee's corporate customers receive only "the amount of the transaction, date of sale, the city, state and zip code of the business where the purchase was made, and other metadata, including . . . merchant fields," along with a Yodlee-specific data identifier.  *Id.* ¶ 108.  Yodlee customers can use this aggregated, anonymized, transaction-level data to determine, for example, how much money collectively was spent at McDonald's or to pay water bills on a particular

day.  *Id*. ¶ 2.  Although Plaintiffs speculate that someone, someday, could de-anonymize this data, Plaintiffs do not allege that this has happened to anyone, let alone to them.  *Id*. ¶¶ 110-113.

Plaintiffs further assert that they lose unspecified "indemnification rights" and control over their "valuable" information, and face a "heightened risk of identity theft and fraud."  *Id*. ¶ 95.  However, Plaintiffs do not allege that, in fact, they have lost any control over their information or been the victim of identity theft or fraud.

Plaintiffs wish to represent a nationwide class (and California subclass) of persons, whose bank accounts, "from 2014 through the present," were allegedly "accessed" by Yodlee using login credentials provided by account holders when they linked those accounts.  *Id*. ¶ 130.

## III.   LEGAL STANDARD

A motion to dismiss "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not suffice.  *Id*.  Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions."  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  For claims sounding in fraud, a plaintiff additionally "must state with particularity the circumstances" of the alleged fraudulent conduct as required by Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.,* 567 F. 3d 1120, 1124 (9th Cir. 2009).

## IV.   ARGUMENT

### A.   Plaintiffs Fail to State Privacy Claims Under California's Common Law or Constitution (First and Tenth Claims).

Plaintiffs fail to state a cause of action for intrusion upon seclusion under California common law because they do not have a reasonable expectation of privacy in *transaction-level* data, and, even if they did, the alleged disclosure of *aggregated* and *anonymized* transactional data does not constitute a

"serious invasion" of privacy or an "egregious breach of social norms" as a matter of law.  For similar reasons, Plaintiff Szeto's separate privacy invasion claim under the California Constitution also fails.

To state an intrusion upon seclusion claim, a plaintiff must plead two elements: (1) a "reasonable expectation of privacy" in the information that was intentionally invaded, and (2) an intrusion that was "highly offensive" to a reasonable person.  *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286, 287 (2009).  To state a constitutional privacy claim, the invasion must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994).  Both causes of action share "similarly high standards for the type of invasion that is actionable."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *see also Belluomini v. Citigroup, Inc.*, No. CV 13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013) (requirements of both claims are "similarly stringent").  When brought together as Plaintiffs do here, courts "assess the two claims together and examine the largely parallel elements of these two claims . . . to consider (1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion, including any justification and other relevant interests."  *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2019 WL 7282477, at *3 (N.D. Cal. Dec. 27, 2019) (citation and quotations omitted).  Whether allegations are sufficiently serious to meet the high bar required to state such claims "may be adjudicated as a matter of law."  *Low*, 900 F. Supp. 2d at 1025 (quotations marks omitted); *see also, e.g., Lackner v. Dep't of Health Servs.*, 29 Cal. App. 4th 1760, 1765 (1994) (whether conduct "constitutes a serious invasion of privacy" is a "matter of law for the court").

> **1.  Plaintiffs Do Not Have a Reasonable Expectation of Privacy in Anonymized, Aggregated Transaction-Level Data.**

Plaintiffs allege that transaction-level data from their bank account was collected, "aggregated with that of other individuals," and sold to third parties after "Yodlee's data anonymization process . . . 'remov[ed] names, email addresses, and other personally identifiable information (PII) from the transaction data.'"  *See* AC ¶¶ 46, 107.  Plaintiffs do not have a reasonable expectation of privacy in such data.  While California courts have recognized a general expectation of privacy in financial information "linked*"* to a specific person, anonymized information is not afforded the same level of

protection.  *See Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656-58 (1975) (disclosure of loan transactions with customer names deleted would not contravene California Constitution); *cf. In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1429 (2012) (agreeing that there was "a reasonable expectation of privacy in payment information *linked* to names and addresses") (emphasis added).  In *Valley Bank*, a case oft-cited by plaintiffs and courts for the proposition that a reasonable expectation of privacy in financial data exists, the California Supreme Court observed that "[w]ith respect to bank customer information . . . . deletion of the customer's name" would alleviate any privacy concerns.  15 Cal. 3d at 658.  Moreover, California's Consumer Privacy Act permits Yodlee's alleged activity.  The CCPA expressly allows businesses to "collect, use, retain, sell, or disclose consumer information that is *deidentified* or *in the aggregate* consumer information."  Cal. Civ. Code § 1798.145(a)(5) (emphases added).[3]

Here, the Amended Complaint simply alleges that Yodlee does what the California Supreme Court in *Valley Bank* found permissible.  Plaintiffs concede that Yodlee has not disclosed their names or personally identifying information to anyone.  To the contrary, "Yodlee's data anonymization process involves 'removing names, email addresses, and other personally identifiable information (PII) from the transaction data.'"  AC ¶ 107.  The only information allegedly disclosed to third parties is a Yodlee-specific identifier and "the amount of the transaction, date of sale, the city, state and zip code of the business where the purchase was made, and other … [undefined] merchant fields."  *Id*. ¶ 108.  Numerous commercial entities already have access to this very same data.  They include the merchant who made the sale, the credit card company, the company providing the credit card platform, and possibly the maker of the electronic wallet software if Google Pay or the like was used.  Indeed, anyone who happens to find a paper receipt on the ground or stuck to the McDonald's tray sitting next to the

---

[3] *See also* 16 C.F.R. § 313.3(o)(2)(ii)(B) (defining nonpublic personal information under the Gramm-Leach-Bliley Act to exclude "[i]nformation that does not identify a consumer, such as aggregate information or blind data that does not contain personal identifiers such as account numbers, names, or addresses"); Fed. Trade Comm., *Protecting Consumer Privacy in an Era of Rapid Change: Recommendations for Businesses and Policymakers* 22 (2012) (personal information does not include deidentified data).

trash would have such information.  A reasonable expectation of privacy does not exist in such information.

