SIMON J. FRANKEL (SBN 171552)
JENNA L. ZHANG (SBN 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: jzhang@cov.com

ERIC C. BOSSET (*pro hac vice*)
DIANA F. LEE (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com
Email: dlee@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WESCH, DARIUS CLARK, JOHN H. COTTRELL, WILLIAM B. COTTRELL, RYAN HAMRE, GREG HERTIK, DAISY HODSON, DAVID LUMB, KYLA ROLLIER and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>YODLEE, INC., a Delaware corp., and ENVESTNET, INC., a Delaware corp.<br><br>     Defendants. | Civil Case No.: 3:20-cv-05991-SK<br><br>**DEFENDANT YODLEE, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Second Am. Complaint Filed: Mar. 15, 2021<br><br>Judge: Hon. Sallie Kim<br>Hearing: July 26, 2021<br>Time: 9:30 a.m. |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ..................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 2

II.  BACKGROUND AND PROCEDURAL HISTORY ........................................ 2

    A.  Allegations of the Second Amended Complaint ..................................... 2

    B.  Prior Motion to Dismiss by Yodlee and This Court's Order .................. 4

III.  LEGAL STANDARD ........................................................................... 4

IV.  ARGUMENT .................................................................................... 4

    A.  Plaintiffs Still Fail to State a UCL Claim (Fifth Claim). .......................... 4

    B.  Plaintiffs Still Fail to State a Claim Under the Stored Communications Act (Second Claim). ............................................................ 7

        1.  Plaintiffs' Data Are Not in "Electronic Storage" at Yodlee. ................... 7

        2.  Yodlee Is Not an "Electronic Communication Service." ........................... 9

    C.  Plaintiffs Still Fail to State Claims Under California's Comprehensive Data Access and Fraud Act (Sixth Claim) and the Federal Computer Fraud and Abuse Act (Eighth Claim). .................................................. 10

        1.  No Private Right of Action Exists for Plaintiffs' Claims. ....................... 10

        2.  Plaintiffs Fail to Allege that Yodlee Circumvented Technical or Code-Based Barriers. .................................................. 12

    D.  Plaintiffs Fail to State a Claim Under California's Anti-Phishing Statute (Seventh Claim). .................................................. 12

V.  CONCLUSION .............................................................................. 15

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*A.C.L. Computs. & Software, Inc. v. United States*,
5      No. 16-CV-01485-SK, 2017 WL 6060267 (N.D. Cal. Mar. 13, 2017) ...............................................15

6

*Adkins v. Facebook, Inc.*,
     No. C 18-05982 WHA, 2019 WL 3767455 (N.D. Cal. Aug. 9, 2019) ...................................................5
7

*Andrews v. Sirius XM Radio Inc.*,
8      932 F.3d 1253 (9th Cir. 2019) ...........................................................................................................11

9

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)..................................................................................................................4, 8, 12
10

*AtPac, Inc. v. Aptitude Sols., Inc.*,
11      730 F. Supp. 2d 1174 (E.D. Cal. 2010).............................................................................................11

12

*Bass v. Facebook, Inc.*,
13      394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...............................................................................................5

14

*Campbell v. Facebook, Inc.*,
15      77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................................................5

16

*Casillas v. Cypress Ins. Co.*,
     770 F. App'x 329 (9th Cir. 2019) ...................................................................................................9, 10
17

*Claridge v. RockYou, Inc.*,
18      785 F. Supp. 2d 855 (N.D. Cal. 2011) .................................................................................................5

19

*Cottle v. Plaid Inc.*,
20      No. 20-cv-03056-DMR, 2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ...................................*passim*

21

*Crispin v. Christian Audigier, Inc.*,
     717 F. Supp. 2d 965 (C.D. Cal. 2010) .................................................................................................9
22

*Crowley v. CyberSource Corp.*,
23      166 F. Supp. 2d 1263 (N.D. Cal. 2001) .........................................................................................9, 10

24

*In re Facebook, Inc. Internet Tracking Litig.*,
25      956 F.3d 589 (9th Cir. 2020) ...............................................................................................................8

26

*In re Facebook, Inc. Sec. Litig.*,
     477 F. Supp. 3d 980 (N.D. Cal. 2020) ...............................................................................................13
27

*Facebook, Inc. v. Wallace*,
28      No. C 09-798 JF (RS), 2009 WL 3617789 (N.D. Cal. Oct. 29, 2009) ...............................................13

*Ferdik v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992) ..........................................................................4

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..........................................................................4

*In re Google Android Consumer Priv. Litig.*,
    No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ..........................10

