SIMON J. FRANKEL (SBN 171552)
JENNA L. ZHANG (SBN 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: jzhang@cov.com

ERIC C. BOSSET (*pro hac vice*)
DIANA F. LEE (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com
Email: dlee@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet, Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH WESCH, DARIUS CLARK, JOHN H. COTTRELL, WILLIAM B. COTTRELL, RYAN HAMRE, GREG HERTIK, DAISY HODSON, DAVID LUMB, KYLA ROLLIER and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>YODLEE, INC., a Delaware corp., and ENVESTNET, INC., a Delaware corp.<br><br>      Defendants. | Civil Case No.: 3:20-cv-05991-SK<br><br>**DEFENDANT ENVESTNET, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(2), OR, ALTERNATIVELY, PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)**<br><br>Second Am. Complaint Filed: Mar. 15, 2021<br><br>Judge:  Hon. Sallie Kim<br>Hearing:  July 26, 2021<br>Time:  9:30 a.m. |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS .................................................1

STATEMENT OF ISSUES TO BE DECIDED ......................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................2

I.      INTRODUCTION .........................................................................3

        A.      Procedural History .........................................................3

        B.      The SAC's Allegations As to Envestnet ..............................4

II.     ARGUMENT ...............................................................................6

        A.      Envestnet Is Not Subject to Personal Jurisdiction in California. ..........6

                1.      Envestnet Is Not Yodlee's Alter Ego. ......................7

                2.      Yodlee Is Not Envestnet's Agent. ...........................12

                3.      Envestnet Has No Case-Relevant Contacts with California. .........14

        B.      Plaintiffs Cannot Establish Subject Matter Jurisdiction over Envestnet. ..........19

        C.      Even if Envestnet Were Subject to Jurisdiction, the SAC Fails to State Any Claim Against Envestnet. ...............................................20

                1.      Plaintiffs Do Not Allege Any Actionable Conduct by Envestnet. ............20

                2.      The SAC Also Fails for the Reasons Provided in Yodlee's Separate Motion to Dismiss. ...............................................21

III.    CONCLUSION .............................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aldrich v. NCAA*,
484 F. Supp. 3d 779 (N.D. Cal. 2020) ...................................................................13

*Alexander v. Circus Circus Enters., Inc.*,
972 F.2d 261 (9th Cir. 1992) ..........................................................................6, 13

*Andersen v. Griswold Int'l, LLC*,
No. 14-cv-02560-EDL, 2014 WL 12694138 (N.D. Cal. 2014)...................................6, 13

*Apple Inc. v. Allan & Assocs. Ltd.*,
445 F. Supp. 3d 42 (N.D. Cal. 2020) ....................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................20

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ...........................................................................14

*Baker v. LivaNova PLC*,
210 F. Supp. 3d 642 (M.D. Pa. 2016) ...................................................................11

*Bastidas v. Good Samaritan Hosp.*,
No. C 13-04388 SI, 2014 WL 3362214 (N.D. Cal. 2014).............................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................20

*Bishop Paiute Tribe v. Inyo Cty.*,
863 F.3d 1144 (9th Cir. 2017) ...........................................................................19

*Boyer v. Becerra*,
No. 17-cv-06063-YGR, 2018 WL 2041995 (N.D. Cal. 2018) ........................................20

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017)....................................................................................17

*Calder v. Jones*,
465 U.S. 783 (1984)..........................................................................14, 15, 16, 18

*California v. U.S. Dep't of Educ.*,
No. 17-cv-07106-SK, 2018 WL 10345668 (N.D. Cal. 2018)..........................................19

*California v. U.S. Dep't of Educ.*,
No. 17-cv-07106-SK, 2019 WL 7669767 (N.D. Cal. 2019)................................19

*Chavez v. Stellar Mgmt. Grp. VII, LLC*,
No. 5:14-cv-03158-EJD, 2019 WL 2716292 (N.D. Cal. 2019)............................17

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ...............................................................10

*Court of Master Sommeliers, Am. v. Pilkey*,
No. 19-cv-03620-SK, 2019 WL 9443609 (N.D. Cal. 2019)...........................7, 14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).........................................................................6, 7, 12, 13

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) (per curiam)...................................................6, 12

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*,
735 F. Supp. 2d 277 (W.D. Pa. 2010) ................................................................11

*Facebook, Inc. v. Sluchevsky*,
No. 19-cv-01277-JSC, 2020 WL 5823277 (N.D. Cal. 2020) .............................15

*Fagbohungbe v. Caltrans*,
No. 13-cv-03801-WHO, 2014 WL 644008 (N.D. Cal. 2014) ............................20

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021)......................................................................................17

*Gerritsen v. Warner Bros. Ent. Inc.*,
116 F. Supp. 3d 1104 (C.D. Cal. 2015) ..........................................................9, 10

*Haley Paint Co. v. E.I. Dupont De Nemours & Co.*,
775 F. Supp. 2d 790 (D. Md. 2011) ...................................................................11

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ...................................................................2, 10, 16

*Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) .............................................................................14

*Incipio, LLC v. Argento Sc by Sicura Inc.*,
No. SACV 17-01974 AG (KESx), 2018 WL 4945002 (C.D. Cal. 2018)..............7, 8

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. 2011).......................4, 20

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
   394 F.3d 1143 (9th Cir. 2004) ..............................................................................7, 9

*Ketayi v. Health Enrollment Grp.*,
   No. 20-cv-1198-GPC-KSC, --- F. Supp. 3d ---, 2021 WL 347687 (S.D. Cal. 2021) ..........................13

*King v. Am. Fam. Mut. Ins. Co.*,
   632 F.3d 570 (9th Cir. 2011) ..............................................................................16

*Lodestar Anstalt v. Bacardi & Co.*,
   No. 2:16-cv-06411-CAS(FFMx), 2017 WL 3534984 (C.D. Cal. 2017) ......................13

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................2, 19

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*,
   No. 2:16-CV-02859-CAS(PLAx), 2016 WL 6495373 (C.D. Cal. 2016) .....................8

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ...............................................................................6

*McGibney v. Retzlaff*,
   No. 14-cv-01059-BLF, 2015 WL 3807671 (N.D. Cal. 2015) ..................................15

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
   No. 19cv1865-GPC(LL), 2020 WL 5064253 (S.D. Cal. 2020) ...............................15

*Mesler v. Bragg Mgmt. Co.*,
   39 Cal. 3d 290 (1985) .........................................................................................7

*Mills v. Ethicon, Inc.*,
   406 F. Supp. 3d 363 (D.N.J. 2019) .......................................................................11

*Moody v. Charming Shoppes of Del., Inc.*,
   No. C 07-06073 MHP, 2008 WL 2128955 (N.D. Cal. 2008)....................................11

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ...............................................................................20

*NetApp, Inc. v. Nimble Storage, Inc.*,
   No. 5:13-CV-05058-LHK (HRL), 2015 WL 400251 (N.D. Cal. 2015).....................8, 11

*Parnell Pharms., Inc. v. Parnell, Inc.*,
   No. 5:14-cv-03158-EJD, 2015 WL 5728396 (N.D. Cal. 2015).................................16

