MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

*Attorneys for Defendant Yodlee, Inc.*

BENJAMIN D. STEINBERG (*pro hac vice*)
KELLIE LERNER (*pro hac vice* forthcoming)
LAURA SONG (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
bsteinberg@robinskaplan.com
klerner@robinskaplan.com
lsong@robinskaplan.com

CHRISTIAN LEVIS (*pro hac vice*)
AMANDA FIORILLA (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Attorneys for Plaintiffs and the
Proposed Classes*

[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>YODLEE, INC.,<br><br>                    Defendant. | Case No. 3:20-cv-05991-SK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Sallie Kim<br>Conference Date: October 23, 2023<br>Conference Time: 1:30 p.m. |

Pursuant to Civil L.R. 16-10(d) and the Court's notice dated August 18, 2023 (Dkt. No. 348), Plaintiffs and Yodlee, Inc. respectfully submit this updated joint case management statement (1) reporting progress and changes since the last statement was filed, (2) setting forth the parties' proposals for the remainder of the case development process, and (3) reporting the parties' views about whether using some form of ADR would be appropriate.

## I.      STATUS OF DISCOVERY

### A.      Plaintiffs' Position

Since fact discovery reopened on May 8, 2023, Plaintiffs have worked diligently to fill gaps in the documentary discovery record so that they can take depositions and prepare expert reports sufficiently in advance of the January 12, 2024 fact-discovery deadline. Despite Plaintiffs' best efforts, including meeting and conferring with Yodlee and PayPal at least 10 times, certain fundamental categories of documents and information remain unproduced. This has forestalled Plaintiffs' ability to move this litigation forward. As summarized below, some of the core discovery that remains outstanding includes:

1. The screens and disclosures PayPal users saw when linking bank accounts using Yodlee's Instant Account Verification ("IAV") service;

2. Basic information about what types of data Yodlee collected and stored as part of its IAV service;

3. De-identified data showing the volume and dates of account linkages, the banks involved, the linking methods used, and the categories of data collected; and

4. Copies of the data Yodlee collected from the named Plaintiffs.

While Plaintiffs are hopeful that these issues can be resolved without Court intervention, Plaintiffs anticipate that certain issues may require briefing in the coming weeks to ensure Plaintiffs receive this information with sufficient time to take depositions and prepare expert reports before fact discovery closes in January 2024. Plaintiffs have expressed to Yodlee several times their frustration over its discovery delays, and their concern that any further delay will force Plaintiffs to rush depositions without a sufficient documentary record. To be clear, Yodlee has produced *just 17* documents since discovery reopened in May 2023, belying its claims about purported discovery burden.

Through their *own* discovery efforts and their *own* nonparty subpoenas, Plaintiffs determined that they did not use Yodlee's IAV service in connection with most of the twenty IAV apps they used, based on new information about the scope and dates of Yodlee's IAV services for those apps. Plaintiffs' claims are now focused on PayPal, Charles Schwab, and Amazon Pay. Yodlee's attempt below to deflect blame for its discovery delays through misstatements and unsupported rhetoric is inappropriate. Plaintiffs will address the specifics of Yodlee's discovery delays on an issue-by-issue basis in the sections that follow and in forthcoming briefing.

### B.      Yodlee's Position

Discovery since the last case management statement has confirmed that Plaintiffs had no basis for the vast majority of their claims about Yodlee's IAV clients, with the burden of those misfires falling disproportionately on Yodlee.  On June 2, Plaintiffs identified twenty apps with which they claimed to have used Yodlee's IAV service.[1]  Now, after months of discovery and fact investigation, including Plaintiffs' subpoenas to dozens of Yodlee's clients, and after a series of voluntary dismissals by Plaintiffs (Dkt. Nos. 324, 326-28), only half of the original Plaintiffs remain in the litigation.  Those remaining Plaintiffs used the IAV service with (at most) three apps – PayPal, Charles Schwab, and (possibly) Amazon Pay.  None of those Plaintiffs used Yodlee's IAV service with any other app, yet Yodlee has had to expend considerable resources, including hundreds of hours of employee and attorney time, chasing down dead ends and producing client information to which, as it turns out, Plaintiffs were never entitled.

