| | |
|---|---|
| BENJAMIN D. STEINBERG (*pro hac vice*)<br>KELLIE LERNER (*pro hac vice* forthcoming)<br>LAURA SONG (*pro hac vice*)<br>**ROBINS KAPLAN LLP**<br>1325 Avenue of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7400<br>bsteinberg@robinskaplan.com<br>klerner@robinskaplan.com<br>lsong@robinskaplan.com<br><br>CHRISTIAN LEVIS (*pro hac vice*)<br>AMANDA FIORILLA (*pro hac vice*)<br>**LOWEY DANNENBERG, P.C.**<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br>Telephone: (914) 997-0500<br>Facsimile: (914) 997-0035<br>clevis@lowey.com<br>afiorilla@lowey.com<br><br>*Attorneys for Plaintiffs and the Proposed Classes*<br><br>[additional counsel listed on signature page] | MEGAN L. RODGERS (SBN 310344)<br>**COVINGTON & BURLING LLP**<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306-2112<br>Telephone: (650) 632-4700<br>Email: mrodgers@cov.com<br><br>ZIWEI SONG (SBN 313842)<br>DANIEL RIOS (SBN 326919)<br>**COVINGTON & BURLING LLP**<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>Telephone: (415) 591-6000<br>Email: ksong@cov.com<br>Email: drios@cov.com<br><br>ERIC C. BOSSET (*pro hac vice*)<br>TARA SUMMERVILLE (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-6000<br>Email: ebosset@cov.com<br>Email: tsummerville@cov.com<br><br>ANDREW LEFF (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>Email: aleff@cov.com<br><br>*Attorneys for Defendant Yodlee, Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>YODLEE, INC.,<br><br>          Defendant. | Case No. 3:20-cv-05991-SK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge: Hon. Sallie Kim<br>Conference Date: December 11, 2023<br>Conference Time: 1:30 p.m. |

Pursuant to Civil L.R. 16-10(d) and the Court's notice dated October 23, 2023 (Dkt. No. 371), Plaintiffs and Defendant Yodlee, Inc. ("Yodlee") respectfully submit this updated joint case management statement (1) reporting progress and changes since the last statement was filed, and (2) setting forth the parties' proposals for the remainder of the case development process.

## I. PLAINTIFFS' POSITION

### A. Case Schedule

Together with this joint case management statement, Plaintiffs will be filing an administrative motion to extend the expert deadlines, deposition schedule, and certain limited follow-up discovery by four months due to Yodlee's refusal to produce Court-ordered data and other documents for another three or four months. Despite Plaintiffs' best efforts to expedite Yodlee's document productions to maintain the current case schedule, Yodlee will not produce the account-linking data it was ordered to produce on October 26, 2023 (ECF No. 375) ("Account-Linking Data") until late *February 2024 or March 2024 at the earliest*. Specifically, Yodlee does not plan to produce the Account-Linking Data for PayPal and Charles Schwab until January 17, 2024 and February 21, 2024, respectively. Only thereafter will Yodlee begin collecting Account-Linking Data for Amazon, which presumably will not be produced until March 2024 or later. For other key documents that remain unproduced,[1] such as the data Yodlee maintains on Plaintiffs and the Bank Transaction pricing information Yodlee was ordered to produce (*see* ECF No. 388), Yodlee still has not provided a production timeline, making it impossible for Plaintiffs to complete written discovery and fact depositions in the upcoming weeks as they intended.

Yodlee's production delays, which will not be remedied until February or March 2024 at the earliest, make the current January 12, 2024 fact-discovery deadline and January 22, 2024 expert-report deadline unworkable. Until the Account-Linking Data is produced in February or March 2024, Plaintiffs will not have the records they need to depose certain Yodlee and third-party witnesses about Yodlee's data practices or prepare expert data models. Further, once the Account-Linking Data is produced in

---

[1] In addition to the Account-Linking Data, Yodlee also has not produced (1) the data it maintains on Plaintiffs Darius Clark, Kyla Rollier and Jenny Szeto; (2) the deletion data referenced in Yodlee's Second Supplemental Responses to Plaintiffs' Interrogatories (Set Two); (3) documents showing the prices at which Yodlee sells Bank Transaction Data pursuant to the Court's order in ECF No. 388; or (4) potentially hundreds, if not thousands, of Microsoft Teams Messages, text files and email attachments that Yodlee has withheld due to deficiencies in Yodlee's document collection and production.

