| | |
|---|---|
| BENJAMIN D. STEINBERG (*pro hac vice*)<br>KELLIE LERNER (*pro hac vice* forthcoming)<br>LAURA SONG (*pro hac vice*)<br>**ROBINS KAPLAN LLP**<br>1325 Avenue of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7400<br>bsteinberg@robinskaplan.com<br>klerner@robinskaplan.com<br>lsong@robinskaplan.com<br><br>CHRISTIAN LEVIS (*pro hac vice*)<br>AMANDA FIORILLA (*pro hac vice*)<br>**LOWEY DANNENBERG, P.C.**<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br>Telephone: (914) 997-0500<br>Facsimile: (914) 997-0035<br>clevis@lowey.com<br>afiorilla@lowey.com<br><br>*Attorneys for Plaintiffs and the Proposed Classes*<br><br>[additional counsel listed on signature page] | MEGAN L. RODGERS (SBN 310344)<br>**COVINGTON & BURLING LLP**<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306-2112<br>Telephone: (650) 632-4700<br>Email: mrodgers@cov.com<br><br>ZIWEI SONG (SBN 313842)<br>DANIEL RIOS (SBN 326919)<br>**COVINGTON & BURLING LLP**<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>Telephone: (415) 591-6000<br>Email: ksong@cov.com<br>Email: drios@cov.com<br><br>ERIC C. BOSSET (*pro hac vice*)<br>TARA SUMMERVILLE (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-6000<br>Email: ebosset@cov.com<br>Email: tsummerville@cov.com<br><br>ANDREW LEFF (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>Email: aleff@cov.com<br><br>*Attorneys for Defendant Yodlee, Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>YODLEE, INC.,<br><br>        Defendant. | Case No. 3:20-cv-05991-SK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:  March 4, 2024<br>Time:  1:30 p.m.<br>Place:  Courtroom C, 15th Floor |

Pursuant to Civil L.R. 16-10(d) and the Court's order dated February 1, 2024 (Dkt. No. 463), Plaintiffs and Defendant Yodlee, Inc. respectfully submit this updated joint case management statement (1) reporting progress and changes since the last statement was filed, and (2) setting forth the parties' proposals for the remainder of the case development process.

## I.   PLAINTIFFS' POSITION

### A.   Yodlee's Failure to Comply with the Court's Oct. 26 Order (ECF No. 375)

Yodlee has not produced the majority of the account-linking data ("Account-Linking Data") the Court ordered on October 26, 2023 (ECF No. 375) ("October 26 Order"). Specifically, Yodlee has failed to produce five years' worth of Account-Linking Data for PayPal and three years' worth of Account-Linking data for Charles Schwab, *omitting data from more than half of the putative class period*. Plaintiffs discovered this data was missing from Yodlee's production through their own analysis without being notified by Yodlee. Only after Plaintiffs raised the issue did Yodlee begin collecting the remainder of the Account-Linking Data, which it claims it will produce by March 5.

Yodlee's failure to produce most of the Court-ordered Account-Linking Data has prevented Plaintiffs from completing fact depositions by February 27, 2024 or preparing expert reports by March 8, 2024.[1] The Court previously recognized it would be "difficult for the plaintiffs to prepare their expert report and take [fact] depositions until they have this data," and "have enough time to work with it[.]" *See* Dec. 11, 2023 H'rg Tr. 5:11–19, 7:8–15; ("[H]ow are [Plaintiffs] supposed to take the depositions and have their experts prepare the reports [without the Account-Linking Data]?" I'm puzzled by that."). The Court thus extended the fact-deposition and expert-report deadlines to February 27 and March 8, respectively, based on Yodlee's claim it would complete its production of Account-Linking Data for PayPal by January 17, 2024 and Charles Schwab by February 23, 2024. ECF No. 404.

But Yodlee still has not done so. Because most of the Account-Linking Data remains outstanding, Plaintiffs have sought a modest extension of the fact deposition and expert discovery deadlines to provide additional time for Yodlee to complete its Court-ordered production. *See* Plaintiffs'

---

[1] Plaintiffs have completed most of their fact depositions but are unable to take the following three fact depositions until Yodlee produces the Account-Linking Data: (1) Brian Costello, (2) Rule 30(b)(6) deposition of Yodlee; and (3) Rule 30(b)(6) deposition of PayPal.

