Li Zhu (SBN 302210)
**ROBINS KAPLAN LLP**
55 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
lzhu@robinskaplan.com

Christian Levis (admitted *pro hac vice*)
Margaret MacLean (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

Kellie Lerner (*pro hac vice* forthcoming)
Ben Steinberg (admitted *pro hac vice*)
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
klerner@robinskaplan.com
bsteinberg@robinskaplan.com

Anthony M. Christina (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

*[additional counsel listed on signature block]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLARK ET AL., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YODLEE, INC., a Delaware corporation,<br><br>Defendant. | Civil Case No.  3:20-cv-05991-SK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO CERTIFY CLASSES**<br><br>Judge:        Hon. Sallie Kim<br>Hearing Date: July 22, 2024<br>Hearing Time: 9:00 a.m.<br>Place:        Courtroom C – 15th Floor<br>             450 Golden Gate Ave.,<br>             San Francisco, CA 94102 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

I.     INTRODUCTION ....................................................................................................... 1

II.    RELEVANT FACTS ................................................................................................... 1

    A.     Yodlee Collected and Stored a Common Set of Data from All Class Members............. 1

    B.     Yodlee Collected All Class Members' Data Using the Fake Login Portal..................... 2

    C.     Yodlee Hid Its Secret Data Storage from All Class Members ...................................... 3

    D.     Yodlee Used Class Members' Data for Commercial Purposes..................................... 3

    E.     The Named Plaintiffs Share Common Facts and Claims............................................... 4

III.   ARGUMENT ............................................................................................................... 4

    A.     Plaintiffs Have Article III Standing .............................................................................. 4

    B.     California Law Should Be Applied Classwide................................................................ 5

    C.     The Named Plaintiffs Are Typical and Adequate Class Representatives........................ 8

    D.     Common Issues Predominate for Plaintiffs' CAPA Claim ............................................ 9

    E.     Common Issues Predominate for Plaintiffs' Privacy Claims ....................................... 10

    F.     Common Issues Predominate for the Unjust Enrichment Claims ................................. 13

    G.     There Are No Individualized Statute-of-Limitations Defenses .................................... 13

    H.     A Class Action is Superior to Repetitive, Individualized Adjudications ...................... 14

    I.     The Court Should Certify the Rule 23(b)(2) Injunctive-Relief Class.............................. 15

IV.    CONCLUSION .......................................................................................................... 15

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Bauman v. Saxe*,
    No. 14-CV-01125-RFB-PAL, 2019 WL 157923 (D. Nev. Jan. 10, 2019)............................. 10

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ........................................................................................ 14

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418-EMC, 2023 WL 9316647 (N.D. Cal. Aug. 10, 2023) ........................ 10, 13

*Campbell v. Facebook Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016)...................................................................................... 10

*Darrington v. Assessment Recovery of Wash., LLC*,
    No. C13-0286-JCC, 2013 WL 12107633 (W.D. Wash. Nov. 13, 2013)............................... 15

*Delgado v. Meta Platforms, Inc.*,
    No. 23-cv-04181-SI, 2024 WL 818344 (N.D. Cal. Feb. 27, 2024) ...................................... 13

*Diamond Multimedia Sys., Inc. v. Superior Ct.*,
    968 P.2d 539 (Cal. 1999) ................................................................................................. 6

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) ........................................................................................... 8

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ........................................................................................... 15

*Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983-GHK (MRWx), 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)...................... 5

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996)...................................................................................... 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 8

*Hart v. TWC Product and Technology LLC*,
    No.20-cv-03842-JST, 2023 WL 3568078 (N.D. Cal. Mar. 30, 2023) ................................. 11

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018)...................................................................................... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................................... 4, 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re First All. Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006) ............................................................................................... 9

*In Re Google RTB Consumer Priv. Litig.*,
   No. 4:21cv2155-YGR, 2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .................................... 11

*In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig.*,
   1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) .................................................................................... 8

*In re iPhone 4S Consumer Litig.*,
   No. C 12–1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ....................................... 6

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) ......................................................................... 8, 9, 13

*In re Lyft Inc. Sec. Litig.*,
   2021 WL 3711470 ................................................................................................................. 11

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ................................................................................... 10

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................................ 7, 8

*Jonna Corp. v. City of Sunnyvale, Ca*,
   No. 17-CV-00956-LHK, 2017 WL 2617983 (N.D. Cal. June 16, 2017) ................................ 5

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ................................................................................................ 8

*Kang v. Credit Bureau Connection, Inc.*,
   No. 118CV01359AWISKO, 2022 WL 658105 (E.D. Cal. Mar. 4, 2022) .............................. 10

*Krommenhock v. Post Foods, LLC*,
   334 F.R.D. 552 (N.D. Cal. 2020) ...................................................................................... 9, 10

*Kumandan v. Google LLC*,
   No. 19-CV-04286-BLF, 2023 WL 8587625 (N.D. Cal. Dec. 11, 2023) ................................ 11

*Lytle v. Nutramax Lab'ys, Inc.*,
   99 F.4th 557 (9th Cir. 2024) ................................................................................................. 13

*Makaron v. Enagic USA, Inc.*,
   324 F.R.D. 228 (C.D. Cal. March 13, 2018) ......................................................................... 15

*Mazza v. Am. Honda Motor Co* ,
   666 F.3d 581 (9th Cir. 2012) .............................................................................................. 6, 7

*McMillion v. Rash Curtis & Assocs.*,
   No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) ............................... 12

iii

*Medina v. Cnty. of Riverside*,
  308 F. App'x 118 (9th Cir. 2009) ................................................................ 14

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) .................................................................... 13

