UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIUS CLARK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>YODLEE, INC.,<br><br>　　　　　Defendant. | Case No. 20-cv-05991-SK<br><br>**ORDER DENYING MOTION FOR CLASS CERTIFICATION**<br><br>Regarding Docket Nos. 493, 502, 521 |

This matter comes before the Court upon consideration of the motion for class certification filed by Plaintiffs. Having carefully considered the parties' papers, relevant legal authority, the record in the case, and having had the benefit of oral argument, the Court HEREBY DENIES Plaintiffs' motion for the reasons set forth below.

## BACKGROUND

Plaintiffs John H. Cottrell, Kyla Rollier and Jenny Szeto (collectively, "Plaintiffs")[1] filed this purported class action against Yodlee, Inc. to contest how Yodlee accesses and treats the personal financial data belonging to Plaintiffs and purported class members. PayPal uses Yodlee's instant account verification ("IAV") service to verify PayPal customers' bank accounts when they seek to use PayPal to make a purchase. (Dkt. No. 359 (Third Amended Complaint ("TAC"), ¶ 45.) At issue in this lawsuit is what information Yodlee collects, stores, and/or uses for its own purposes when PayPal's customers use Yodlee's IAV service.

A.   **Allegations of the First Amended Complaint**

As previously described in summarizing the First Amended Complaint, Plaintiffs allege that Yodlee surreptitiously collects such data from software products that it markets and sells to

---

[1] Plaintiffs clarified in their motion for class certification that only Cottrell, Rollier, and Szeto were being proposed as class representatives. (Dkt. No. 493 at p. vi, n. 2.)

PayPal, a digital payment platform which uses Yodlee's software. Yodlee then acquires individual customers' financial data when those customers of PayPal interact with the software installed on PayPal's systems. PayPal discloses to customers that Yodlee is involved in connecting their accounts to PayPal's service for the limited purpose of confirming the customers' bank details, checking their balance, and transactions, as needed. When customers[2] link their bank accounts to their PayPal account, they see the following message:

> We use Yodlee to confirm your bank details and to check your balance and transactions as needed, which can help your PayPal payments to through. For more information, see our Privacy Statement. You can turn off our use of Yodlee by removing permissions for this bank in your Profile.

(Dkt. No. 30 (First Amended Complaint), ¶ 55.) Then there is a button which states: "Agree and Link." (*Id*.) Customers do not give PayPal or Yodlee permission to collect and store their financial information for resale. (*Id*., ¶ 56.)

Yodlee goes beyond facilitating the log in transactions. Yodlee stores a copy of the customers' banking data and retains their usernames and passwords for their financial institutions to collect and store the customers' bank account transaction history on an ongoing basis. (*Id*., ¶¶ 8, 9, 57.) Customers did not consent to this kind of data collection, which is unrelated and unnecessary to complete their log in transactions. (*Id*.)

Despite the statement that customers may turn off the use of Yodlee, customers cannot opt out of or turn off Yodlee's access to their bank account information after providing their credentials. (*Id*., ¶ 58.) Additionally, even if customers sever their connection with their financial institution, Yodlee continues to use customers' log in information to access their financial accounts. (*Id*., ¶¶ 10, 58.) Yodlee then aggregates the customers' financial data and sells it to third parties. (*Id*., ¶ 56.)

B.  **Allegations of the Second Amended Complaint**

The Second Amended Complaint ("SAC") contains additional allegations. Plaintiffs allege that Yodlee surreptitiously collect Plaintiffs' financial data from software products that Yodlee markets and sells to some of the large financial institutions, wealth management firms, and digital

---

[2] The term "customer" here refers to PayPal's customers.

