| | |
|---|---|
| EMILY JOHNSON HENN (SBN 269482)<br>MEGAN L. RODGERS (SBN 310344)<br>**COVINGTON & BURLING LLP**<br>3000 El Camino Real<br>5 Palo Alto Square, 10th Floor<br>Palo Alto, CA 94306-2112<br>Telephone: (650) 632-4700<br>Email: ehenn@cov.com<br>Email: mrodgers@cov.com<br><br>ZIWEI SONG (SBN 313842)<br>DANIEL RIOS (SBN 326919)<br>**COVINGTON & BURLING LLP**<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>Telephone: (415) 591-6000<br>Email: ksong@cov.com<br>Email: drios@cov.com<br><br>ERIC C. BOSSET (*pro hac vice*)<br>TARA SUMMERVILLE (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-6000<br>Email: ebosset@cov.com<br>Email: tsummerville@cov.com<br><br>ANDREW LEFF (*pro hac vice*)<br>**COVINGTON & BURLING LLP**<br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>Email: aleff@cov.com<br><br>*Attorneys for Defendant Yodlee, Inc.* | BENJAMIN D. STEINBERG (*pro hac vice*)<br>**SHINDER CANTOR LERNER LLP**<br>14 Penn Plaza, 19th Floor<br>New York, NY 10122<br>Telephone: (646) 960-8601<br>Facsimile: (646) 960-8625<br>benjamin@scl-llp.com<br><br>LAURA SONG (*pro hac vice*)<br>**ROBINS KAPLAN LLP**<br>1325 Avenue of the Americas, Suite 2601<br>New York, NY 10019<br>Telephone: (212) 980-7400<br>lsong@robinskaplan.com<br><br>CHRISTIAN LEVIS (*pro hac vice*)<br>AMANDA FIORILLA (*pro hac vice*)<br>**LOWEY DANNENBERG, P.C.**<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br>Telephone: (914) 997-0500<br>Facsimile: (914) 997-0035<br>clevis@lowey.com<br>afiorilla@lowey.com<br><br>*Attorneys for Plaintiffs and the<br>Proposed Classes*<br><br>[additional counsel listed on signature page] |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>YODLEE, INC.,<br><br>                Defendant. | Case No. 3:20-cv-05991-SK<br><br>**JOINT STATUS REPORT**<br><br>Judge: Hon. Sallie Kim<br>Courtroom: C, 15th Floor |

Pursuant to the Court's Order dated September 25, 2024 (Dkt. No. 600), Plaintiffs Darius Clark, John H. Cottrell, David Lumb, Kyla Rollier, and Jenny Szeto, and Defendant Yodlee, Inc., have met and conferred and respectfully submit this joint status report with their positions regarding (1) what portions, if any, of this case may proceed in light of the Court's findings in the September 25 order; (2) which additional motions to exclude and strike expert testimony and reports should be denied as moot or whether those experts' testimony and opinions are relevant to remaining portions of Plaintiffs' individual claims; and (3) how the September 25 order impacts Yodlee's motion for summary judgment and whether portions of that motion are now moot.

## I.   PLAINTIFFS' POSITION

### A.   Several Portions of Plaintiffs' Claims May Proceed

The Court's Class Certification Order ruled that three proposed class representatives—Plaintiffs John Cottrell, Kyla Rollier, and Jenny Szeto—lack Article III standing to pursue claims based on Yodlee's collection of bank transaction data and thus are not typical class representatives under Fed. R. Civ. P. 23(a)(3). Class Certification Order at 5-8. The Court's Class Certification Order did not resolve several portions of Plaintiffs' claims unrelated to bank transaction data, which may proceed.

<u>Claims Related to Sensitive Banking Data</u>: The Court did not resolve Plaintiffs' standing to bring claims based on Yodlee's taking of "sensitive bank information," like bank credentials, bank account information, and bank balances. *Id.* at 7. The Court expressly declined to decide the issue, holding that for purposes of class certification, the Court "need not determine whether the alleged injury based on retaining sensitive bank information is sufficient to demonstrate an injury in fact for standing[.]" *Id.* Accordingly, Plaintiffs may proceed with, at least, their individual privacy claims based on Yodlee's storage of their bank credentials and other sensitive banking data—acts that the Court previously recognized were central to Plaintiffs' allegations. *See* Order Regarding Yodlee's Motion for Summary Judgment, ECF No. 266 at 18 (recognizing the "intrusions" alleged by Plaintiffs include "storing *login credentials* and *data* forever," whose offensiveness "remains open for the jury") (emphasis added); Order Regarding Motions to Dismiss, ECF No. 54 at 2, 5 (recognizing Plaintiffs allege that "Yodlee stores a copy of the individuals' *banking data* and retains their *username and passwords* for their financial institutions" and "Plaintiffs have a reasonable expectation of privacy in th[at] data.") (emphasis added).