Moreover, Plaintiffs further acknowledge that their anonymized transaction-level data "is then aggregated with that of other individuals" for release to third parties.  AC ¶ 46.  The aggregate amount of the "water bill . . . across 25,000 citizens of San Francisco" or the daily spend "at McDonald's throughout the country" (*id.* ¶ 2), which is allegedly representative of the data that Yodlee provides to its corporate customers, does not intrude on Plaintiffs' reasonable expectation of personal privacy under California law as a matter of law.

### 2.  Disclosure of Anonymized Transactional Data Is Not a "Serious Invasion."

Even if Plaintiffs had some expectation of privacy in transaction-level data, Yodlee's alleged disclosure of aggregated, anonymized data is hardly a "serious invasion" of any reasonable person's privacy or an "egregious breach of the social norms."  *Hill*, 7 Cal. 4th at 37.  "[T]he extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy."  *Id.* Courts typically find this standard is satisfied only in egregious circumstances, such as dissemination by the police of gruesome photographs of a deceased car accident victim, disclosure of a patient's HIV status, or improper use of confidential mental health records.  *E.g.*, *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856 (2010); *Urbaniak v. Newton*, 226 Cal. App. 3d 1128 (1991); *Taus v. Loftus*, 40 Cal. 4th 683 (2007).

In the financial context, courts require similarly shocking conduct before finding that a "serious invasion" has occurred.  For example, *Tourgeman v. Collins Fin. Servs., Inc.*, involved the alleged disclosure of plaintiff's financial account, credit information, and social security number to a debt collector.  *See* No. 08-CV-01392 JLS (NLS), 2009 WL 6527758, *3-4 (S.D. Cal. Nov. 23, 2009).  In *Janvrin Holdings Ltd. v. Hilsenrath*, the party's financial information was used to blackmail him.  *See* No. C 02-1068 CW, 2007 WL 2155702, at *2 (N.D. Cal. July 26, 2007).

In stark contrast, Yodlee's alleged sale of aggregated, anonymized, transactional data does not amount to "serious" conduct.  As the CCPA exemption confirms, "this conduct is not an egregious breach of social norms, but routine commercial behavior."  *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011); *see also* Cal. Civ. Code § 1798.145(a)(5) (permitting businesses to "collect,

1 use, retain, sell, or disclose consumer information that is deidentified or in the aggregate consumer

2 information").  Yodlee's alleged application of its own "unique identifier" (AC ¶ 100) to the

3 anonymized transaction data is no more "serious" or unusual.  *See Low*, 900 F. Supp. 2d at 1025 (stating

4 LinkedIn's disclosure of "a numeric code associated with a user . . . does not meet the standard set by

5 California courts" for claims of intrusion upon seclusion).

6       Plaintiffs' speculation that someone *may* figure out who they are by attempting to "de-

7 anonymize" the data does not change the analysis.  AC ¶ 109.  They nowhere allege that anyone has

8 "actually done so" or even tried.  *Potential* intrusion upon seclusion is not a cause of action.  "Although

9 Plaintiffs postulate that these third parties could, through inferences, de-anonymize this data, it is not

10 clear that anyone has actually done so."  *Low*, 900 F. Supp. 2d at 1025 (dismissing with prejudice

11 plaintiffs' invasion of privacy claims under the California Constitution and common law intrusion upon

12 seclusion where data allegedly disclosed was anonymized); *see also Moreno v. S.F. Bay Area Rapid*

13 *Transit Dist.*, No. 17-cv-02911-JSC, 2017 WL 6387764, at *7-8 (N.D. Cal. Dec. 14, 2017) (dismissing

14 constitutional and common law intrusion claims alleging disclosure of "anonymous data").

15       Accordingly, this Court should dismiss with prejudice Plaintiffs' privacy claims under

16 California's Constitution and common law.

17 **B.**    **Plaintiffs Fail to State a Claim Under the Stored Communications Act (Second**
18        **Claim).**

19       Plaintiffs' claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a) is a

20 threadbare and conclusory recitation of elements and is otherwise foreclosed by their own allegations.[4]

21       **1.**    **Plaintiffs Have Not Pleaded Any Elements of a Claim Under the SCA.**

22       Section 2702(a) prohibits entities that (i) provide either "an electronic communication service" or

23 a "remote computing service" to "the public" (ii) from "knowingly divulg[ing] the contents of a

24 communication" (iii) "while in electronic storage by that service."  18 U.S.C. § 2702(a).  Even

25 generously construed, Plaintiffs' allegations do not state such a claim. They allege, in wholly conclusory

26

27 ----
   [4] Although the headnote for the Second Claim refers to 18 U.S.C. § 2701, the relevant allegations refer

28 or relate only to § 2702(a)(1).  *See* AC ¶¶ 156-159, 162-164.  To the extent Plaintiffs may have intended
   to assert a claim under § 2701, they fail to allege the elements under that section of the SCA.

terms, that their transaction data is an "electronic communication[]" and that Yodlee "store[s] . . . [their] electronic communications and intentionally divulged them by selling this information to third parties." AC ¶ 164.  Not only is such a cursory recital insufficient under *Iqbal*, but Plaintiffs' allegations also fail to state a claim under Section 2702(a) as a matter of law for the multiple, independent reasons discussed below.