*Gundy v. Cal. Dep't of Corrs. & Rehab.*,
    No. 1:12-cv-01020-LJO-MJS, 2013 WL 522789 (E.D. Cal. Feb. 11, 2013) ..........................13

*Gustavson v. Wrigley Sales Co.*,
    No. 12-CV-01861-LHK, 2014 WL 60197 (N.D. Cal. Jan. 7, 2014) ..........................12, 13

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................................7

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..........................5

*KLA-Tencor Corp. v. Murphy*,
    717 F. Supp. 2d 895 (N.D. Cal. 2010) ..........................................................................7

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011) ..........................................................................5

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ..........................................................................4

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ..........................................................................11, 12

*O'Connor v. Uber Techs., Inc.*,
    58 F. Supp. 3d 989 (N.D. Cal. 2014) ..........................................................................12

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
    379 F. Supp. 3d 857 (N.D. Cal. 2019) ..........................................................................8

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..........................................................................11

*Quigley v. Yelp, Inc.*,
    No. 17-cv-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ..........................12

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ..........................................................................8

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
    315 F. Supp. 3d 1147 (C.D. Cal. 2018) ..........................................................................4

*In re Toys R Us, Inc. Priv. Litig.*,
　　No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........................................7

*Williams v. Facebook, Inc.*,
　　384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..............................................................12

**Statutes**

Stored Communications Act, 18 U.S.C. § 2702 ..............................................................7, 9

Computer Fraud and Abuse Act, 18 U.S.C. § 1030..............................................................10

California Comprehensive Data Access and Fraud Act, Cal. Penal Code § 502................................10, 12

California Anti-Phishing Act, Cal. Bus. & Prof. Code § 22948.2............................................13

18 U.S.C. § 2510..............................................................................................7, 9

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17204........................................4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1

Cal. Bill Anal., S.B. 355 Assem., July 13, 2005............................................................13

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 26, 2021, at 9:30 a.m., or as soon thereafter as available, in the courtroom of the Honorable Sallie Kim, located at 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, California 94102, Defendant Yodlee, Inc. ("Yodlee"), will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Second, Fifth, Sixth, Seventh, and Eighth claims of Plaintiffs' Second Amended Complaint (Dkt. No. 58) asserted against Yodlee.

Yodlee's Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and papers on file in this action, and any other matter that the Court may properly consider.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Second, Fifth, Sixth, Seventh, and Eighth claims of Plaintiffs' Second Amended Complaint state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Yodlee provides backend software to financial institutions and fintech companies, such as PayPal, for bank account verification and other purposes.  Yodlee's account verification software allows PayPal users, such as Plaintiffs, to instantly link their bank accounts to their PayPal accounts rather than wait multiple days for a trial deposit and verification, as was previously done before technology such as Yodlee's existed.  When Plaintiffs linked their accounts, PayPal expressly disclosed its "use [of] Yodlee to confirm your bank details and to check your balance and transaction as needed, which can help your PayPal payments go through."  Dkt. No. 58, Second Amended Complaint ("SAC") ¶ 66 (alterations omitted).  Plaintiffs were aware of and benefited from Yodlee's account verification software.  Yet Plaintiffs now bring their third complaint against Yodlee and its parent company, Envestnet, Inc. ("Envestnet"), alleging baseless privacy, hacking, fraud, and other claims under federal and state laws based on speculative and conclusory allegations.[1]

On February 16, 2021, the Court granted in part Yodlee's motion to dismiss Plaintiffs' First Amended Complaint ("FAC"), disposing of their Unfair Competition Law ("UCL"), Stored Communications Act ("SCA"), Computer Fraud and Abuse Act ("CFAA"), and California Comprehensive Data Access and Fraud Act ("CDAFA") claims, with leave to amend.  *See* Dkt. No. 54.  Plaintiffs' SAC includes those claims again, but cures none of the deficiencies identified by the Court in its Order.  As explained further below, this Court should again dismiss Plaintiffs' UCL, SCA, CFAA, and CDAFA claims, and also dismiss the Anti-Phishing Act claim, all with prejudice.

## II.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Allegations of the Second Amended Complaint

This subsection refers to the allegations in the SAC, which Yodlee is precluded from contesting on a motion to dismiss.  According to Plaintiffs, Yodlee is a financial technology (fintech) company whose products are used by over 150 financial companies, including banks and PayPal.  SAC ¶¶ 55, 57.  Yodlee's corporate customers use its application programming interface ("API") to provide various

---

[1] Envestnet has filed a separate motion to dismiss the SAC.