*Payoda, Inc. v. Photon Infotech, Inc.*,
   No. 14-cv-04103-BLF, 2015 WL 4593911 (N.D. Cal. 2015) ..................................10

*Payrovi v. LG Chem Am., Inc.*,
   491 F. Supp. 3d 597 (N.D. Cal. 2020) ..........................................................................14

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015) .....................................................................................14

*Pritikin v. Dep't of Energy*,
   254 F.3d 791 (9th Cir. 2001) .......................................................................................19

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .................................................................................8, 10

*Rep. of Kazakhstan v. Ketebaev*,
   No. 17-CV-00246-LHK, 2018 WL 2763308 (N.D. Cal. 2018)....................................15

*Ruhrgas AG v. Marathon Oil Co.*,
   526 U.S. 574 (1999)........................................................................................................6

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .....................................................................................19

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) .....................................................................................19

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................................................15, 16

*Smith v. Facebook*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017) .........................................................................15

*Sonora Diamond Corp. v. Sup. Ct.*,
   83 Cal. App. 4th 523 (2000) ...............................................................................7, 10, 12

*Sugasawara v. Ford Motor Co.*,
   No. 18-CV-06159-SHK, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019)......................20

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) .........................................................................................18

*Tomaselli v. Transamerica Ins. Co.*,
   25 Cal. App. 4th 1269 (1994) .............................................................................5, 8, 12

*Tuttle v. Sky Bell Asset Mgmt.*,
   No. C 10–03588 WHA, 2011 WL 4713233 (N.D. Cal. 2011) .......................................11

*United States v. Bestfoods*,
   524 U.S. 51 (1998)......................................................................................................2, 9

*Walden v. Fiore*,
      571 U.S. 277 (2014) ......................................................................................16, 18

*White v. Lee*,
      227 F.3d 1214 (9th Cir. 2000) ...............................................................................19

*Williams v. Progressive Cty. Mut. Ins. Co.*,
      No. 17-cv-2282-AJB-BGS, 2019 WL 1434241 (S.D. Cal. 2019) .................................11, 20

*Williams v. Yamaha Motor Co.*,
      851 F.3d 1015 (9th Cir. 2017) ................................................................12, 13, 16

*Woolery v. Smith*,
      No. 17-cv-06786-SK, 2018 WL 3328496 (N.D. Cal. 2018) ........................................21

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
      433 F.3d 1199 (9th Cir. 2006) .................................................................................14

**Other Authorities**

Cal. Code Civ. Proc. § 410.10 ............................................................................................14

Federal Rule of Civil Procedure 8 .................................................................................3, 20

Federal Rule of Civil Procedure 12 ...........................................................................*Passim*

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE** that on July 26, 2021, at 9:30 a.m., or as soon thereafter as available,

4

in the courtroom of the Honorable Sallie Kim, located at 450 Golden Gate Avenue, Courtroom C, 15th

5

Floor, San Francisco, California 94102, Defendant Envestnet, Inc. ("Envestnet"), will and hereby does

6

move pursuant to Federal Rule of Civil Procedure 12(b)(2), or, alternatively, 12(b)(1) and 12(b)(6), for

7

an order dismissing with prejudice Plaintiffs' Second Amended Complaint (Dkt. No. 58) against

8

Envestnet.

9

Envestnet's Motion is based on this Notice of Motion and Motion, the Memorandum of Points

10

and Authorities and exhibits thereto, the pleadings and papers on file in this action, and any other matter

11

that the Court may properly consider.

12

## STATEMENT OF ISSUES TO BE DECIDED

13

1.      Whether Plaintiffs' Second Amended Complaint should be dismissed as to Envestnet

14

under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

15

2.      Whether Plaintiffs' Second Amended Complaint should be dismissed as to Envestnet

16

under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

17

3.      Whether, in the event the Court determines it has personal jurisdiction over Envestnet and

18

subject matter jurisdiction over Plaintiffs' claims against Envestnet, the Second Amended Complaint

19

fails to state a claim upon which relief can be granted as to Envestnet under Federal Rule of Civil

20

Procedure 12(b)(6).

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

The Second Amended Complaint ("SAC") confirms that the deficiencies that led this Court to state that jurisdiction over Envestnet had not been established (Dkt. No. 54 at 15–16) are incurable. Instead of removing allegations that relied on impermissible group pleading, the SAC reproduces them exponentially by, *inter alia*, replacing more than 100 instances of "Yodlee" with "Envestnet | Yodlee." Such cosmetic editing fails to satisfy the applicable legal standard for treating Envestnet and Yodlee—a separately incorporated, independently operated, and well-capitalized subsidiary—as one and the same.

The SAC should be dismissed because this Court lacks both personal and subject matter jurisdiction over Envestnet.  As a threshold matter, admissible evidence establishes that Envestnet does not conduct any business in California, or have any appreciable contacts in the State.  Envestnet's only connection to California is its ownership of Yodlee and another separately incorporated subsidiary located there.  However, a parent-subsidiary relationship is insufficient to "attribute the contacts of the subsidiary to the parent for jurisdictional purposes." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Plaintiffs provide no other basis to exercise jurisdiction over Envestnet.  The new paragraphs included in the SAC relating to Envestnet's relationship with Yodlee (SAC ¶¶ 22–28) merely parrot legal conclusions and assertions that Plaintiffs unsuccessfully advanced in opposition to Envestnet's motion to dismiss the First Amended Complaint ("FAC"), and they are no more persuasive now than they were before.  Contrary to the SAC's unsupported conclusion that Envestnet has somehow "absorbed" Yodlee (SAC ¶ 25), the evidence demonstrates that Yodlee and Envestnet are legally and operationally distinct entities.  Yodlee is not Envestnet's agent.  Envestnet is not Yodlee's alter ego.  Yodlee's contacts therefore cannot be imputed to Envestnet.  Accordingly, this case should be dismissed as to Envestnet for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).

Plaintiffs' inability to demonstrate that Envestnet is Yodlee's alter ego also precludes the exercise of subject matter jurisdiction over Plaintiffs' claims against Envestnet, because Plaintiffs' alleged injuries are not legally traceable to Envestnet.  *See* Fed. R. Civ. P. 12(b)(1); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

1    Finally, if (and only if) the Court determines that it has both personal and subject matter

2 jurisdiction over Envestnet, Plaintiffs' claims nonetheless should be dismissed pursuant to Rule

3 12(b)(6), because Plaintiffs rely exclusively on improper group pleading and fail to allege facts

4 specifically relating to Envestnet that support any claims against it.

5    For these reasons, the Court should dismiss all claims against Envestnet, with prejudice.

6 **I.   INTRODUCTION**

7    **A.    Procedural History**

8    Envestnet moved to dismiss the FAC because it is a Delaware corporation based in Illinois, with

9 no California contacts related to Plaintiffs' claims.  Mot. (Dkt. No. 31) at 4–8.  Envestnet further

10 explained that, even if personal jurisdiction attached, Plaintiffs also failed to state separate claims

11 against Envestnet because Plaintiffs alleged no distinct conduct by Envestnet, let alone actionable

12 conduct.  *Id.* at 8–10.