It has been nearly nine months since the Court encouraged Plaintiffs to get their unique identifiers from PayPal so Yodlee can investigate their claims.  (Dkt. No. 282 at 7:8-22.)  *Only three days ago,* Plaintiffs provided codes purporting to be their PayPal GUIDs; Yodlee searched its PayPal database for those codes and found no information related to Plaintiffs.  Plaintiff Clark still has not provided any GUID or other information to show that he even used Yodlee's IAV service with Amazon Pay.[2]

---

[1]      Amazon Pay, Charles Schwab, E-Trade, Google Pay, Merrill Edge, Square, Uber, Tally, Vanguard, Venmo, Xoom, Mastercard, Chase, Citibank, Intuit, Pershing, Credit One Bank, Target RedCard, PayPal, and Discover.

[2]      Yodlee was able to determine that Plaintiffs Rollier and Cottrell used IAV with Charles Schwab only because Charles Schwab, unlike PayPal and Amazon Pay, had set up its IAV configuration to use an optional name-matching feature.

Instead of moving this litigation forward, Plaintiffs appear to have focused their efforts on manufacturing problems to spin a misleading and inflammatory narrative that they should not be faulted for failing to substantiate their own claims.  Yodlee addresses the purported discovery issues below only to the extent necessary to answer the most egregious of Plaintiffs' misstatements and will respond in full if and when Plaintiffs file a proper motion in accordance with Civil L.R. 37.

## II.    JOINT LETTER BRIEF, ECF NO. 360

### A.    Plaintiffs' Position

On September 21, 2013, the parties filed a joint letter brief concerning whether Yodlee should be compelled to produce certain "Account-Linking Data" responsive to Plaintiffs' Request for Production of Documents No. 2, Set Three. ECF No. 360. Plaintiffs will be prepared to discuss the issues raised in the joint letter brief at the status conference on October 23, 2023.

### B.    Yodlee's Position

The October 23 case management conference is not a hearing on Plaintiffs' discovery disputes. Yodlee will be prepared to discuss the parties' September 21 letter (Dkt. No. 360) if the Court wishes to and will otherwise present discovery disputes to the Court as needed in accordance with Civil L.R. 37.

## III.    YODLEE'S COPIES OF THE NAMED PLAINTIFFS' DATA

### A.    Plaintiffs' Position

Two years ago, in August 2021, Plaintiffs requested Yodlee produce copies of the data it collected from the named Plaintiffs through its IAV service. Yodlee responded that it stores Plaintiffs' data not by user *name* but rather through alphanumeric user *codes* provided by third-party apps (*e.g.* PayPal). Yodlee claimed that to identify Plaintiffs' data in its systems, these third-party apps would need to identify the user codes that corresponded with the named Plaintiffs. Plaintiffs subpoenaed this information from PayPal in March 2023 and sent Yodlee the codes that PayPal produced in August 2023. After a month of delay, Yodlee claimed that the codes PayPal produced did not match the codes in its systems. Plaintiffs then requested new codes from PayPal, but PayPal claimed it did not possess the codes that Yodlee claimed it needed. Finally, after extensive meet-and-confers, PayPal identified a new set of potential codes last week, which Plaintiffs have provided to PayPal. It is not clear whether these are the codes Yodlee claims it needs to identify the named Plaintiffs' data in Yodlee's systems.

Plaintiffs have spent more than five months and seven meet-and-confers trying to navigate Yodlee and PayPal's competing explanations and believe that good faith cooperation on Yodlee and PayPal's part should have resolved this issue long ago. Absent a prompt resolution, Plaintiff will move the Court to compel Yodlee and PayPal to jointly identify the codes associated with the named Plaintiffs so that copies of their data can be produced.

### B.     Yodlee's Position

Approximately three years after filing this lawsuit, and over six months after the Court encouraged Plaintiffs to get their unique identifiers from PayPal, Plaintiffs sent Yodlee a set of codes that did not match anything in Yodlee's systems.  Yodlee explained as much to Plaintiffs on September 11 and volunteered examples of GUID codes to facilitate Plaintiffs' efforts.  Weeks of silence followed.  Then, on the Friday before this statement was due, Plaintiffs provided Yodlee with a new set of identifiers and asked Yodlee to check its systems again for Plaintiffs' IAV user data from PayPal.  Yodlee promptly searched its PayPal database using those identifiers and found no information related to Plaintiffs.  Yodlee has no objection to attending a meeting with PayPal to work through the GUID issue.