February or March 2024, Plaintiffs and their experts will need a reasonable amount of time thereafter—at least two to three months—to process the new data, prepare data models, take depositions, and draft their opinions before submitting expert reports.

Yodlee's new production timeline thus warrants extending parts of the case schedule to ensure that Plaintiffs are not prejudiced by Yodlee's delays and have adequate time to take depositions and prepare expert reports once the Account-Linking Data is belatedly produced. As set forth below, Plaintiffs propose extending most of the remaining case deadlines by four months while maintaining the current January 12, 2024 deadline for most written fact discovery. This modest extension will keep this action moving without unfairly short-circuiting Plaintiffs' ability to take informed depositions and prepare expert analysis on a normal schedule.

***Plaintiffs' Proposed Amended Case Schedule***

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Close of Fact Discovery Except Depositions and Limited Follow-Up Fact Discovery* | 1/12/24 | 1/12/24 |
| Close of Fact Depositions and Limited Follow-Up Fact Discovery[2] | 1/12/24 | 5/13/24 |
| Expert Disclosure Deadline | 1/22/24 | 5/22/24 |
| Expert Rebuttal Report Deadline | 3/4/24 | 7/8/24 |
| Close of Expert Discovery | 3/25/24 | 7/29/24 |
| Plaintiffs' Motion for Class Certification | 4/8/24 | 8/12/24 |
| Yodlee's Opposition to Class Certification | 5/13/24 | 9/16/24 |
| Plaintiffs' Class Certification Reply | 6/3/24 | 10/7/24 |
| Hearing on Class Certification | 7/1/24 | 11/4/24 |
| Opening Summary Judgement Motion | 8/22/24 | 12/20/24 |
| Summary Judgement Opposition and Cross Motion | 9/12/24 | 1/17/25 |
| Summary Judgement Reply and Opposition Cross-Motion | 10/3/24 | 2/7/25 |
| Reply to Summary Judgement Cross-Motion | 10/17/24 | 2/21/25 |
| Last Day for Hearing on Dispositive Motions | 11/18/24 | 3/24/25 |
| Pre-Trial Conference | 1/31/25 | 6/6/25 |
| Trial | 3/4/25 | 7/8/25 |

*Deposition Period:* The January 12, 2024 deadline for fact depositions should be extended by four months to May 13, 2024 so that Plaintiffs can depose certain Yodlee, PayPal, Charles Schwab, and Amazon witnesses with the benefit of the Account-Linking Data. This month, Plaintiffs will depose

---

[2] "Limited Follow-Up Fact Discovery" refers to fact discovery related to the Account-Linking Data or other new testimony or documents produced after January 12, 2024.

certain Yodlee witnesses who were not primarily involved in Yodlee's data-collection and data-storage activities (*e.g.* client managers, sales executives, etc.). However, Plaintiffs cannot meaningfully depose witnesses involved in Yodlee's data-collection and data-storage practices when the key records related to those practices remain unproduced. Nor can Plaintiffs meaningfully depose PayPal, Charles Schwab, or Amazon witnesses when the data related to each of those companies is outstanding. While Yodlee's internal documents contain some general information about Yodlee's procedures, only the real-world Account-Linking Data will establish what specific data Yodlee collected and stored, the scope of those practices, and how they changed over time—issues that are all vigorously disputed. Plaintiffs should be permitted to depose witnesses with this real-world data.

*Limited Follow-Up Fact Discovery:* Plaintiffs support maintaining the January 12, 2024 deadline for most discovery but believe the deadline for certain "Limited Follow-Up Fact Discovery" should be extended by four months to May 13, 2024. This tailored extension will allow Plaintiffs to issue narrow follow-up requests if Yodlee's belated productions prove deficient or unclear. Any such "Limited Follow-Up Fact Discovery" will not be open-ended; it will be confined strictly to requests about the Account-Linking Data, new testimony, or new documents produced after the current deadline to serve written discovery.