Administrative Motion to Enlarge Time for Fact Deposition and Expert Disclosures, ECF No. 472. To be clear, Plaintiffs are *not* seeking to extend the May 13, 2024 class certification deadline or any other case deadlines, only to ensure they receive the Account-Linking Data before they take their three remaining fact depositions and prepare expert reports. Plaintiffs' proposed modifications to the case schedule are reflected below:[2]

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Deadline for Yodlee to Produce Account-Linking Data | -- | 3/5/24 |
| Close of Fact Depositions | 2/27/24 | 3/15/24 |
| Expert Disclosure Deadline | 3/8/24 | 3/29/24 |
| Expert Rebuttal Report Deadline | 4/5/24 | 4/19/24 |
| Close of Expert Discovery | 4/26/24 | 5/3/24 |
| Plaintiffs' Motion for Class Certification | 5/13/24 (no change) | |
| Remainder of the Case Schedule | No changes | |

Yodlee's explanation for why it did not produce most of the Account-Linking Data despite having three months to perform its data collection is unpersuasive. Yodlee claims it initially searched only "transaction-level" tables and not "account-level" tables for the Account-Linking Data. But nothing in the Court's October 26 Order permitted Yodlee to search only one type of data repository and not another, particularly when it became clear that the initial repositories it searched lacked data from most of the class period. *See* ECF No. 375 at 2. Indeed, the Court's Order required Yodlee to collect "[a]ll data, including Transaction-Level Data" corresponding to 26 specific fields of Account-Linking Data. ECF No. 375 at 1-2. Yodlee told the Court that collecting this data would require pulling data from *multiple* "relevant data sets" and running a "separate query" for "each data field." ECF No. 360 at 5. Instead of performing this type of data collection, Yodlee now admits it focused on just one group of data tables even after it knew those tables lacked most of the data the Court ordered. Plaintiffs are still evaluating whether and to what extent sanctions are warranted based on Yodlee's failure to timely comply with the Court's October 26 Order.

**B.  Yodlee's Failure to Produce Account-Linking Data from Two PayPal Co-Brands**

Yodlee has also failed to produce Account-Linking Data for two of PayPal's four "cobrands" (identified as "10009752" and "10000800" a/k/a "8x") in violation of the Court's October 26 Order. At

1   least one of these cobrands was highly active during the class period. Yodlee does not dispute that these
2   are IAV cobrands but claims that the data in these cobrands are "not responsive" because they
3   purportedly reflect "monitoring account[s]." However, Yodlee has refused to explain what "monitoring
4   account[s]" means. Furthermore, for the first time in this statement, Yodlee now claims that data from
5   PayPal cobrand '800 was deleted per "Yodlee's policy."  Plaintiffs intend to brief this issue unless
6   Yodlee agrees to produce Account-Linking Data from these PayPal IAV cobrands, which should have
7   been produced months ago.

### C. Yodlee's Failure to Produce Unique PayPal User Numbers

For the few years where Yodlee did produce Account-Linking Data for PayPal, Yodlee did not produce complete "unique user numbers," which was one of the 26 data fields the Court ordered Yodlee to produce. *See* ECF No. 360 at 1, n.1 (data field "e"); ECF No. 375 at 1-2. Plaintiffs requested Yodlee produce unique user numbers so that Plaintiffs could measure the number of individual PayPal users who linked bank accounts via IAV. While Yodlee produced unique user numbers for *some* IAV linkages, for millions of others Yodlee produced a single, repetitive code that is not unique to any individual user. Plaintiffs raised this issue with Yodlee on January 31, 2024 but Yodlee has refused to supplement its production with other available identifiers. Plaintiffs will seek relief from the Court if the parties are unable to reach a resolution.

### D. Deposition of Brian Costello

As the Court previously held, Plaintiffs should be permitted to depose Brian Costello, Yodlee's former Chief Information Security Office, after Yodlee completes its production of Account-Linking Data. On December 12, 2023, Plaintiffs notified the Court of the fact witnesses they sought to depose after they received the Account-Linking Data, listing Brian Costello as Witness #1. ECF No. 399. Two days later, the Court extended the fact-deposition deadline to February 27, 2024, six weeks after Yodlee claimed it would produce the PayPal Account-Linking Data. ECF No. 404. The Court's extension of the fact-discovery deadline was consistent with its finding that Plaintiffs should not be required "to take these depositions until they have [the Account-Linking Data]." *See* Dec. 11, 2023 H'rg Tr. 5:11–19.