*Nolen v. PeopleConnect, Inc.*,
  No. 20-CV-09203-EMC, 2023 WL 9423286 (N.D. Cal. Dec. 14, 2023) .............................. 15

*Norwest Mortg., Inc. v. Superior Ct.*,
  72 Cal. App. 4th 214 (1999) ...................................................................... 6

*Olean Wholesale Grocery Cooperative, Inc.*,
  31 F.4th 651 (9th Cir. 2022) ..................................................................... 14

*Opperman v. Path, Inc.*,
  No. 13-CV-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) ........................ 5, 7, 10 *Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ................................................................. 4, 12

*Phillips v. U.S. Customs & Border Prot.*,
  74 F.4th 986 (9th Cir. 2023) ..................................................................... 1, 5

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ...................... 10, 11, 12, 13

*Saulsberry v. Meridian Fin. Servs.*, Inc.,
  No. CV146256JGBJPRX, 2016 WL 3456939 (C.D. Cal. Apr. 14, 2016) ............................. 11

*Sidibe v. Sutter Health*,
  333 F.R.D. 463 (N.D. Cal. Oct. 18, 2019) ......................................................... 15

*Simon & Simon, PC v. Align Tech., Inc.*,
  No. 20-CV-03754-VC, 2023 WL 8261297 (N.D. Cal. Nov. 29, 2023) ............................... 12

*Speer v. Saenz*,
  No. CV H-13-1538, 2015 WL 12551069 (S.D. Tex. Feb. 19, 2015) .................................. 7

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ................................................................... 14

*Tilahun v. Sunshine Makers Inc.*,
  No. SACV 10-427 AG (ANX), 2010 WL 11468629 (C.D. Cal. Sept. 27, 2010) ....................... 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .............................................................................. 4

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ..................................................................... 11

iv

*Walker v. Life Ins. Co. of the Sw.*,
    953 F.3d 624 (9th Cir. 2020) ............................................................................. 14

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ............................................................................. 15

*Wash. Mut. Bank v. Superior Court*,
    24 Cal.4th 906 (Cal. 2001) ................................................................................. 7

*West v. Calif. Serv. Bureau*,
    323 F.R.D. 295 (N.D. Cal. Dec. 11, 2017) ....................................................... 15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................. 8

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ........................................................................... 14

**Statutes**

Cal. Bus. & Prof. Code § 22948.3 ............................................................................. 7

## I.   INTRODUCTION

Yodlee, Inc.'s ("Yodlee") Opposition to Plaintiffs' Motion to Certify Classes ("Opposition" or "Opp.") (ECF No. 496) raises four main arguments, all of which fail.

*First,* Plaintiffs have standing. Yodlee's undisclosed collection, storage, and use of their private data constitute concrete injury. The lone case Yodlee cites to dispute this, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023), concerned the mere retention of public records without an underlying privacy violation, facts that have no application here.

*Second,* Yodlee has not met its burden to show that foreign states' laws should apply over California's. Yodlee fails to show that other states' interests would be more impaired than California's or that there are genuine conflicts or material variations between other states' laws.

*Third,* the proposed Class Representatives are typical Class Members. The supposed distinctions Yodlee cites between them are either immaterial or non-existent and would not preclude class certification in any event.

*Fourth,* common issues predominate. Yodlee used a common false bank login portal to store the same baseline data from all Class Members after account verification, a practice it did not disclose at anytime, anywhere. The Court should certify the Classes.

## II.   RELEVANT FACTS

### A.   Yodlee Collected and Stored a Common Set of Data from All Class Members

All Class Members were subject to the same basic data-harvesting by Yodlee, which applied consistently throughout the Class Period and across all so-called IAV "iterations." At all relevant times, and for all Class Members, Yodlee collected and stored the same baseline set of personal financial data: ██████████████████████████████████████ ██████████████████████████████. Ex. 55 at 2–3.[1] Yodlee collected this common dataset from ██████████████████████████████████████████████████ ████████████████████████████████████████████████. Ex. 56 at 9. Yodlee then retained all Class Members' data for its own purposes.

[1] "Ex." refers to exhibits to Plaintiffs' Mot. to Certify Classes ("Motion" or "Mot."). ECF No. 493. "O-Ex." refers to exhibits to Yodlee's Opposition. "R-Ex." refers to exhibits filed with this Reply.

1    Yodlee tries, but fails, to manufacture distinctions among Class Members about what data

2    it collected and stored. Yodlee claims it collected partial data or "no data" for unsuccessful IAV

3    attempts. Opp. at 2. This is irrelevant, as the Classes are limited to users who *successfully* linked

4    accounts to PayPal. Mot. at vi. Yodlee also claims the data it collected may have varied based on

5    "the user and bank involved." Opp. at 2. But there is no evidence of such variations:

6    Ex.

7    64 at 17–19, Schedule 15. Yodlee's claim that it deleted "42 million" PayPal user accounts in late

8    2020-2023 is similarly disingenuous. Opp. at 5.

9    Ex. 64 at 32–

10   33, Schedule 24. For actual Class Members, there is no evidence that Yodlee deleted their data at

11   any time. At most, Yodlee's records show it "

12   , and even then,

13   . Mot. at 9-10 n.46; Ex. 55 at 4; Ex. 85 at 2.

14        **B.    Yodlee Collected All Class Members' Data Using the Fake Login Portal**

15        Yodlee collected all Class Members' data through the same deceptive tactic throughout the

16   Class Period: a fake bank login portal. Mot. at 19-20, n. 84. Yodlee does not deny that the false

17   login portal applied classwide but argues generically that the user interface "evolved" over time

18   with "different appearances, language, logos, and disclosures." Opp. at 15. Yodlee, however, does

19   not identify a single material change affecting any legal issue in dispute. Nor were there any. At all

20   times during the Class Period,

21

22   . *See* Ex. 65, at 58–65.