2

payment platforms like PayPal, which use Yodlee's software. (Dkt. No. 58, ¶¶ 2-6.) Plaintiffs allege in the Second Amended Complaint that Yodlee does not provide accurate information to individual people such as Plaintiffs about what Yodlee does with or how it collects the financial data. (*Id*., ¶ 7.) For example, PayPal discloses to its customers that Yodlee is involved in connecting their bank account to PayPal's service for the limited purpose of confirming the customers' bank details, checking their balance, and transactions, "as needed." (*Id*.) However, Plaintiffs allege that Yodlee immediately obtains 90 days of transaction history, and does so from all accounts linked to the customers' credentials, even if they only use their checking account with PayPal. (*Id*., ¶ 8.) Plaintiffs further allege that Yodlee stores the customers' log in information and that Yodlee then uses those credentials to routinely extract data from the customers' accounts without consent, even when there is no PayPal transaction at issue. (*Id*., ¶ 9.) Finally, Plaintiffs allege that Yodlee then constructs individualized profiles with the data and sells it, that Yodlee stores a copy of the customers' data for backup purposes for the developers (Yodlee's clients), and for its own purposes, and that, while the data is in electronic storage, Yodlee provides Plaintiffs' financial transaction data to Yodlee's clients. (*Id*., ¶¶ 84, 85, 88.)

**C. Third Amended Complaint**

The core of these allegations did not substantively change in Plaintiffs' operative complaint – their Third Amended Complaint. (Dkt. No. 359.)

**D.   Evidence regarding Proposed Class Representatives**

In its opposition to Plaintiffs' motion for class certification, Yodlee argues and provides supporting evidence that Yodlee did not, in fact, collect transactional data from Cottrell, Rollier or Szeto. (Dkt. No. 522 at pp.7, 12; *see also* Dkt. No. 512-16 (Declaration of Manoj Ghode)[3] at ¶¶ 6-8, Dkt. No. 514-2 (Ex. 45 to the Declaration of Andrew Leff); Dkt. No. 514-3 (Ex. 46 to the Declaration of Andrew Leff).) Because this is a central issue that could undermine Plaintiffs' standing and their ability to represent a class action regarding the claims premised on these allegations of collecting transactional data, the Court provided Plaintiffs with a supplemental opportunity to present evidence on this issue. (Dkt. No. 563.) The Court will address Plaintiffs'

---

[3] The Court DENIES Plaintiffs' motion for sanctions seeking to strike the Ghode Declaration. (Dkt. No. 521.)

3

response and its implications below.

## ANALYSIS

### A.  Legal Standard Applicable to Motions for Class Certification.

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. For certification of the proposed class, Plaintiffs bear the burden of showing that they meet each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 352 (2011) ("A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule."). Rule 23(a) provides that a district court may certify a class only if:

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a). If all four prerequisites of Rule 23(a) are satisfied, Plaintiffs must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court may certify a class only if the Court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*, 564 U.S. at 350-51 (citation omitted).

### B.  Standing.

To establish Article III standing, a plaintiff must show that he or she has suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and would likely be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (alterations and internal quotation marks omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show injury in fact, a plaintiff must demonstrate that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotation marks

omitted). "[S]tanding is claim- and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (internal quotations omitted) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press")).

**C.   Plaintiff's Motion for Class Certification.**

   **1.   Transactional Data**

As noted above, Yodlee argues and provides supporting evidence to show that it did not collect or store bank transaction data for any of the three named Plaintiffs. Although Rollier, Szeto, or Cottrell had a supplemental opportunity to present evidence that Yodlee did in fact collect transactional data from them during the relevant time periods or otherwise demonstrate why Yodlee's evidence does not fatally undermine their standing, Plaintiffs did not submit any additional evidence. (Dkt. No. 573.) Instead, Plaintiffs argue that Yodlee's evidence is insufficient to show that Yodlee did not collect transactional data from Rollier, Szeto, or Cottrell. However, Plaintiffs bear the burden of demonstrating standing. *Spokeo*, 578 U.S. at 338. Therefore, their failure to affirmatively demonstrate that Yodlee did, in fact, collect transactional data from Rollier, Szeto, or Cottrell is ultimately fatal to Plaintiffs' ability to demonstrate standing for their claims based on that action because they cannot prove damages based on the only actions Yodlee took with regard to their information.