Injunctive Relief: The Court's Class Certification Order declined to certify an injunctive relief class on the grounds that the injunctive relief *proposed for the class* was focused on transaction data. *See* Class Certification Order, at 8-9 ("The injunctive relief Plaintiffs seek *for the class* also focuses on . . . transactional data.") (emphasis added). The Court did not address Plaintiffs' individual claims for injunctive relief, which are not limited to bank transaction data and focus on Yodlee's handling of other sensitive banking data and its false public disclosures. *See* Third Amended Complaint, ECF No. 359 ¶ 176 (requesting injunctive relief related to "sensitive personal data" not just transaction data). Plaintiffs seek injunctive relief to, *inter alia*, require Yodlee to (1) "delete Plaintiffs' and Class members' sensitive personal data"; (2) "cease further collection [of this data]"; (3) "improve its privacy disclosures"; and (4) "obtain adequately informed consent[.]" *Id.* ¶ 176. Theses injunctive claims, which are not focused on transaction data, are unaffected by the Class Certification Order and may proceed.

Plaintiffs Clark and Lumb: Lastly, the Court's Class Certification Order did not address the claims of Plaintiffs Darius Clark and David Lumb, two Plaintiffs from whom Yodlee indisputably did collect bank transaction data, but who were not proposed as class representatives. *See* Motion to Certify Classes ("Class Cert. Mot."), ECF No. 492-5 at vi, n.2 (explaining "Plaintiffs Clark and Lumb are not being proposed as Class Representatives because, although they linked accounts to PayPal, those linkages occurred after the proposed Class Period."). Plaintiffs Clark's and Lumb's claims remain pending and may proceed.

**B.     Adding Class Representatives Will Cure the Court's Concerns about Bank Transaction Data and Typicality**

Precedent and fairness both dictate that Plaintiffs should be granted leave to add, as new putative class representatives, one or more of the 19.5 million putative class members whose transaction data was collected by Yodlee, as this would cure the Court's concerns that transaction data was not collected from the existing representatives. *See* Class Cert. Mot., ECF No. 492-5 at 7. The Ninth Circuit has held that "[o]nce [typicality is found lacking] . . . . leave to amend should be granted to add named plaintiffs" with typical claims when "the record demonstrates the existence of numerous persons holding [such] claims." *Sueoka v. United States*, 101 F. App'x. 649, 654 (9th Cir. 2004) (remanding to district court with "instructions to grant leave to amend to identify [typical] named representatives"). Courts thus "regularly

allow or order the plaintiffs' counsel to substitute a new representative plaintiff" where "a named Plaintiff's individual claims fail or become moot for a reason that does not affect the viability of the class claims[.]" *Robichaud v. Speedy PC Software*, No. C 12 04730 LB, 2013 WL 818503, at *8 (N.D. Cal. Mar. 5, 2013).

Consistent with this Ninth Circuit precedent, "courts have consistently granted plaintiffs leave to substitute new representatives where . . . certification is denied on grounds of inadequacy[.]" *Adequacy of Representation—Substitution of Class Representative*, in 1 *McLaughlin on Class Actions*, § 4.36 (20th ed.). This is the prevailing practice within the Ninth Circuit; courts routinely grant leave to add named plaintiffs via an amended complaint when class certification is denied due to typicality. *See, e.g., Sueoka*, 101 F. App'x. at 654 (ruling that leave to amend "should be granted" to add typical class representatives); *Cabrera v. Bayer Healthcare LLC*, No. CV 2:17-08525-JAK (JPRx), 2024 WL 4228237, at *1, 5 (C.D. Cal. June 24, 2024) (granting plaintiff leave to file amended complaint to add new class representative following denial of class certification based on plaintiff's lack of typicality); *McGhee v. N. Am. Bancard, LLC*, No. 17-cv-00586-AJB-KSC, 2021 WL 5763834, at *2 (S.D. Cal. Sept. 17, 2021) (same); *Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 673 (C.D. Cal. 2009) (same); *Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *23 n.107 (C.D. Cal. Aug. 4, 2014) (same); *Hernandez v. Balakian*, 251 F.R.D. 488, 489 (E.D. Cal. 2008) (same); *see also Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1201 (N.D. Cal. 2007) (conditionally certifying class and granting leave to amend to find a substitute class representative); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 477 (C.D. Cal. 2012) (same); *Bauman v. Saxe*, No. 14-CV-01125-RFB-PAL, 2019 WL 157923, at *7 (D. Nev. Jan. 10, 2019) (same); *cf Whelan v. Indus.,* No. C-11-02146 EDL, 2012 WL 12920688, at *2 (N.D. Cal. Sept. 12, 2012) (granting leave to add named plaintiffs after "briefing on class certification revealed that [the original proposed class representative] is not a representative plaintiff"); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 558, n.113 (C.D. Cal. 2012) ("Problems with a class representative's typicality can sometimes be cured by giving plaintiff leave to amend his complaint or to substitute a new class representative.").