**a)**       **Yodlee is Not An "Electronic Communication Service."**

Plaintiffs summarily assert that Yodlee is an "electronic communication service" (not a "remote computing service").  AC ¶ 159.  But the Amended Complaint contains no factual allegations to satisfy the statutory requirements for pleading that Yodlee is such a service.  An electronic communication service ("ECS") is "any service which provides to its users the ability to send or receive wire or electronic communications."  18 U.S.C. § 2510(15).  In other words, an ECS "permit[s] users to communicate directly with each other."  *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 331 (9th Cir. 2019) (finding that defendant's website, database, and computer servers that were allegedly used to send electronic communications by uploading and downloading documents were not an ECS under the SCA).  Indeed, Congress stated that one of the SCA's "primary purposes was to protect email communications." *Id.* at 330.  Since its enactment, courts have read the ECS definition to include other platforms for interpersonal communications, such as social networking websites (*e.g.*, MySpace) and electronic bulletin boards.  *See Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 979-80 (C.D. Cal. 2010) (collecting cases).

In contrast to those platforms allowing people to communicate *with each other*, Yodlee merely provides account verification software to PayPal and other companies to enable their customers to link their bank accounts from a personal computer or mobile app.  AC ¶¶ 54-57.  The definition of electronic communication service provider does not reach such activity.  *See Hately v. Watts*, 917 F.3d 770, 790 (4th Cir. 2019) (expressing skepticism that an ECS includes manufacturers of products sold or licensed such as software).  Because the Amended Complaint does not allege that Yodlee's software enables people to communicate with each other, Yodlee is not an ECS.  Plaintiffs' SCA claim thus fails.

### b)   Yodlee Does Not Access the "Contents" of a "Communication."

Section 2702(a) prohibits only the knowing disclosure of the "contents" of a communication, incorporating the separate Wiretap Act's definition of this term, which is, "any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2702(a); *id.* § 2711(1)*; id.* § 2510(8). In the Ninth Circuit, "content" means "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication," such as the origin, length, time of the communication, or referral URLs. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106-08 (9th Cir. 2014). Courts in this District and elsewhere have recognized that transaction data, such as is alleged in the Amended Complaint, do not constitute "contents" of a communication under the SCA. *See, e.g.*, *Chevron Corp. v. Donziger*, No. 12-mc-80237 CRB (NC), 2013 WL 4536808, at *2, *6 (N.D. Cal. Aug. 22, 2013) (characterizing information associated with the creation of an email address, including "billing information," as "record or other information" and not the "contents" of a communication); *see also In re Application for the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114, 121, 127 (E.D. Va. 2011) (noting that an SCA order requiring Twitter to produce, *inter alia*, billing records and the means and source of payment, such as any credit card or bank account number, "seeks non-content records"); *Hill v. MCI WorldCom Commcn's, Inc*., 120 F. Supp. 2d 1194, 1195 (S.D. Iowa 2000) (subscriber invoice/billing information not "contents"). These cases are supported by the text of the SCA itself, which distinguishes between "content" for which the U.S. government generally must obtain a warrant, and *non-content* "record information," including the "means and source of payments for such service (*including any credit card or bank account number*)," which is subject to a lower threshold for disclosure to the government. 18 U.S.C. § 2703(a) (emphasis added).

In this case, Plaintiffs allege that Yodlee "remov[es] names, email addresses, and other personally identifiable information (PII) from the transaction data," AC ¶ 107, and only provides "the amount of the transaction, date of sale, the city, state and zip code of the business where the purchase was made, and other metadata, including . . . merchant fields," along with a Yodlee-specific identifier, *id.* ¶ 108. Because such data is not the "substance, purport or meaning" of a communication by Plaintiffs, no "content" under the SCA is alleged in the Amended Complaint.

### c)        Yodlee Does Not Keep Plaintiffs' Data in "Electronic Storage."

Section 2702(a) also only covers communications intentionally disclosed "while in electronic storage by" the electronic communication service.  18 U.S.C. § 2702(a)(1).  "Electronic storage" is narrowly defined as "(a) any temporary, intermediate storage" that is "incidental to the electronic communication thereof" or "(b) any storage . . . by an electronic communication service for purposes of backup protection."  *Id.* § 2510(17).  Neither element is alleged in the Amended Complaint.

Under § 2702(a)(1)(a), a communication is in "temporary, intermediate storage" only if it is "stored 'for a limited time' in the 'middle' of a transmission, *i.e.* when an electronic communication service temporarily stores a communication while waiting to deliver it."  *In re Toys R Us, Inc. Priv. Litig.*, No. 00-CV-2746, 2012 WL 34517252, at *3 (N.D. Cal. Oct. 9, 2001); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1059 (N.D. Cal. 2012) (location data stored on the hard drive of an iPhone for a period of up to one year, is not in "temporary, intermediate storage").  Alternatively, to qualify under § 2702(a)(1)(b), the storage must be solely "for purposes of backup protection."  18 U.S.C. § 2510(17).  Moreover, "the mere fact that a copy could serve as a backup does not mean that it is stored for that purpose."  *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 904 (N.D. Cal. 2010).

The Amended Complaint fails to allege that Yodlee discloses data maintained in "temporary, intermediate storage" or stored "for purposes of backup protection."  To the contrary, Plaintiffs allege that Yodlee retains the data at issue "on an ongoing basis" for sale to third parties. AC ¶ 57; *see also id.* ¶¶ 8-10.  "[A] plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim." *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 866 (N.D. Cal. 2019) (quoting *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotations omitted)).  Plaintiffs have done so here.