1   services, such as budgeting tools, savings trackers, account history, and account verification.  *Id*. ¶¶ 55,

2   65.  This lawsuit involves PayPal's use of Yodlee's software for account verification.

3       Plaintiffs allege that "PayPal uses Envestnet | Yodlee's account verification API to validate an

4   individual's bank account so that the individual can use that account with PayPal's services."  *Id*. ¶ 65.

5   This instant verification replaces the "old-fashioned way of authorizing" accounts, which could take

6   multiple days and cause delay.  *Id.* ¶¶ 74, 77.

7       Plaintiffs allege that they connected their PayPal accounts via Yodlee's API to their banking

8   accounts to "facilitate transfers among those accounts."  *Id*. ¶¶ 32–50.  The SAC reprints certain PayPal

9   screenshots that Plaintiffs and other users saw when linking their PayPal accounts to another bank

10  account.  *Id.* ¶ 65 (Figure 4).  "The first screen displayed in Figure 4 states that '[PayPal] use[s] Yodlee

11  to confirm your bank details and to check your balance and transactions as needed, which can help your

12  PayPal payments go through.'"  *Id*. ¶ 66.  The PayPal screen further informed users: "You can turn off

13  our use of Yodlee by removing permissions for this bank in your Profile."  *Id*. ¶ 65 (Figure 4).  "For

14  more information," Plaintiffs were directed to PayPal's Privacy Statement, which was hyperlinked in the

15  first screen.  *Id*. (Figure 4).

16      Plaintiffs now allege that Yodlee "surreptitiously" collected "highly sensitive financial data"

17  from their bank accounts for resale to third parties.  *Id*. ¶¶ 2, 4.  However, Plaintiffs do not allege that

18  money was stolen from their accounts, nor do they identify any monetary damage or loss resulting to

19  themselves.  Plaintiffs summarily allege, without more, that they lost unspecified "indemnification

20  rights" that "amounts to . . . economic damage and loss."  *Id.* ¶ 119.  Plaintiffs also allege that they have

21  been deprived of the hypothetical ability to be compensated for "consumer data," *id.* ¶ 122, even while

22  conceding that such a market for consumer financial data does not currently exist, *id.* ¶ 126.  Finally,

23  Plaintiffs allege that Yodlee's sale of anonymized, aggregated transactional data somehow "increases

24  the likelihood" that Plaintiffs' "accounts will be compromised" and that they may become victims of

25  "identity theft" and "fraud."  *Id*. ¶ 129.  However, Plaintiffs do not allege that, in fact, they have been the

26  victim of identity theft or fraud, or that their accounts have been compromised.

27

28

### B.   Prior Motion to Dismiss by Yodlee and This Court's Order

Yodlee filed a motion to dismiss the FAC on November 4, 2020.  Dkt. No. 32.  On February 16, 2021, the Court granted in part and denied in part Yodlee's motion to dismiss.  Dkt. No. 54 ("Order").  The Court dismissed Plaintiffs' UCL, SCA, CDAFA, and CFAA claims, with leave to amend, outlining specific deficiencies for Plaintiffs to address as to each claim.  *Id.* at 5, 7, 10.

Plaintiffs fail to address any of those deficiencies in the SAC, because they are unable to do so.

### III.   LEGAL STANDARD

A motion to dismiss "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not suffice.  *Id.*  Neither do conclusory allegations or allegations that "merely track[] the language of the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions."  *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  A defendant may move to dismiss claims that survived a previous motion to dismiss.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (referencing "the well-established doctrine that an amended pleading supersedes the original pleading").

### IV.   ARGUMENT

### A.   Plaintiffs Still Fail to State a UCL Claim (Fifth Claim).

The Court previously dismissed the UCL claim because Plaintiffs did not allege that they lost money or property, a necessary element of statutory standing under the UCL.  *See* Order at 9.  Plaintiffs' SAC fails to cure this fatal deficiency and instead advances the same theories that the Court previously considered and rejected.  *Id.* at 9–10; *compare* SAC ¶¶ 226–28, *with* FAC (Dkt. No. 30) ¶¶ 189–91.

UCL standing in a private action extends only to "a person who has suffered injury in fact and has *lost money or property* as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204 (emphasis added).  Thus, to demonstrate statutory standing, a plaintiff must "(1) establish . . . *economic*

*injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). For this reason, standing under the UCL is "substantially narrower than federal standing under [A]rticle III." *Id*. at 324. Plaintiffs have again not met this bar.