13    In opposition, Plaintiffs did not seriously contend that Envestnet itself had California contacts

14 sufficient to satisfy due process.  Instead, Plaintiffs averred that *Yodlee*'s contacts should be imputed to

15 Envestnet under an alter ego or agency theory.  Opp. (Dkt. No. 36) at 10–12.  Plaintiffs further doubled

16 down on their use of group pleading, arguing (incorrectly) that those allegations were sufficient under

17 Federal Rule of Civil Procedure 8.  *See id.* at 14–15.  No doubt recognizing the serious deficiencies in

18 their FAC, Plaintiffs alternatively sought "jurisdictional discovery" to help make their case.  *Id.* at 15.

19    In its February 26, 2021 Order, this Court agreed with Envestnet that Plaintiffs had not alleged

20 facts to establish jurisdiction over Envestnet.  Order (Dkt. No. 54) at 16.  However, it reserved ruling on

21 Envestnet's motion and granted Plaintiffs limited jurisdictional discovery regarding their "alter ego"

22 theory.  *Id.*  The Court also granted Plaintiffs leave to amend their Complaint a second time (*id.*), which

23 Plaintiffs did on March 15, 2021 (Dkt. No. 58, the "SAC").[1]

24

25

26    ───────────────

27 [1] Plaintiffs subsequently propounded, and Envestnet timely responded to, written requests for
jurisdictional discovery.  In addition, on May 13, 2021, Plaintiffs are scheduled to depose an Envestnet
corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.     The SAC's Allegations As to Envestnet

Plaintiffs' SAC differs from the FAC in ways that are cosmetic or simply rehash arguments from their earlier opposition brief, none of which supports Envestnet's presence in this litigation.

***First***, **Plaintiffs add, rather than subtract, allegations based on improper group pleading.** *See generally* SAC ¶ 3 ("*Defendants* acquire [data] by deceit"), ¶ 9 ("*Defendants* use that data to construct individualized profiles for millions of Americans, and they profit by selling access to that data[.]"), ¶ 14 ("*Defendants*' failure to take even the most basic steps to protect this highly sensitive data" has harmed Plaintiffs), ¶ 67 ("*Defendants* immediately obtain 90 days' worth of transaction information once a user links an account"; "*Defendants* then sell this data as part of large compilations of individual transactions" (all emphases added)); *see also, e.g.*, *id.* ¶¶ 12, 69, 122, 130, 148 (similarly adding new allegations against "Defendants," collectively).  As explained in Envestnet's original motion (Mot. at 9), such group allegations need not be accepted as true.  *See, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. 2011) (when stating claims against multiple defendants, a complaint "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole").

***Second***, **in a variation of improper group pleading, Plaintiffs replace virtually all prior references to Yodlee with "Envestnet | Yodlee."**  SAC Preamble; *see, e.g.*, *id.* ¶¶ 2, 4–14, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 55–57, 62–68, 70–72, 78–80, 82–85, 87–89, 101–04, 106, 108–09, 112–15, 117, 119, 126–28, 133, 137–41, 144, 146–51, 173, 214–15, 228, 241, 258.  The calculated effect of this edit is to imply that the *substance* of the allegations against "Envestnet | Yodlee" involves distinct conduct by Defendant Envestnet, Inc., the holding company.  But the edit is merely *stylistic*, as the SAC expressly admits in a single sentence buried within its 273 paragraphs.  SAC ¶ 53 ("The Complaint refers to Yodlee as . . . 'Envestnet | Yodlee' after its acquisition by Envestnet.").

***Third***, **Plaintiffs attempt to show that Envestnet is Yodlee's "alter ego" or Yodlee is an agent of Envestnet.**[2]  SAC ¶¶ 22–28.  Those allegations are:

---

[2] The SAC does not claim that Yodlee is Envestnet's agent, or that Envestnet is Yodlee's alter ego.

i.     Envestnet owns 100% of Yodlee (¶ 28);

ii.     After Yodlee was acquired by Envestnet, Yodlee was "delisted from the exchanges where its stock was sold" (¶ 28);

iii.     Envestnet allegedly shares an unidentified number of employees with Yodlee, in addition to unspecified "data," "systems," "offices," and "resources" (¶¶ 22, 28);

iv.     Envestnet brands Yodlee's data and analytics business as "Envestnet | Yodlee" (¶ 24 & Figs. 1–3);

v.     Envestnet allegedly "compiles," "markets," and sells the data that Yodlee collects, "from" Yodlee's Redwood City, California office space (¶ 25); and

vi.     Envestnet "profits" from the sale of Yodlee's data (¶ 26).

However, the SAC fails to allege facts that this Court observed would be "critical" to establishing an alter ego relationship:  inadequate capitalization, commingling of assets, or disregard of corporate formalities.  *See* Order (Dkt. No. 54) at 15 (quoting *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994)).

Not only do Plaintiffs' allegations fail to support a theory of agency or alter ego, they fail to support jurisdiction on any other ground.  Envestnet is a holding company that conducts no business, has no operations, and provides no services in California.  Marr Decl. ¶¶ 5–6, 10–14.  Envestnet does not collect, compile, store, market, sell or license any consumer transaction data.  *Id.* ¶¶ 10, 13–14. Envestnet and Yodlee maintain separate books and records and have separate financial accounts and systems.  *Id.* ¶¶ 29, 35.  Any Envestnet officers with corporate oversight responsibilities for Envestnet's subsidiaries, including Yodlee, are not involved in Yodlee's day-to-day activities.  *Id.* ¶¶ 43, 45. Envestnet's *only* in-State contacts are *de minimis*:  it registered with the Secretary of State and has an agent for service, and two of its employees reside in California and work remotely.  *Id.* ¶¶ 11, 20. Envestnet does not own, rent, or lease any real or personal property in California.  *Id.* ¶ 15.

Yodlee is a standalone corporate entity, founded in 1999.  *E.g.*, Marr Decl. ¶¶ 7, 26; *see also* SAC ¶ 54.  Yodlee maintains its own articles of incorporation and by-laws; corporate books, records, and financial plans; bank accounts; and account management system.  Marr Decl. ¶¶ 30, 35.  Yodlee

1    funds its own operations.  *Id.* ¶¶ 38–40.  Envestnet does not provide financing to Yodlee, and Yodlee

2    does not pay dividends to Envestnet.  *Id.* ¶¶ 36–37.  All actions by Yodlee that require board approval

3    are approved by the sole director of Yodlee, acting in such capacity.  *Id.* ¶ 32.  All actions by Yodlee

4    that require stockholder approval are approved by the sole stockholder of Yodlee, acting in such

5    capacity.  *Id.* ¶ 33.  Yodlee has its own office in California, which it leases in its own name.  *Id.* ¶ 31.

6    Yodlee has approximately 1,560 employees.  *Id.* ¶ 28.  Yodlee has its own management structure and its

7    own operations, professional services, finance, legal, marketing, sales, engineering, and product

8    development functions, among others.  *Id.* ¶ 29.  Yodlee executes its own contracts and is responsible

9    for payment of its own debts and liabilities.  *Id.* ¶¶ 39, 41.  Importantly, Yodlee is well capitalized, with

10   total assets exceeding $510 million as of December 31, 2020.  *Id.* ¶ 40.