## IV.     INTERROGATORIES CONCERNING YODLEE'S DATA PRACTICES

### A.     Plaintiffs' Position

On July 14, 2023, Plaintiffs served interrogatories asking Yodlee, *inter alia*, to identify each category of data it collected through its IAV service, each category of collected data it then stored, and the time periods during which it collected and/or stored that data. Although this information is foundational to the case and indisputably within Yodlee's possession, Yodlee has not provided a complete response to Plaintiffs' interrogatories. Yodlee's interrogatory responses, among other deficiencies, do not address its collection and storage of users' bank login credentials and do not specify the time periods when it collected and stored each category of data.

When Plaintiffs sought to move to compel more complete interrogatory responses earlier this month, Yodlee committed to add specific information to its interrogatory responses by Friday, October 13, 2023. The day before that deadline, however, Yodlee retracted its commitment and has not produced the supplemental interrogatory responses it agreed to. Because these interrogatories concern basic facts about Yodlee's data practices that are foundational to this case—*i.e.* what data Yodlee collected and

when—Plaintiffs will be moving to compel this information later this week. Plaintiffs may also seek a modest amount of cost-shifting sanctions due to Yodlee's inappropriate tactics, which improperly delayed motion practice and caused Plaintiffs' counsel to incur unnecessary fees.

### B.    Yodlee's Position

Plaintiffs misstate the facts.  Plaintiffs have been receiving responsive documents and testimony from Yodlee addressing these foundational IAV issues since 2022, and in fact cited that evidence in their PayPal summary judgment briefing.  Despite this, Plaintiffs have spent much of the past summer churning out follow-up demands requiring Yodlee to expend additional time and resources restating and repackaging the same facts in duplicative interrogatory responses, and invariably threatening Yodlee with motions practice that would further burden both Yodlee and the Court.  In the latest example of this, Plaintiffs sent Yodlee a letter on September 28 requesting information that had already been provided in prior productions, testimony, and written discovery responses.   Yodlee nevertheless summarized that information again for Plaintiffs in a response letter on October 12, tracking the questions in Plaintiffs' September 28 letter and providing illustrative references to where the information could be found in Yodlee's prior productions and discovery responses.  Yodlee never committed to anything else, let alone "retracted" any such commitment.  Yodlee is troubled by Plaintiffs' persistent attempts to assign to Yodlee positions it has never taken, and to describe events that never occurred.  Yodlee will respond accordingly if and when Plaintiffs file a motion.

## V.    INFORMATION ON YODLEE'S DATA SALES

### A.    Plaintiffs' Position

In August 2021, Plaintiffs requested that Yodlee produce documents reflecting the prices at which it has sold user transaction data. Yodlee objected on the grounds that it purportedly does not sell the data it collects through IAV, only the data it collects through other products. While this claim is false, it also is not a basis to withhold information about its data sales. The prices Yodlee charges for user transaction data (whether collected via IAV or not) is relevant because it provides a benchmark for valuing the transaction data Yodlee collected from Plaintiffs and thus will help establish Plaintiffs' damages. Plaintiffs anticipate moving to compel should Yodlee continue to withhold information about the resale value of the user transaction data it collects.

**B.     Yodlee's Position**

Yodlee does not sell or license data provided by PayPal users via IAV.  Plaintiffs have identified no basis for disputing this fact.  Plaintiffs' attempt to obtain profit information concerning data products not at issue in this case is yet another improper attempt to expand the scope of this litigation in contravention of the Court's prior rulings, including its May 8 order "that the scope of discovery is limited to IAV products."  (Dkt. No. 319.)