*Expert Deadlines and Ensuing Schedule:* The January 22, 2024 expert-disclosure deadline should be extended by four months to May 22, 2024, as should the rest of the ensuing case deadlines. Assuming Yodlee completes its document production in February or March 2024 as anticipated, a May 22, 2024 deadline for exchanging expert disclosures would give Plaintiffs and their experts two to three months to analyze the Account-Linking Data, prepare data models, and draft opinions before finalizing their expert reports. Requiring Plaintiffs to serve expert reports earlier would unfairly reward Yodlee's delays by forcing Plaintiffs to conduct data-modeling and draft opinions on an unreasonably short schedule.

The much narrower changes Yodlee proposes to the case schedule are not workable and would prejudice Plaintiffs in the extreme. Most notably, Yodlee's schedule would require Plaintiffs to submit expert reports on March 15, 2024, just *three weeks* after Yodlee finishes producing the PayPal and Charles Schwab Account-Linking Data, and likely *before* Yodlee produces the Account-Linking Data for Amazon. Forcing Plaintiffs and their experts to analyze a dataset containing millions of transactions and

draft complex expert reports within three weeks of its production, and before it is fully produced, is unrealistic and likely unprecedented. Modeling a large dataset is a multi-stage process that typically takes months.[3] Plaintiffs are not aware of a single modern class action where this type of work has been performed in three weeks.

Likewise, Plaintiffs should not be forced to take all but one fact deposition in the next month before the Account-Linking Data and other documents are produced, as Yodlee proposes. Yodlee's claim that the Account-Linking Data is only relevant to a single, technical Rule 30(b)(6) witness is false. As Yodlee knows, the Account-Linking Data will be one of the key exhibits at all depositions concerning Yodlee's data-collection and data-storage practices. It will be the best record Plaintiffs have of the true scope and details of Yodlee's misconduct. Yodlee's request to end depositions before Plaintiffs can question witnesses with the Account-Linking Data is gamesmanship and should be rejected. Cutting off fact depositions in this one-sided manner would not expedite the case schedule and would serve no benefit other than to spare Yodlee witnesses from meaningful examination.

**B.   Yodlee's Compliance with the Court's Oct. 26 Discovery Order (ECF 375)**

Yodlee has not complied with the Court's October 26, 2023 Amended Order on Pending Discovery Disputes, which compelled Yodlee to provide further responses to Plaintiffs' Interrogatories 6 and 11 by November 30, 2023. ECF No. 375 at 3 ("After reviewing the responses in depth, the Court find[s] that Yodlee did not respond to Interrogatories 5, 6, and 11, and therefore GRANTS Plaintiffs' motion to compel further responses . . . due by November 30, 2023."). Interrogatories 6 and 11 asked Yodlee to identify how long it stored, and when it deleted, each field of user data it collected. The supplemental responses Yodlee served on November 30, 2023 do not contain the new substantive information Yodlee was ordered to produce. Rather, Yodlee's responses state it will *later* produce a "list of each instance . . . when IAV user data was deleted" at some unspecified date in the future. Yodlee's failure to produce this information by the November 30, 2023 deadline, despite having five weeks to do so, violates the Court's

---

[3] Among other things, Plaintiffs and their experts will need to examine the Account-Linking Data for errors and omissions; load the data into a database, identify relevant fields; prepare a damages model tailored to the data; incorporate the data into the damages model; ensure the model's accuracy; analyze the results; and draft detailed report(s).

October 26, 2023 discovery order and is indicative of Yodlee's ongoing discovery delays. Plaintiffs will seek sanctions if they are forced to compel Yodlee's compliance.

### C. Stipulation regarding Remaining Fact Depositions

The Parties have entered into a stipulation regarding the number of remaining fact depositions that Plaintiffs may take in this case. The stipulation is being filed concurrently with this Case Management Statement.