Plaintiffs thereafter agreed to depose Mr. Costello on February 27, 2024. However, Plaintiffs had to postpone his deposition because (as explained above) Yodlee has not produced Account-Linking Data

for over half the class period. Plaintiffs told Yodlee they would be postponing Mr. Costello's deposition shortly after learning Yodlee's data production was incomplete. On February 19, Plaintiffs proposed extending the deadline for Mr. Costello's deposition to March 15. When Yodlee declined, Plaintiffs proposed taking half of Mr. Costello's deposition on February 27, 2024 and half after Yodlee produced the Account-Linking Data. Yodlee rejected that offer on February 23. That same day, on February 23, Plaintiffs informed Yodlee they would not be proceeding with Mr. Costello's deposition until after the Account-Linking Data was produced. Yodlee's claim below that Plaintiffs did not postpone Mr. Costello's deposition until "today" is false.

Yodlee's refusal to extend Mr. Costello's deposition date despite not completing its production of Account-Linking Data is contrary the Court's rulings. Because Mr. Costello oversaw Yodlee's data-storage and data-deletion practices, Plaintiffs should be permitted to depose him using empirical data showing what data Yodlee actually stored and deleted, *i.e.*, the Account-Linking Data. Plaintiffs raised this same argument in December 2023, *see* ECF No. 393 at 5, and the Court extended the fact deposition period until after Yodlee produced the Account-Linking Data. ECF No. 404. The Court should preserve this sequence of deadlines and permit Plaintiffs to depose Mr. Costello by March 15, 2023 after the Account-Linking Data is produced.

E.  **Plaintiffs' Rule 30(b)(6) Deposition of Yodlee**

The Parties dispute both the date and topics of Plaintiffs' Rule 30(b)(6) deposition of Yodlee.

<u>Deposition Date</u>: As with Mr. Costello, Plaintiffs should be permitted to take their Rule 30(b)(6) deposition of Yodlee by March 15, 2024 after Yodlee completes its production of Account-Linking Data. In December 2023, Plaintiffs notified the Court that they intended to depose Yodlee's Rule 30(b)(6) representative(s) after Yodlee produced the Account-Linking Data. ECF No. 399 at 1. The Court agreed and extended the fact-deposition period until February 27, 2024. ECF No. 404. Given that Yodlee still has not produced most of the Account-Linking Data, the Court should further extend the fact deposition period to March 15, 2024 so that Plaintiffs can use the Account-Linking Data at their Rule 30(b)(6) deposition of Yodlee as the Court previously ordered.

To be sure, Plaintiffs attempted to work with Yodlee to schedule certain Rule 30(b)(6) topics unrelated to the Account-Linking Data by February 27, 2024, but Yodlee made this impossible. *First,*

Yodlee still has not designated dates or witnesses for 10 deposition topics, including on topics Yodlee has agreed to. These deposition dates would need to be extended anyway due to Yodlee's delays. *Second*, Yodlee sought to impose a hyper-narrow view of which topics relate to the Account-Linking Data. Contrary to the Court's prior rulings, Yodlee contends only two Topics relate to the Account-Linking Data and all others do not, including Topic 3 concerning the storage and deletion of user data. *Third,* while Yodlee has agreed to designate a witness about its responses to Plaintiffs' Third Set of Interrogatories, Yodlee would not agree to serve its responses until March 4, preventing any deposition by February 27. *See infra* at 7. These delays, together with Yodlee's ongoing failure to produce the Account-Linking Data, underscore the need to extend the fact deposition period to March 15, 2024.

<u>Deposition Topics</u>: Plaintiffs anticipate the Parties will need to brief several disputed deposition topics. Plaintiffs proposed that the Parties brief their disputes this week, but Yodlee has not agreed to do so. Plaintiffs are frustrated with Yodlee's delays and attempt to manufacture disputes at the last minute. Plaintiffs served their original Rule 30(b)(6) Topics on November 5, 2021 and took three hours of Rule 30(b)(6) testimony in June 2022. Before proceeding with their remaining Rule 30(b)(6) time, Plaintiffs agreed to substantially narrow their previously noticed topics in good faith, with the goal of prompting efficiency and limiting any areas of dispute. Rather than reciprocating that gesture, Yodlee used Plaintiffs' narrowed list of deposition topics as a pretext to serve new and vastly overbroad objections on February 19, 2024 to virtually all of Plaintiffs' narrowed topics. For example, Yodlee is now refusing to designate a witness on topics as basic as:

a) Yodlee's contractual agreements with PayPal and Charles Schwab;
b) The basic functions of Yodlee's IAV services;
c) The IAV verification criteria used to verify bank accounts;
d) Yodlee's stated (i.e. written) positions on consumer-data privacy principles; and
e) The authenticity of the documents Yodlee produced in this case.