23        The distinctions Yodlee attempts to create based on technical minutia of which company's

24   servers "hosted" the false login portal are equally meaningless. Opp. at 3–4.

25   , (Ex. 17 at 14),                                    , (*id*.),

26   *id*. at 19–27) and collected Class Members' credentials immediately after

27   they were entered into the false login portal. Ex. 87 at 7.

28

1       **C.**     **Yodlee Hid Its Secret Data Storage from All Class Members**

2            Yodlee does not identify a single disclosure at any time that informed Class Members that

3 Yodlee would store and use their data after account verification. The sole language Yodlee cites

4 (Opp at 4, n. 2) states Yodlee may access certain bank information to "verify that you are authorized

5 to use the bank account . . . and to help manage risk and fraud." O-Ex. 13 at 2. This does not

6 authorize Yodlee to store and exploit user data for its own purposes after account verification as

7 Yodlee did. Yodlee also cannot escape its own employees' admissions that its data storage was

8 undisclosed and must be kept secret. *See* Mot. at 9–13. ████████████████████

9 ████████████████████████████, (Exs. 19–27, 50–52), Yodlee's only response is

10 that its employees were not lawyers and its lies to PayPal are not relevant. Opp. at 18–19. But

11 Yodlee's concealment *is* relevant to consent: if Yodlee managed to keep its data storage a secret

12 from PayPal, there is no way Class Members could have learned of it. Yodlee presents no evidence

13 showing Class Members knew of its secret data-storage and use.

14       **D.**     **Yodlee Used Class Members' Data for Commercial Purposes**

15            Yodlee ignores the substantial, unrebutted evidence that it uses PayPal user data for

16 commercial purposes after verification. Yodlee does not address the emails showing that █████████

17 ████████████████████████████████████████████████████████

18 █. Ex. 53 at 3. Yodlee also ignores documents showing ████████████████████

19 ████████████████████████████████████ (R-Ex. 1 at 3), and

20 ████████████████████. R-Ex. 2 at 4. Yodlee's employees further testified under oath, ████

21 ████████████████████████████████████████████████████

22 ████████████████████████. Ex. 57 at 14:7–24, 78:13–16; R-Ex. 3 at 2-3.

23            Yodlee attempts to undo this testimony with a declaration submitted after the close of

24 discovery from Om Deshmukh, a previously-undisclosed employee whom Plaintiffs never

25 deposed. Yodlee argues this new declaration, purporting to describe source code withheld from

26 Plaintiffs, proves that ████████████████████████, Opp. at 6. Not so. The

27 Deshmukh Declaration ████████████████████████████████

28

1    ███████████████████. O-Ex. 21 ¶ 3. This is insufficient to rebut the considerable evidence

2    that Yodlee used PayPal user data for commercial purposes.

3        **E.    The Named Plaintiffs Share Common Facts and Claims**

4        Yodlee exaggerates the alleged "differences" between the proposed Class Representatives,

5    whose use of IAV was materially identical. All three Class Representatives (i) entered their bank

6    login credentials into a false, unauthorized bank login portal; (ii) were not shown any disclosures

7    that Yodlee would store or use their data after account verification; (iii) had the same bank

8    credentials and personal data stored and used by Yodlee after account verification; (iv) had data

9    collected and stored from all accessible accounts, not just those they selected to link; and (v) have

10   data that still remains on Yodlee's systems today. *See supra* Sections II.A–C.

11       Yodlee manufactures distinctions among the Class Representatives by misrepresenting

12   evidence. For instance, Plaintiffs Cottrell and Szeto did not "grant[] permissions to periodically

13   pull" their data or store login credentials, as Yodlee claims. Opp. at 7. The screenshots Yodlee cites

14   for this claim reflect █████████████████████████████████████████

15   █████████████████████████████████████████. O-Exs. 56, 57. Likewise,

16   Yodlee's failure to produce Plaintiff Szeto's data does not show that her data "was never stored or

17   has since been deleted." Opp. at 7. Rather, Yodlee admits it stored all Class Members' data, which

18   it deleted from only .006% of accounts. *See supra* Section II.A. Lastly, Yodlee's claim that the

19   false login portal did not show Plaintiff Rollier's bank's logo ignores that it *did* display her bank's

20   name and website URL directly above the false login screen, which is just as deceptive. Opp. at 7.

21   **III.   ARGUMENT**

22       **A.    Plaintiffs Have Article III Standing**

23       Yodlee's unauthorized collection, storage, and use of Plaintiffs' data violates privacy rights

24   that have long "provid[ed] a basis for a lawsuit in English or American courts." *Patel v. Facebook,*

25   *Inc.*, 932 F.3d 1264, 1271 (9th Cir. 2019) (internal citation omitted).[2] Yodlee's unauthorized taking

26   of Plaintiffs' data confers Article III standing. *See In re Facebook, Inc. Internet Tracking Litig.*,

27   _____

28   [2] Whether Plaintiffs suffered "monetary losses" (Opp. at 7 n.6) is irrelevant. *TransUnion LLC v.*
     *Ramirez*, 594 U.S. 413, 425, (2021) (identifying privacy violation as non-monetary injury-in-fact).