Plaintiffs' claims center around their allegations that Yodlee improperly downloads 90 days of transactional data from PayPal's customers using IAV and then uses that data for Yodlee's own training purposes and for sale of aggregated data. In addition, Plaintiffs' theories of damages for their proposed class action solely rely on Yodlee's purported use of transactional data. (*See* Dkt. No. 492-51 (Declaration of Gary Olsen).)[4] With the limited exception of a potential invasion

---

[4] Plaintiffs argued at the hearing that Olsen separated out the damages he attributed to Yodlee's collection and storage of the credentials. However, in assessing damages related to the collection of banking credentials, Olsen relies upon Yodlee's collection of transactional data. According to Olsen, the credentials have value because Yodlee could use them to obtain 90 days of transactional data. (Dkt. No. 492-51 at ¶ 8.) The Court notes that Yodlee moved to exclude Olsen's testimony and to strike his expert report (Dkt. No. 502) but the Court need not address that

5

of privacy, the absence of any evidence that Yodlee collected transactional data from Rollier, Szeto, or Cottrell deprives them of the ability to show that they suffered an injury in fact, which is necessary for standing.

For Plaintiffs' fraud claim, their inability to show that they suffered an injury in fact related to the transactional data or incurred any damages is fatal to their ability to represent a class on this claim. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (plaintiffs without standing for their own claim cannot seek class wide relief for the claim); *Moreno v. AutoZone, Inc.*, 410 F. App'x 24, 25 (9th Cir. 2010) ("Because Medrano never had a cognizable late paycheck claim against AutoZone, 'she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.'") (quoting *Lierboe*, 350 F.3d at 1022). Similarly, because Plaintiffs cannot demonstrate that Yodlee was unjustly enriched through the use of their transactional data, Plaintiffs cannot represent a class on an unjust enrichment claim.

### 2. Sensitive Bank Information.

To avoid denial of class certification, Plaintiffs also argue that Yodlee's collection of their information is sufficient to demonstrate standing. Specifically, Yodlee collected for Plaintiffs' bank accounts their username, passwords, account numbers, and account balances ("sensitive bank information"). Plaintiffs contend that Yodlee's retention of sensitive bank information creates liability for Plaintiffs' remaining claims of invasion of privacy under California state law and California's anti-phishing statute.[5] However, Plaintiffs cannot rely on any injury caused by Yodlee's retention of sensitive bank information for these claims.

First, the Third Amended Complaint makes only a passing reference to the sensitive bank information. Although Plaintiffs allege that Yodlee improperly obtained and retained Plaintiffs' sensitive bank information, the focus of Plaintiffs' allegations is and has been the retention of the

---

motion because, in light of the Court's finding that Rollier, Szeto, or Cottrell fail to demonstrate that Yodlee collected their transactional data, Olsen's report is irrelevant.
[5] Plaintiffs bring a claim for invasion of privacy under California's common law and under California's Constitution and bring a claim for violation of California's Anti-Phishing Act, California Business and Professions Code § 22948.2.

6

1  credentials in order to obtain transactional data – data unrelated to and in excess of the information
2  needed to verify that individuals have sufficient funds to support the desired purchases through
3  PayPal.  (Dkt. No. 359 at ¶ 9 ("Yodlee then exploits these credentials to routinely extract data
4  from that user's accounts without consent"), ¶ 10 ("Yodlee relies on its own stored copy of the
5  individual's credentials to extract financial data from her accounts long after the access is
6  revoked."), ¶¶ 26, 30, 32, 44, 47, 48, 62.)  Plaintiffs' proposed classes similarly focuses on the use
7  of those credentials to access financial accounts.  (*Id*. at ¶ 153.)