Because the purported lack of transaction-data collections from the existing representatives is the only barrier to class certification the Court should allow Plaintiffs adequate time to present a substitute

class representative who had transaction data collected, as was indisputably the case for 19.5 million other putative class members. *See Sueoka*, 101 F. App'x. at 654 (instructing district court to permit new representatives where "the record demonstrates the existence of numerous persons holding [typical] claims"). Adding named plaintiffs whose transaction data was collected would not alter nor broaden this case, as they will assert "virtually identical" claims as the existing Plaintiffs and will "rely on the discovery and other related pre-trial work that has already been undertaken." *Cabrera*, 2024 WL 4228237, at *5-6 (granting leave to add new plaintiffs following denial of class certification six years into case because their addition would "expedite the final resolution of [plaintiffs'] claims").

Adding named plaintiffs is particularly warranted here given that Yodlee withheld evidence about the amount of bank transaction data it collected from the existing Plaintiffs until *after* fact discovery closed and *after* Plaintiffs prepared their opening expert reports, thereby preventing Plaintiffs from addressing this issue or adding class representatives sooner. *See* Plaintiffs' Motion to Strike Yodlee's Untimely Materials and Other Sanctions ("Motion to Strike"), ECF No. 521 at 1 (objecting to the untimely Ghode Declaration submitted in May of 2024 that first claimed Yodlee did not collect bank transaction data from the class representatives). Despite the Court's order in October 2023 requiring Yodlee to produce data showing the amount of transaction data it collected from each IAV account-linkage, *see* ECF No. 375, at 2, Yodlee claimed that the only data field that showed this information ("MAX_TSD") was not available for all of the time periods when Plaintiffs linked accounts. Motion to Strike at 3, 6 (detailing Yodlee's prior claim that it did not have user-specific records on the amount of transaction data it collected for large portions of the class period, including when Plaintiff Cottrell linked his account). Yodlee never timely disclosed that there was another data field ("NUM_TRANS_RESP") that purportedly showed the amount of bank transaction data Yodlee collected during the time periods when the "MAX_TSD" field was unavailable. Yodlee first revealed this claim in the untimely Ghode Declaration, which it submitted with its expert rebuttal reports on May 9, 2024 to support its claim it did not collect transaction data from Plaintiffs Cottrell and Rollier.[1] *See* Yodlee's Opposition to Plaintiffs' Motion for Class Certification

---

[1] Yodlee argued Plaintiff Szeto did not have transaction data collected based on its lack of records. *Id*. at 6-7, n.8.

("Class Cert. Opp."), ECF No 553-2 at 6 n.8 (citing the Ghode Declaration and "NUM_TRANS_RESP" to argue Plaintiffs Cottrell and Rollier did not have transaction data collected).

Yodlee's withholding of information about the "NUM_TRANS_RESP" data field until shortly before class certification prejudiced Plaintiffs and is not a proper basis to end class proceedings in this case. Yodlee should not be permitted to foreclose class certification for millions of PayPal users by withholding evidence about class representatives during discovery and then belatedly disclosing it to upend class certification. Fairness requires that Plaintiffs be allowed to respond to this untimely evidence by adding new class representatives who had transaction data collected, which Plaintiffs could have done earlier had Yodlee's evidence been timely disclosed.

Yodlee is wrong that this case must be dismissed without amendment for lack of standing. Dismissal for lack of standing is warranted only if the Court conclusively determines that all Plaintiffs have lacked standing for all claims since the case' inception, such that the Court never had jurisdiction over any claim or party. *See Stanton v. Aetna Life & Cas. Bermuda Ltd.,* No. 18-cv-08937-CJCAFMX, 2021 WL 4146964, at *3 (C.D. Cal. Feb. 12, 2021) (distinguishing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) ("Although some courts have refused to allow a plaintiff who lacks standing to substitute a party with standing in his place, in those cases, no plaintiff had standing to pursue any claim."); *See Hajro v. United States Citizenship & Immigration Servs.*, 743 Fed. Appx. 148, 150 (9th Cir. 2018) (holding district court "erred" when it relied on *Lierboe* to deny leave to amend when one named plaintiff retained standing); *Cabrera,* 2024 WL 4228237, at *4 (finding *Lierboe* inapplicable when the court "did not conclusively determine that [p]laintiff had, in fact, suffered no injury" for all claims).