For the foregoing reasons, any one of which is fatal to Plaintiffs' § 2702(a) claim under the Stored Communications Act, this Court should dismiss the Second Claim with prejudice.

1

2

### C.    Plaintiffs Fail to State Claims Under California's Comprehensive Data Access and Fraud Act (Seventh Claim) and the federal Computer Fraud and Abuse Act (Ninth Claim)

3

4

5

6

7

Plaintiffs have not pleaded actionable claims under either the federal Computer Fraud and Abuse Act ("CFAA") or California's analogous Comprehensive Data Access and Fraud Act ("CDAFA"). *First*, both of these laws are primarily criminal statutes that allow for private rights of action in only narrow circumstances that are not alleged in the Amended Complaint.  *Second*, Plaintiffs have failed to plausibly allege required elements of either claim.

8

### 1.    No Private Right of Action Exists For Plaintiffs' Claims.

9

10

11

12

13

14

15

"CFAA and CDAFA [c]laims require some showing of damage or loss, beyond the mere invasion of statutory rights" in order for a plaintiff to bring such a claim.  *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *6 (N.D. Cal. Mar. 26, 2013).  To bring a civil claim based on economic damages under the CFAA, a plaintiff must have suffered an actual "loss" totaling at least $5,000.  *See* 18 U.S.C. § 1030(g).  Similarly, while the CDAFA does not set a minimum threshold, a plaintiff still must have "suffered damage or loss" to bring a claim.  Cal. Penal Code § 502(e)(1).

16

17

18

19

20

21

22

23

24

25

26

27

Here, Plaintiffs have not plausibly alleged *any* "damage or loss," let alone $5,000 worth, caused by Yodlee's purported conduct.  To satisfy this requirement, Plaintiffs must demonstrate an actual "injury emanating from" the violations, that is, some "tangible" harm.  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219 (N.D. Cal. 2014); *see also AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010) ("The definition of 'loss' itself makes clear Congress's intent to restrict civil actions under [the economic damages provision of the CFAA] to the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks.").  Plaintiffs' conclusory assertion that Yodlee "caused losses" by "imposing unreasonable costs" upon them, including the cost of conducting "damage assessments" and "restoring the data" to its prior condition, AC ¶ 233, merely parrots the definition of "loss" in the statute.  *See* 18 U.S.C. §1030(e)(11) (defining "loss" as meaning "any reasonable cost to any victim, including . . . conducting a damage assessment, and restoring the data").  Such "bare legal conclusion, couched as fact" cannot help a plaintiff survive a

28

motion to dismiss.  *In re Google*, 2013 WL 1283236, at *7 (dismissing CFAA and CDAFA claims where plaintiff summarily alleged that he "incurred costs").

Plaintiffs do not allege, for example, whether and when they conducted any "damage assessment," or what these supposed assessments involved, why they were needed, or what they cost. Plaintiffs also do not allege that any data was restored to its prior condition (whatever that would even mean in this context), what any restoration entailed, or why it was required.  Courts in this District routinely reject similarly threadbare assertions of loss or damage.  *See, e.g.*, *Delacruz v. State Bar of California*, No. 16-cv-06858-BLF, 2018 WL 3077750, at *8 (N.D. Cal. Mar. 12, 2018) (allegation that the plaintiff incurred over $45,000 in damages and loss "by conducting a damages assessment" on the integrity of confidential data "is nothing more than a conclusory assertion"); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (generalized and "entirely speculative" assertions of loss, "devoid of any specific details from which a factfinder could calculate an amount of loss," are insufficient to state a claim under the CFAA).  For the same reasons, Plaintiffs' CDAFA claim also fails.  *See NovelPoster*, 140 F. Supp. 3d at 950-51 (dismissing CDAFA claim where plaintiff failed to plead requisite damage or loss under the CFAA).

### 2.     Plaintiffs Do Not Plead the Elements of a CFAA and CDAFA Claim.

Even if Plaintiffs had adequately alleged concrete damage or loss supporting recovery of civil damages under the CFAA and CDAFA, they have not pleaded facts sufficient to state such claims.  The Amended Complaint mechanically recites nearly every section and subsection of these statutes, mostly quoting the statutory language without accompanying factual enhancement concerning how Yodlee allegedly violated the provision.  See AC ¶¶ 204-210, 220-229.  Such rote pleading is insufficient to state a claim.  "Neither [Yodlee] nor the Court should have to guess how Plaintiff contends these subsections were violated."  *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018).  Plaintiffs cannot "merely parrot the language" of the statutes to satisfy pleading requirements. *Brodsky v. Apple, Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *9 (N.D. Cal. Aug. 30, 2019).

### a)     Plaintiffs Fail to State any Claim Under the CDAFA.

As a threshold matter, Plaintiffs fail to allege that Yodlee obtained unauthorized access to Plaintiffs' *own computers*, as is required to state a claim under the CDAFA.  The CDAFA provides that

the "*owner or lessee*" of the computer, computer system, or data who suffers damage or loss may bring a civil action under the CDAFA.  Cal. Penal Code § 502(e)(1) (emphasis added); *Gonzales*, 305 F. Supp. 3d at 1091 ("Plaintiff must allege that Uber accessed *Plaintiff's* computer, computer system, etc.  He has not done so.").  Because Plaintiffs do not allege unauthorized access of their own computers, they have no claim under the CDAFA as a matter of law.