*First*, the SAC repeats Plaintiffs' prior allegation that they would not have used Yodlee's service had they known how Yodlee allegedly collects and sells data. SAC ¶ 226. But as the Court noted, Plaintiffs do not, and cannot, allege that they paid Yodlee to use its service. Order at 9–10. Therefore, Plaintiffs' allegation does not amount to a loss of money or property and cannot serve as the requisite injury for UCL standing. *Id.*; *see also Cottle v. Plaid Inc.*, No. 20-cv-03056-DMR, 2021 WL 1721177, at *14 (N.D. Cal. Apr. 30, 2021) (citing this Court's Order).

*Second*, the SAC again alleges that Plaintiffs have lost a property interest in their "sensitive personal data" and the ability to receive payment for this "valuable property." SAC ¶¶ 227–28. But numerous courts have held that "lost value of [a plaintiff's] personal information" is not economic harm for UCL standing purposes. *Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 WL 3767455, at *3 (N.D. Cal. Aug. 9, 2019) (citing *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (Mem.)); *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (concluding that courts "have consistently rejected" a broad interpretation of "money or property" that would include personal information); *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862–63 (N.D. Cal. 2011) (rejecting plaintiff's allegation that his personal information constitutes a form of money or property sufficient to state a UCL claim); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (same); *Cottle*, 2021 WL 1721177, at *14 (same).

The new allegation that Plaintiffs were deprived of "the ability to receive compensation for that data[] and the ability to withhold their data for sale" does not resuscitate their claim. SAC ¶ 228. "It is not enough to merely say the information was taken and therefore it has lost value." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). A plaintiff must adequately allege a "market for the personal information or the impairment of the ability to participate in that market." *Id*. Plaintiffs have not done so here. While the SAC discusses a web browser that seeks to compensate internet users for

their browsing history, Plaintiffs admit that "[i]n the context of consumer financial data, no such market presently exists." SAC ¶¶ 123–26.  Plaintiffs speculate that if companies like Yodlee did not exist, a marketplace might develop where one could receive compensation for consumer financial data; however, Plaintiffs admit that such a market is currently hypothetical.  *Id.* ¶ 127.  Plaintiffs blame Yodlee for "inhibiting the development of a market for Plaintiffs and Class members to sell access to their data," but this allegation does not amount to a *present* economic injury.  *Id.* ¶ 128.  Even if such a market did exist, Plaintiffs fail to explain how their ability to participate is limited by Yodlee.  In short, Plaintiffs' assertion of economic injury arising from an alleged loss of control over their personal data remains purely hypothetical.

*Third*, the SAC re-alleges that Plaintiffs have lost "indemnification rights and other rights and protections" due to the purported transmission of their data from the secure banking environment.  *Id.* ¶ 228.  Plaintiffs assert these indemnification rights were "vested rights" to which they were "entitled." *Id*.  However, as the Court previously noted, Plaintiffs still "have not alleged that anyone actually improperly transferred funds from their accounts," so "any monetary loss at this point is merely potential or hypothetical."  Order at 10.  Even if "vested," such rights would have value to Plaintiffs *only* if someone had improperly transferred funds from their bank accounts, and those banks had denied reimbursement.  *See Cottle*, 2021 WL 1721177, at *13 (dismissing UCL claim based on same theory where plaintiffs "[did] not allege that any unauthorized transfers or fraudulent charges have taken place, let alone that banks have refused to indemnify users").  Absent any such allegations, the alleged "loss" of "indemnification rights" remains speculative.

In sum, and once more, Plaintiffs have failed to allege "lost money or property" required to maintain any UCL claim, and the Fifth Claim should therefore be dismissed with prejudice.[2]

---

[2] Yodlee had made additional arguments for dismissal of the UCL claim in the FAC, which the Court did not address because of the threshold bar of statutory standing.  Since that standing defect is not cured in the SAC, Yodlee will reserve its other arguments.

1

2

**B.      Plaintiffs Still Fail to State a Claim Under the Stored Communications Act (Second Claim).**

3

This Court dismissed Plaintiffs' Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a),

4

claim on the grounds that Plaintiffs had failed to allege facts sufficient to satisfy the statutory definition

5

of "electronic storage," an element of any claim under Section 2702(a).  Order at 6–7.  Plaintiffs once

6

again fail to satisfy this requirement.  Additionally, Yodlee is not an "electronic communication

7

service," another requirement of Section 2702(a).  Because Plaintiffs' allegations do not support their

8

SCA claim, the Court should dismiss the Second Claim with prejudice.