11   **II.    ARGUMENT**

12       **A.    Envestnet Is Not Subject to Personal Jurisdiction in California.**

13          The determination of personal jurisdiction may precede a determination of subject matter

14   jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578, 584–85 (1999).  Plaintiffs bear

15   the burden of demonstrating that personal jurisdiction is proper.  *Martinez v. Aero Caribbean*, 764 F.3d

16   1062, 1066 (9th Cir. 2014).  Conclusory allegations and legal conclusions need not be accepted as true.

17   *See, e.g.*, *Andersen v. Griswold Int'l, LLC*, No. 14-cv-02560-EDL, 2014 WL 12694138, at *2 (N.D. Cal.

18   2014).  In determining its jurisdiction, the Court may consider declarations and other extrinsic evidence.

19   *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (per curiam), *abrogated on other grounds by*

20   *Daimler AG v. Bauman*, 571 U.S. 117 (2014).  Where the evidence is inconsistent with an allegation, the

21   evidence governs.  *See Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992)

22   ("[F]or purposes of personal jurisdiction, we may not assume the truth of allegations in a pleading which

23   are contradicted by affidavit." (quotation marks omitted)); *see also, e.g.*, *Court of Master Sommeliers,*

24

25

26

27

28

*Am. v. Pilkey*, No. 19-cv-03620-SK, 2019 WL 9443609, at *2 (N.D. Cal. 2019) (Kim, J.) (same).  For the reasons stated below, Envestnet is not subject to the Court's specific personal jurisdiction.[3]

### 1.    Envestnet Is Not Yodlee's Alter Ego.

Plaintiffs principally contend that Envestnet is subject to specific personal jurisdiction due to the in-state conduct of its subsidiary, Yodlee.  SAC ¶ 22 ("Envestnet has also created suit-related contacts with California through Envestnet | Yodlee, a wholly-owned subsidiary located in this District with which Envestnet shares executives, employees, offices, data, systems and resources."); *see also id.* ¶¶ 23–28.  Plaintiffs are wrong.  Yodlee is a separately incorporated and operating subsidiary.  *E.g.*, Marr Decl. ¶¶ 7, 26.  Yodlee conducts business in its own name and adheres to corporate formalities.  *See generally id.* ¶¶ 27, 29–42.  Yodlee has substantial capitalization to cover any potential liabilities.  *Id.* ¶ 40.  Envestnet does not operate or fund Yodlee's business.  *E.g., id.* ¶¶ 29–35, 37–39.

As this Court recognized in its order on Envestnet's motion to dismiss the FAC, "'*[a]lter ego* is an extreme remedy, sparingly used.'"  Order (Dkt. No. 54) at 15 (quoting *Sonora Diamond Corp. v. Sup. Ct.*, 83 Cal. App. 4th 523, 539 (2000)); *see also Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("The doctrine of piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances.")); *Incipio, LLC v. Argento Sc by Sicura Inc.*, No. SACV 17-01974 AG (KESx), 2018 WL 4945002, at *2 (C.D. Cal. 2018) (observing the "high burden" for pleading alter ego liability); *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 301 (1985) ("[T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.").  Specifically, the alter ego doctrine applies only where the purported alter ego is a "sham corporate entity" that was created purely to shield the principal from liability, and where there is "such a unity of interest and ownership between the [alter ego] and its equitable owner that the separate personalities of the [alter ego] and the shareholder do not in reality exist."  *Sonora Diamond*, 83 Cal. App. 4th at 538.

---

[3] As a Delaware corporation with a principal place of business in Illinois (SAC ¶ 52; Marr Decl. ¶ 5), Envestnet is not subject to general personal jurisdiction in California.  *See Daimler*, 571 U.S. at 137. Plaintiffs do not allege otherwise.  *See* SAC ¶ 22 (asserting specific personal jurisdiction only).

1    Consequently, "a party accusing another of an alter ego relationship carries a high burden[,] both

2    at the pleading stage and on the merits." *Incipio*, 2018 WL 4945002, at *2.  Plaintiffs would have to

3    demonstrate both "(1) that there is such unity of interest and ownership that the separate personalities [of

4    the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in

5    fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (quotation marks omitted).

6    Plaintiffs cannot meet either prong of this standard.

            ### a)    There Is No "Unity of Interest."

8        "The first prong of the alter ego test—whether there is a unity of interest and ownership such that

9    the separate personalities of the two entities no longer exist—has alternatively been stated as requiring a

10   showing that the parent controls the subsidiary to such a degree as to render the latter the mere

11   instrumentality of the former."  *NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHK (HRL),

12   2015 WL 400251, at *5 (N.D. Cal. 2015) (quotation marks omitted).  "Plaintiffs' burden to demonstrate

13   unity of interest is high." *Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, No. 2:16-CV-02859-

14   CAS(PLAx), 2016 WL 6495373, at *13 (C.D. Cal. 2016).  Inadequate capitalization, commingling of

15   assets, and disregard of corporate formalities are "critical" to establishing unity of interest.  Order (Dkt.

16   No. 54) at 15 (quoting *Tomaselli*, 25 Cal. App. 4th at 1285).  Additional factors that courts have

17   considered, when present in combination with each other, include the existence of equitable owners with

18   "domination and control" over both entities; use of one entity as a mere shell or conduit for a single

19   venture; and use of the same office or business locations.  *Id.*  None of these factors exists here.

20       Plaintiffs do not even *attempt* to demonstrate the "critical" factors that this Court identified for

21   the unity of interest inquiry.  Nor could they:

22   •   **Yodlee has ample capitalization.**  Marr Decl. ¶ 40.  For the quarter ending December

23   31, 2020, Yodlee had total assets exceeding $510 million.  *Id.*  This is more than adequate to support the

24   business and operations, and to cover any potential liabilities, of Yodlee.

25   •   **Envestnet and Yodlee do not "commingle" funds or other assets.**  *Id.* ¶ 38.  Envestnet

26   and Yodlee maintain, and have always maintained, separate bank accounts, and Envestnet does not

27

28

---

provide any financing to Yodlee.  *Id.* ¶¶ 35, 36.  Yodlee's assets are used to satisfy Yodlee-incurred liabilities.  *Id.* ¶ 39.

• **Envestnet and Yodlee observe appropriate corporate formalities.**  Yodlee maintains its own independent corporate status and structure.  *E.g.*, *id.* ¶¶ 26–27, 30, 32–33, 35.  Yodlee has its own articles of incorporation and by-laws; has its own bank accounts; maintains its own corporate books and records; purchases and leases real and personal property in its own name; executes its own contracts; funds its own operations; and, as noted, is responsible for its own debts.  *Id.* ¶¶ 30, 31, 35–39, 41.