## VI.     IMAGES OF PAYPAL'S ACCOUNT-LINKING SCREENS

**A.     Plaintiffs' Position**

In August 2022, Plaintiffs requested that Yodlee produce images of the user-interface screens that users were shown when linking their bank accounts via Yodlee's IAV service ("Account-Linking Screens"). These Account-Linking Screens lie at the heart of this case because they contain the disclosures or omissions relevant to assessing user consent, or lack thereof. In January 2023, Yodlee claimed it had produced all images of the PayPal Account-Linking Screens in its possession, but Yodlee's production was incomplete. Plaintiffs therefore re-subpoenaed PayPal in March 2023 for the complete set of Account-Linking Screens that were in effect during the class period, as well as documents showing when each set of Account-Linking Screens took effect. PayPal produced *some* additional documents between March-September 2023, but still has not produced a complete record of the Account-Linking Screens that were in effect during the class period. Last week, after more than four meet-and-confers, PayPal declined to produce any additional Account-Linking Screens. Plaintiffs plan to move to compel in the next two weeks if PayPal's position does not change.

**B.     Yodlee's Position**

Yodlee takes no position as to this discovery dispute between Plaintiffs and PayPal.

## VII.    FORTHCOMING DEPOSITIONS

**A.     Plaintiffs' Position**

As Plaintiffs noted in the prior Joint Case Management Statement (ECF No. 316), Plaintiffs intend on taking the remaining 7.5 depositions of Yodlee, a rule 30(b)(6) deposition of PayPal, and, if necessary, depositions of other relevant nonparties. Plaintiffs have been unable to take these depositions given the amount of evidence that remains outstanding, as described above.

**B.      Yodlee's Position**

In the five months since the last case management statement, in which Plaintiffs claimed they intended to take 7.5 additional depositions of Yodlee witnesses (Dkt. No. 316 at 4), Plaintiffs have not identified or noticed a single Yodlee witness for deposition.  Plaintiffs are not entitled to exhaust every purported dispute and loose end before proceeding with depositions, and their suggestion that ongoing discovery somehow renders them incapable of moving forward is belied by the depositions they took last year.  Yodlee, for its part, has completed its depositions of the five named Plaintiffs remaining in this case.

**VIII.   PROPOSED CASE SCHEDULE**

**A.      Plaintiffs' Position**

Plaintiffs do not favor any changes to the case schedule.

**B.      Yodlee's Position**

No changes to the case schedule are warranted at this stage.

**IX.     ALTERNATIVE DISPUTE RESOLUTION**

**A.      Plaintiffs' Position**

Plaintiffs sent Yodlee a settlement demand in March 2023 and offered to mediate. Yodlee has not made a counteroffer or agreed to mediation.

**B.      Yodlee's Position**

Plaintiffs still have not provided a credible settlement demand; accordingly, Yodlee does not believe alternative dispute resolution would be productive at this time.

DATED:  October 16, 2023                           Respectfully submitted,


                                                   */S/ Megan L. Rodgers*
                                                   Megan L. Rodgers

                                                   MEGAN L. RODGERS (SBN 310344)
                                                   **COVINGTON & BURLING LLP**
                                                   3000 El Camino Real
                                                   5 Palo Alto Square, 10th Floor
                                                   Palo Alto, CA 94306-2112
                                                   Telephone: (650) 632-4700
                                                   Email: mrodgers@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (*pro hac vice*)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

*Attorneys for Defendant Yodlee, Inc.*

*/S/ Benjamin D. Steinberg*
Benjamin D. Steinberg (*pro hac vice*)
Kellie Lerner (*pro hac vice* forthcoming)
Laura Song (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
bsteinberg@robinskaplan.com
klerner@robinskaplan.com
lsong@robinskaplan.com

Li Zhu (SBN 302210)
**ROBINS KAPLAN LLP**
55 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065-2133
Telephone: (605) 784-4013
lzhu@robinskaplan.com

Thomas J. Undlin (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
tundlin@robinskaplan.com


*/S/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, Pa 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

John Emerson (*pro hac vice*)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
kitchenoff@wka-law.com

Michele Carino (*pro hac vice* forthcoming)
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 622-6001
mcarino@grwlegal.com

*Attorneys for Plaintiffs and the
Proposed Classes*

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the other signatories have concurred in the filing of this document.

*/S/ Megan L. Rodgers*
Megan L. Rodgers