### D. Vinay Raj

The Parties dispute whether Plaintiffs should be permitted to depose Yodlee employee Vinay Raj a second time. Plaintiffs initially deposed Mr. Raj a year-and-a-half ago in June 2022 concerning the specific issues and evidence raised in Yodlee's early summary judgment motion filed in October 2021. ECF No. 108. Now that the factual record is more developed and the evidence and legal issues go well beyond Yodlee's early 2021 motion, Plaintiffs should be entitled to depose Mr. Raj on the complete set of issues and evidence now at play in the case. Mr. Raj is an irreplaceable witness; his documents contain many of the most compelling admissions about Yodlee's privacy violations. Yodlee should not be allowed to shield Mr. Raj from being deposed on these broader issues simply because it chose to file an early motion in 2021, which required his interim testimony. The Parties intend to file a joint discovery letter concerning this dispute by December 8, 2023.

### E. Production of Bank Transaction Data

On November 28, 2023, the Court ordered Yodlee to produce documents showing the prices at which it sells Bank Transaction Data. ECF No. 388. Plaintiffs asked Yodlee when it plans to produce these documents out of concern for the case schedule. Yodlee responded on November 30, 2023 that it would be provide an update this week, but has not yet done so.

### F. Plaintiffs' PayPal Data

In the last Joint Case Management Statement in October 2023, ECF No. 364, Plaintiffs described Yodlee's ongoing, two-year-long failure to produce copies of the PayPal data it collected from Plaintiffs. Since then, Yodlee has produced some new Plaintiff data, but most remains outstanding. Yodlee has produced copies of just two Plaintiffs' data; claims it has located two other Plaintiffs' data that it has not yet produced; and claims it cannot locate a final Plaintiff's data. Plaintiffs have asked Yodlee to describe

its search methodology so that Plaintiffs can understand why data still has not been produced and whether Plaintiffs need to seek assistance from the Court. Yodlee has refused to provide specifics about its collection efforts. Plaintiffs intend to brief this issue should Yodlee's delays continue.

### G. Yodlee's ESI Collection

Plaintiffs have uncovered deficiencies in Yodlee's document production that raise serious concerns about Yodlee's document collection and its compliance with the Stipulation and Order Regarding Production of Electronically Stored Information Documents. ECF No. 147. Plaintiffs have identified nearly 1,000 examples where Yodlee failed to collect or improperly withheld Microsoft Teams messages, text files, email attachments, and in some case, entire repositories of ESI. Plaintiffs fear these examples reflect wholesale problems with Yodlee's document collection and production, which may impact thousands of unproduced documents. Yodlee has yet to respond to most of these issues. Plaintiffs have repeatedly attempted to schedule a meet and confer on this topic, but Yodlee has refused. Plaintiffs intend to file one or more joint discovery letters on these issues if they are not promptly resolved.

### H. Yodlee Source Code

Plaintiffs have requested to inspect the "source code" and other documents that Yodlee pledged to make available concerning whether IAV Data was included in its Data Panels. On November 30, 2023, Yodlee stated it expected to make its source code available in December if the parties agree to modify the Protective Order to add new source-code-specific protocols. Plaintiffs do not believe such a modification is necessary because the Protective Order already contains provisions governing source-code inspection.

Plaintiffs have also asked to schedule a broader inspection of Yodlee's codebase. Having placed its source code at issue, Plaintiffs are entitled to test Yodlee's contention that its products are coded to exclude IAV Data throughout the Class Period. Yodlee has yet to respond to this request. Plaintiffs will update the court of any progress on these issues at the upcoming conference.

## II. YODLEE'S POSITION

### A. Status of Discovery

Plaintiffs have spent the last three months trying to forestall the approaching fact discovery cutoff by manufacturing a battery of disputes, including by rehashing previously resolved issues and purporting to raise new issues about documents from Yodlee productions dating back nearly *two years*. Since

September, Plaintiffs' tactics have resulted in more than three dozen email exchanges, seven letters, and seven meet-and-confers, the majority of which have not materially advanced this litigation. These tactics appear calculated, not to facilitate resolution of this three-year-long case, but to put artificial pressure on a fact discovery period that has already spanned nearly nineteen months (at substantial cost and burden to Yodlee), delay expert discovery, and further postpone progress towards dispositive motions.