Had Plaintiffs known Yodlee would exploit Plaintiffs' narrowed list of topics to launch new objections at the last minute, Plaintiffs would have proceeded with their original deposition notice. Plaintiffs believe the Parties should brief their disputes as soon as possible so that all Rule 30(b)(6) testimony can be taken by March 15, 2024.

**F.    Yodlee's Outstanding Responses to Court-Ordered Interrogatories**

Yodlee still has not responded to Plaintiffs' Third Set of Interrogatories, which the Court ordered Yodlee to respond to in its February 1, 2024 order. *See* ECF No. 463 at 1 (ordering Yodlee to respond to Interrogatories 1, 3, 4, 5 and 11). Plaintiffs asked Yodlee to provide its interrogatory responses by mid-February so they could be used at depositions and in expert reports. But Yodlee would not commit to respond before March 4, 2024 despite having had Plaintiffs' interrogatories since December 13, 2023. Yodlee refused to respond sooner despite agreeing to designate a Rule 30(b)(6) witness about its responses, as well as citing them as a basis not to produce documents responsive to Plaintiffs' last set of Requests for Production. Yodlee's refusal to provide its interrogatory responses while simultaneously using them as a shield against other discovery illustrates the flaws in Yodlee's position on the discovery schedule.

### G. The Court-Ordered Inspection of Yodlee's Source Code

On February 1, 2024, the Court compelled Yodlee to permit Plaintiffs' inspection of source code responsive to Plaintiffs' Request for Production No. 1 (Set 5). ECF No. 463 at 2. Thereafter, the Parties met and conferred about Yodlee's concern the Court-ordered inspection was too broad. Yodlee identified 10 categories of source code it believed were responsive and asked Plaintiffs to narrow their inspection to certain categories or use other limitations (e.g., time period restrictions) to reduce the volume of source code provided. Plaintiffs agreed to consider Yodlee's proposal in good faith despite not being required to do so. Plaintiffs' concern is that because Yodlee's source code is interconnected, excluding any one category of source code from the inspection may lead Plaintiffs into a source-code "dead end." Plaintiffs have requested additional information to evaluate Yodlee's proposal and have identified more categories of responsive source code that were not included in Yodlee's proposal. Plaintiffs expect to continue their discussions with Yodlee about the source-code inspection this week.

Yodlee, for its part, seeks reconsideration of the Court's prior order. This is not warranted. The amount of source code involved in this inspection (i.e., the 6 GB Yodlee disclosed for the first time today)[3] is less than the volume of storage on the smallest available iPhone. To claim this presents an unreasonable

---

[3] During the parties' meet-and-confer, Yodlee claimed that the volume of source code was too large to fit on a laptop, implying dozens or hundreds of gigabytes of data. Given the significantly smaller size of the actual codebase at issue, Plaintiffs see no reason to limit the scope of their inspection.

amount of code is itself, unreasonable. Plaintiffs remain willing explore reasonable ways to streamline or enhance the efficiency of their inspection, but not if it involves omitting portions of Yodlee's codebase that are necessary to understand its function.

The timing of the source-code inspection also impacts the timing of one of Plaintiffs' Rule 30(b)(6) deposition topics. Plaintiffs noticed a Rule 30(b)(6) topic related to Yodlee's source code so they could ask follow-up questions after the inspection if necessary. Plaintiffs propose continuing this deposition topic until they complete the source-code inspection.

### H. PayPal 30(b)(6) Deposition

Plaintiffs and PayPal have agreed to hold a limited Rule 30(b)(6) deposition of PayPal by March 15, 2024, which Yodlee has cross-noticed. While it was PayPal that initially requested its deposition occur in March 2024, Yodlee's failure to produce most of the PayPal Account-Linking Data has further prevented Plaintiffs from deposing PayPal by February 27. Plaintiffs understand Yodlee does not oppose holding the PayPal Rule 30(b)(6) deposition by March 15, 2024.

## II. YODLEE'S POSITION

After the Court denied Plaintiffs' attempts to expand the case schedule in December 2023 (Dkt. Nos. 404, 407) and follow-on attempts to undermine that schedule with volleys of new written discovery requests and disputes through January 2024 (*see* Dkt. No. 428, 463), fact discovery closed on January 12 – except for fact depositions, which close on February 27. But instead of moving diligently to complete fact depositions before the Court-ordered deadline, Plaintiffs spent the past two months contriving new excuses to prolong fact (and now expert) discovery.