1    956 F.3d 589, 597-98 (9th Cir. 2020) (holding that the loss of sensitive private information

2    constitutes a "concrete and particularized" injury sufficient for standing); *see also* Order Regarding

3    Yodlee's Motion for Summary Judgement (the "SJ Order"), ECF No. 266 at 26 (finding Plaintiffs

4    "adversely affected" by Yodlee's collection of "sensitive financial information through deceit").[3]

5         *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023) does not require

6    anything more. Opp. at 7-8. *Phillips* involved largely *public* records that the government maintained

7    about workers traveling in Mexico. *Id.* at 989. Those individuals asserted standing *solely* based on

8    the "government's retention of records alone," not on how the records were obtained or used. *Id.* at

9    991 n.4. The Ninth Circuit expressly distinguished the facts in *Phillips* from cases like this,

10   involving an "invasion of privacy," where retaining *private* data collected without consent would

11   confer standing. *Id.* at 993-94, 996 (private financial records "are so sensitive that another's

12   retention" confers standing). Yodlee's use of Class Members' bank data further distinguishes this

13   case from *Phillips*, where there was no indication the government used the records. *Id.* at 995.[4]

14        **B.      California Law Should Be Applied Classwide**

15        Yodlee bears the burden of "demonstrating 'that foreign law, rather than California law,

16   should apply to class claims.'" *Opperman v. Path, Inc.*, No. 13-CV-00453, 2016 WL 3844326, at

17   *11 (N.D. Cal. July 15, 2016). Yodlee's 48-page chart listing purported differences among the

18   various state laws does not meet this burden.[5] Rather, Yodlee must show "based on the facts and

19   circumstances of *this* case, and *these* Plaintiffs' allegations," that there would be a true conflict

20   sufficient to override California's interest in applying its own laws to Yodlee's conduct. *Id.* at *10;

21   *Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *3 (C.D. Cal. Apr. 9, 2014)

22

23   ---
     [3] That Yodlee collected additional bank transaction data from some Class Members simply means
     they have additional damages. *See* Ex. 64 at 30-35; *see also* Section III.E., below.

24   [4] Dr. Rattenbury did not admit, as Yodlee claims, that there is no evidence IAV data was used for
     Data Panels or TDE. Opp. at 8. Rather, Dr. Rattenbury ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

25   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ R-Ex. 4 at 212:2-13)
     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 54:14-22.

26   Incorporation of IAV data through either channel is an unlawful act sufficient to confer standing.
     [5] This "chart" should also be stricken as argument exceeding the page limits. *See Jonna Corp. v.*

27   *City of Sunnyvale, Ca*, No. 17-CV-00956, 2017 WL 2617983, at *2 (N.D. Cal. June 16, 2017)

28   (striking appendix "contain[ing] a number of references to case law" as "akin to legal argument.").

(identifying differences among states' laws "is not enough"). While failure to satisfy any one of the three steps in California's choice-of-law analysis requires rejecting the application of foreign law, Yodlee has failed at each step.

**1. No State's Interest Would Be More Impaired than California's**

This factor centers on the "place of the wrong" i.e., "the state where the last event necessary to make the actor liable occurred." *Mazza v. Am. Honda Motor Co*, 666 F.3d 581, 593 (9th Cir. 2012). Contrary to Yodlee's contentions (Opp. at 11), each wrong underlying Plaintiffs' claims occurred in California.

<u>CAPA & Privacy Claims</u>: Yodlee violated California Anti-Phishing Act ("CAPA") and Plaintiffs' privacy rights when it "collect[ed] Plaintiffs' financial data" and "stor[ed] login credentials and data forever." SJ Order at 18, 26. Yodlee's CAPA and privacy violations thus emanate from California, where its key personnel and IAV systems were located. Mot. at 14–15.[6] Applying CAPA nationwide does not violate the presumption against extraterritoriality, as Yodlee argues, because that presumption only applies to "conduct occurring in a foreign jurisdiction," not Yodlee's conduct in California. *See Diamond Multimedia Sys., Inc. v. Superior Ct.*, 968 P.2d 539, 554 n.20 (Cal. 1999) (emphasis omitted). Accordingly, California "state statutory remedies may be invoked by out-of-state [Class Members] when they are harmed by [Yodlee's] wrongful conduct occurring in California." *In re iPhone 4S Consumer Litig.*, No. C 12–1127, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (quoting *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224–225 (1999)); Mot. at 17 (collecting cases where California laws were applied to nationwide classes). The same principle precludes foreign states from displacing CAPA's domestic application to Yodlee with their own phishing laws.

<u>Unjust Enrichment</u>: The unjust benefits Yodlee gained from Class Members' data also accrued in California for the same reason. The location of Class Members whose data Yodlee sold is not relevant to the location of Yodlee's unlawful conduct or enrichment.

---

[6] Yodlee relies exclusively on cases concerning misrepresentations on product packaging to argue that the place of the wrong is where Plaintiffs saw its deceptive screens. Opp. at 10-11. Unlike these cases, where the claim accrued at the point of purchase, the "last act" for each of Plaintiffs' claims involved Yodlee's storage and use of data from California.

### 2.   Yodlee Has Not Shown Any True Conflict with a Foreign State Interest

California, the locus of Yodlee's conduct, has the strongest interest in regulating it. *Mazza*, 666 F.3d at 592 ("a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders") (citation omitted). Yodlee fails to show *any* competing interest from other states beyond the most general "interest in protecting their consumers." Opp. at 9-10. Such platitudes are insufficient to meet Yodlee's burden. *See Opperman*, 2016 WL 3844326, at *10 (rejecting application of foreign law where defendants failed to identify "the interests of other jurisdictions except at the greatest level of generality"). The consumer protection cases Yodlee relies on are inapposite. *See supra* note 6. While foreign states may have an interest in regulating retail sales within their borders, they do not have an interest in Yodlee's conduct in California.[7]

### 3.   There Are No Material Variations in Privacy Laws

On top of failing the two choice-of-law factors above, which independently defeat Yodlee's argument, Yodlee also fails to show that the purported differences between state laws are material. *See Wash. Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 919–921 (Cal. 2001). Yodlee does not identify a single state's privacy law that its conduct would not violate. This includes Florida, Georgia, and Texas, which Yodlee claims differ because they require intrusion into a "private quarter," wiretapping, or "bad faith." Opp. at 9. Not only does this misstate the law,[8] but Class Members' bank accounts are among the most private of "quarters," and Yodlee's repeated lies that it did not store IAV data evidence its bad faith.