8        Second, the only way that PayPal can verify that customers have sufficient funds in their
9  accounts for the PayPal transactions is to use Plaintiffs' sensitive bank information.  Given the
10 nature of PayPal, users obviously understand that PayPal (or its employees or contractors) must
11 access their bank accounts to verify their accounts have sufficient funds to pay for the transactions
12 through PayPal.  Plaintiffs acknowledged in their Second Amended Complaint that PayPal
13 notified them that Yodlee was involved and that PayPal gave customers an option out of Yodlee's
14 involvement.[6]  Given that customers knew about Yodlee's need to access their sensitive bank
15 information to complete a transaction, it is questionable whether Plaintiffs could maintain a claim
16 for invasion of privacy or violation of the anti-phishing statute based on this action.

17       Third, it is not clear whether the mere retention of sensitive bank information is sufficient
18 to constitute an invasion of privacy – a highly offensive intrusion into an area or matter as to
19 which there is a reasonable expectation of privacy – or adversely affects them under California
20 Business and Professions Code § 22948.3(a)(2).  *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 286
21 (2009).  However, for purposes of this motion for class certification, the Court need not determine
22 whether the alleged injury based on retaining sensitive bank information is sufficient to
23 demonstrate an injury in fact for standing because Plaintiffs' motion for class certification fails for
24 another reason – Rollier, Szeto, or Cottrell would be inadequate representatives.

25       Due to the absence of evidence that Yodlee collected transactional data from Rollier,

---

[6] *See* Dkt. No. 266 (Court's Order on Summary Judgment noting Plaintiffs' judicial admission in their SAC that PayPal's User Interface disclosed Yodlee and had a link to a Privacy Statement).

1  Szeto, or Cottrell during the relevant time periods, the Court finds that these proposed class
2  representatives are not typical of the proposed class. To satisfy the typicality requirement,
3  Plaintiffs' claims must be typical of those advanced by the class. *See* Fed. R. Civ. P. 23(a)(3).
4  Typicality is "directed to ensuring that plaintiffs are proper parties to proceed with the suit." *Reis*
5  *v. Arizona Beverages USA*, 287 F.R.D. 523, 539 (N.D. Cal. 2012). "The test of typicality is
6  whether other members have the same or similar injury, whether the action is based on conduct
7  which is not unique to the named plaintiffs, and whether other class members have been injured by
8  the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th
9  Cir. 2010) (citation and internal quotation marks omitted). Class representatives' claims must be
10 "reasonably co-extensive with those of absent class members; they need not be substantially
11 identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

As stated above, Plaintiffs' claims center around Yodlee's purported downloading of 90 days of transactional data and using that data for its own benefit and profit. Moreover, Plaintiffs' theories of damages rely on this purported use of transactional data. Even the portion of the theory of damages which attempts to quantify damages for simply storing the sensitive bank information, Plaintiffs' expert's theory is that the banking credentials have value because they *could* be used to download transactional data. Such a theory is too speculative and is inextricably tied to Plaintiffs' unsupported theory that Yodlee did, in fact, obtain transactional data from the named Plaintiffs. Thus, to the extent that Rollier, Szeto, or Cottrell could maintain state-law privacy claims or a California anti-phishing claim based solely on the retention of sensitive bank information,[7] the Court finds that such claims would not be reasonably co-extensive with absent class members and, thus, that Plaintiffs cannot demonstrate typicality necessary for class certification.

The injunctive relief Plaintiffs seek for the class also focuses on Yodlee's purported retention and use of transactional data. (Dkt. No. 493 (Plaintiffs' Mot. for Class Cert.) at p.25

---

[7] The Court notes that Yodlee raises several other arguments to demonstrate that Rollier, Szeto, and Cottrell would not be proper class representatives, even if limited to the claims for invasion of privacy and California's anti-phishing statute, including arguing that they could not bring California claims when they did not use PayPal's IAV service in California, that Szeto and Cottrell granted permission for their sensitive bank information to be stored, and that Rollier and Szeto's California claims are time-barred.

("Plaintiffs seek injunctive relief to stop Yodlee's retention and use of Class Members' banking data").  Because there is no evidence that Yodlee obtained Rollier, Szeto, or Cottrell's transactional data, they would not be typical representatives for a class seeking to enjoin Yodlee on this data either.