Dismissal here would be erroneous because standing is not lacking for all claims and Plaintiffs. Plaintiffs retain standing for their individual claims related to sensitive banking data (e.g. bank credentials), as well as their claims for injunctive relief. *See infra* at Section I.A. Moreover, Plaintiffs Clark and Lumb retain standing over all their claims, as Yodlee admits it collected transaction data from

their bank accounts.[2] *See* Class Cert. Opp., at 7, n.8 (admitting "Lumb and Clark had varying amounts of transaction data collected"). Finally, Yodlee does not contest the standing of former Plaintiff Deborah Wesch, who properly invoked this Court's jurisdiction and further precludes dismissal. *See Hensley-Maclean* v. *Safeway, Inc.,* No. 11-CV-01230-RS, 2015 WL 3956099, at *5 (N.D. Cal. June 29, 2015) (granting leave to amend despite no plaintiff with standing because a prior party's standing meant jurisdiction was "properly invoked" during the case); *Cabrera,* 2024 WL 4228237, at *4 (same). For each of these reasons, the Court retains jurisdiction over this case and may freely grant leave to amend.

Plaintiffs intend to add new class representatives in a judicious manner that will not unduly delay this case's resolution. Plaintiffs will seek leave to file an amended complaint to add new class representatives—with no other changes to their substantive allegations or claims—within 45 days after the upcoming October 21, 2024 case management conference, i.e. by December 5, 2024. Assuming leave is granted, the new named plaintiffs will promptly make themselves available for a deposition and produce all materials responsive to Yodlee's prior discovery requests on Plaintiffs (to the extent they are not subject to a pending objection). Plaintiffs will not take any new fact discovery other than to confirm the amount of transaction data Yodlee collected from the new plaintiffs. This streamlined process will ensure that the addition of new class representatives and any related discovery will conclude no later than early 2025.

**C.   Summary Judgment Should Be Stayed Pending Requests for Amendment and Appeal**

In addition to filing a motion to add additional class representatives, Plaintiffs plan to file a Fed. R. Civ. P. 23(f) petition with the Ninth Circuit by October 9, 2024 to seek interlocutory review of the Court's Class Certification Order. Because Plaintiffs' motion for leave and Rule 23(f) petition may affect which claims go forward and their suitability for class treatment, summary judgment briefing should be

---

[2] Yodlee's argument that Plaintiff Lumb and Clark lack standing because they allegedly "did not use IAV before joining this lawsuit" is incorrect, as both linked their accounts before filing the operative complaint. The Ninth Circuit has held that this cures any alleged time-based "jurisdictional defects of the [original] complaint" *N. Alaska Env't Ctr. v. United States Dep't of the Interior,* No. 3:18-CV-00030-SLG, 2018 WL 6424680, at *2 (D. Alaska Dec. 6, 2018) (rejecting argument that "Plaintiffs' claims should be dismissed 'because they filed their complaint before the leases were issued'") (citing *Northstar Fin. Advisors Inc. v. Schwab Invs.,* 779 F.3d 1036, 1044 (9th Cir. 2015); *see also Mathews v. Diaz,* 426 U.S. 67 (1976) (finding plaintiff's failure to file Medicare application until after filing of class complaint could be cured by a supplemental pleading).

stayed until both of Plaintiffs' forthcoming requests are resolved.[3] *See Alvarez v. NBTY, Inc.*, No. 17-CV-00567-BAS-BGS, 2020 WL 804403, at *3 (S.D. Cal. Feb. 18, 2020) (granting a stay because the "Ninth Circuit could later determine that the case should proceed as a class action" and it is "more efficient for both parties to know the Ninth Circuit's decision before proceeding."); *Wolfclan v. Menesses*, No. C23-5938-JLR-MLP, 2024 WL 1513624, at *3 (W.D. Wash. Apr. 8, 2024) (continuing defendants' motion for summary judgment because it "cannot reasonably be considered prior to resolution of Plaintiff's anticipated [] motion for leave to amend").

Conversely, if summary judgment briefing resumes before Plaintiffs' motion for leave and Rule 23(f) petition are resolved, the Parties will be forced to expend resources briefing issues that could be altered or rendered moot by new class representatives or interlocutory review. Resuming summary judgment briefing now would thus require a third round of summary judgment briefing if new plaintiffs are added or if the Class Certification Order is reviewed and not affirmed. *See Salhotra v. Simpson Strong-Tie Co., Inc.,* No. 19-CV-07901-TSH, 2022 WL 1091799, at *2 (N.D. Cal. Apr. 12, 2022) (granting stay during the pendency of plaintiffs' 23(f) petition and noting that "[i]f the case were to proceed with dispositive motions or trial, and if the Court were reversed on appeal, both parties would suffer irreparable harm in spending substantial time and resources on litigation."). Rather than engage in such costly, interim motion practice now with the attendant risk of repetitive and piecemeal briefing later, the better course would be to engage in just one round of summary judgment briefing once Plaintiffs' forthcoming requests are resolved and the scope of the case is more firmly established.[4] *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Servs.,* No. 09-CV-0103-B (WVG), 2009 WL 10672413, at *2 (S.D. Cal. Nov. 9, 2009) (staying case and declining to allow parties to "file summary judgment motions" because the alternative would cause the litigation to proceed "in a piecemeal fashion that may waste resources").