**b)  Plaintiffs Gave Yodlee Access To Their Bank Accounts.**

Plaintiffs also do not allege that Yodlee accessed their banks' computers without authorization.  To the contrary, Plaintiffs allege they *gave Yodlee permission to access their bank records* when they linked their PayPal accounts.  *See* AC ¶¶ 55 (Figure 1), 56 ("The first screen displayed in Figure 1 states that '[PayPal] use[s] Yodlee to confirm your bank details and to check your balance and transactions as needed . . . .'").  Plaintiffs have thus pleaded themselves out of court on these claims.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim . . . .").

To state any claim under the CFAA, a plaintiff must show that the defendant accessed a computer "without authorization."  *See* 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), 1030(a)(5)(B)-(C), 1030(a)(6).  The CDAFA likewise prohibits "knowingly" accessing, providing access to, or using any data or computer system "without permission."  *See* Cal. Penal Code § 502(c)(1)-(c)(7).  A person uses a computer "without authorization" when the individual "has not received permission to use the computer *for any purpose* (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (emphasis added); *see also Facebook Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1066-67 (9th Cir. 2016) (A person uses a computer "without authorization" when "he or she has no permission to access [the] computer or when such permission has been revoked explicitly.").

Here, Plaintiffs cannot (and do not) allege that Yodlee lacked authorization to access their banks' systems "*for any purpose*."  *LVRC Holdings*, 581 F.3d at 1135 (emphasis added).  As explained above,

Plaintiffs allege the exact opposite—that they *expressly authorized* Yodlee to access their bank accounts. *See* AC ¶¶ 55 (Figure 1), 56.  Plaintiffs' claims under the CFAA and CDAFA are thus foreclosed.[5]

### c)   Plaintiffs Do Not Allege Yodlee Exceeded Authorized Access to a Protected Computer.

Plaintiffs also fail to plausibly allege that Yodlee "exceed[ed] authorized access" to a protected computer under the CFAA.  *See* 18 U.S.C. §§ 1030(a)(2), 1030(a)(4).  A defendant exceeds authorized access to a "protected computer" only upon "unauthorized procurement or alteration" of information beyond that which the defendant was authorized to obtain—and not because of any "misuse or misappropriation" of the information obtained.  *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (*en banc*); *see also Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, No. 19-1235, 2020 WL 5406118, at *3 (6th Cir. Sept. 9, 2020) ("Section 1030(a)(2)'s aim . . . is penalizing those who breach cyber barriers without permission, rather than policing those who misuse the data they are authorized to obtain."); *United States v. Valle*, 807 F.3d 508, 527-28 (2d Cir. 2015) (same); *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 202, 207 (4th Cir. 2012) (same).

The Amended Complaint does not allege that Yodlee exceeded authorized access by bypassing a barrier to data that it was not entitled to obtain, because Plaintiffs had already authorized Yodlee to access their bank accounts through the PayPal consent screen.  Although Plaintiffs contend Yodlee subsequently misused their transaction data in selling it (though anonymized and aggregated) to third parties, the Ninth Circuit has consistently held that such "misuse" claims are *not* actionable under the CFAA.  *See Nosal*, 676 F.3d at 863 ("[T]he phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions.  If Congress wants to incorporate misappropriation liability into the CFAA, it must speak more clearly."); *Power Ventures,* 844 F.3d at 1067 ("[A] violation of the terms of use of a website—without more—cannot establish liability under the CFAA.").  Thus, Plaintiffs' "exceeded authorized access" claims under 18 U.S.C. §§ 1030(a)(2), 1030(a)(4) fail as a matter of law for this additional reason.

---

[5] Additionally, a CDAFA claim also requires "circumvent[ion of] technical or code-based barriers in place to restrict a bar a user's access."  *NovelPoster*, 140 F. Supp. at 950.  No such conduct is alleged.

1

### d)   Plaintiffs Fail to Allege "Damage" to a Computer.

2      Plaintiffs' CFAA § 1030(a)(5)(A) and CDAFA §§ 502(c)(1) and 502(c)(4) claims further fail

3  because Plaintiffs alleges no cognizable "damage" as defined and required by those statutes.

4      Section 1030(a)(5)(A) of the CFAA requires a showing that a defendant knowingly caused the

5  "transmission" of a program, information, code, or command, and as a result of such conduct,

6  intentionally caused "damage" without authorization to a protected computer.  18 U.S.C. §

7  1030(a)(5)(A).  Similarly, to state a claim under the CDAFA, a plaintiff must allege that a defendant

8  "damaged" some data, computer, or computer system without permission.  *See* Cal. Pen. Code §§

9  502(c)(1), 502(c)(4).  "'[D]amage' means harm to computers or networks, not economic harm due to the

10  commercial value of the data itself."  *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834

11  (N.D. Cal. 2014); *see* 18 U.S.C. § 1030(a)(e)(8) (defining "damage" as "any impairment to the integrity

12  or availability of data, a program, system, or information").

13      Plaintiffs have not alleged that Yodlee "damaged" their data or any "computer or computer

14  network."  As such, their "damage" claims under CFAA § 1030(a)(5)(A) and CDAFA §§ 502(c)(1) and

15  502(c)(4) must be dismissed for this additional reason.

16

### e)   Plaintiffs Fail to Allege Intent to Defraud.

17      To state claims under sections 1030(a)(4) and 1030(a)(6) of the CFAA, a plaintiff also must

18  plead that the defendant knowingly and "with intent to defraud" accessed a protected computer, 18

19  U.S.C. § 1030(a)(4), or "traffick[ed]" in any password or similar information, *id*. §1030(a)(6).  Because

20  these claims are "grounded in fraud," they are subject to the heightened pleading standard of Rule 9(b).