9

**1.      Plaintiffs' Data Are Not in "Electronic Storage" at Yodlee.**

10

This Court dismissed the FAC because Plaintiffs had not alleged their data was divulged "while

11

in electronic storage" at Yodlee.  Order at 5–7.  The SAC fares no better.

12

Section 2702(a) generally prohibits entities that (i) provide "an electronic communication

13

service" to "the public" (ii) from "knowingly divulg[ing] the contents of a communication" (iii) "while

14

in electronic storage by that service," unless a statutory exemption or exception applies.  18 U.S.C.

15

§ 2702(a).  "Electronic storage," in turn, is narrowly defined as "(a) any temporary, intermediate

16

storage" that is "incidental to the electronic transmission thereof" or "(b) any storage . . . by an

17

electronic communication service for purposes of backup protection."  *Id*. § 2510(17).

18

Under Section 2702(a)(1)(a), a communication is in "temporary, intermediate storage" only if it

19

is "stored 'for a limited time' in the 'middle' of a transmission, i.e., when an electronic communication

20

service temporarily stores a communication while waiting to deliver it."  *In re Toys R Us, Inc. Priv.*

21

*Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *3 (N.D. Cal. Oct. 9, 2001); *see also In re iPhone*

22

*Application Litig.*, 844 F. Supp. 2d 1040, 1059 (N.D. Cal. 2012) (data stored on hard drive of an iPhone

23

for a period of up to one year is not in "temporary, intermediate storage").  Alternatively, to qualify

24

under Section 2702(a)(1)(b), the storage must be only "for purposes of backup protection."  18 U.S.C.

25

§ 2510(17).  "[T]he mere fact that a copy *could* serve as a backup does not mean that it is stored for that

26

purpose."  *KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 904 (N.D. Cal. 2010) (emphasis in

27

original) (quotation marks omitted).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In the SAC, Plaintiffs again "do not allege that the storage is incidental to the electronic transmission of that data or that Yodlee's storage is temporary."  Order at 7.  Nor does the SAC allege that Yodlee stores Plaintiffs' transaction data "for the purposes of providing backup protection for the communication between Plaintiffs and their financial institutions."  *Id.*  In fact, the SAC alleges the exact opposite: that Yodlee "refresh[es]" and retains Plaintiffs' data on an "ongoing basis" for resale to third parties.  SAC ¶¶ 67, 157.  Such an allegation is incompatible with Plaintiffs' claim that Yodlee stores their data for "backup protection."  Order at 7 (noting that Plaintiffs allege Yodlee "stores the information for its own misuse of the data").  "[A] plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim."  *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 866 (N.D. Cal. 2019) (quotation marks and alterations omitted) (quoting *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).  Plaintiffs have again plead themselves out of an SCA claim.

Plaintiffs' unsupported allegations that Yodlee provides consumer data to "developers," and purportedly retains a "copy" "for backup purposes *on behalf of developers*" fail to salvage this claim.  SAC ¶¶ 83–84 (emphasis added).  To start, those allegations are entirely conclusory, "devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678  (quotation marks omitted).  Such "naked assertions" will not suffice to state a claim.  *Id.*  In any event, data allegedly backed up for the benefit of third-party developers is not "backup protection" for either Plaintiffs or their financial institutions.  *See* Order at 7 (noting that storage be "for the purposes of providing backup protection for the communication *between Plaintiffs and their financial institutions*" (emphasis added)).

For similar reasons, Plaintiffs' assertion that Yodlee "also stores a copy of consumers' financial transaction data for its *own* backup purposes" misses the mark.  SAC ¶ 85 (emphasis added).  As the Ninth Circuit has repeatedly observed, both the "text and legislative history of the SCA" "demonstrate that its 1986 enactment was driven by congressional desire to protect third-party entities that stored information *on behalf of users*."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 609 (9th Cir. 2020) (emphasis added)*; see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) (explaining that a backup copy would "provide a second copy of the message in the event that *the user*

1   needs to download it again—if, for example, the message is accidentally erased from the user's own

2   computer" (emphasis added)).  Because the "electronic storage" under Section 2702(a)(1)(b) must be

3   "for the purposes of providing backup protection for the communication between Plaintiffs and their

4   financial institutions," Order at 7, Yodlee's "formal disaster recovery programs" for internal data

5   recovery, SAC ¶ 85, are not "electronic storage" within the meaning of the SCA.

### 2.   Yodlee Is Not an "Electronic Communication Service."

7          The Court previously held that Yodlee is an "electronic communication service," Order at 6, but

8   the SAC's factual allegations do not support this conclusion.  An electronic communication service

9   ("ECS") "provides to [its] users . . . the ability to send or receive wire or electronic communications."