None of the other indicia of a unity of interest that this Court identified is evident either.  To begin, the equitable ownership factors have no bearing on unity of interest where, as here, it is undisputed—and publicly known—that Yodlee is a wholly owned subsidiary of Envestnet.  Marr Decl. ¶¶ 7–8, 25–26; *see also Bestfoods*, 524 U.S. at 61 ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (quotation marks omitted)); *Katzir's Floor & Home*, 394 F.3d at 1149 ("[The] mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law"); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015) ("[I]n and of itself, a parent's complete control of a subsidiary does not show that there is an alter ego relationship between the two.").[4]  Nor are there any facts to support the SAC's conclusory assertion that Yodlee is a mere "instrumentality" for Envestnet, or vice versa.  SAC ¶ 28.  Yodlee does not pay dividends to Envestnet.  Marr Decl. ¶ 37.[5]  Yodlee has approximately 1,560 employees.  *Id*. ¶ 28.  Yodlee has its own management structure and functional departments.  *Id.* ¶ 29.  Yodlee observes corporate formalities in its governance and commercial activities.  *See, e.g.*, *id.* ¶¶ 30–33, 41.  Although

---

[4] Plaintiffs allege that, upon being acquired, Yodlee was "delisted from the exchanges where its stock was sold."  SAC ¶ 28.  This is unremarkable for a wholly-owned subsidiary, and makes it no less distinct.

[5] Plaintiffs' allegation that Envestnet "profits" from Yodlee's sales (SAC ¶ 26) ignores the fact that Yodlee reinvests most of its profits back into its business.  *See* Marr Decl. ¶ 37.

the President of Yodlee also became the President of Envestnet after its former President became CEO of Envestnet, *id.* ¶ 44, the sharing of employees among a parent and its subsidiary is a "common aspect[] of parent-subsidiary relationships," and not, without much more, evidence of unity of interest. *Gerritsen*, 116 F. Supp. 3d at 1140; *see also Ranza*, 793 F.3d at 1074 ("Some employees and management personnel move between the entities, but that does not undermine the entities' formal separation."); *Harris Rutsky*, 328 F.3d at 1135 (sharing staff does not render the subsidiary an alter ego of the parent).

Plaintiffs' sole remaining arguments are that (1) certain Envestnet officers have oversight roles for Yodlee, and (2) for co-branding purposes, Yodlee is sometimes called "Envestnet | Yodlee."  SAC ¶¶ 22, 24 & Figs. 1–3.  Neither argument moves the needle.  To be sure, for administrative efficiency, Envestnet designates certain officers as signing officials for each of its subsidiaries, including Yodlee. Marr Decl. ¶ 43.  Unsurprisingly, Envestnet's CEO also is the sole director of Yodlee, which is a wholly-owned subsidiary.  *Id.*  But the "[o]verlap between a parent's and a subsidiary's directors or executive leadership alone . . . is not suggestive of a unity of interest and ownership." *Gerritsen*, 116 F. Supp. 3d at 1139; *see also Sonora Diamond*, 83 Cal. App. 4th at 548–49 ("[It] is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary."); *Bastidas v. Good Samaritan Hosp.*, No. C 13-04388 SI, 2014 WL 3362214, at *4 (N.D. Cal. 2014) (explaining that, "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"; courts presume that "dual status individuals wear their 'parent hats' when serving the parent's interests, and their 'subsidiary hats' when serving the subsidiary's interests" (quotation marks omitted)).  In any event, the overlap between these two companies is limited.

As for external branding, courts nationwide—including in this District—agree that "marketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos." *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. 2015); *see also, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016) ("[C]ourts recognize that separate corporate entities presenting themselves as one online does not rise to

the level of unity of interest required to show companies are alter egos."); *Tuttle v. Sky Bell Asset Mgmt.*, No. C 10–03588 WHA, 2011 WL 4713233, at *8 (N.D. Cal. 2011) ("companies that share a brand name" were not alter egos); *Moody v. Charming Shoppes of Del., Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, at *7 (N.D. Cal. 2008) ("Generic language on [parent company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent.").[6]

In sum, not a single factor—much less any combination of factors—militates in favor of finding the requisite unity of interest.  Certainly, there are no plausible allegations or evidence that Envestnet "dictates [e]very facet [of Yodlee's] business—from broad policy decision[s] to routine matters of day-to-day operation."  *NetApp*, 2015 WL 400251, at *5 (quotation marks omitted); *see also, e.g.*, *Williams v. Progressive Cty. Mut. Ins. Co.*, No. 17-cv-2282-AJB-BGS, 2019 WL 1434241, at *3 (S.D. Cal. 2019) ("Plaintiff fails to show that Defendants have comingled funds, that there is identical equitable ownership of the entities, that the subsidiaries are inadequately capitalized, that they have disregarded corporate formalities, that there is a segregation of records, and that the directors and officers are identical—Plaintiff only alleges that some are overlapping.  Taking all Plaintiff's allegations and arguments into consideration, the Court concludes Plaintiff has not satisfied the unity of interest prong.").

---

[6] *Accord, e.g.*, *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 395 (D.N.J. 2019) ("[T]he fact that the parent and subsidiary share the same 'brand' is insufficient."); *Baker v. LivaNova PLC*, 210 F. Supp. 3d 642, 650 (M.D. Pa. 2016) ("Plaintiffs' alter ego analysis boils down to the ownership of the subsidiaries and the common branding between the parties.  These two factors alone cannot sustain an alter ego argument."); *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011) ("[M]uch of the 'additional evidence' provided by Plaintiffs is essentially corporate puffery regarding the synergies present between Cristal Global's many members.  The statements relied on by Plaintiffs are typical of corporate newsletters and investor communications and are of little or no use to this Court in determining whether the corporate veil . . . should be pierced."); *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) ("The common marketing image and joint use of trademarked logos fail to render ERAC-Pittsburgh an alter ego of ERAC-Missouri.  Enterprise Rent-A-Car is portrayed as a single brand to the public, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries."), *aff'd*, 683 F.3d 462 (3d Cir. 2012).

1      In sum, the Court's inquiry can and should end at this first prong of the alter ego analysis.  As

2   shown below, however, Plaintiffs also fail to satisfy the second prong.

3              b)      *Treating Envestnet and Yodlee as Distinct Entities Would Not Result in*
                       *Fraud or Injustice.*
4

5      Plaintiffs also do not satisfy the second prong of the "alter ego" standard.  The alter ego doctrine

6   may be invoked "only where recognition of the corporate form would work an *injustice* to a third

7   person," *Tomaselli*, 25 Cal. App. 4th at 1285 (emphasis added), because the alter ego entity was created

8   to "perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose,"

9   *Sonora Diamond*, 83 Cal. App. 4th at 538.  "'Accordingly, bad faith in one form or another is an

10  underlying consideration.'"  Order (Dkt. No. 54) at 15 (quoting *Assoc. Vendors, Inc. v. Oakland Meat

11  Co.*, 210 Cal. App. 2d 825, 838 (1962)).  There is no basis to conclude that Yodlee was "created" to

12  accomplish some wrongful purpose (*see* SAC ¶ 54); to the contrary, Yodlee was a growing public

13  company for many years prior to its acquisition.  *See* Marr Decl. ¶ 7.  Envestnet, too, had existed as a

14  successful company for more than 15 years before acquiring Yodlee.  *Id.* ¶ 5.  As noted, Yodlee is amply

15  capitalized and fully funds its own operations.  *See supra* § II.A.1(a).  In short, treating Envestnet and

16  Yodlee as the distinct entities that they are will not result in any fraud or injustice to Plaintiffs.

17              2.      Yodlee Is Not Envestnet's Agent.