### 1. Plaintiffs' List of Purported Disputes

<u>Plaintiffs' PayPal IAV data</u>.  Three years into this litigation, Plaintiffs still had not obtained information from PayPal sufficient to enable Yodlee to locate their IAV data. (*See* Dkt. No. 364 at 4.) After the last case management conference, Yodlee and PayPal voluntarily connected and have been working directly with each other to search for Plaintiffs' IAV data in Yodlee's PayPal database. As a result of that voluntary collaboration, Yodlee was able to locate IAV data from PayPal corresponding to four of the five named Plaintiffs (Clark, Cottrell, Lumb, and Rollier). Yodlee has already produced the data for two Plaintiffs and will produce the data for the other two this week. Plaintiffs know this, yet cite their IAV data from PayPal as an example of purported delay by Yodlee.

<u>Yodlee's supplemental interrogatory responses</u>.  The Court ordered Yodlee to provide "further responses to Interrogatories 5, 6, and 11" by November 30. (Dkt. No. 375 at 3.) Yodlee did exactly that, explaining in detail which IAV data fields it retrieved for the three apps potentially at issue and when (Interrogatory No. 5), when it stored that data (Interrogatory No. 6), and how it processed deletion requests from the apps at issue (Interrogatory No. 11). Yodlee also informed Plaintiffs that it would be ready the day after this statement, following processing and labeling pursuant to the protective order, to produce time-stamped data entries showing *every* instance (exceeding 42 million entries) when Yodlee deleted IAV data at PayPal, Charles Schwab, or Amazon Pay's request. Plaintiffs nevertheless accused Yodlee of violating the Court's order and creating delay merely because that data would be produced three business days after service of Yodlee's supplemental interrogatory responses.

<u>Pricing for "Bank Transaction Data"</u>.  Only last week, the Court ordered Yodlee to produce "documents showing the prices at which [Yodlee] sells 'Bank Transaction Data.'" (Dkt. No. 388 at 2.) Counsel is investigating what, if any, responsive documents exist and informed Plaintiffs that they would provide an update this week. Yet Plaintiffs characterize this as another example of delay by Yodlee.

<u>Yodlee's 2021-2022 document productions</u>.  On November 15, Plaintiffs sent Yodlee a letter purporting to describe deficiencies with productions that Yodlee completed fifteen months or more ago. All but one of those issues had never been raised by Plaintiffs in all that intervening time, and the one issue was a rehash of a question Yodlee had answered back in April 2022.  Yodlee nevertheless spent more time and resources investigating Plaintiffs' belated claims purportedly encompassing thousands of documents, only to find them without merit.  As a result of its investigation, Yodlee will produce this week ten newly identified responsive documents, none of which reflected any deficiency in Yodlee's document collection, review, or production processes.

<u>Yodlee's source code</u>.  In connection with Plaintiffs' recent motion to compel the production of non-existent documents relating to IAV data allegedly sold to third parties, Yodlee provided a declaration describing the code-level functionality of its data panel creation process.  (*See* Dkt. No. 385-2.)  Yodlee reviewed archived source code for that process and queried the current C-Panel dataset to confirm that PayPal IAV data was not included in any data panels. (*See id.*)  Yodlee also agreed to make available for inspection the source code and data needed to replicate and validate the analysis set forth in its declaration, and can do so within two weeks after entry of a modest but necessary tailoring of the protective order's source code-related provisions to account for the specific needs of Yodlee's systems involved in this inspection.  Without even seeing Yodlee's proposed amendment to the protective order or what Yodlee will produce, Plaintiffs are already arguing with no basis that further protections are not necessary for Yodlee's highly sensitive and proprietary source code, and that whatever Yodlee will make available for inspection will not be enough.

    **2.**     **Yodlee's forthcoming productions.**

Yodlee expects to complete the few production items that remain outstanding by *this week*, with the sole exception of its data production in response to the Court's ruling on Plaintiffs' RFP No. 2 (*see* Dkt. No. 375 at 3; Dkt. No. 381).  For RFP No. 2, as Yodlee previously explained in support of its objection to undue burden, producing the 26 data fields at issue for PayPal, Charles Schwab, and Amazon Pay would require approximately 1,560 hours of Yodlee employee time (i.e., twenty weeks with two Yodlee employees working full-time), including to create and populate a parallel database infrastructure, query the datasets at issue, and extract the data.  (Dkt. No. 360 at 5-6.)  Consistent with this estimate, Yodlee

currently expects to complete its production of the RFP No. 2 data relating to PayPal by January 17 and its production of the RFP No. 2 data relating to Charles Schwab by February 21. Yodlee accordingly suggests a limited extension of the case schedule tailored specifically to these RFP No. 2 datasets.[4]