Plaintiffs' latest gambit consists of (1) manufacturing a time crunch by delaying and cancelling (through this very statement) fact depositions with no justification, (2) sowing the seed for more delay by refusing to timely cooperate with Yodlee on a source code inspection, (3) attempting to distract from their dilatory behavior by (again) baselessly accusing Yodlee of noncompliance with a discovery order, and (4) arguing on that basis that deposition and expert deadlines should be extended even though Plaintiffs' purported inability to meet those deadlines is a problem of their own making. The Court should not condone such tactics, which have become the hallmark of Plaintiffs' scorched-earth strategy in violation of Rule 26's proportionality principle.

### 1. Depositions

After Yodlee pointed out Plaintiffs' failure to move apace with depositions in this case, the Court made clear in December 2023 that fact depositions must be completed by February 27, 2024. (*See* Dkt. Nos. 392, 404.) Yodlee also agreed to allow Plaintiffs to take certain depositions in excess of Rule 30's default limits (Dkt. No. 394), including a second deposition of Vinay Raj (Dkt. No. 406). Despite this, Plaintiffs waited until *this month* to notice fact witness depositions and to serve on Yodlee *sixteen* overly broad, cumulative, or irrelevant Rule 30(b)(6) deposition topics (as amended on February 13) – which could not conceivably fit within the six-hour stipulation or be completed by February 27.[4]

---

[4] To be clear, the topics Plaintiffs served this month were an entirely new set, not a "narrow[ing]" of Plaintiffs' previously served topics from 2021. If requested, Yodlee is ready to submit Plaintiffs' notices from 2021 and this month so the Court make its own comparison.

### a) Yodlee's Rule 30(b)(6) Deposition

Plaintiffs' Rule 30(b)(6) topics failed to "describe with reasonable particularity the matters for examination" as required by the Rule, and improperly sought to "cover[] nearly every conceivable facet of the litigation" and to "reexamine at the end of discovery the universe of information . . . produced during the discovery period" instead of "target[ing] issues on which corporate testimony is truly needed." *See Alvarado-Herrera v. Acuity A Mut. Ins. Co.*, 344 F.R.D. 103, 107 (D. Nev. 2023); *Willy v. Sherwin-Williams Co.*, 2022 WL 1553703, at *6 (D. Or. May 17, 2022); *accord, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) (Rule 30(b)(6) "does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation"). Moreover, most of the topics could have been served months ago, and several sought to circumvent the Court's prior rulings denying Plaintiffs' requests for document discovery on the same subjects. *See, e.g.*, *ViaSat, Inc. v. Space Sys./Loral, Inc.*, 2013 WL 3467413, at *5-7 (S.D. Cal. July 10, 2013) (rejecting attempt to use Rule 30(b)(6) deposition as an "end run" around prior ruling denying motion for written discovery). Notably, despite Plaintiffs' representations to the Court that the fact depositions would depend on Yodlee's production of data in response to the Court's October 26, 2023 order (Dkt. No. 375), only two of the sixteen Rule 30(b)(6) topics actually concerned that data.

Notwithstanding the above, Yodlee still scheduled all available fact depositions within the Court's schedule and offered to provide Rule 30(b)(6) testimony for a reasonable and particularized version of ten of the sixteen topics from Plaintiffs' notice. Instead of proceeding with those topics, Plaintiffs claimed the parties' dispute over Yodlee's Rule 30(b)(6) deposition "[would] not be resolved by February 27, 2024," and thus would require an extension of the Court-ordered deadline. There is no merit to Plaintiffs' position. The local rules in this district expressly contemplate that deposition notices shall be served, and any disputes resolved, in accordance with court deadlines, rather than to disrupt them. *See* Civil L.R. 37-3 & Commentary (setting forth deadlines for discovery disputes and explaining that the party seeking discovery should "notice depositions sufficiently in advance of the cut-off date to comply"); *see also KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1135-36 (C.D. Cal. 2018) (denying motion to compel Rule 30(b)(6) testimony where requesting party waited too long and "left no margin for normal delays and foreseeable disputes intrinsic to litigation" before the discovery cutoff);

*Meislin v. City of Manhattan Beach*, 2024 U.S. Dist. LEXIS 1447, at *2-3 (C.D. Cal. Jan. 3, 2024) (parties who failed to leave sufficient time for motions practice before the discovery cut-off were responsible for "crises of their own creation").