---

[7] Yodlee also ignores that, unlike certain statutes that are expressly limited to protecting California residents, CAPA has no such restriction, reflecting a broad purpose of deterring bad actors from collecting sensitive information under false pretenses. *See* Cal. Bus. & Prof. Code § 22948.3 (authorizing lawsuit by any "individual who is adversely affected"). Courts evaluating other statues with similarly broad mandates have recognized California's interest in applying them to California businesses regardless of where class members are located, and even where there may be differences in other states' laws. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015) (finding "California 'has [an] interest in applying the UCL to the activities of California businesses, regardless of whether injuries resulting from those activities are experienced by a California resident."); *Tilahun v. Sunshine Makers Inc.*, No. SACV 10-427, 2010 WL 11468629, at *4-5 (C.D. Cal. Sept. 27, 2010) (same for CLRA).

[8] Texas and California have nearly identical elements for intrusion upon seclusion. *See Speer v. Saenz*, No. CV H-13-1538, 2015 WL 12551069, at *10 (S.D. Tex. Feb. 19, 2015) ("intrusion upon seclusion" under Texas law requires an "intentional[] intru[sion]" into a place of "solitude, seclusion, or private affairs or concerns" that is "highly offensive to a reasonable person").

1           **C.**      **The Named Plaintiffs Are Typical and Adequate Class Representatives**

2         Under Rule 23(a)'s "permissive standards, representative claims are 'typical' if they are

3 reasonably co-extensive with those of absent class members; they need not be substantially

4 identical." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) (quoting *Hanlon*

5 *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Adequacy separately evaluates whether

6 "the representative parties will fairly and adequately protect the interests of the class." *In re JUUL*

7 *Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 964 (N.D. Cal. 2022).

8 Plaintiffs here satisfy typicality and adequacy. Each of Yodlee's arguments fails.[9]

9         *First*, Yodlee recycles its Article III standing argument, which fails for the reasons

10 described in Section III.A., *supra*.[10]

11         *Second*, Plaintiffs' account-linkages from outside California do not make them atypical of

12 Class Members in other states because California law applies nationwide. Opp. at 12. To the extent

13 the Court decides a California subclass is necessary, Plaintiff Szeto is an adequate representative,

14 as California was her state of residence when she linked accounts using IAV. *See In re HSBC Bank,*

15 *USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 49 (E.D.N.Y. 2014) (permitting

16 named plaintiff to represent state-law class "if [she] resides in, does business in, or has some other

17 connection to that state"); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 606 (N.D. Cal. 2015)

18 (explaining "California residents . . . can adequately represent the [California] [sub]class" pursuing

19 California claims).

20         *Third*, Yodlee's denial that it collected transaction data from the Class Representatives is

21 both unsupported (*see* R-Ex. 5 ¶¶ 2-10, 12-16) and irrelevant to adequacy and typicality. Yodlee

22 stored the same baseline dataset from each Plaintiff and Class Member. Plaintiffs therefore typify

23 all Class Members, including those who had additional transaction data collected, as they all

24 suffered a "similar injury" from "the same course of conduct." *Wolin v. Jaguar Land Rover N. Am.,*

25 *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (9th Cir.

26 _____

27 [9] Yodlee conflates Rule 23(a)'s typicality and adequacy requirements. While Yodlee's Opp. references "adequacy" it does not address Rule 23(a)'s adequacy requirements. Opp. at 12-13.

28 [10] Yodlee's failure to produce Plaintiffs Szeto's data does not show her data was "never stored," which would contradict Yodlee's discovery responses and deletion data. *See supra* Section II.E.

1    2017) ("[T]ypicality is not primarily concerned with whether each person in a proposed class

2    suffers the same type of damages; rather, it is sufficient for typicality if the plaintiff endured a

3    course of conduct directed against the class.").

4          *Fourth*, as described above, Plaintiffs Szeto and Cottrell did not grant "permissions" to have

5    their credentials stored, (*supra* Section II.E.), and whether Plaintiffs unlinked their accounts from

6    PayPal or continued using PayPal is irrelevant. *See infra* at Section III.E.; SJ Order at 19.

7          *Finally*, as described in Section III.G. *infra*, the Class Representatives do not have

8    individualized statute of limitations defenses because their claims, like all Class Members', are

9    tolled by Yodlee's fraudulent concealment of its data practices.

10         **D.     Common Issues Predominate for Plaintiffs' CAPA Claim**

11         Yodlee's collection of Class Members' data through a common false login portal establishes

12   predominance under CAPA. Faced with this standardized practice, Yodlee claims that potential

13   variations in IAV requires a "case-by-case evaluation." Opp. at 14. But Yodlee never explains how

14   any of these minor details are relevant to CAPA, and predominance does not require that Class

15   Members "have the same exact experience leading up to the harm[,]" only that common questions

16   "carry greater weight than" individual ones. *JUUL*, 609 F. Supp. 3d at 967, 980.