The Court, thus, DENIES Plaintiffs' motion for class certification.

**D.     Other Pending Motions.**

There are multiple motions to exclude testimony of and strike experts currently pending. (*See* Dkt. No. 501 (Motion to Exclude Serge Egelman), Dkt. No. 502 (Motion to Exclude Gary Olsen), Dkt. No. 503 (Motion to Exclude Nathaniel Good); Dkt. No. 542 (Motion Exclude Testimony of Adam Porter), Dkt. No. 548 (Motion to Exclude Expert Testimony of Tye L. Rattenbury), Dkt. No. 583 (Motion to Exclude Testimony of Ronald T. Wilcox).)  In light of the Court's denial of Plaintiffs' Motion for Class Certification, the Court DENIES Yodlee's motion to exclude Olsen's testimony and report regarding class-wide damages as MOOT.  The Court FURTHER ORDERS that the parties shall meet and confer to determine what portions, if any, of this case may proceed in light of the Court's findings in this Order.  Additionally, the parties shall meet and confer to determine which additional motions to exclude and strike expert testimony and reports should be denied as moot or whether those experts' testimony and opinions are relevant to remaining portions of Plaintiffs' individual claims.  The parties shall file a joint status report by no later than October 7, 2024.  If the parties cannot agree, they may file competing status reports by no later than October 7, 2024.

The Court HEREBY SETS a further case management conference to address the remaining portions of this case, if any, on October 21, 2024 at 1:30 p.m.  The Court VACATES the hearing scheduled on October 7, 2024, on the pending motions to exclude and strike experts (Dkt. Nos. 542, 548, 583) and will reset the hearing, if necessary, at a later date.  Moreover, the Court STAYS the briefing on Yodlee's motion for summary judgement and on any anticipated cross-motion for summary judgment by Plaintiffs.  The parties' status report should address how this Order on class certification impacts Yodlee's motion for summary judgment and whether portions of that motion are now moot.

1  The Court further notes that there are a large number of pending motions to seal (Dkt. Nos. 492, 504, 517, 518, 520, 522, 526, 535, 541, 547, 553, 557, 561, 564, 570, 572, 581, 582, 585), as well as a stipulation for an alternative sealing procedure.  (Dkt. No. 546.)  The Court DENIES the stipulation.

As a public forum, it may only entertain requests to seal that establish good cause and are narrowly tailored to seal only the particular information that is genuinely privileged or protectable as a trade secret or otherwise has a compelling need for confidentiality.  "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Accordingly, in the Ninth Circuit there is a "strong presumption in favor of access to court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

To give the parties an opportunity to more narrowly tailor their requests and to efficiently address the above motions to seal, the Court ORDERS the parties to file an omnibus revised request to seal with a proposed order encompassing all the above motions to seal on materials which they designated as confidential by no later than October 4, 2024.  The revised requests shall attach as exhibits to the supporting declaration the unredacted documents highlighting only the more narrowly requested material to be sealed.  The parties shall also submit a Microsoft Word version of their proposed orders to skpo@cand.uscourts.gov.

The proposed orders should set forth the pending motions to seal in order of the docket number of the original sealing motion, as depicted below:

| Docket Number of Original Sealing Motion and Exhibit Number to the Revised Declaration | Description of Material Sought to be Sealed | Specific Page and Line Numbers of Text Sought to be Sealed | Basis for Sealing |
| --- | --- | --- | --- |

This Order terminates Docket Numbers 492, 504, 517, 518, 520, 522, 526, 535, 541, 547, 553, 557, 561, 564, 570, 572, 581, 582, 585.  The Court will issue an order addressing the sealing motions after it receives the requested proposed orders.

10

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification, DENIES Plaintiffs' motion for sanctions, and DENIES Yodlee's motion to strike Olsen's testimony and report as MOOT.

**IT IS SO ORDERED**.

Dated: September 25, 2024



SALLIE KIM
United States Magistrate Judge