### D. The Additional Expert Motions Should Be Stayed

For the same reasons, the pending motions to exclude and strike expert testimony should also be stayed pending Plaintiffs' forthcoming motion for leave and Rule 23(f) petition. Once Plaintiffs'

---

[3] If Plaintiffs' Rule 23(f) petition is granted, Yodlee's Motion for Summary Judgment should be stayed until after the Ninth Circuit resolves Plaintiffs' interlocutory appeal.

[4] Plaintiffs are willing to submit a full motion to stay proceedings should the Court find it necessary.

forthcoming requests are resolved, the Parties and Court will be in a better position to address the pending expert motions, including which portions, if any, may be moot.

## II. YODLEE'S POSITION

The Court's September 25, 2024 order correctly denied class certification because the proposed class representatives lacked Article III standing and failed to satisfy Rule 23's typicality and adequacy requirements under well-established legal precedent. (Dkt. No. 600.) The findings in that order also bear on many of the issues raised by Yodlee's summary judgment motion and confirm that Yodlee is entitled to judgment as a matter of law on Plaintiffs' individual claims, as explained further below. (*Id.*; *infra*, pp. 8-9.) Plaintiffs' anticipated Rule 23(f) petition is highly unlikely to succeed, both because the Court did not err in denying class certification and because this case is already primed for adjudication on the merits. *See, e.g.*, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959-60 (9th Cir. 2005) (Rule 23(f) appeals "are generally disfavored" and limited to situations when the class certification decision (1) is both "questionable" and a "death-knell" for the case; (2) "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review"; or (3) "is manifestly erroneous").

For the same reasons, no stay is warranted, and this case should proceed to summary judgment without further delay. *See, e.g.*, *Hernandez v. Wells Fargo Bank, N.A.*, 2020 WL 10689800, at *1 (N.D. Cal. Mar. 19, 2020) (in deciding whether to stay a case pending a Rule 23(f) petition, district courts consider (1) the appeal's likelihood of success on the merits; (2) harm to the movant absent a stay; (3) harm to the non-movant from a stay; and (4) the public interest). Yodlee's motion for summary judgment, if granted, would dispose of all remaining claims in the case, after which Plaintiffs can appeal in the ordinary course from the final judgment of the Court. *See generally Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 196 (2019) (reiterating "the general rule that appellate review must await final judgment").

Specifically, Plaintiffs Cottrell, Rollier, and Szeto lack standing because they had no transactional data collected, as the Court found in its September 25 order (Dkt. No. 600 at 3-6), and because they suffered no injury-in-fact from Yodlee's collection and storage of IAV data. (*See, e.g.*, *id.* at 6-7 (rejecting Plaintiffs' arguments concerning "sensitive bank information"); *see also* Dkt. No. 596-2 at 9:24-10:12, 10:21-13:9.) And as explained in Yodlee's motion, Plaintiffs Clark and Lumb also lack standing because

they did not use IAV until *after* they joined this lawsuit – i.e., after they learned of Plaintiffs' allegations. (Dkt. No. 596-2 at 9:24-10:20 & n.3.) It is hornbook law that "[a] plaintiff is not permitted to 'manufacture' an injury in fact through voluntary actions" and "cannot manufacture standing by inflicting harm on themselves." *Truyen Gia Phan v. Colvin*, 2014 WL 794255, at *7 (S.D. Cal. Feb. 25, 2014) (citing *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)); *Thielman v. Kotek*, 2024 WL 2700608, at *4 (D. Or. May 24, 2024) (citing *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1119 (9th Cir. 2022)). This flows from controlling Supreme Court precedent establishing the "irreducible constitutional minimum of standing," including that any alleged injury must be "fairly traceable to the challenged action of the defendant." *See, e.g.*, *Truyen*, 2014 WL 794255, at *6-7 & n.2 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).[5]

Moreover, Plaintiffs cannot prove the elements of their claims under either California law or the laws of the respective states in which they used IAV. (Dkt. No. 596-2 at 14:19-25:10.) The Court's September 25 order confirmed many of the factual predicates for these summary judgment arguments. For example, the Court concluded "Plaintiffs cannot demonstrate that Yodlee was unjustly enriched through the use of their transactional data," as required to sustain an unjust enrichment claim. (Dkt. No. 600 at 6:11-12.) As to Plaintiffs' phishing and invasion-of-privacy claims, the Court also recognized that (1) "the only way that PayPal can verify that customers have sufficient funds in their accounts for the PayPal transactions is to use Plaintiffs' sensitive bank information"; (2) PayPal "users obviously understand that PayPal (or its employees or contractors) must access their bank accounts to verify their