21  *See In re Apple, Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1181 (N.D. Cal. 2019) ("Rule

22  9(b) applies to Plaintiffs' Computer Intrusion claims"); *Ewiz Express Corp. v. Ma Laboratories, Inc.*,

23  No. 15-CV-01213-LHK, 2015 WL 5680904, at *5 (N.D. Cal. Sept. 28, 2015) (applying Rule 9(b) to all

24  CFAA claims because the claims are based on fraud).

25      While Plaintiffs summarily assert that Yodlee "devise[d] a scheme" to deceive them, they fail to

26  provide the particulars of "who, what, when, where, and how" the alleged fraudulent conduct occurred.

27  *Kearns*, 567 F.3d at 1124.  Moreover, Plaintiffs' assertion that Yodlee attempted to conceal its fraud by

28  "silently integrat[ing]" its software into its customers' apps, AC ¶¶ 45, 224, is contradicted by the

screenshots reprinted in their Amended Complaint, which plainly disclosed Yodlee's involvement, *id*. ¶¶ 55-56.

### f)   Plaintiffs Fail to Allege that Yodlee "Trafficked" in Passwords or Similar Information.

Plaintiffs have not stated a claim for violation of section 1030(a)(6) of the CFAA for the additional reason that this subsection requires a showing that a defendant "traffics" without authorization in a password or similar information through which a computer may be accessed.  18 U.S.C. § 1030(a)(6).  Section 1030(a)(6) requires allegations that a defendant "transferred" a password or access credentials to "another."  *Oracle Am., Inc. v. TERiX Computer Co., Inc.*, No. 5:13-cv-03385-PSG, 2014 WL 31344, at *6 (N.D. Cal. Jan. 3, 2014); *see also* 18 U.S.C. § 1030(e)(5) (defining "traffic" as "[to] transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of").

Plaintiffs again parrot the statutory elements, which is insufficient under *Iqbal* and *Twombly*. They also allege that Yodlee obtained their passwords "with the intent of transferring them to *their own* massive database of user information."  AC ¶ 230 (emphasis added).  However, simply receiving and using a password for one's own alleged benefit, rather than transferring or disposing of the password to third parties, does not violate this provision.  *See Oracle Am.*, 2014 WL 31344, at *6 (dismissing password trafficking claim where "Defendants [were] alleged only to have *received* the login credentials from their customer and used the credentials themselves") (emphasis added).  The essence of a "trafficking" claim is a transfer to a third party—which the Amended Complaint does not allege.

Plaintiffs plead, in the alternative, that the banks allegedly sent an "access token" to Yodlee, which, in turn, Yodlee "transferred to [its] app clients or partners."  AC ¶ 230.  Plaintiffs do not define what they mean by an "access token" or provide any reason why it would be transferred.  Such threadbare and convoluted allegations are insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.

In sum, Plaintiffs' claims under the CFAA and CDAFA should be dismissed with prejudice.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (a district court "may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

**D.      Plaintiffs Fail to State a Claim Under California's Anti-Phishing Statute (Eighth Claim).**

Enacted in 2005, California's Anti-Phishing Act is exactly what it sounds like—a law that prevents *phishing*, the now well-known act of using a fake email or other form of deceit to obtain someone's password, social security number, and the like for purposes of committing a crime.  As described in the legislative history, " [p]hishing is a widespread technique for obtaining personal information, and is used to facilitate identity theft and other crimes.  Phishers use fraudulent emails or Web sites to trick consumers into providing personal information, such as bank account numbers and social security numbers, to what is believed to be a legitimate company."  Cal. Bill Anal., S.B. 355 Assem., July 13, 2005; Cal. Bill Anal., S.B. 355 Sen., July 5, 2005.  *See also Facebook, Inc. v. Wallace*, No. C 09-798 JF (RS), 2009 WL 3617789, at *1-3  (N.D. Cal. Oct. 29, 2009) ("phishing and spamming scheme" involved emails that "appear[ed] to be legitimate messages," but were "designed to trick users into divulging their Facebook login information").  On its face, the Anti-Phishing Act only prohibits use of the internet to "solicit, request, or take any action to induce another person to provide identifying information by representing itself to be a business without the authority or approval of the business."  Cal. Bus. & Prof. Code § 22948.2.

The Amended Complaint does not allege any facts to suggest Yodlee did anything of the sort. Plaintiffs do not plausibly allege that Yodlee "represent[ed] itself to be" any of the financial institutions it collaborates with, or that it did so "without the authority or approval" of the financial intuitions.  *Id.* The Amended Complaint alleges the exact opposite, stating that the PayPal and other institutions using Yodlee purposefully "integrate" its API into their programs and "pay a licensing fee" to do so.  AC ¶ 46. Indeed, the screenshots of the account-linking process that Plaintiffs reprint in the Amended Complaint make clear that PayPal informs users that it uses Yodlee to connect with banks.  *See id.* ¶¶ 55-56.

Even if Plaintiffs had stated a claim under the Act (which they have not), as explained above in Section IV.C.2.c., Plaintiffs knowingly provided their log-in credentials to Yodlee.  *See* Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.").  Accordingly, Plaintiffs' "anti-phishing" claim should be dismissed with prejudice.

### E.      Plaintiffs Fail to State a UCL Claim (Fifth Claim).

The Amended Complaint does not state any claim under the Unfair Competition Law because Plaintiffs (1) allege no loss of money or property, (2) contend they have an adequate remedy at law, and (3) fail to adequately allege the elements of any cause of action under the UCL.

*First*, UCL standing in a private action extends only to "a person who has suffered injury in fact and has *lost money or property* as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  Thus, to demonstrate statutory standing, a plaintiff must "(1) establish . . . *economic injury*, and (2) show that the economic injury was the result of, *i.e.*, *caused by*, the unfair business practice or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis in original).  For this reason, standing under the UCL is "substantially narrower than federal standing under article III."  *Id.* at 324.