10   18 U.S.C. § 2510(15).  "When Congress enacted the SCA, it stated that one of the Act's primary

11   purposes was to protect email communication, noting that a primary example of an ECS was an email

12   service in which 'messages are typed into a computer terminal, and then transmitted . . . to a recipient

13   computer operated by [email].'"  *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 330–31 (9th Cir. 2019)

14   (Mem.) (citing S. Rep. 99-541, at 8, 14 (1986)).  Consistent with that statutory purpose, courts have held

15   that the definition of an ECS applies to "websites and services that permit users to communicate *directly*

16   *with one another*."  *Id.* at 330 (emphasis added); *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d

17   965, 979–80 (C.D. Cal. 2010) (collecting cases).  However, courts have distinguished other services that

18   "merely allow[] users to contact or interact with the company electronically," holding that such services

19   are *not* an ECS.  *In re United States for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201,

20   210 (D.D.C. 2018) (citing cases); *accord Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270

21   (N.D. Cal. 2001) (holding that Amazon's website is not an ECS).

22          Yodlee's account verification API is not an ECS.  By Plaintiffs' own account, Yodlee's software

23   simply "validate[s] an individual's bank account so that the individual can use that account with

24   PayPal's services."  SAC ¶ 65.  Specifically, Yodlee "confirm[s]" bank details and "check[s] [the user's]

25   bank account] balance and transaction as needed . . . ."  *Id.* ¶¶ 65 (Figure 4), 66.  Plaintiffs do not (and

26   cannot) allege that Yodlee enables users to communicate with *each other,* which is the hallmark of an

27

28

1  ECS.  And, even if it were relevant, Plaintiffs have the ability to communicate with PayPal because they

2  downloaded the PayPal app, not because of Yodlee.  They would have the same ability without Yodlee.

3  The *Casillas* decision, cited in this Court's Order, supports dismissal on this ground.  The Ninth

4  Circuit panel affirmed the lower court's decision that the defendant in that case was *not* an ECS, because

5  the service "does not permit users to communicate directly with each other."  770 F. App'x at 331.

6  Yodlee's account verification software may "validate" for PayPal its user's bank information, but

7  Yodlee is *not* a user-to-user communications service, no more than is Amazon (*see Crowley*).  Under

8  *Casillas*, therefore, this Court should hold that Yodlee falls outside the definition of an ECS.

9  In sum, Plaintiffs cannot plead the SCA's requirements of (1) "electronic storage," or (2) an

10  "electronic communications service."  For either reason, the Second Claim should be dismissed with

11  prejudice.

12  ### C.  Plaintiffs Still Fail to State Claims Under California's Comprehensive Data Access and Fraud Act (Sixth Claim) and the Federal Computer Fraud and Abuse Act (Eighth Claim).

13

14

15  In dismissing Plaintiffs' CFAA and CDAFA claims in the FAC, this Court held that Plaintiffs

16  had failed to allege "damage or loss" sufficient to establish a private right of action for these claims.

17  Order at 11.  Because Plaintiffs have not remedied those deficiencies in the SAC, these "anti-hacking"

18  claims should again be dismissed, and this time with prejudice.  The CDAFA claim should be dismissed

19  for the additional reason that Plaintiffs have failed again to plead a required element of that claim.

20  ### 1.  No Private Right of Action Exists for Plaintiffs' Claims.

21  Both the "CFAA and CDAFA [c]laims require some showing of damage or loss, beyond the

22  mere invasion of statutory rights" in order for a plaintiff to bring such a claim.  *In re Google Android*

23  *Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *6 (N.D. Cal. Mar. 26, 2013); *see*

24  Order at 10 (citing *Google*).  To bring a civil claim under the CFAA, a plaintiff must have suffered an

25  actual "loss" totaling at least $5,000.  *See* 18 U.S.C. § 1030(g).  While the CDAFA does not set a

26  threshold, a plaintiff still must have "suffer[ed] damage or loss" to bring a claim.  Cal. Penal Code

27  § 502(e)(1).

28

1   In the SAC, Plaintiffs have again failed to allege *any* cognizable "damage or loss," let alone

2   damage amounting to $5,000.  To satisfy this requirement, Plaintiffs must demonstrate an actual "injury

3   emanating from" the violations—that is, some "tangible" harm.  *Perkins v. LinkedIn Corp.*, 53 F. Supp.