18     The SAC similarly provides no basis for holding that Yodlee is Envestnet's "agent" for the

19  purpose of conferring specific personal jurisdiction over Envestnet.  As a threshold matter, in the Ninth

20  Circuit, specific personal jurisdiction *cannot* be based on the acts of a defendant's supposed agents.  *See

21  Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021, 1024 (9th Cir. 2017) (finding that the Supreme

22  Court's decision in *Daimler*, which held that general personal jurisdiction cannot be predicated on an

23  agency relationship, "applies no less in the context of specific jurisdiction;" further explaining:  "While

24  the [*Daimler*] Court reserved judgment on the viability of agency theory as a general concept, it did not

25  suggest that our particular *formulation* for finding an agency relationship should survive in the context

26  of specific jurisdiction.  To the contrary, the *Daimler* Court's criticism of the *Unocal* standard found

27  fault with the standard's own internal logic, and therefore applies with equal force regardless of whether

28

the standard is used to establish general or specific jurisdiction."); *see also, e.g.*, *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 794 (N.D. Cal. 2020) (to establish specific jurisdiction, "[p]laintiffs must show that the [defendant's] contacts—*and not those of its 'agents'*—gave rise to the claims" (emphasis added) (citing *Williams*, 851 F.3d at 1024)); *Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-cv-06411-CAS(FFMx), 2017 WL 3534984, at *9 (C.D. Cal. 2017) ("Following *Williams*, the Court concludes that [plaintiffs] cannot establish specific personal jurisdiction pursuant to an agency relationship.").

Even if an agency theory of specific jurisdiction remained viable in this Circuit, Plaintiffs would have to show that Yodlee acted on Envestnet's "behalf," and that Envestnet "substantially control[led]" Yodlee. *Williams*, 851 F.3d at 1024, 1025. Courts have noted that this inquiry is functionally "identical" to the alter ego analysis. *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 56 (N.D. Cal. 2020) ("[T]o the extent the agency test survived *Daimler*, it did so only to test whether the parent corporation exercises 'pervasive control.' Having held . . . that Plaintiff has not demonstrated alter-ego liability, the Court declines to reengage in the identical agency analysis."). Here, the sole allegation arguably pertinent to the agency inquiry is the SAC's unsupported assertion that Envestnet has the "right" to control "all of Yodlee's day-to-day decisions and activities, including relating to its finances." SAC ¶ 28. That allegation is entirely conclusory, and should be disregarded for this reason alone. *See, e.g.*, *Andersen*, 2014 WL 12694138, at *2; *see also, e.g.*, *Williams*, 851 F.3d at 1025 n.5 ("a conclusory legal statement unsupported by any factual assertion regarding [a parent's] control over [its subsidiary] (or regarding any other aspect of the parent-subsidiary relationship)" is insufficient). It is also, of course, contrary to the evidence, which overcomes even non-conclusory allegations. *Supra* § II.A.1; *see Alexander*, 972 F.2d at 262.

Moreover, a parent corporation's "right" to control its wholly-owned subsidiary is the prototypical parent-subsidiary relationship. What matters for the agency inquiry, assuming its relevance, is whether Envestnet *in fact* exercises *pervasive* control over Yodlee's activities. *See, e.g.*, *Ketayi v. Health Enrollment Grp.*, No. 20-cv-1198-GPC-KSC, --- F. Supp. 3d ---, 2021 WL 347687, at *12 (S.D. Cal. 2021) ("Just because First Health *could* structure its relationships with the other Defendants in such a way that allowed it to maintain control over the marketing of plans does not

1  establish a *prima facie* case that it *actually did have control* over any other entity in this case." (last

2  emphasis added)).  The SAC contains no plausible allegations to support such a claim, and the evidence

3  establishes that Envestnet, in fact, does *not* "control" Yodlee's day-to-day activities.

4      Simply put, an agency theory for piercing the corporate veil fares no better for Plaintiffs.

5          3.    <u>Envestnet Has No Case-Relevant Contacts with California.</u>

6      In passing, Plaintiffs suggest that Envestnet's own contacts in California are independently

7  sufficient to subject it to the specific personal jurisdiction in the State.  SAC ¶ 22.  Not so.

8      Where there is no applicable federal statute governing personal jurisdiction, the court applies the

9  law of the forum State—here, California.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

10  *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  California's long-arm statute extends jurisdiction

11  to the limit of federal due process.  Cal. Code Civ. Proc. § 410.10.  To establish specific personal

12  jurisdiction over Envestnet for its own conduct, Plaintiffs must therefore demonstrate that:

13  (1) Envestnet purposefully directed activities towards California; (2) the claim arises out of or relates to

14  those forum-related activities; and (3) the exercise of jurisdiction is "reasonable."  *Axiom Foods, Inc. v.*

15  *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017); *see also Pilkey*, 2019 WL 9443609, at *3

16  (Kim, J.) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with,

17  the very controversy that establishes jurisdiction." (quotation marks omitted)).

18      "The exact form of [the] jurisdictional inquiry depends on the nature of the claim at issue."  *Picot*

19  *v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015).  The three-part "effects" test derived from *Calder v.*

20  *Jones*, 465 U.S. 783 (1984), applies to intentional tort claims.  *Holland Am. Line Inc. v. Wärtsilä N. Am.,*

21  *Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the *Calder* test applies only to

22  intentional torts, not to . . . breach of contract and negligence claims"); *see also, e.g.*, *Payrovi v. LG*

23  *Chem Am., Inc.*, 491 F. Supp. 3d 597, 605 (N.D. Cal. 2020) ("Purposeful direction, which is analyzed

24  under the *Calder* 'effects' test, is limited to claims of intentional tort."); *Pilkey*, 2019 WL 9443609, at *4

25  (Kim, J.) (where there is no contract at issue, "the correct approach in weighing the first prong of the

26  specific jurisdiction analysis is to employ the standard applicable to tort claims and analyze whether the

27  *Calder*-effects test is satisfied").

28

DEFENDANT ENVESTNET, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(2) OR, ALTERNATIVELY,
PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)
Case No.: 3:20-cv-05991-SK

14

1    Because Plaintiffs' claims sound in tort, *Calder* governs.  *See, e.g.*, *McGibney v. Retzlaff*, No. 14-

2    cv-01059-BLF, 2015 WL 3807671, at *4 (N.D. Cal. 2015) (applying *Calder* to claim for common law

3    invasion of privacy); *Smith v. Facebook*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) (applying *Calder* to

4    claim for constitutional invasion of privacy), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (Mem.); *Rep. of*

5    *Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *9 (N.D. Cal. 2018) (applying

6    *Calder* to claims under the Stored Communications Act and the Computer Fraud and Abuse Act);

7    *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, No. 19cv1865-GPC(LL), 2020 WL 5064253, at *7, *20

8    (S.D. Cal. 2020) (applying *Calder* to claims under Cal. Civ. Code § 1709 and California's Unfair

9    Competition Law, Cal. Bus. & Prof. Code § 17200); *Facebook, Inc. v. Sluchevsky*, No. 19-cv-01277-

10    JSC, 2020 WL 5823277, at *4 (N.D. Cal. 2020) (applying *Calder* to claim under Cal. Pen. Code § 502).

11                    *a)*        ***There Is No Purposeful Direction.***

12        To demonstrate purposeful direction, Plaintiffs must establish that Envestnet (i) committed an

13    "intentional act," that was (ii) "expressly aimed" at California, (iii) causing harm that Envestnet knew

14    was likely to be suffered in California.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805

15    (9th Cir. 2004).  Plaintiffs fail to identify any such acts.