### 3. Plaintiffs' Remaining Depositions

As of this writing, Plaintiffs have taken 2.5 depositions, leaving them with 7.5 depositions remaining under Rule 30. On October 30, Plaintiffs notified Yodlee that they intended to depose seven more current and former Yodlee employees. One of those individuals has passed away, as Yodlee informed Plaintiffs. Another individual, Vinay Raj, was already deposed for nearly seven hours on an unrestricted array of topics, including those referenced in Plaintiffs' statement. Yodlee intends to move this week for a protective order as to Mr. Raj, who is no longer employed at Yodlee and will be in India for an indefinite period acting as the sole caretaker for his mother as she undergoes surgery and treatment for cancer. For the other five individuals who Plaintiffs asked to depose, Yodlee provided dates for December depositions at Plaintiffs' counsel's request.

To date, however, Plaintiffs have noticed only two Yodlee depositions, cancelled another with less than a week's notice, and taken no action on the other individuals who continue to hold open the December dates provided to Plaintiffs' counsel. For those individuals, Plaintiffs have refused to either notice depositions or release the dates being held, citing first a purported need to agree on deposition limits and then, once that was resolved by stipulation, a purported need to agree on the case schedule before they will proceed with *any* fact depositions other than the two already noticed. Moreover, Plaintiffs now contend that their intent to take fact depositions next year is a reason to further delay the case schedule, even though Plaintiffs are the ones refusing to proceed on the December dates that Yodlee provided (and the individuals in question have held open) at Plaintiffs' counsel's request. This is consistent with Plaintiffs' pattern of manufacturing their own delays as purported excuses for further postponing a fact discovery deadline that imposes one-sided and disproportionate costs on Yodlee.

*        *        *

---

4   Yodlee's proposed extension below assumes that the parties will soon confirm that Amazon Pay should *not* remain in the case, and thus obviate the need to brief that issue to the Court.

To summarize, since the last case management conference, Plaintiffs have dedicated their efforts to drumming up discovery disputes and seeking to further postpone the fact discovery cutoff. Plaintiffs have also refused to proceed with most of their remaining fact depositions, apparently so they can cite those outstanding depositions and the possibility of follow-up document discovery issues that Plaintiffs assert may arise from those depositions as an excuse to protract fact discovery. Yodlee, for its part, has sought to advance this case towards resolution by voluntarily cooperating with PayPal to search for Plaintiffs' IAV data, confirming at the code level that Yodlee's data panel creation process does not work in the manner alleged by Plaintiffs, wrapping up most outstanding productions, and providing December deposition dates at Plaintiffs' counsel's request.

B.  **Proposed Case Schedule**

Plaintiffs filed this lawsuit over three years ago and have had almost nineteen months to take fact discovery. Yodlee has produced more than 115,000 documents, most of which Plaintiffs had received fifteen months or more ago. The only outstanding item that cannot be completed within the current case schedule is Yodlee's extensive and time-consuming production of populated data fields since 2014 in response to the Court's October 26 order on RFP No. 2, which data fields Plaintiffs claimed to need for their damages analyses and class certification motion. (*See* Dkt. No. 375 at 3.) Contrary to Plaintiffs' characterization, these data fields are not "key records" related to Yodlee's data practices, nor do such "key records" remain unproduced; Yodlee has produced many hundreds (if not more) of documents, including policies, guidelines, and emails, concerning this topic – documents that both sides have known about and repeatedly used in briefing since 2021. Moreover, Yodlee has provided written interrogatory responses and Plaintiffs' own IAV data. The RFP No. 2 production, in contrast, will consist of voluminous sets of spreadsheets generated by specialized personnel using a highly technical process, with rows corresponding to each instance of IAV activity since 2014 for certain clients, and columns corresponding to 26 different and arbitrarily requested data fields (to the extent that data exists). Neither percipient Yodlee fact witnesses nor third-party witnesses will reasonably be expected to understand and testify about those data spreadsheets. Nor would it be proportional to the needs of the case to further expand this long-running fact discovery period on account of such specialized data produced for the narrow purpose of facilitating Plaintiffs' expert analyses. Rather than again expanding fact discovery, the Court should

enter a more limited extension tailored to RFP No. 2 so the parties may finally proceed to expert discovery and dispositive motions, and move this case towards resolution.