### b) Brian Costello's Deposition

Plaintiffs waited until the day this statement was due to inform Yodlee for the first time, and less than 24 hours before Brian Costello's noticed deposition, that they would not appear for that deposition. Plaintiffs' claim that alleged deficiencies in RFP 2 data excuse this cancellation withers under scrutiny. Mr. Costello is a former employee who left Yodlee in February *2022* – over a year before Plaintiffs even served RFP 2. He was not involved in responding to RFP 2 or preparing the RFP 2 data for production – yet Plaintiffs claim that the RFP 2 data is somehow critical to his deposition. This is false. The RFP 2 data consists of technical information from data tables with which Mr. Costello did not directly work and will have no foundation to address. In any event, Plaintiffs have had for two months now millions of rows of RFP 2 data to examine Mr. Costello tomorrow on the topics they suggest. Instead, Plaintiffs abruptly cancelled his deposition today, notifying Yodlee only through this very statement.[5] Plaintiffs should not be rewarded for cancelling Mr. Costello's deposition at the last minute with no valid reason and after stringing Yodlee along. His deposition should not be permitted out of time.

### c) PayPal's Rule 30(b)(6) Deposition

As Yodlee previously informed Plaintiffs, Yodlee does not oppose scheduling PayPal's Rule 30(b)(6) deposition on or before March 15, 2024, *because PayPal's counsel has requested it*. This scheduling has nothing to do with Yodlee's RFP 2 data productions, contrary to Plaintiffs' implication. Indeed, the parties have agreed that the PayPal deposition will be limited to information produced and possessed *by PayPal*.

---

[5] The parties' last correspondence on this subject before Plaintiffs sent Yodlee their draft statement was an email in which Yodlee stated: "To be clear: Yodlee understands that Mr. Costello's noticed deposition will proceed remotely on February 27 as previously agreed. If plaintiffs have changed their minds about proceeding with that deposition, we expect you to let us know immediately and in no uncertain terms." Plaintiffs did not respond.

2.  **Source Code Inspection**

On February 1, the Court ruled that "Yodlee must provide Plaintiffs with an opportunity to inspect [the] source code" responsive to RFP No. 1 from Plaintiffs' fifth set of document requests, which sought to inspect "the source code that collects, handles, processes, or otherwise operates on, PayPal [or] Charles Schwab . . . Users' data." (*See* Dkt. Nos. 462, 463.) Following that order, Yodlee immediately undertook to identify the responsive categories of source code – the scope of which is so expansive that just identifying the contours of responsive code consumed nearly two weeks of Yodlee employee time – and informed Plaintiffs of its findings during a meet-and-confer on February 16. Plaintiffs' counsel indicated they understood the sheer amount of source code in scope, which would be infeasible to include in any inspection, and agreed to work on identifying reasonable narrowing parameters based on Yodlee's proposal. Instead of proposing any such parameters, Plaintiffs demanded on February 21 to inspect *more* categories of source code.

This is consistent with Plaintiffs' pattern of creating (or exacerbating) problems instead of solving them to bring fact discovery to an orderly conclusion. As things stand, an inspection remains infeasible given Plaintiffs' failure to propose any narrowing parameters. Specifically, the source code would encompass the 12 components below, which together comprise at least *hundreds* of major production releases – *not* counting hotfixes and other minor updates, daily releases of multiple agents, and changes to panel consolidation code over time that are not organized by production release. To give a sense of scale: together, the source code for these 12 components from *just the latest release of each component* (where applicable) already includes nearly 80,000 files and 6 GB of data, as broken down below. Yodlee expects the volume of source code involved to be of a similar order of magnitude on a per-release basis for other releases for the putative class period.

| Component | # of Major Releases | # of Files (based on latest release *only*) | Data Size (based on latest release *only*) |
|---|---|---|---|
| 1. FastLink 3.0 application used by client's end users to provide credentials and link accounts | 13 | 1756 | 42 MB |

| | | | |
|---|---|---|---|
| 2. Apigee Layer that serves as secure gateway to access APIs | 56 | 386 | 1.45 MB |
| 3. IAV API that serves as access point for requested IAV functionality | 33 | 4682 | 55 MB |
| 4. DCServlet that prioritizes and routes requests to Gatherer | 23 | 60 | 0.591 MB |
| 5. Gatherer that invokes site-specific data agents and relays data from agents to core aggregation platform | 58 | 6171 | 81 MB |
| 6. OAuth Client Component that processes end-user consent and tokens for authentication | 14 | 315 | 5 MB |
| 7. Categorization as a Service, which processes requests to call data science API and categorize incoming data | 10 | 141 | 87 MB |
| 8. Database Filer that files aggregated data into Yodlee's database | 27 | 154 | 88 MB |
| 9. Site-specific agent code that aggregates data from client's end users | released daily | 55265 | 5269 MB |
| 10. Code that extracts and ingests data to Hadoop | N/A (updates are not organized as releases) | 1458 | 9.3 MB |
| 11. Code that ingests data to Yodlee's real-time analytics platform | 33 | 513 | 21 MB |
| 12. Code that processes data in AWS to prepare for panel generation, up through and including filtering through the cobrand ID control list | N/A (updates are not organized as releases) | 6567 | 333.4 MB |
| **TOTAL (based on latest release *only*)** | | **77468** | **5.992741 GB** |