17         Yodlee's standardized use of a false bank login portal dwarfs any marginal changes to the

18   user interface. ███████████████████████████████████████

19   ██████████████████████████████. Ex. 65 at 31–34, 58-59, 66–68. This

20   common practice satisfies predominance even if "the 'look' of particular [content] varied" and

21   "different text was used" over time. *JUUL*, 609 F. Supp. 3d at 989-990 (certifying classes of e-

22   cigarette purchasers "despite variations in words, themes, [and] target audiences" of challenged

23   marketing). Even large variations in "wording or format" across dozens of products can satisfy

24   predominance where, as here, there was a "common course of conduct" and a "centrally-

25   orchestrated scheme." *In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006) ("[A] defendant

26   [cannot] escape [class] liability . . . by simply altering the wording or format of his

27   misrepresentations"); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 560 (N.D. Cal. 2020)

28   (certifying class comprising 45 different statements across 31 different cereal products).

Yodlee's other purported IAV "variables" fare no better. Opp. at 14. There is no evidence that Class Members held different subjective beliefs about the false login portal, nor would they be relevant under the objective legal standards that apply. *See Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2023 WL 9316647, at *8 (N.D. Cal. Aug. 10, 2023) ("[S]tate of mind is [] evaluated in the aggregate—as a collective 'reasonable person,' not consumer-by-consumer."); *Krommenhock,,* 334 F.R.D. at 564 ("[T]he question is how an objective 'reasonable consumer' would react to a statement[.]"). Similarly, which company's servers "hosted" the false login portal is irrelevant, as Yodlee at all times owned and operated its IAV product and collected users' credentials instantaneously when they were entered. *Supra* Section II.B; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 803 (N.D. Cal. 2022) (declining to "exempt [Meta] from liability" where third party developers hosted Meta's Pixel on their portals).

Lastly, CAPA's statutory damages are unlike the ECPA damages considered in *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 268-69 (N.D. Cal. 2016), which turn on discretionary factors not relevant here. *Kang v. Credit Bureau Connection, Inc.*, No. 18-CV-01359, 2022 WL 658105, at *7, n.2 (E.D. Cal. Mar. 4, 2022) ("*Campbell* is distinguishable because it concerned inquiries into statutory damage awards under the [ECPA] in which courts consider a set of factors").[11] CAPA's preset penalties resolve any "questions of [] damages between the class members." *Bauman v. Saxe*, No. 14-CV-01125, 2019 WL 157923, at *5 (D. Nev. Jan. 10, 2019).

### E. Common Issues Predominate for Plaintiffs' Privacy Claims

The test under both prongs of Plaintiffs' "privacy claims is an objective one, capable of resolution class-wide[.]" *Rodriguez v. Google LLC*, No. 20-CV-04688, 2024 WL 38302, at *6 (N.D. Cal. Jan. 3, 2024). These objective inquiries "can be proven on a common basis" as they "will not require individualized determinations of class members' subjective expectations." *Opperman*, 2016 WL 3844326, at *11.

Yodlee argues that determining whether Class Members consented to its data storage and use requires individual analysis of which disclosures they saw. Opp at 19-20. But Yodlee fails to

---

[11] All Class Members meet CAPA's sole harm requirement—"adverse[] affect[s]"—because "their financial data was taken" by Yodlee, as the Court held. SJ Order at 26.

specify *any* language disclosing that it would store or use Class Members' data,[12] much less distinctions that could create individualized issues. *See In re Lyft Inc. Sec. Litig.*, No. 19-CV-02690-HSG, 2021 WL 3711470, at *5 (N.D. Cal. Aug. 20, 2021) ("Affirmative [consent] defenses [may] defeat predominance only . . . [if] [the defendant] has presented evidence") (quoting *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018)). Yodlee is wrong that some Class Members "granted permission to check their bank transaction and store their credentials." Opp. at 19. The "permission" screen Yodlee cites is from 2022, two years after the Class Period ended, and was not part of the IAV interface when Class Members linked accounts. *Supra* Section II.E. Yodlee's other "consent" theory that some users continued to use PayPal has been rejected by this Court and others. SJ Order at 19; *Rodriguez*, 2024 WL 38302, at *7 ("Plaintiffs' continued use of [defendant's] products and services does not equate to consent.").

The cases Yodlee cites where privacy classes were not certified involved evidence of consent that is absent here. In *Hart v. TWC Prod. and Tech. LLC*, users gave "affirmative responses to [data] permission prompts" via an express consent protocol that Yodlee did not present to Class Members. 20-CV-03842, 2023 WL 3568078 at *10 (N.D. Cal. Mar. 30, 2023). Similarly, Google's disclosures in *In Re Google RTB Consumer Priv. Litig.* "t[old] users that it collects and sells" "their personal information" to generate revenue, which Yodlee hid from Class Members here. No. 4:21-CV-2155, 2024 WL 2242690, at *14 (N.D. Cal. Apr. 4, 2024). Next, *Kumandan* and *Saulsberry* involved the collection of oral conversations where courts consider contextual speech factors like the location of a conversation, "who was present," and "whose voice was captured," none of which apply here. *Kumandan v. Google LLC*, No. 19-CV-04286, 2023 WL 8587625, at *13 (N.D. Cal. Dec. 11, 2023); *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV146256, 2016 WL 3456939, at *15 (C.D. Cal. Apr. 14, 2016).

---

[12] Yodlee also speculates, vaguely, that "other sources" may have put Class Members on notice. Opp. at 19, n.13. But the sources Yodlee cites (O-Exs. 15, 16) do not mention PayPal, nor that Yodlee stores and uses IAV data for its own purposes after account verification. Routine, generalized information about Yodlee does not create consent for the "specific [] problem at issue." *See In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *6 (holding that a "limited number of articles" discussing general information about defendant's misconduct did not put class members on notice of the specific conduct at issue.)