---

[5] Plaintiffs cite case law recognizing that jurisdictional defects can be cured through amendment in certain "appropriate circumstances," i.e., where the defect in question was undisputedly curable and a mere formality. *See Mathews v. Diaz*, 426 U.S. 67, 75 (1976) (excusing plaintiff's failure to file a Medicare application before joining lawsuit where it was undisputed that this "jurisdictional condition was satisfied" and could be formalized by amendment); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-48 (9th Cir. 2015) (finding no abuse of discretion in permitting amendment to include "a post-complaint assignment from a party that clearly had standing" because prohibiting such an amendment would "elevate[] form over substance" and impose a "hypertechnical rule" that would "turn on the label attached to a pleading"); *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, 2018 WL 6424680, at *2 (D. Alaska Dec. 6, 2018) (applying *Northstar* and allowing amendment where "the jurisdictional defects of the previous complaint" boiled down to plaintiffs' decision to file a suit challenging a land sale under various administrative laws a few days before the agency actually issued the leases for those sales). None of those decisions purported to supersede well-established Supreme Court and Ninth Circuit precedent holding that a plaintiff cannot manufacture injury-in-fact for standing purposes.

accounts have sufficient funds to pay for the transactions through PayPal" and "knew about Yodlee's need to access their sensitive bank information to complete a transaction"; and (3) "PayPal notified [Plaintiffs] that Yodlee was involved and . . . gave [them] an option out of Yodlee's involvement." (*Id.* at 7:8-15 & n.6.) The Court further recognized that "Plaintiffs' theories of damages . . . solely rely on Yodlee's purported use of transactional data," and "the portion of the theory of damages which attempts to quantify damages for simply storing the sensitive bank information . . . is too speculative and is inextricably tied to Plaintiffs' unsupported theory that Yodlee did, in fact, obtain transactional data from the named Plaintiffs." (*Id.* at 5:22-23, 8:13-18.) And, in any event, Plaintiffs cannot assert claims under California law because they did not use IAV in California. (Dkt. No. 596-2 at 13:10-14:18.)

For these and other reasons set forth in Yodlee's pending motion, the Court should enter summary judgment for Yodlee on all remaining claims in this action, after which Plaintiffs can seek appellate review in the ordinary course. Yodlee therefore proposes the following schedule to conclude briefing on and hear that motion:

- October 23 – Yodlee to file revised motion for summary judgment that takes into account the Court's September 25 order
- November 6 – Plaintiffs' opposition
- November 18 – Yodlee's reply
- December 2 – hearing (current date)

The remaining Rule 702 motions to exclude or strike expert testimony, all of which have been fully briefed, would need to be resolved in connection with Yodlee's motion for summary judgment only to the extent Plaintiffs seek to rely on their experts to oppose that motion (and Yodlee responds with expert testimony in reply). Yodlee therefore proposes that the Court set the Rule 702 motions for Ron Wilcox, Tye Rattenbury, and Adam Porter for hearing on November 18, or as soon thereafter as the Court is available, and in any event no later than December 2 (the last day for hearing dispositive motions). (The Court already heard oral argument on Nathaniel Good and Serge Egelman.)

Finally, Plaintiffs cannot cure the defects in either their individual claims or their bid for class certification at this late stage by seeking to add new proposed class representatives. Plaintiffs cannot represent a class because none of them ever had Article III standing to begin with. (*See supra*, p. 8.) This

is not a case like *Camille Cabrera v. Bayer Healthcare*, where the court "ha[d] not . . . determined that Plaintiff[s] lack[] standing." *See* 2024 WL 4228237, at *4 (C.D. Cal. June 24, 2024). Nor is this a case like *Stanton* or *Hensley-Maclean*, where one or more plaintiffs unquestionably had standing to pursue their claims. *See Stanton v. Aetna Life & Cas. Bermuda Ltd.*, 2021 WL 4146964, at *3 n.2 (C.D. Cal. Feb. 12, 2021); *Hensley-Maclean v. Safeway, Inc.*, 2015 WL 3956099, at *4 (N.D. Cal. June 29, 2015).[6] And Plaintiffs' arguments regarding the claims of absent putative class members are irrelevant because the Court *denied* class certification and there is no class with "legal status separate from that of the named plaintiffs" in this case. *See Jones v. San Diego Metro. Transit Sys.*, 2016 WL 3952154, at *4 (S.D. Cal. July 22, 2016) (citing *Kremens v. Bartley*, 431 U.S. 119, 133 (1977)).