The Amended Complaint hypothesizes several theories of "economic injury" to the Plaintiffs: (a) their alleged loss of valuable indemnification rights; (b) their alleged loss of other rights and protections to which they were entitled as long as their sensitive personal data remained in a secure banking environment; (c) their alleged loss of control over valuable property; and (d) their allegedly heightened risk of identity theft and fraud.  AC ¶ 95.

But labeling these purported "losses" as "economic" does not make them so.  Indeed, multiple courts have already rejected these same theories.  For example, in the UCL context, "[a] fear or risk of future loss, especially without any concrete showing that the loss will even occur, cannot show that Plaintiffs 'lost money or property' as a result of Defendant's alleged unfair competition."  *Moreland Apartments Assocs. v. LP Equity LLC,* No. 5:19-cv-00744-EJD, 2019 WL 6771792, at *5 (N.D. Cal. Dec. 12, 2019).  Thus, speculation that Plaintiffs may have a heightened risk of identity theft does not amount to "economic" damage.  The same is true for Plaintiffs' vague allegations concerning "lost indemnification rights" and other "rights and protections," which at most refer to contingent losses that have not yet occurred.  Plaintiffs' remaining theory—that "loss of control" over their banking information is the loss of "valuable property"—is similarly foreclosed.  "[L]ost value of [a plaintiff's] personal information" is not economic harm for UCL standing purposes.  *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, No. C 19-00117 WHA, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (citing *In*

*re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014)); *accord*, *e.g.*, *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (concluding courts "have consistently rejected" a broad interpretation of "money or property" that would include personal information).  So the UCL claim fails.

*Second*, Plaintiffs' UCL claim fails for the separate and independent reason that, according to their Amended Complaint, Plaintiffs have an adequate remedy at law, thus precluding this Court from awarding any equitable relief under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  Indeed, dismissal is required where, as here, the Amended Complaint does not allege Plaintiffs "lack[] an adequate legal remedy."  *See id*. (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  Already, multiple courts have applied *Sonner* to dismiss UCL claims where the complaint failed to plead there was an inadequate remedy at law.  *See*, *e.g.*, *In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2020 WL 6047253, at *4 (N.D. Cal. Oct. 13, 2020) ("Plaintiffs have failed to allege that they lack an adequate remedy at law, as required to state a claim for equitable relief.  Plaintiffs' UCL claim is therefore dismissed in its entirety . . . ."); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing UCL claim where plaintiff had not "alleged facts that could support a finding that monetary relief is insufficient to compensate him and the putative class for the alleged harm."); *Zaback v. Kellogg Sales Co*., No. 3:20-cv-00268-BEN-MSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (dismissing UCL claim for failure to allege lack of adequate legal remedy).  Thus, Plaintiffs' UCL claim should be dismissed for this additional reason.

*Third*, Plaintiffs have not adequately pleaded either "unlawful," "unfair," or "fraudulent" business acts or practices prohibited by the UCL.  AC ¶ 184.  The "unlawful" prong "borrows violations of other laws and treats them as independently actionable," except where they prohibit a private right of action.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  For reasons explained in this motion, Plaintiffs' other claims all should be dismissed and therefore cannot be "borrowed" to support their UCL claim.  *See Petrovich v. Ocwen Loan Servicing, LLC*, No. 15-cv-00033-EMC, 2016 WL 555959, at *8 (N.D. Cal. Feb. 12, 2016) (dismissing UCL "unlawful" claim when all predicate legal claims had been dismissed), *aff'd*, 716 F. App'x 614, 618 (9th Cir. 2017).  Similarly, Plaintiffs state no claim of unfairness under the UCL.  Although California courts have split

on the appropriate standard for non-competitor claims under this prong, they generally require a plaintiff

to allege that either the "gravity of harm to the victim" outweighs "the utility of the defendant's

conduct" or that the defendant's conduct offends a public policy "tethered to specific constitutional,

statutory or regulatory provisions." *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 991 (N.D.

Cal. 2018). Plaintiffs fail to state a claim under either framework, because the alleged use of aggregate,

anonymized transaction data is expressly permissible under both federal and state privacy laws. *See*

Section IV.A.1. Actions permitted by law cannot support a claim of unfair conduct under the UCL. *See*

*Shvarts v. Budget Group*, 81 Cal. App. 4th 1153, 533 (2000) (plaintiff could not state UCL claim under

unfair prong when rental companies "refueling charge" was a lawful charge). Finally, as explained in

Section IV.E., the Amended Complaint fails to satisfy the heightened pleading standard of Federal Rule

9(b) for stating a claim of "fraudulent" conduct under the UCL. *See, e.g.*, *Kearns*, 567 F.3d at 1126

(affirming dismissal of "fraudulent" conduct UCL claim for failing to meet Rule 9(b) standard).

### F.      Plaintiffs Fail to State A Deceit Claim Under California Civil Code § 1709 (Fourth Claim).

Plaintiffs' claim under California Civil Code § 1709 should be dismissed because they have not

pleaded deceit with the particularity required by Rule 9(b), and they have not alleged facts sufficient to

support such a claim.