4   3d 1190, 1219 (N.D. Cal. 2014); *see also AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1185

5   (E.D. Cal. 2010) ("The definition of 'loss' itself makes clear Congress's intent to restrict civil actions

6   under [the economic damages provision of the CFAA] to the traditional computer 'hacker' scenario—

7   where the hacker deletes information, infects computers, or crashes networks.").  Plaintiffs fail to

8   identify any actual expense or other palpable loss they have allegedly incurred because of Yodlee.

9   Far from identifying such "tangible" harms, Plaintiffs merely rehash previous allegations about

10   the loss of "indemnification rights" or the hypothetical ability to receive "compensation" for their data.

11   SAC ¶ 241.  This Court previously rejected those same contentions.  Order at 10–11.  No other court in

12   this Circuit has held such allegations state a cognizable "damage or loss" under the CFAA or CDAFA.

13   *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (rejecting plaintiff's theory

14   that the CFAA's definition of "loss" encompasses the "lost [] value of that information and the

15   opportunity to sell it"); *Cottle*, 2021 WL 1721177, at *15, *17 (holding that similar allegations were

16   insufficient to support CFAA and CDAFA claims).

17   Plaintiffs' allegations, moreover, are speculative for the reasons explained in Section IV.A.  For

18   example, Plaintiffs claim that there is a "possibility" of a market in which they could hypothetically be

19   compensated for their data, but admit that "[i]n the context of consumer financial data, no such market

20   presently exists."  SAC ¶¶ 122, 126.  Moreover, "Plaintiffs have not alleged that anyone actually

21   improperly transferred funds from their accounts," Order at 10, much less that they were denied

22   indemnification by their banks because of Yodlee's alleged conduct.  Nor do Plaintiffs allege they have

23   been the victims of identity theft or fraud attributable to Yodlee.

24   As this Court previously concluded, "any monetary loss at this point is merely potential or

25   hypothetical."  *Id.* at 10.  Such hypothetical assertions of "damage or loss" are insufficient under both

26   statutes.  *E.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949–51 (N.D. Cal. 2014)

27   (generalized and "entirely speculative" assertions of loss, "devoid of any specific details from which a

28

1   factfinder could calculate an amount of loss," were insufficient to state claims under the CFAA or

2   CDAFA); *Cottle*, 2021 WL 1721177, at *16 (allegation that defendant's actions resulted in "loss due to

3   the corresponding increased risk of identity theft and fraud" is "entirely speculative").

4       Accordingly, the Court should dismiss with prejudice the CFAA and CDAFA claims for the

5   same reasons as the UCL claim—Plaintiffs did not incur "damage or loss" to sue under those statutes.

6       **2.      Plaintiffs Fail to Allege that Yodlee Circumvented Technical or Code-Based**

7       **Barriers.**

8       Assuming only for sake of argument that Plaintiffs could bring any action under the CDAFA,

9   they would fail to state a claim.  The CDAFA prohibits knowingly and "without permission" accessing

10  or disrupting a computer, computer system, or computer network.  Cal. Penal Code § 502(c).  A party

11  acts "without permission" under the CDAFA when it "circumvents technical or code-based barriers in

12  place to restrict or bar a user's access."  *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1053 (N.D.

13  Cal. 2018); *accord NovelPoster*, 140 F. Supp. 3d at 950 (same).

14      Plaintiffs merely parrot this language of the statute to allege such conduct in a conclusory

15  fashion.  *See* SAC ¶ 238 (alleging, without more, that "Defendants accessed the data, computers,

16  computer systems and computer networks above in ways that circumvented technical or code-based

17  barriers").  Such threadbare allegations are insufficient as a matter of law.  *Iqbal*, 556 U.S. at 678.  For

18  this additional reason, therefore, Plaintiffs' CDAFA claim should be dismissed.  *Quigley v. Yelp, Inc.*,

19  No. 17-cv-03771-RS, 2018 WL 7204066, at *5 (N.D. Cal. Jan. 22, 2018) (dismissing CDAFA claim

20  where, apart from similar conclusory allegation, plaintiff "provided no facts giving rise to an inference

21  that any defendant circumvent[ed] technical or code-based barriers" (quotation marks omitted)).