16        Plaintiffs allege that, "Envestnet has intentionally created extensive contacts with California

17    through its data collection, aggregation and analytics business, which . . . collects data from Class

18    members in California without consent and sells that data to customers that include businesses located in

19    that State."  SAC ¶ 22.  This allegation does not suffice where, as here, the evidence directly contradicts

20    it.  To be clear:  *As a holding company, Envestnet does not conduct any commercial activities within*

21    *California.*  Marr Decl. ¶¶ 10–14.  Specifically, Envestnet does not compile, market, or sell any

22    consumer transaction data from within California, or to California customers, as alleged by Plaintiffs

23    (SAC ¶¶ 25, 26).  Marr Decl. ¶¶ 10–14.  Nor, contrary to the SAC's allegation, does Envestnet maintain

24    its books or records in California (SAC ¶ 27).  Marr Decl. ¶ 16.  Envestnet does not have a mailing

25    address or telephone listing in California; it does not own, lease, rent, or occupy any real or personal

26    property in California; and it does not have any offices or other facilities in California.  *Id.* ¶¶ 12, 15, 18.

27    Envestnet also is not regulated by any California state agency.  *Id.* ¶ 17.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

To be sure, Yodlee and another subsidiary (Envestnet Asset Management, Inc.) have office locations in California.  Marr Decl. ¶ 22.  However, as already explained, the in-state contacts of subsidiaries, as a matter of law, may not be imputed to the parent company.  *See Williams*, 851 F.3d at 1023 ("The relationship between the defendant and the forum state must arise out of contacts that *the defendant [itself]* creates with the forum State" to constitute purposeful direction (emphasis added) (quotation marks omitted)); *Harris Rutsky*, 328 F.3d at 1134 ("It is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes.").

The *entirety* of Envestnet's contacts in California are as follows:  (1) Envestnet has an agent for service of process in California (although, as noted, Envestnet has never before litigated in California); (2) Envestnet is licensed to transact business in California (although, as noted, it does not actually do so); and (3) two out of Envestnet's 128 employees reside in California.  Marr Decl. ¶¶ 11, 20, 21.  None of these contacts "connect" Envestnet to California "in a meaningful way," *Walden v. Fiore*, 571 U.S. 277, 290 (2014); therefore, they cannot support a finding of purposeful direction.  *See, e.g.*, *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 572 (9th Cir. 2011) ("The constitutional standard of 'minimum contacts' has practical meaning in the context of personal jurisdiction.  Mere appointment of an agent for service of process cannot serve as a talismanic coupon to bypass this principle."); *Parnell Pharms., Inc. v. Parnell, Inc.*, No. 5:14-cv-03158-EJD, 2015 WL 5728396, at *4 (N.D. Cal. 2015) ("Registering with the Secretary of State is a passive act that is not expressly aimed at California."); *id.* (presence of one employee in California also insufficient under *Calder*).  Moreover, Plaintiffs do not attempt to show that such *de minimis* contacts "caus[ed] harm that [Envestnet] kn[ew] was likely to be suffered in [California]."  *Schwarzenegger*, 374 F.3d at 805.  In short, there is no purposeful direction.[7]

---

[7] As explained *supra*, the Ninth Circuit's separate "purposeful availment" test does not apply to Plaintiffs' claims.  Even under that test, however, jurisdiction would not attach for the simple reason that Envestnet does not transact business in the State of California.  *See* Marr Decl. ¶¶ 6, 10–11.

1
2

b)      *Plaintiffs' Claims Are Not Related to Envestnet's De Minimis In-State Contacts.*

3      Plaintiffs also fail the second prong of the specific jurisdiction test: they do not and cannot show

4      that their claims arise from or relate to Envestnet's minimal in-state contacts.  *See Bristol-Myers Squibb*

5      *Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("What is needed—and what is missing here—is

6      a connection between the forum and the specific claims at issue."); *Chavez v. Stellar Mgmt. Grp. VII,*

7      *LLC*, No. 5:14-cv-03158-EJD, 2019 WL 2716292, at *6 (N.D. Cal. 2019) ("[A]ny conduct that might

8      constitute purposeful direction or purposeful availment is only sufficient to establish jurisdiction if it

9      relates to [plaintiff's] claim.").

10      The Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.

11      Ct. 1017 (2021), underscores this required nexus.  There, state courts exercised personal jurisdiction

12      over Ford Motor Company in personal injury litigation stemming from failed airbags in accidents that

13      occurred in the forum states, Montana and Minnesota, although the plaintiffs' cars had been

14      manufactured and sold elsewhere.  *Id.* at 1022–23.  The Supreme Court agreed there was specific

15      jurisdiction because Ford "systematically served a market in Montana and Minnesota for the very

16      vehicles that the plaintiffs allege malfunctioned and injured them in those States," including extensive

17      in-state advertising for those exact models.  *Id.* at 1028.  The Court specifically stated that its prior

18      decision in *Bristol-Myers* remains good law, and that jurisdiction is improper absent a "strong

19      relationship among the defendant, the forum, and the litigation."  *See id.* at 1031 (quotation marks

20      omitted) (explaining that "[w]e found jurisdiction improper in *Bristol-Myers* because the forum State,

21      and the defendant's activities there, lacked any connection to the plaintiffs' claims").

22      From a jurisdictional perspective, the allegations in *this* case are closely analogous to those in

23      *Bristol-Myers* and are plainly distinguishable from the pervasive in-state contacts present in *Ford*.

24      Unlike the plaintiffs in *Ford*, Plaintiffs cannot show that Envestnet engages in extensive and systematic

25      California activity related to the cause of Plaintiffs' alleged injuries.  Whereas Ford extensively and

26      systematically marketed its vehicles in the forum states, including the exact model that caused the

27      underlying accidents, Envestnet's only California contacts are that it has registered to do business and

28

has an agent for service of process and two remotely-located employees there.  Marr Decl. ¶¶ 11, 20, 21.

As noted, Envestnet is a holding company that conducts no business and has no operations in California.

And, as demonstrated above, Yodlee's separate contacts cannot be imputed to Envestnet.

Although one of the named Plaintiffs is a California resident, SAC ¶¶ 49–50, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290.  In sum, Plaintiffs' legal conclusion that their claims "arise out of or relate to Envestnet's contacts with the State," SAC ¶ 22, is wrong.