Yodlee's proposed case schedule below is designed to accomplish the efficient and expeditious progression of this litigation. Yodlee proposes a tailored extension of time only as reasonably needed to complete the data production in response to the Court's order on RFP No. 2. Instead of an unqualified extension of time for all fact depositions and unlimited follow-ups on new testimony, Yodlee's proposal allows enough time for Plaintiffs to depose someone about the spreadsheets and data fields to which RFP No. 2 relates. This can be accomplished with a single Rule 30(b)(6) witness. Under Yodlee's proposed schedule, Plaintiffs also would have approximately two months between the production of data related to PayPal by January 17 and the expert disclosure deadline on March 15; this is consistent with Plaintiffs' purported need for two to three months to complete workstreams up through expert reports. The rest of the case schedule should be adjusted to account for the foregoing extensions, and no more – culminating in a trial date that will be delayed only about a month from the current schedule.

\*    \*    \*

| Event | Current Deadline | Yodlee's Proposal |
|---|---|---|
| Close of Fact Discovery (except for the items noted below) | 1/12/24 | 1/12/24 |
| Last day for Yodlee to complete data production for PayPal and Charles Schwab in response to RFP No. 2 | | 2/23/24 |
| Last day for plaintiffs to take fact depositions concerning Yodlee's data production in response to RFP No. 2 | | 3/8/24 |
| Expert Disclosure Deadline | 1/22/24 | 3/15/24 |
| Expert Rebuttal Report Deadline | 3/4/24 | 4/26/24 |
| Close of Expert Discovery | 3/25/24 | 5/17/24 |
| Plaintiffs' Motion for Class Certification | 4/8/24 | 5/31/24 |
| Yodlee's Opposition to Class Certification | 5/13/24 | 7/5/24 |
| Plaintiffs' Class Certification Reply | 6/3/24 | 7/26/24 |
| Hearing on Class Certification | 7/1/24 | 8/19/24 |

| | | |
|---|---|---|
| Opening Summary Judgment Motion | 8/22/24 | 9/20/24 |
| Summary Judgment Opposition and Cross Motion | 9/12/24 | 10/11/24 |
| Summary Judgment Reply and Opposition Cross-Motion | 10/3/24 | 11/1/24 |
| Reply to Summary Judgment Cross-Motion | 10/17/24 | 11/15/24 |
| Last Day for Hearing on Dispositive Motions | 11/18/24 | 12/16/24 |
| Pre-Trial Conference | 1/31/25 | 2/28/25 |
| Trial | 3/4/25 | 4/1/25 |

DATED:  December 4, 2023                    Respectfully submitted,


/S/  Christian Levis
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, Pa 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com


Benjamin D. Steinberg (*pro hac vice*)
Kellie Lerner (*pro hac vice* forthcoming)
Laura Song (*pro hac vice*)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, NY 10019
Telephone: (212) 980-7400
bsteinberg@robinskaplan.com
klerner@robinskaplan.com

lsong@robinskaplan.com

Li Zhu (SBN 302210)
**ROBINS KAPLAN LLP**
55 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065-2133
Telephone: (605) 784-4013
lzhu@robinskaplan.com

Thomas J. Undlin (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
tundlin@robinskaplan.com

John Emerson (*pro hac vice*)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
kitchenoff@wka-law.com

Michele Carino (*pro hac vice* forthcoming)
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 622-6001
mcarino@grwlegal.com

*Attorneys for Plaintiffs and the Proposed Classes*

/S/  Megan L. Rodgers
Megan L. Rodgers

MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)

DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*

## FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the other signatories have concurred in the filing of this document.

*/S/ Christian Levis*
Christian Levis