In short, Yodlee has sought to cooperate with Plaintiffs on setting up a reasonable inspection. Plaintiffs, for their part, have demonstrated no serious intention to proceed with that inspection and appear content to let the known manageability problems posed by the breadth of their request add pressure to the Court's case schedule. Accordingly, Plaintiffs have no good-faith basis to "continu[e]" any Rule 30(b)(6) "deposition topic[s] until [Plaintiffs] complete the source-code inspection."

### 3. RFP 2 Data

To distract from the above, Plaintiffs again baselessly accuse Yodlee of failing to comply with a discovery order and threaten more motions practice over imagined deficiencies. In RFP 2, Plaintiffs requested "transaction-level" data reflecting *every* account-linking attempt performed through Yodlee's IAV service for the apps in suit since 2014. (Dkt. No. 360.) Yodlee has explained since at least September 2023 that (1) such data is not readily accessible and (2) attempting to produce that data, to the extent it exists, would require approximately 1,560 hours of Yodlee employee time to create a searchable database environment, populate it with the relevant data sets available, isolate the requested data through queries, and extract and produce that data to the extent available. (*See id.*) On October 26, 2023, the Court ordered Yodlee to produce transaction-level information responsive to 26 requested data fields showing specific account-linking attempts for purposes of Plaintiffs' alleged damages modeling. (Dkt. Nos. 375, 381.)

Consistent with the schedule previously provided to the Court and Plaintiffs, Yodlee searched for and produced the available transaction-level data for PayPal on January 17, 2023, and for Charles Schwab on February 21, 2023. (*See* Dkt. No. 392.) Altogether, Yodlee produced spreadsheets containing approximately *276 million rows* of transaction-level PayPal data from 7 of the 10 years within the putative class period.

#### a) Limited Time Periods for Which Yodlee Does Not Have RFP 2 Data.

On February 8 – more than three weeks after receiving RFP 2 data for PayPal – Plaintiffs inquired for the first time about PayPal data from before 2017, an older period for which Yodlee does not have such transaction-level data. It bears emphasis that Yodlee does not compile, analyze, or query for "transaction-level" IAV data in the ordinary course of its business; the only place where Yodlee was able to find "transaction-level" IAV data showing specific account-linking attempts was in operational

data tables kept for administrative purposes like debugging, troubleshooting, and logging activities. As Plaintiffs are aware, Yodlee must purge data periodically from its operational database to recover capacity, maintain performance, prevent service disruptions, and manage costs. Consistent with that necessary process, the operational data tables that Yodlee used to respond to RFP 2 do not contain PayPal data from before 2017.[6]

Though it had no obligation to do so, Yodlee offered to search separate *account-level* data tables for those time periods, at the same time explaining to Plaintiffs that such tables do not correspond to all the requested RFP 2 data fields and would not show the transaction-level information about specific account-linking attempts that RFP 2 sought, which is why Yodlee had not considered those tables sources of responsive data to begin with. Nonetheless, Yodlee agreed to compile and isolate the more limited data fields available for the periods in question and will make that production by March 5.

### b)  Data from Two Non-Responsive PayPal Cobrands

As Yodlee has repeatedly explained to Plaintiffs, PayPal cobrand 10009752 was not an IAV cobrand. It was created when PayPal briefly considered a different Yodlee service that never went live. PayPal cobrand 10000800 was decommissioned back in 2015, after which time any associated data would have been purged consistent with Yodlee's policy. There is no PayPal end user data for these cobrands. Plaintiffs attempt to argue otherwise by professing suspicion about associated data from Yodlee's own monitoring accounts and stating "Yodlee has refused to explain what 'monitoring account[s]' means." This is false. Yodlee has explained to Plaintiffs *multiple times*, including by citing produced documents (*e.g.*, YODLEE_WESCH_0777129), that a "monitoring" or "testing" account means an account created by Yodlee personnel to ensure that its clients' implementations of its services are functioning properly. This is not an excuse for any extension, much less any threatened motion.