As to privacy damages, Yodlee cites no authority requiring Plaintiffs' model to account for what it calls "each user's privacy tradeoff or cost-benefit analysis." Opp. at 21. Chief Judge Seeborg rejected this argument in *Rodriguez*, holding that privacy "damages need not account for [Class Member] variances [when] they are based on the market value" of data. 2024 WL 38302 at *12. While Yodlee challenges the suitability of Mr. Olsen's market benchmarks, its critiques go to weight, not predominance. *Simon & Simon, PC v. Align Tech., Inc.*, No. 20-CV-03754, 2023 WL 8261297, at *5 (N.D. Cal. Nov. 29, 2023) ("[T]he jury [should] determine whether dissimilarities [in expert benchmarks] are salient"). Yodlee's challenges to Plaintiffs' punitive[13] and nominal[14] damages models fail for similar reasons.

Finally, Yodlee is wrong that Olsen's classwide damages model assigns transaction data ("TSD") damages to Plaintiffs Cottrell and Szeto. Opp. at 21. Olsen's model ████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ Ex. 64 at 2-4. Yodlee, however, ████████████████████████████████████████████████████████████ █████████. *See id.* at 3-4 n.8, 36, Schedule 4 at n. 4-5. Olsen accounted ██████████ ████████████████████████████████████ not by making user-specific assumptions. *Id.* at 22. Separate from his classwide model, Olsen included a Plaintiff-specific table (Tables 2 and 15) ██████████████████████████████████████████████████████████████ ████████████████████ *Id.* at 3-4, 35-36. Yodlee's critique of Olsen's 90-day TSD assumptions is unfounded, and in any case, does not implicate Olsen's classwide calculations of the TSD Yodlee collected, which Yodlee does not challenge. *See* R-Ex. 5 ¶¶ 11, 16.

---

[13] Yodlee's challenge to the "proportionality" of punitive damages (Opp. at 22, n.15) is "not a reason to decline class certification," because due process considerations are handled "at a later stage[.]" *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548–49 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396, 2017 WL 3895764, at *9 (N.D. Cal. Sept. 6, 2017) ("[W]hether 'class treatment would render the magnitude of the defendant's liability enormous'—'is not an appropriate reason to deny class certification[.]'") (internal citation omitted).

[14] Yodlee challenges Plaintiffs' nominal damages claiming that "it is not possible to determine the number of 'unique Class members' in this case." Opp. at 24 n. 18. But Plaintiffs have reliably ████████ Ex. 88, Schedule 17 – Revised.

1    **F.    Common Issues Predominate for the Unjust Enrichment Claims**

2    To calculate unjust enrichment, Plaintiffs "may present evidence of the [defendant's] total

3    or gross [] benefit, or a reasonable approximation thereof." *See Meister v. Mensinger,* 230 Cal. App.

4    4th 381, 399 (Cal. Ct. App. 2014). The defendant bears the burden of "present[ing] evidence of

5    costs, expenses, and other deductions to show the actual or net benefit the defendant received." *Id.*

6    Here, Plaintiffs appropriately estimated Yodlee's unjust enrichment by calculating Yodlee's sales

7    revenue from certain data products that incorporated Class Members' IAV data. *See Brooks*, 2023

8    WL 9316647, at *13 (rejecting need to disaggregate value of data sold in consumer "profiles").

9    Yodlee's denials that it used Class Members' IAV data is a merits dispute, not a bar to certification.

10   *See Lytle v. Nutramax Lab'ys, Inc.,* 99 F.4th 557, 572 (9th Cir. 2024) (rejecting similar challenge).

11   Yodlee argues that Plaintiffs' unjust enrichment model fails *Comcast* because it does not

12   calculate the specific revenues that arise from Class Members' data. Opp. at 22. But arguments that

13   Plaintiffs "overstate[d] damages" are fact questions that "do not undermine predominance or raise

14   *Comcast* fit issues." *JUUL*, 609 F. Supp. 3d at 979. Rather, Plaintiffs' unjust enrichment model is

15   "consistent with [their] theory of liability in the case," which is that Yodlee "was unjustly enriched

16   by [its] collection [and use] of their data." *Rodriguez*, 2024 WL 38302, at *11 (internal citation

17   omitted) (rejecting challenge to similar model measuring Google's unjust enrichment from user

18   data). Yodlee does not meet its burden to show an alternative method of apportioning its unjust

19   profits. *See Meister*, 230 Cal. App. 4th at 398; *Rodriguez.* 2024 WL 38302, at *12 (upholding

20   "100% forfeiture" model because it was defendant's "burden of quantifying recouped profits").[15]

21   Yodlee's final argument that Plaintiffs should have deducted IAV's purported "benefit" to Class

22   Members has no evidentiary basis.

23   **G.    There Are No Individualized Statute-of-Limitations Defenses**

24   Class Members could not have discovered Yodlee's storage and use of their data because

25   Yodlee fraudulently concealed this practice classwide. "The Ninth Circuit has multiple times

26   rejected" Yodlee's argument that this tolling defense "will raise individual issues," because it

---

[15] *Delgado v. Meta Platforms, Inc.*, No. 23-CV-04181, 2024 WL 818344, at *8 (N.D. Cal. Feb. 27, 2024) is irrelevant. Opp. at 22 n.16. That case dismissed the plaintiff's BIPA Section 15(c) claims for failure to show a "sale" of their biometric data or that it was "integrated into a product." *Id.*

1   "involve[s] proof 'common to the defendants,' namely, 'the act of concealing.'" *Tait v. BSH Home*

2   *Appliances Corp.*, 289 F.R.D. 466, 485-86 (C.D. Cal. 2012). Because Yodlee's "own omissions