Plaintiffs' contention that amendment is routinely permitted to cure typicality concerns also ignores that the Court denied class certification because the proposed class representatives *both* lacked Article III standing *and* failed to satisfy Rule 23's typicality and adequacy requirements. (*See* Dkt. No. 600 at 6-9.) Article III standing is distinct from typicality and adequacy; it is "the threshold issue in any suit" and a prerequisite to class certification. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *see also Allen v. Garland*, 2023 WL 2457407, at *4 (N.D. Cal. Mar. 10, 2023) (plaintiffs bear the burden of establishing standing through "all stages" of litigation) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Where, as here, the named plaintiffs in a class action "never had standing" in the first instance, it is ***not*** "a mootness case" where "other proceedings may follow" or "the suit can proceed as a class action with another representative, subject to the district court's assessment whether a substitute representative is adequate for Rule 23 class purposes." *Lierboe*, 350 F.3d at 1023. Instead, "the action must be dismissed and new named plaintiffs with standing may not intervene." *E.g.*, *In re Exodus Commc'ns, Inc. Sec. Litig.*, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006) (citing *Lierboe*, 350 F.3d at 1022-23 & n.6 (remanding with instructions to dismiss)).[7]

---

[6] *Hajro* is even further afield. Not only did that case feature at least one plaintiff who "had standing at the start of the suit," it was not even brought as a class action, which was why the district court "erred" by relying solely on *Lierboe* (which involved a class action). *See Hajro v. U.S. Citizenship & Immigr. Servs.*, 743 F. App'x 148, 150 (9th Cir. 2018).

[7] Plaintiffs' citations to orders granting leave to amend to cure typicality and adequacy defects are thus inapposite. Where, as here, the named plaintiffs never had *Article III standing*, courts in the Ninth Circuit (continued…)

Even if Plaintiffs' request were not foreclosed as a matter of law, the time for seeking leave to amend the pleadings or add new parties passed long ago. In September *2022*, the Court denied a motion by Plaintiffs to amend the complaint because "discovery in this matter ha[d] already taken a substantial amount of time and effort" and, at such a "late stage in the litigation . . . expanding the factual basis of Plaintiffs' class and the proposed class definition would require additional discovery and unfairly prejudice Yodlee." (Dkt. No. 243 at 4.) Two years later, that reasoning applies with even greater force. This case has now gone through *four* complaints, *ten* plaintiffs, *multiple extensions* of the case schedule, and *years* of discovery (now closed). (*See* Dkt. Nos. 1, 58, 204-3, 243 at 3, 349, 359.) The Court decided Plaintiffs' class certification motion after full briefing and hearing, and Yodlee has moved for summary judgment on the remaining individual claims. Much of the evidence and many of the arguments developed and adjudicated over the last four years were Plaintiff-specific, based on deposition and written discovery from each Plaintiff as well as third-party discovery from PayPal concerning individual Plaintiffs – including the data referenced in the Court's September 25 order. (*See* Dkt. No. 553-2 at 5:1-12 & n.4; Dkt. No. 600 at 3; *see also, e.g.*, Dkt. No. 553-2 at 6:12-7:28, 10:12-11:14, 13:1-14:14, 18:14-26, 23:23-24:4 (Plaintiff-specific arguments in Yodlee's class certification opposition); Dkt. No. 596-2 at 4:3-8:19, 9:24-22:2 & n.6, 23:17-24:21 (Plaintiff-specific arguments in Yodlee's summary judgment motion).) Moreover, since PayPal users would not know whether PayPal requested transactional data for them, Plaintiffs could not plead claims about transactional data collected from new proposed class representatives consistent with Rule 11, nor could they identify putative class members who had transactional data collected without further discovery. In any event, such an attempt would be extraordinarily prejudicial and should not be countenanced at this late stage. (*See* Dkt. No. 243 at 4.)

---

routinely reach the opposite result and reject attempts to resuscitate the class action by swapping in new plaintiffs. *See, e.g., Skilstaf, Inc. v. CVS Caremark Corp.*, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010), *aff'd*, 669 F.3d 1005 (9th Cir. 2012) (dismissing complaint without leave to amend); *Almeida v. Google, Inc.*, 2009 WL 3809808, at *3 (N.D. Cal. Nov. 13, 2009) (denying motion for leave to file amended complaint); *Exodus*, 2006 WL 2355071, at *1-2 (dismissing case and denying motions to intervene); *Zapien v. Washington Mut., Inc.*, 2008 WL 11509012, at *2 (S.D. Cal. June 17, 2008) (dismissing case and rejecting proposal to substitute plaintiff); *see also Rieken v. Timberland Bank*, 639 F. Supp. 3d 1128, 1134 (W.D. Wash. 2022) ("Courts will not permit amendments that amount to a back-door attempt to begin the action anew where, in all likelihood, the original plaintiffs were never qualified to represent the class." (cleaned up)).