*First*, a plaintiff alleging deceit under section 1709 must plead with the particularity required by

Rule 9(b). *See Dodaro v. Standard Pac. Corp.*, No. EDCV 09-01666-VAP (DTBx), 2012 WL

12948706, at *11 n.8 (C.D. Cal. Mar. 26, 2012) (Section 1709 is "unquestionably a species of fraud to

which Rule 9(b) applies.") (citing *Nuñag-Tanedo v. E. Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d

1134, 1141-43 (C.D. Cal. 2011) (applying Rule 9(b) to Section 1709)). Thus, Plaintiffs "must state with

particularity the circumstances constituting fraud," that is, "'the who, what, when, where, and how' of

the misconduct charged." *Kearns*, 567 F.3d at 1124. Plaintiffs have not done that here. They never

allege *when* or *how* they linked their PayPal account with their bank accounts. Plaintiffs provide only

screen grabs of the process involved with linking a PayPal and *Wells Fargo* account. Yet Plaintiff

Hodson is the only plaintiff who alleges linking a Wells Fargo account to her PayPal account. AC ¶ 35.

*Second*, Plaintiffs have not adequately pleaded the required elements of a deceit claim.  To state a claim under section 1709, a plaintiff must plead that: (1) the defendant concealed or suppressed a material fact, (2) the defendant had a duty to disclose that fact to the plaintiff, (3) the defendant intentionally concealed or suppressed that fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as she did if she had known of the concealed or suppressed fact, and (5) the defendant's concealment or suppression caused the plaintiff to sustain damages.  *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 199 Cal. Rptr. 3d 901, 920 (2016).

Plaintiffs' conclusory allegations fail to satisfy these elements.  For example, the Amended Complaint does not plead *facts* demonstrating (i) that Plaintiffs reasonably relied on any purported omission; or (ii) that they have suffered damages.  Indeed, although Plaintiffs state they "*would* have acted differently" had they known of Yodlee's alleged practices, no Plaintiff alleges they have de-linked their PayPal accounts since their "discovery."  *See* AC ¶¶ 174-182 (emphasis added).  Finally, Plaintiffs have not pleaded cognizable damages to support such a claim.  *See Ha v. Bank of Am., N.A.*, No. 5:14-CV-00120-PSG, 2014 WL 6904567, at *2 (N.D. Cal. Dec. 8, 2014) (dismissing fraud claim where plaintiff's alleged damages resulting from the fraud were "speculative" and not "tangible").

These multiple omissions are fatal, and Plaintiffs' deceit claim should be dismissed.

### G.     Plaintiffs Fail to State an Unjust Enrichment Claim (Third Claim).

As this Court has recognized, a plaintiff may bring "an unjust enrichment cause action through quasi-contract."  *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-cv-02191-SK, 2018 WL 10689420, at *10 (N.D. Cal. July 9, 2018).  To state a claim, the plaintiff "must allege that a defendant unjustly has been conferred a benefit 'through mistake, fraud, coercion, or request."  *Id.* (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)).  Because Plaintiffs' unjust enrichment claim sounds in fraud, they also must plead with the particularity required by Rule 9(b).  *See Bittel Tech., Inc. v. Bittel USA, Inc.*, No. C 10-00719, 2010 WL 3221864, at *5 (N.D. Cal. Aug. 13, 2010) ("Bittel USA has not alleged that Bittel Technology was unjustly enriched as a result of mistake or coercion, so the only basis for its unjust enrichment claim is fraud, and . . . it is thus subject to Rule 9(b)'s particularity requirement").  Here, Plaintiffs do not allege that they reviewed a single statement from *Yodlee*, let alone a mislabeled one.  *See Brodsky*, 2019 WL 4141936, at *10 (dismissing

unjust enrichment claim where Apple had not "mislabeled" anything to gain the plaintiffs' information). Accordingly, this Court should dismiss the unjust enrichment claim.

Plaintiffs' claim additionally fails under the Ninth Circuit's reasoning in *Sonner*. "Unjust enrichment is an equitable rather than a legal claim . . . ." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003); *see also Astiana,* 783 F.3d at 762 (unjust enrichment is "a quasi-contract claim seeking restitution"). As the Ninth Circuit made clear in *Sonner*, Plaintiffs cannot advance an equitable claim in federal court unless they lack an adequate remedy at law. *See Sonner,* 971 F.3d at 844 ("Under these principles, Sonner must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL or CLRA."). Because the Amended Complaint seeks legal remedies for Plaintiffs' alleged injuries, the unjust enrichment claim should be dismissed under *Sonner*.

### H.     Plaintiffs' Declaratory Judgment Act Claim Should Be Dismissed (Sixth Claim).

The Declaratory Judgment Act grants a court discretion to "declare the rights and other legal relations of any interested party seeking such declaration" as long as the declaration is sought "in a case of actual controversy within the Court's jurisdiction." 28 U.S.C. § 2201(a). "Courts may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties." *Sun Grp.,* 2018 WL 10689420, at *10 (dismissing declaratory judgment claim where the same issues would be adjudicated in breach of contract claim). Indeed, such a claim "should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. State of Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

Here, Plaintiffs' requested declaratory relief—*i.e.*, to enjoin Defendants from "engaging in the unlawful conduct alleged in this complaint" (AC ¶ 197)—would be "fully and adequately addressed" by adjudication of the other claims in the Amended Complaint, and for that reason the declaratory judgment claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' action as to Yodlee with prejudice.  *See A.C.L. Computers & Software, Inc. v. United States,* No. 16-CV-01485-SK , 2017 WL 6060267, at *5 (N.D. Cal. Mar. 13, 2017) (dismissing action with prejudice where amendment would be futile), *aff'd,* 727 F. App'x 376 (9th Cir. 2018).

DATED:  November 4, 2020                         COVINGTON & BURLING LLP

By:  */s/ Simon J. Frankel*

SIMON J. FRANKEL (SBN 171552)
PATRICK R. CAREY (SBN 308623)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: pcarey@cov.com

ERIC C. BOSSET (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet Inc.*