22      **D.      Plaintiffs Fail to State a Claim Under California's Anti-Phishing Statute (Seventh**

23      **Claim).**

24      Because Yodlee and its role were expressly identified in the account linking process, SAC ¶ 65

25  (Figure 4), ¶ 66, the Court should dismiss the Seventh Claim.  *See, e.g.*, *O'Connor v. Uber Techs., Inc.*,

26  58 F. Supp. 3d 989, 995–96 (N.D. Cal. 2014) (upon the filing of a new amended complaint, "courts have

27  permitted defendants to move to challenge the *entire* amended complaint—including those causes of

28

action the court had previously found sufficient" (emphasis in original)); *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *6 n.4 (N.D. Cal. Jan. 7, 2014) ("The Ninth Circuit has long held that an amended complaint supersedes the original complaint and renders it without legal effect, and that a defendant is entitled to challenge an amended complaint in its entirety." (citations and quotation marks omitted)); *Gundy v. Cal. Dep't of Corrs. & Rehab.*, No. 1:12-cv-01020-LJO-MJS, 2013 WL 522789, at *6 (E.D. Cal. Feb. 11, 2013) ("The law is clear in this Circuit that an amended complaint supersedes the original, the latter being treated thereafter as nonexistent.  Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to make arguments previously made and to raise new arguments that were previously available." (citation and quotation marks omitted)).

The California Anti-Phishing Act creates potential liability for a defendant's use of the internet to "solicit, request, or take any action to induce another person to provide identifying information by representing itself to be a business without the authority or approval of the business."  Order at 13 (quoting Cal. Bus. & Prof. Code § 22948.2).  "Phishers use fraudulent emails or Web sites to trick consumers into providing personal information, such as bank account numbers and social security numbers, to what is believed to be a legitimate company."  Cal. Bill Anal., S.B. 355 Assem., July 13, 2005; *see also Facebook, Inc. v. Wallace*, No. C 09-798 JF (RS), 2009 WL 3617789, at *1–3 (N.D. Cal. Oct. 29, 2009) ("phishing and spamming scheme" involved emails that "appear[ed] to be legitimate messages," but were "designed to trick users into divulging their Facebook login information").  Phishing thus involves "posing as a legitimate institution to lure individuals into providing sensitive data."  *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1024 n.11 (N.D. Cal. 2020) (quotation marks omitted).  Here, there is no dispute that PayPal disclosed Yodlee's role to PayPal users wishing to link their accounts with PayPal.  There was no phishing

The SAC's allegations fail to plausibly support that Yodlee (any more than PayPal) "posed" as banks to verify user accounts.  The SAC shows the exact opposite, reprinting screenshots provided to users in which PayPal explicitly informed its users of Yodlee's account verification role.  *See* SAC ¶ 65 (Figure 4) (reproduced below).

1

2

**Figure 4**

3

4

5

6

7

8

9

10

11

12

13

14

15

  

16

17    Plaintiffs cannot plausibly allege that Yodlee pretended to be their banks in PayPal's screenshots.  The

18    first screen distinguishes *four times* between "Yodlee" and "your bank" or "this bank."

19    Moreover, companies like Yodlee are clearly not the target of the Anti-Phishing Act, because

20    Yodlee provides a valuable service to users, which Plaintiffs acknowledge: "Plaintiffs connected their

21    bank accounts to PayPal using an Envestnet | Yodlee-powered portal in order to facilitate transfers

22    among those accounts."  SAC ¶ 12.  Finally, Plaintiffs acknowledge that Yodlee has permission from

23    financial institutions to integrate Yodlee's software to facilitate the account linking process.  *Id.* ¶ 56

24    ("[T]he financial institutions that use Defendants' software pay a licensing fee to integrate Envestnet |

25    Yodlee's API into their platform.").

26    For all these reasons, Plaintiffs' claim under the California Anti-Phishing Act statute should be

27    dismissed with prejudice.

28

## V.    CONCLUSION

For the foregoing reasons, this Court should dismiss the Second, Fifth, Sixth, Seventh, and Eighth claims against Yodlee with prejudice. *See A.C.L. Computs. & Software, Inc. v. United States*, No. 16-CV-01485-SK, 2017 WL 6060267, at *5–6 (N.D. Cal. Mar. 13, 2017) (dismissing action with prejudice where amendment would be futile), *aff'd*, 727 F. App'x 376 (9th Cir. 2018) (Mem.); *Cottle*, 2021 WL 1721177, at *22 (holding that plaintiffs' "claims under the SCA, UCL, CFAA and CDAFA are dismissed with prejudice").

DATED:  May 5, 2021                          COVINGTON & BURLING LLP

By:  */s/ Simon J. Frankel*
SIMON J. FRANKEL (SBN 171552)
JENNA L. ZHANG (SBN 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: jzhang@cov.com

ERIC C. BOSSET (*pro hac vice*)
DIANA F. LEE (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com
Email: dlee@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet Inc.*