### c)      The Exercise of Jurisdiction over Envestnet Would Be Unreasonable.

In determining the reasonableness of specific personal jurisdiction, courts consider the following factors, no one of which is dispositive:  (i) the extent of the defendant's "purposeful interjection" into the forum state's affairs; (ii) the burden on the defendant of defending in the forum; (iii) the extent of conflict with the sovereignty of the defendant's state; (iv) the forum state's interest in adjudicating the dispute; (v) the most efficient judicial resolution of the controversy; (vi) the importance of the forum to the plaintiff's interest in "convenient and effective relief"; and (vii) the existence of an alternative forum.  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Regarding the first factor, as discussed *supra*, the extent of Envestnet's "purposeful interjection" of activities into California's affairs is *de minimis*, at most.  Regarding the second factor, the burden on Envestnet would be significant:  Envestnet is based in Illinois and has never litigated in California or been found to be subject to the personal jurisdiction of any court in the State.  *See* Marr Decl. ¶¶ 5, 21, 46.  Regarding factors five and seven, it would be most efficient to litigate this case in Delaware, where both Yodlee and Envestnet are incorporated (SAC ¶¶ 51–52) and thus subject to general personal jurisdiction.  Relevant to factors four and six, 90% of the named plaintiffs are citizens of States other than California (*id.* ¶¶ 31, 33, 35, 37, 39, 41, 43, 45, 47, 49).  California's interest in this dispute is therefore relatively slight, as is the importance of California as a forum.  In sum, this third prong of the specific jurisdiction test further militates against this Court's exercise of personal jurisdiction over Envestnet.

1

### B.       Plaintiffs Cannot Establish Subject Matter Jurisdiction over Envestnet.

2

Because Plaintiffs fail to establish that Envestnet is Yodlee's alter ego—and their remaining

3

allegations against Envestnet comprise improper group pleading, *infra* § II.C—Plaintiffs lack Article III

4

standing to bring these claims against Envestnet.

5

"When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Rule

6

12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim."

7

*California v. U.S. Dep't of Educ.*, No. 17-cv-07106-SK, 2019 WL 7669767, at *5 (N.D. Cal. 2019)

8

(Kim, J.).  A jurisdictional attack pursuant to Federal Rule of Civil Procedure 12(b)(1) may be facial or

9

factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  On a fact-based challenge to subject matter

10

jurisdiction, evidentiary matter may be presented by affidavit, *Savage v. Glendale Union High Sch.*, 343

11

F.3d 1036, 1039 n.2 (9th Cir. 2003), and "[t]he court need not presume the truthfulness of the plaintiff's

12

allegations," *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In resolving a

13

factual attack on jurisdiction, the district court may review evidence beyond the complaint without

14

converting the motion to dismiss into a motion for summary judgment.").

15

Plaintiffs invoking federal jurisdiction must have Article III standing, meaning "the personal

16

interest that must exist at the commencement of the litigation."  *Bishop Paiute Tribe v. Inyo Cty.*, 863

17

F.3d 1144, 1155 (9th Cir. 2017) (quotation marks omitted).  Plaintiffs must prove three elements:

18

(i) injury in fact; (ii) traceability; and (iii) redressability.  *Lujan*, 504 U.S. at 560–61; *see also California

19

v. U.S. Dep't of Educ.*, No. 17-cv-07106-SK, 2018 WL 10345668, at *7 (N.D. Cal. 2018) (Kim, J.)

20

(citing *Lujan*).  After the SAC's improper group pleading and legal conclusions are excised, *see infra*

21

§ II.C.1, Plaintiffs' entire argument for subject matter jurisdiction rests on piercing the corporate veil.

22

*See* SAC ¶¶ 22–28.  However, because the SAC does not support piercing the corporate veil, and the

23

jurisdictional evidence soundly defeats such an argument, the injuries alleged by Plaintiffs are *not*

24

*traceable* to Envestnet for Article III purposes.  *See Pritikin v. Dep't of Energy*, 254 F.3d 791, 797 (9th

25

Cir. 2001) (to have Article III standing, a plaintiff must demonstrate "a causal connection between the

26

injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of

27

the defendant" (quoting *Lujan*, 504 U.S. at 560–61 (alterations and quotation marks omitted));

28

*Sugasawara v. Ford Motor Co.*, No. 18-CV-06159-SHK, 2019 WL 3945105, at *7 (N.D. Cal. Aug. 21, 2019) (without injury "that is fairly traceable to [the defendant's] alleged wrongdoing, the plaintiffs cannot sustain their claims"). Thus, the SAC alternatively fails under Federal Rule of Civil Procedure 12(b)(1) and Envestnet should be dismissed. *Accord, e.g.*, *Williams v. Progressive*, 2019 WL 1434241, at *3 (finding no standing over parent corporation where plaintiff failed adequately to allege alter ego liability).

### C. Even if Envestnet Were Subject to Jurisdiction, the SAC Fails to State Any Claim Against Envestnet.

Even if Envestnet were subject to the personal and subject matter jurisdiction of this Court, the SAC pleads no plausible facts *against* Envestnet to support the alleged causes of action. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted). A plaintiff "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone*, 2011 WL 4403963, at *8. The SAC contains no non-conclusory facts to support any separate claims against Envestnet.

#### 1. Plaintiffs Do Not Allege Any Actionable Conduct by Envestnet.

"Courts consistently conclude that a complaint which lump[s] together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." *Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 WL 2041995, at *7 (N.D. Cal. 2018) (quotation marks and alterations omitted); *Fagbohungbe v. Caltrans*, No. 13-cv-03801-WHO, 2014 WL 644008, at *3 n.4 (N.D. Cal. 2014) ("The general allegation regarding 'defendants' is also insufficient on its face because it does not identify which specific defendants[.]"). Here, rather than removing the impermissible group pleading that pervaded their FAC, Plaintiffs *added* more such allegations in the SAC. *See generally* SAC ¶¶ 3, 9, 12,

14 , 67, 69, 122, 130, 148 (all similarly adding new substantive allegations against "Defendants," collectively).  Not a single one of the SAC's 273 allegations explains whether and how *Envestnet*, as opposed to Yodlee, purportedly caused Plaintiffs' harm.  But for the fact that Envestnet is the parent company of Yodlee, Envestnet would not have been sued.  However, parental status is insufficient basis to maintain any claims against Envestnet.

        2.     <u>The SAC Also Fails for the Reasons Provided in Yodlee's Separate Motion to Dismiss.</u>

The SAC also fails to state any valid causes of action against Envestnet for all the reasons set forth in Yodlee's separate Motion to Dismiss, which Envestnet joins and incorporates by reference here.

## III.    CONCLUSION

For the foregoing reasons, this Court should dismiss all claims against Envestnet with prejudice. *See Woolery v. Smith*, No. 17-cv-06786-SK, 2018 WL 3328496, at \*2 (N.D. Cal. 2018) (Kim, J.) (a court should not grant leave to amend when amendment is futile).

DATED:  May 5, 2021

COVINGTON & BURLING LLP

By:  */s/ Simon J. Frankel*

SIMON J. FRANKEL (SBN 171552)
JENNA L. ZHANG (SBN 336105)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: jzhang@cov.com

ERIC C. BOSSET (*pro hac vice*)
DIANA F. LEE (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 10th Street NW
Washington, D.C. 20001
Telephone: +1 (202) 662-6000
Facsimile: +1 (202) 662-6291
Email: ebosset@cov.com
Email: dlee@cov.com

*Attorneys for Defendants*
*Yodlee, Inc. and Envestnet Inc.*