### c)  Unique PayPal User Numbers

As Yodlee has repeatedly explained for more than six months to Plaintiffs (and again today in Mr. Raj's deposition), *PayPal* did not provide unique identifiers (GUIDs) for its own users prior to 2019 (and for some time afterwards until PayPal converted completely to an updated IAV version). Rather,

---

[6] For the same reasons, Yodlee does not have transaction-level data responsive to RFP 2 for a period in 2020 for one of PayPal's two IAV implementations.

for that period, PayPal used a single GUID for all their users. This was PayPal's decision. Yodlee had nothing to do with it. Again, this is not an excuse for any extension, much less any threatened motion.

### 4. Interrogatory Responses

On February 1, the Court ordered Yodlee to respond to certain interrogatories. (Dkt. No. 463.) Under Rule 33, Yodlee has 30 days to respond to interrogatories. The Court's order did not modify this standard procedure. The interrogatories ask about complex technical matters. Yodlee informed Plaintiffs that it would respond to the interrogatories as soon as it could, and no later than March 4. It bears emphasis that Plaintiffs chose to wait until the final day permitted under the Court's schedule to serve these interrogatories, along with even more discovery requests served that same day, necessitating the motions practice in January and the Court's February 1 order quashing other interrogatories.

Plaintiffs' complaints about wanting to use the responses for Yodlee's Rule 30(b)(6) deposition ring hollow given that Plaintiffs will have the responses before further Rule 30(b)(6) testimony is taken.

### 5. Remainder of the Case Schedule

In an effort to compromise and to not burden the Court with these disputes, Yodlee has agreed, subject to the Court's approval, that Plaintiffs can have until March 15 to depose Yodlee's designated witness on the two Rule 30(b)(6) topics relating to RFP 2 data, and that the expert disclosure deadline be continued to March 22,[7] with the rebuttal deadline continued to April 19, and the expert discovery cutoff continued to May 3. Both sides agree that all post-discovery deadlines should remain in place.

DATED: February 27, 2024                Respectfully submitted,

**LOWEY DANNENBERG P.C.**              **COVINGTON & BURLING LLP**

_/S/ Christian Levis_                   _/S/ Megan Rodgers_
Christian Levis (pro hac vice)          Megan Rodgers (SBN 310344)
Amanda Fiorilla (pro hac vice)          3000 El Camino Real
Rachel Kesten (pro hac vice)            5 Palo Alto Square, 10th Floor
44 South Broadway, Suite 1100           Palo Alto, CA 94306-2112
White Plains, NY 10601                  Telephone: (650) 632-4700

---

[7] After agreeing that the expert disclosure deadline would be March 22, Plaintiffs have now changed their proposal to extend their affirmative expert disclosure time by one week, without affording Yodlee a corresponding increase in expert rebuttal time. The Court should reject such shenanigans by Plaintiffs.

| | |
|---|---|
| Telephone: (914) 997-0500<br>clevis@lowey.com<br>afiorilla@lowey.com<br>rkesten@lowey.com<br><br>Anthony M. Christina (pro hac vice)<br>One Tower Bridge<br>100 Front Street, Suite 520<br>West Conshohocken, Pa 19428<br>Telephone: (215) 399-4770<br>achristina@lowey.com<br><br>**ROBINS KAPLAN LLP**<br><br>Ben Steinberg (pro hac vice)<br>Kellie Lerner (pro hac vice forthcoming)<br>Laura Song (pro hac vice)<br>1325 Avenue of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7400<br>bsteinberg@robinskaplan.com<br>klerner@robinskaplan.com<br>lsong@robinskapan.com<br><br>Li Zhu (SBN 302210)<br>55 Twin Dolphin Drive, Suite 310<br>Redwood City, CA 94065-2133<br>Telephone: (605) 784-4013<br>lzhu@robinskaplan.com<br><br>*Co-Lead Counsel for Plaintiffs and the Putative Class* | mrodgers@cov.com<br><br>Ziwei Song (SBN 313842)<br>Daniel Rios (SBN 326919)<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>Telephone: (415) 591-6000<br>ksong@cov.com<br>drios@cov.com<br><br>Eric Bosset (pro hac vice)<br>Tara Summerville (pro hac vice)<br>One CityCenter,<br>850 Tenth Street, NW<br>Washington, D.C. 20001-4956<br>Telephone: (202) 662-6000<br>ebosset@cov.com<br>tsummerville@cov.com<br><br>Andrew Leff (pro hac vice)<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018<br>Telephone: (212) 841-1297<br>aleff@cov.com<br><br>*Counsel for Defendant Yodlee, Inc.* |

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), I attest that each of the other signatories has concurred in the filing of this document.

Dated:  February 27, 2024

By:  /S/ Megan Rodgers
Megan Rodgers