3   [and] deception" is the basis for Class Members' tolling, "predominance is not defeated because

4   the [tolling] doctrines . . . involve [common] proof." *Id.*

### H.   A Class Action is Superior to Repetitive, Individualized Adjudications

6        Yodlee does not identify a single "individualized" issue that would require mini-trials or be

7   "prohibitively difficult" (Opp. at 23) to manage. Instead, Yodlee claims that identifying Class

8   Members would take multiple steps with "no guarantee of success" because of how Yodlee stores

9   its data. *Id.* at 24.[16] Even if true, the Ninth Circuit has twice declined to require an "administratively

10  feasible way to identify [absent] class members." *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d

11  1121, 1133 (9th Cir. 2017) ("Rule 23 neither provides nor implies that demonstrating an

12  administratively feasible way to identify class members is a prerequisite to class certification");

13  *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 628 (9th Cir. 2020) (similar).

14       In any event, identifying Class Members will be easier than Yodlee claims. Both Yodlee

15  and PayPal █████████████████████████████████████████████████████████████████

16  ████████████████████████████████████.[17] Ex. 55 at 2–3; O-Ex. 7; O-Ex. 45.

17  PayPal can also ████████████████████████████████████. *See, e.g.*, Ex.

18

19

20  _____

21  [16] None of the three cases Yodlee relies on found superiority lacking because of difficulties
    identifying class members, but rather because the proposed classes would require individualized

22  determinations to establish who had claims at trial. Opp. at 24 (citing *Zinser v. Accufix Rsch. Inst.,
    Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001) (superiority lacking because pacemaker defect could be

23  caused by "many factors" each causing different types of injuries); *Haley v. Medtronic, Inc.*, 169
    F.R.D. 643, 652 (C.D. Cal. 1996) (same); *Medina v. Cnty. of Riverside*, 308 F. App'x 118, 120 (9th

24  Cir. 2009) (finding wiretapping class of all prison inmates was overbroad because not all inmates
    were "inappropriately wiretapped"). While Yodlee also cites *Olean Wholesale Grocery Coop., Inc.*

25  *v. Bumble Bee Foods LLC*, 31 F.4th 651, 664–65 (9th Cir.), that appeal affirmed a decision to

26  certify a class. Opp. at 24.
    [17]

27  ████████████████████. *See* Ex. 64 at 17-19; *see also* R-Ex. 6 █████

28  ████████████████████████████████████████████████████████████████████████

43. This data can be used to identify Class Members in a straightforward manner because it documents who linked accounts to PayPal via IAV during the Class Period.[18]

## I.   The Court Should Certify the Rule 23(b)(2) Injunctive-Relief Class

The Court may certify identical Classes under Rule 23(b)(2) and (b)(3) as courts "often . . . utilize this type of 'hybrid' certification" at the class certification stage, even where the damages sought are substantial. *Makaron v. Enagic USA, Inc.*, 324 F.R.D. 228, 234 (C.D. Cal. 2018); *see also West v. Calif. Serv. Bureau*, 323 F.R.D. 295, 307 (N.D. Cal. Dec. 11, 2017) (certifying hybrid classes despite "the large amount of potential [monetary relief] . . . [that] is primary to plaintiffs' action"). The Ninth Circuit's decision in *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) does not preclude Rule 23(b)(2) certification because the "Ninth Circuit [later] clarified that a court may certify a class for purposes of injunctive relief under Rule 23(b)(2) in addition to a Rule 23(b)(3) class for purposes of seeking monetary relief when the requirements for each are met." *Darrington v. Assessment Recovery of Wash., LLC*, No. C13-0286, 2013 WL 12107633, at *9 (W.D. Wash. Nov. 13, 2013) (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013)).

Yodlee's speculation that some hypothetical Class Members may "want Yodlee to store [their] data" (Opp. at 25) is not a basis to deny certification. *See Sidibe v. Sutter Health*, 333 F.R.D. 463, 499 n.143 (N.D. Cal. 2019) ("[T]hat some hypothetical members of the class allegedly . . . do not want those practices to end do not provide a basis for denying certification under Rule 23(b)(2)"). Likewise, Yodlee's claim that some Class Members' data may have been deleted also fails, as it is directly contradicted by Yodlee's own deletion records. *Supra* Section II.A.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Certify Classes should be granted in full.

---

[18] Even if self-identification were necessary, it would not defeat superiority. *See, e.g., Nolen v. PeopleConnect, Inc.*, No. 20-CV-09203, 2023 WL 9423286, at *24 (N.D. Cal. Dec. 14, 2023) (rejecting challenge to superiority where "self-identification is one way to identify California residents" and should concerns arise, "there may be ways to confirm residency without a great deal of difficulty (e.g., running a name against an address")).

Dated: June 26, 2024

*/s/ Christian Levis*

Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Benjamin D. Steinberg (admitted *pro hac vice*)
Kellie Lerner (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
1325 Avenue of the Americas, Suite 2601
New York, New York 10019
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
bsteinberg@robinskaplan.com
klerner@robinskaplan.com

Li Zhu (SBN 302210)
**ROBINS KAPLAN LLP**
55 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065-2133
Telephone: (605) 784-4013
Facsimile: (605) 784-4041
lzhu@robinskaplan.com

Anthony M. Christina (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, Pennsylvania 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

John Emerson (admitted *pro hac vice*)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Robert Kitchenoff (admitted *pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**

150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
kitchenoff@wka-law.com

Michele Carino (*pro hac vice* forthcoming)
**GREENWICH LEGAL ASSOCIATES
LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 622-6001
Mcarino@grwlegal.com

*Attorneys for Plaintiffs and the Proposed Class*