Plaintiffs' belated attempt to reboot their case is especially improper given that the grounds on which the Court denied class certification have been known to Plaintiffs since *2021*. (*See, e.g.*, Dkt. No. 99 at 29 (Yodlee's answer asserting that Plaintiffs – including previously named Plaintiff Deborah Wesch – lacked standing because they suffered no injury-in-fact); Dkt. No. 107-4 at 7, 9, 12-13 (Yodlee's early summary judgment motion arguing that Yodlee pulled transactions only as requested by PayPal and that Plaintiffs had not been adversely affected by Yodlee's alleged actions).) Plaintiffs have also known since last year that Yodlee collected no transactional data for Cottrell, Rollier, or Szeto – yet chose to proffer only those Plaintiffs as proposed class representatives because Clark and Lumb did not use IAV before joining this lawsuit. (*See* Dkt. No. 534 at 2-5; Dkt. No. 492-5 at vi n.2.) And Yodlee has already refuted, and the Court has already rejected, Plaintiffs' baseless arguments about supposed "withholding" of evidence. (*See* Dkt. No. 534; Dkt. No. 600 at 3 n.3.) There is no justification for substituting brand new plaintiffs as proposed class representatives *after certification already has been denied*, especially when Plaintiffs had multiple opportunities to seek leave to do so beforehand. Nor would such substitution remove "the only barrier to class certification," as Plaintiffs suggest. (*See supra*, pp. 3-4.) Yodlee opposed class certification on multiple independent grounds, many of which the Court did not reach and are not unique to Cottrell, Rollier, and Szeto. (*See* Dkt. No. 553-2.)

In sum, Plaintiffs knew of their standing deficiencies and have had more than sufficient opportunity to seek leave to add new plaintiffs and propose other class representatives; they cannot get a do-over simply because they chose to "march[] forward with their motion for class certification" and lost. *See Heredia v. Sunrise Senior Living LLC*, 2021 WL 811856, at *6 (C.D. Cal. Feb. 9, 2021) (denying leave to propose additional class representatives because doing so "would cause significant prejudice to Defendants and unduly delay the course of this litigation").

Dated: October 7, 2024

Respectfully submitted,

 /S/  Megan L. Rodgers
Megan L. Rodgers

EMILY JOHNSON HENN (SBN 269482)
MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**

```
                    3000 El Camino Real
                    5 Palo Alto Square, 10th Floor
                    Palo Alto, CA 94306-2112
                    Telephone: (650) 632-4700
                    Email: ehenn@cov.com
                    Email: mrodgers@cov.com

                    ZIWEI SONG (SBN 313842)
                    DANIEL RIOS (SBN 326919)
                    **COVINGTON & BURLING LLP**
                    Salesforce Tower
                    415 Mission Street, Suite 5400
                    San Francisco, CA 94105-2533
                    Telephone: (415) 591-6000
                    Email: ksong@cov.com
                    Email: drios@cov.com

                    ERIC C. BOSSET (*pro hac vice*)
                    TARA SUMMERVILLE (*pro hac vice*)
                    **COVINGTON & BURLING LLP**
                    One CityCenter
                    850 Tenth Street, NW
                    Washington, DC 20001-4956
                    Telephone: (202) 662-6000
                    Email: ebosset@cov.com
                    Email: tsummerville@cov.com

                    ANDREW LEFF (*pro hac vice*)
                    **COVINGTON & BURLING LLP**
                    The New York Times Building
                    620 Eighth Avenue
                    New York, NY 10018-1405
                    Telephone: (212) 841-1000
                    Email: aleff@cov.com

                    *Attorneys for Defendant Yodlee, Inc.*


                     /S/  Christian Levis
                    ─────────────────────────────
                    Christian Levis

                    BENJAMIN D. STEINBERG (*pro hac vice*)
                    **SHINDER CANTOR LERNER LLP**
                    14 Penn Plaza, 19th Floor
                    New York, NY 10122
                    Telephone: (646) 960-8601
                    Facsimile: (646) 960-8625
                    benjamin@scl-llp.com

                    Laura Song (*pro hac vice*)
                    **ROBINS KAPLAN LLP**
                    1325 Avenue of the Americas, Suite 2601
                    New York, NY 10019
```

Telephone: (212) 980-7400
lsong@robinskaplan.com

Li Zhu (SBN 302210)
**ROBINS KAPLAN LLP**
55 Twin Dolphin Drive, Suite 310
Redwood City, CA 94065-2133
Telephone: (605) 784-4013
lzhu@robinskaplan.com

Thomas J. Undlin (*pro hac vice* forthcoming)
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
tundlin@robinskaplan.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, Pa 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

John Emerson (*pro hac vice*)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive
Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Robert Kitchenoff (*pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
kitchenoff@wka-law.com

Michele Carino (*pro hac vice* forthcoming)
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 622-6001
mcarino@grwlegal.com

*Attorneys for Plaintiffs and the Proposed Classes*

### FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that each of the other signatories have concurred in the filing of this document.

/S/   *Megan L. Rodgers*
Megan L. Rodgers