MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>YODLEE, INC.,<br><br>            Defendant. | Case No. 3:20-cv-05991-SK<br>**YODLEE, INC.'S REVISED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**REDACTED**<br>Judge:  Hon. Sallie Kim<br>Date:   December 16, 2024<br>Time:  9:30 a.m.<br>Courtroom:  C, 15th Floor |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 16, 2024, at 9:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Sallie Kim of the United States District Court, Northern District of California at the San Francisco Courthouse, Courtroom C – 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Yodlee, Inc. will and hereby does move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims.

Yodlee moves for summary judgment because there is no genuine dispute that Plaintiffs lack Article III standing, cannot assert claims under California law, and cannot prove the essential elements of their claims under California's Anti-Phishing Act, for invasion of privacy, and for unjust enrichment. Yodlee is therefore entitled to judgment as a matter of law. This motion is based on this notice, the accompanying memorandum of points and authorities, and attached exhibits; matters properly subject to judicial notice; pleadings and other papers on file in this action; and other written or oral argument that Yodlee may present to the Court.

DATED: October 25, 2024                    Respectfully submitted,

*/S/ Megan L. Rodgers*
Megan L. Rodgers
COVINGTON & BURLING LLP

*Attorneys for Defendant Yodlee, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ..................................................................................2

      A.    Yodlee Provides IAV Services to PayPal. ...............................................2

      B.    PayPal Decides How to Configure and Present the IAV Service to Users. .........................3

      C.    PayPal Disclosed Yodlee's Role in IAV. ...............................................3

            1.    Rollier. ....................................................................................4

            2.    Szeto. .....................................................................................5

            3.    Cottrell, Clark, and Lumb. .......................................................7

      D.    Yodlee Does Not Sell or Otherwise Monetize PayPal IAV Data .........................8

III.  LEGAL STANDARD ..........................................................................................9

IV.   ARGUMENT ......................................................................................................9

      A.    Plaintiffs Lack Article III Standing. .......................................................9

            1.    Clark and Lumb Did Not Use IAV Before Joining this Lawsuit. ...............10

            2.    Cottrell, Rollier, and Szeto Had No Transactional Data Collected and Suffered No Injury from Yodlee's Retention of Credentials or "Basic" IAV Data. ...............10

            3.    There Is No Evidence that Yodlee Stored Szeto's Data. .......................13

      B.    Plaintiffs Cannot Assert Claims Under California Law. .........................13

      C.    The Record Disproves Essential Elements of Plaintiffs' Claims. ...............14

            1.    Plaintiffs Have No CAPA Claim Against Yodlee. ..............................14

            2.    Yodlee Is Not Liable for Invasion of Privacy. ..................................19

            3.    Yodlee Was Not Unjustly Enriched. .................................................24

V.    CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000) ..................................................................................9

*Am. Safety Ins. Servs., Inc. v. Griggs*,
959 So. 2d 322 (Fla. Dist. Ct. App. 2007) .............................................................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................25

*Bennett v. Visa U.S.A. Inc.*,
198 S.W.3d 747 (Tenn. Ct. App. 2006) ..................................................................25

*Cunningham v. Pro. Educ. Inst., Inc.*,
2018 WL 6709515 (E.D. Tex. Nov. 5, 2018) .........................................................24

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ............................................................................22, 23

*Fowler v. Univ. of Phoenix, Inc.*,
817 F. App'x 442 (9th Cir. 2020) ......................................................................18, 19

*Fred Segal, LLC v. CormackHill*,
LP, 821 F. App'x 783 (9th Cir. 2020)....................................................................16

*Galen v. Cnty. of Los Angeles*,
477 F.3d 652 (9th Cir. 2007) ...................................................................................9

*Givens v. Mullikin*,
75 S.W.3d 383 (Tenn. 2002)...................................................................................24

*Goins v. City & Cnty. of San Francisco*,
2018 WL 10455157 (N.D. Cal. Mar. 20, 2018)........................................................9

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ...........................................................................16, 17

*Hambleton v. R.G. Barry Corp.*,
465 N.E.2d 1298 (Ohio 1984)................................................................................25

*Hammer v. Sorensen*,
824 F. App'x 689 (11th Cir. 2020) .........................................................................24

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................................................19, 20, 21, 22

*Hart v. TWC Prod. & Tech. LLC*,
　　2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)......................................................21

*Heldt v. Guardian Life Ins. Co. of Am.*,
　　2019 WL 651503 (S.D. Cal. Feb. 15, 2019).........................................................21

*Hernandez v. Hillsides, Inc.*,
　　47 Cal. 4th 272 (2009)..........................................................................19, 22, 23

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
　　738 F.3d 1085 (9th Cir. 2013).................................................................................9

*Hollifield v. Monte Vista Biblical Gardens, Inc.*,
　　553 S.E. 2d 662 (Ga. Ct. App. 2001)....................................................................25

*I.C. v. Zynga, Inc.*,
　　600 F. Supp. 3d 1034 (N.D. Cal. 2022)................................................................12

*Imperial Merch. Servs., Inc. v. Hunt*,
　　47 Cal. 4th 381 (2009).........................................................................................17

*In re iPhone Application Litig.*,
　　844 F.Supp.2d 1040 (N.D. Cal. 2012)..................................................................22

*Javier v. Assurance IQ, LLC*,
　　2021 WL 940319 (N.D. Cal. Mar. 9, 2021)......................................................20, 21

*Katz-Lacabe v. Oracle Am., Inc.*,
　　668 F. Supp. 3d 928 (N.D. Cal. 2023).............................................................14, 24

*Knievel v. ESPN*,
　　393 F.3d 1068 (9th Cir. 2005)...............................................................................15

*Lawrence v. Finicity Corp.*,
　　716 F. Supp. 3d 851 (E.D. Cal. 2024).......................................................12, 13, 17

*Low v. LinkedIn Corp.*,
　　900 F. Supp. 2d 1010 (N.D. Cal. 2012)................................................................22

*Lujan v. Defs. of Wildlife*,
　　504 U.S. 555 (1992)................................................................................................9

*Lunsford v. Sterilite of Ohio, L.L.C.*,
　　165 N.E.3d 245 (Ohio 2020)................................................................................24

*Marich v. MGM/UA Telecomms., Inc.*
　　113 Cal. App. 4th 415 (2003)................................................................................24

*Markels v. AARP*,
　　689 F. Supp. 3d 722 (N.D. Cal. Aug. 29, 2023)....................................................24

*Marsicano v. Bank of Am. N.A.*,
   2016 WL 10968664 (C.D. Cal. Dec. 19, 2016) ...................................................................19

*Martin v. Senators, Inc.*,
   418 S.W.2d 660 (Tenn. 1967)..............................................................................................24

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................................................13, 14

*Moran v. Lewis*,
   114 N.E.3d 1254 (Ohio App. 2018)......................................................................................24

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...............................................................................20

*Peralta v. Dillard*,
   744 F.3d 1076 (9th Cir. 2014) .........................................................................................9, 16

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................................21

*Phillips v. U.S. Customs & Border Prot.*,
   74 F.4th 986 (9th Cir. 2023) ...................................................................................... *passim*

*Prohias v. Pfizer, Inc.*,
   490 F. Supp. 2d 1228 (S.D. Fla. 2007) ................................................................................25

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) ................................................................20, 21

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017) .................................................................................19

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) .............................................................................................21

*Smith v. First Nat. Bank of Atlanta*,
   837 F.2d 1575 (11th Cir. 1988) ........................................................................................1, 24

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..............................................................................................................11

*Sponchiado v. Apple Inc.*,
   2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ...............................................................15, 16

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..............................................................................................................11

*Thielman v. Kotek*,
   2024 WL 2700608 (D. Or. May 24, 2024) ...........................................................................10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................................................... 10

*Truyen Gia Phan v. Colvin*,
   2014 WL 794255 (S.D. Cal. Feb. 25, 2014) ............................................................. 10

*United States v. Joseph*,
   716 F.3d 1273 (9th Cir. 2013) ................................................................................... 17

*United States v. Prasad*,
   18 F.4th 313 (9th Cir. 2021) ...................................................................................... 18

*Walker v. Cotter Props., Inc.*,
   181 S.W.3d 895 (Tex. App. 2006) ............................................................................ 25

*Warner v. Experian Info. Sols., Inc.*,
   931 F.3d 917 (9th Cir. 2019) ..................................................................................... 18

*In re Yahoo Mail Litig.*,
   308 F.R.D. 577 (N.D. Cal. 2015) .............................................................................. 13

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......................................................... 22

**Statutes and Rules**

Cal. Bus. & Prof. Code § 22948.1 ...................................................................................... 17

Cal. Bus. & Prof. Code § 22948.2 ............................................................................... *passim*

Cal. Bus. & Prof. Code § 22948.3 ....................................................................... 15, 17, 18

Cal. Civ. Proc. Code § 340 ................................................................................................ 18

Cal. Civ. Code § 3515 ........................................................................................................ 19

Civil L.R. 56-3 ................................................................................................................ 9, 16

Fla. Stat. § 668.704 ............................................................................................................ 19

Ga. Code § 16-9-109.1 ...................................................................................................... 19

Tenn. Code § 47-18-5204 .................................................................................................. 19

Tex. Bus. & Com. Code § 325.006 .................................................................................... 19

**Other Authorities**

*Senate Bill Analysis on S.B. 355*, 2005-06 Reg. Sess., at 1-3 (Aug. 26, 2005),
   https://leginfo.legislature.ca.gov//.xhtml?_id=SB355 .......................................... 14

## I.    INTRODUCTION

Plaintiffs brought this meritless lawsuit based on allegations that they were injured because Yodlee impersonated their banks, collected and stored their bank account information without consent through PayPal's Instant Account Verification ("IAV") service, and monetized their transactional data.  Discovery has proven each of these allegations false.

*First*, none of the Plaintiffs were injured.  Two of them – Clark and Lumb – did not even use IAV until after joining this lawsuit.  The remaining three – Cottrell, Rollier, and Szeto – had no transactional data collected, and there is no evidence that Yodlee stored any data for Szeto at all.  And Plaintiffs have not shown that they suffered any harm from Yodlee's collection and storage of their bank login credentials and "basic" bank account information required to perform IAV.  Nor could they, given the Ninth Circuit's ruling just last year that allegedly unlawful collection and storage of personal information, without more, does not suffice to confer Article III standing.

*Second*, none of the Plaintiffs were deceived.  All voluntarily chose to use IAV to link bank accounts to their PayPal profiles and did so through different multi-screen IAV flows controlled by PayPal.  Each of those IAV flows required Plaintiffs to identify their banks, provide their credentials, and affirmatively acknowledge and agree that PayPal and its service providers – including Yodlee, identified by name – could collect their bank account information to perform IAV.  These uncontroverted facts leave no genuine dispute that Yodlee never represented itself to be a Plaintiff's bank.

*Third*, Yodlee has never monetized PayPal's IAV data.  Any transactional data from PayPal was programmatically excluded from and never used in Yodlee's other products and services.

No genuine dispute exists as to these facts, which are fatal to Plaintiffs' claims under California's Anti-Phishing Act ("CAPA"), for invasion of privacy, and for unjust enrichment.  Under controlling Supreme Court and Ninth Circuit precedent, Plaintiffs have no Article III standing because they suffered no injury-in-fact.  Plaintiffs' California-law claims also fail because they saw and used PayPal's IAV flows in other states.  Under controlling Ninth Circuit precedent (applying California choice-of-law rules), Plaintiffs' claims would be governed by the respective laws and community standards of those states.

Plaintiffs also cannot prove the elements of their claims.  Even assuming California law applies, Plaintiffs' *CAPA* claims fail as a matter of law because there was no misrepresentation.  The IAV flows

and accompanying disclosures (i) distinguished between PayPal, Yodlee, and the "bank" selected by the user and (ii) explained how IAV works and Yodlee's role in performing IAV. Plaintiffs also have no cause of action against Yodlee when they were not "adversely affected" by, and Yodlee was not "directly" responsible for, any purported violation. Plaintiffs' *invasion-of-privacy* claims fail as a matter of law because they consented to the data practices at issue, and there is nothing highly offensive about Yodlee's collection and storage of the credentials and account information needed to perform IAV. And Plaintiffs' *unjust enrichment* claims fail as a matter of law because Yodlee has never monetized PayPal IAV data (and collected no transactional data at all for Cottrell, Rollier, or Szeto).

At this stage, Plaintiffs can no longer rely on unsupported allegations and bare assertions. Nor can they rest on the Court's partial denial of Yodlee's early summary judgment motion in December 2022 when (i) that denial has no binding effect under Ninth Circuit law and local rule, and (ii) any genuine disputes left open by that order have since been conclusively resolved in Yodlee's favor. Plaintiffs have the burden to show through affirmative evidence that they have Article III standing and can prove each element of their claims, and their failure to do so entitles Yodlee to summary judgment. For these and other reasons explained below, the Court should enter judgment in Yodlee's favor on all claims.

## II.     STATEMENT OF FACTS

### A.     Yodlee Provides IAV Services to PayPal.

Yodlee is a technology company that provides business-to-business services to financial institutions and fintech companies like PayPal. (Dkt. No. 512-14 at 35:6-10.) PayPal uses Yodlee's IAV service to offer PayPal users the option to link bank accounts instantly to their PayPal profiles. (Dkt. No. 107-6 ¶ 3; Dkt. No. 178-5 at 3.) A user choosing IAV must identify the bank to be linked and provide login credentials to enable PayPal, through Yodlee, to collect information from that bank for purposes of verifying that any eligible (checking or savings) account is legitimate, adequately funded, and that the user has the required privileges. (Dkt. No. 107-6 ¶¶ 3-6; Dkt. No. 178-46 at 2-3–2-4; Dkt. No. 509-6 ¶ 29.) PayPal displays all verified accounts and balances from that bank to the user, who then decides which account(s) to link. (*E.g.*, Dkt. No. 492-53 at -11864; Dkt. No. 595-2.) Users are not required to use IAV to link bank accounts to PayPal and can select an alternative method that does not involve Yodlee. (Dkt. No. 493-25 at 13:3-4.)

Yodlee stores PayPal IAV data on secure servers, with credentials and other sensitive data encrypted and subject to strict controls and monitoring. (*See, e.g.*, Dkt. No. 553-2 at 5:14-18 (citing Dkt. No. 512-4 at -429677; Dkt. No. 508-14; and Dkt. No. 512-11 at 5:1-4).) Credentials are used only to perform services requested by PayPal and become obsolete when changed by the user. (*See* Dkt. No. 107-6 ¶¶ 8-9.) There is no evidence (or allegation) that any PayPal IAV data stored in Yodlee's systems has ever been compromised. Users can "turn off [their] use of Yodlee by removing permissions" in their PayPal profiles. (Dkt. No. 359 ¶ 45 (Fig. 1); Dkt. No. 595-2.) PayPal uses an API to delete account-level data (including credentials) in Yodlee's system and has done so over 42 million times. (*See, e.g.*, Dkt. No. 553-2 at 5:21-6:1 (citing Dkt. No. 492-42 at 4:19-26, 5:10-12 and Dkt. No. 411-28.)

### B.    PayPal Decides How to Configure and Present the IAV Service to Users.

PayPal decides what data IAV will retrieve and for which users. (Dkt. No. 492-42 at 2:10-3:6.) From January 2014 to June 2016, PayPal configured IAV to collect only "basic" data fields: bank account number, routing number, account holder name, account name, account type, account balance, and date of last account update. (*Id.*) Beginning in June 2016, Yodlee began collecting on a one-time basis and for only a fraction of users (as requested by PayPal) up to 90 days of recent transaction history for fraud detection and prevention purposes. (*Id.*; *see, e.g.*, Dkt. No. 553-2 at 3:5-12 (citing Dkt. No. 509-6 ¶ 29; Dkt. No. 508-13; Dkt. No. 178-81; Dkt. No. 411-27; and Dkt. No. 512-20 at 97:23-98:13).) In January 2019, PayPal contracted to add a "balance refresh" feature that uses stored credentials to check if a linked account has sufficient balance for new purchases. (Dkt. No. 178-17 at 3, 6; Dkt. No. 189-5 at 225:4-8, 228:13-22.) That service launched around February 2020. (Dkt. No. 492-42 at 3:2-6; Dkt. No. 411-27.)

### C.    PayPal Disclosed Yodlee's Role in IAV.

PayPal's IAV flow contains multiple screens and has gone through several iterations over time. (Dkt. No. 509-6 ¶¶ 10-16.) As demonstrated below, the specific versions used by Plaintiffs (1) identified Yodlee by name and disclosed its role in IAV; (2) disclosed that PayPal and its service providers may collect, store, and share users' personal information for IAV or other business purposes; and (3) required users to affirmatively acknowledge and agree to the then-effective terms and disclosures before proceeding to link accounts with IAV.

1        **1.    Rollier.**

Rollier used IAV in August 2017.  (Dkt. No. 509-6 ¶ 22; Dkt. No. 514-8 at 3:18-19, 4:4-6.)  She was presented with an IAV flow that included screens exemplified in Figure 1 below.  (Dkt. No. 509-6 ¶ 11 (explaining when PayPal implemented these screens); Dkt. No. 492-55 at -11870–72 (examples of screens PayPal used at the time).)  PayPal designed and hosted every part of this IAV flow, and Rollier provided her credentials directly to PayPal, which then forwarded the information to Yodlee.  (*See, e.g.*, Dkt. No. 553-2 at 3:18-20 (citing Dkt. No. 512-12 at 1:18-26 and Dkt. No. 512-14 at 52:16-54:13); *id.* at 4:21-24 (citing Dkt. No. 512-8 at -6489 and Dkt. No. 512-12 at 2:24-3:2).)  As shown on the left in Figure 1 below, this IAV flow listed several banks that were available for linking.  (Dkt. No. 492-55 at -11870.)  Rollier's specific bank ▮▮▮▮▮▮▮ however, was not among those listed, and she had to enter her bank routing number and account number along with her credentials to enable the account-linking.  (*See* Dkt. No. 509-6 ¶¶ 11(b)(iv), 22; Dkt. No. 514-8 at 3:18-19, 4:4-6.)

**<u>Figure 1</u>**



As shown on the right in Figure 1 above, the IAV flow used by Rollier included a hyperlink to PayPal's Terms and Conditions and required Rollier to affirmatively agree to those Terms and Conditions in order to proceed.  (Dkt. No. 492-55 at -11872.)  Text above the "Confirm Instantly" button stated, "By clicking **Link Bank Instantly**, you agree to the <u>Terms and Conditions</u> for linking your bank."  (*Id.*)

Those hyperlinked Terms and Conditions stated:

> By using the [Instant Bank Account Confirmation] Service, **you authorize PayPal and its supplier Yodlee, Inc. ("Yodlee") to access third party sites designated by you, on your behalf, to retrieve information requested by you, or as required by PayPal to confirm your bank account**. For all purposes hereof, you hereby grant PayPal and Yodlee a limited power of attorney . . . to access third party internet sites, servers or documents, retrieve information, and use your information . . . with the full power and authority **to do and perform each and every act and thing requisite and necessary to be done in connection with such activities** . . . . **You understand and agree that the Service is not endorsed or sponsored by any third party account providers** . . . .

(Dkt. No. 509-6 ¶ 18; Dkt. No. 492-15 at -11857 (bold added).)

The Terms and Conditions further stated that Rollier's "use of the Service is subject to the terms of . . . the PayPal Privacy Policy." (Dkt. No. 492-15 at -11857.) PayPal's then-effective Privacy Policy provided that Rollier agreed to PayPal's "collection, use, storage, [and] sharing" of personal information, including "[f]inancial information, such as the full bank account numbers . . . that you link to your PayPal account" (Dkt. No. 510-13 at -8592–93); to PayPal's "use of third-party service providers" who may "store and process your personal information (*id.* at -8594); and that PayPal's "service providers [may] use your information in connection with the services they perform for us" (*id.* at -8595). (*See* Dkt. No. 509-6 ¶ 22.)

### 2. Szeto.

Szeto used IAV in May 2018. (Dkt. No. 509-6 ¶ 23; Dkt. No. 514-7 at 3:18-19, 4:4-6.) She was presented with an IAV flow that included the screens exemplified in Figure 2 below. (Dkt. No. 509-6 ¶ 11 (explaining when PayPal implemented these screens); Dkt. No. 492-53 at -11861–62.) As with Rollier's screens, PayPal also designed and hosted every part of this IAV flow, and Szeto provided her credentials directly to PayPal in the first instance. (*See, e.g.*, Dkt. No. 553-2 at 3:18-20 (citing Dkt. No. 512-12 at 1:18-26 and Dkt. No. 512-14 at 52:16-54:13); *id.* at 4:21-24 (citing Dkt. No. 512-8 at -6489 and Dkt. No. 512-12 at 2:24-3:2).) As shown on the left in Figure 2 below, the IAV flow listed several banks that were available for linking. (Dkt. No. 492-53 at -11861.) Szeto's bank ███ was among those listed, so she clicked the ███ icon to make her selection, which PayPal then confirmed in the next screen for Szeto to provide her credentials to enable the account-linking. (*See* Dkt. No. 514-7 at 3:18-19, 4:4-6.)

**Figure 2**



As shown on the right in Figure 2 above, the IAV flow included a hyperlink to PayPal's Terms and Conditions and required Szeto to affirmatively agree to those Terms and Conditions in order to proceed. (Dkt. No. 492-53 at -11862.) Text above the "Link Bank Instantly" button stated, "By clicking **Link Bank Instantly**, you agree to the <u>Terms and Conditions</u> for linking your bank." (*Id.*)

Those hyperlinked Terms and Conditions contained the same disclosures that were presented to Rollier, excerpted above, and likewise provided that Szeto's "use of the Service is subject to the terms of . . . the PayPal Privacy Policy." (*See* Dkt. No. 509-6 ¶ 18; Dkt. No. 492-15 at -11857.) PayPal's then-effective Privacy Policy provided that PayPal "may collect, retain, process, share and transfer your Personal Data," including "financial account information" (Dkt. No. 510-14 at -8598, -8605); may do so with third-party "data providers" and "service providers that perform services and functions at our direction and on our behalf" (*id.* at -8599, -8600); and may, if a user connects their PayPal profile "to other financial accounts, directly or through a third-party service provider . . . have access to your account balance and transactional information" (*id.* at -8602). (*See* Dkt. No. 509-6 ¶ 23.)

In addition, a document produced by Szeto shows that her PayPal profile explicitly displayed her permissions ████████████████████████████████████████████████████████████████ ██████████," and ██████████████████████████████████████████ (Dkt. No. 514-11 at -23005.)

### 3. Cottrell, Clark, and Lumb.

Cottrell first used IAV in March 2020.  (Dkt. No. 509-6 ¶ 24; Dkt. No. 514-6 at 3:18-19, 4:4-6.)[1] Lumb did not use IAV until December 2022, *after* he had already joined this lawsuit.  (Dkt. No. 509-6 ¶ 25; Dkt. No. 514-12 at 3:18-19, 4:4-7.)  Clark did not use IAV until April 2023, also *after* he had already joined this lawsuit.  (Dkt. No. 509-6 ¶ 26; Dkt. No. 514-13 at 3:18-19, 4:5-7.)  These three Plaintiffs were presented with an IAV flow that included screens like those shown in Figure 3 below.  (Dkt. No. 509-6 ¶ 14 (explaining when PayPal implemented these screens); Dkt. No. 595-2 (images of the screens).)  PayPal designed and hosted the first screen and customized according to its own specifications the contents of the second screen where users provided credentials.  (*See, e.g.*, Dkt. No. 553-2 at 3:20-25 (citing Dkt. No. 512-12 at 1:20-21, 1:24-26, and Dkt. No. 178-17 at 4-6 (SOW)); Dkt. No. 512-14 at 52:16-54:13.)  Both screens bear PayPal's logo.  As shown in Figure 3 below, the IAV flow listed banks that were available for linking and prompted users to select their own bank before providing credentials to enable the account-linking.  (Dkt. No. 595-2; *see also* Dkt. No. 359 ¶ 45 (PayPal-designed screens).)

**Figure 3**



---

[1] Cottrell continued using his IAV-linked account for new purchases even *after* joining this lawsuit.  (*See* Dkt. No. 553-2 at 7 n.12 (citing Dkt. No. 510-3 at 179:25-180:16 and Dkt. No. 514-9).)

As shown on the right in Figure 3 above, the IAV flow included a hyperlink to PayPal's then-effective Privacy Statement and required users like Cottrell, Lumb, and Clark to affirmatively acknowledge and agree to that Privacy Statement in order to proceed. (Dkt. No. 595-2.) Text above the "Agree and Link" button also specifically identified Yodlee by name and disclosed its role in IAV:

> We use Yodlee to confirm your bank details and to check your balance and transactions as needed, which can help your PayPal payments go through. For more information, see our Privacy Statement. You can turn off our use of Yodlee by removing permissions for this bank in your Profile.

(*Id.*)

Each version of the Privacy Statement in effect when Cottrell, Lumb, and Clark used IAV expressly disclosed that PayPal may collect, store, use, and share these Plaintiffs' personal data, including to keep their account and financial information up to date (Dkt. No. 595-3 at -8682, -8684–85 (Cottrell); *id.* Dkt. No. 595-4 at -11891, -11896 (Lumb); *id.* Dkt. No. 595-5 at -11904, -11906–07 (Clark)); may do so with third-party service providers that operate at PayPal's direction and on its behalf (Dkt. No. 595-3 at -8686 (Cottrell); *id.* Dkt. No. 595-4 at -11895, -11900 (Lumb); *id.* Dkt. No. 595-5 at -11906, -11911–12 (Clark)); and may have access to account balance and transactional data (among other financial information) (Dkt. No. 595-3 at -8687 (Cottrell); *id.* Dkt. No. 595-4 at -11898–99 (Lumb); *id.* Dkt. No. 595-5 at -11913 (Clark)). (*See* Dkt. No. 509-6 ¶¶ 24-26.)

In addition, Cottrell (like Szeto) also produced an image from his PayPal profile displaying his permissions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. No. 514-10 at -23010.)

### D.    Yodlee Does Not Sell or Otherwise Monetize PayPal IAV Data

Yodlee has never monetized PayPal IAV data. (*See, e.g.*, Dkt. No. 557-2 at 2:11-15 (citing Dkt. No. 189-4 at 25:6-8, 83:13-15, 85:10-13; Dkt. No. 189-5 at 41:17-24, 153:13-16, 156:1-2; Dkt. No. 238 ¶¶ 11-12; Dkt. No. 385-2 ¶ 6; Dkt. No. 547-4 at 182:23-25; Dkt. No. 512-15 ¶¶ 3-4).) Yodlee's system filters data at the code level to ensure that only data from clients (or "cobrands") that Yodlee has selected for inclusion is used in data panels or to train transaction data enrichment ("TDE") models, and the data from cobrands *not* selected for inclusion – such as PayPal – is programmatically filtered out. (*See, e.g.*, Dkt. No. 547-2 at 3:1-4:4; Dkt. No. 557-2 at 2:20-3:21, 4:10-5:15.)

## III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Where, as here, the moving party "does not have the ultimate burden of persuasion at trial," that party may either "produce evidence which . . . negates an essential element of the non-moving party's claims or . . . show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Goins v. City & Cnty. of San Francisco*, 2018 WL 10455157, at *2 (N.D. Cal. Mar. 20, 2018).  The party opposing summary judgment then "must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial." *Id.*  "Bald assertions that genuine issues of material fact exist are insufficient," *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007), and "[a] scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact," *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000); *see also Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1095 (9th Cir. 2013) (party opposing summary judgment may not rely on "misleading statements . . . taken plainly out of context" to assert a genuine dispute of material fact).

In December 2022, this Court denied in part Yodlee's early motion for summary judgment, "[b]ut the denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing.  Denial of summary judgment may result from a factual dispute at the time.  That dispute may disappear as the record develops." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc); *accord* Civil L.R. 56-3.

## IV.    ARGUMENT

### A.    Plaintiffs Lack Article III Standing.

At the threshold, Yodlee is entitled to summary judgment on all claims because Plaintiffs lack Article III standing.  Plaintiffs "can no longer rest on . . . 'mere allegations,' but must 'set forth' . . . evidence [of] 'specific facts'" to show standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To establish standing, Plaintiffs must show proof of an injury that is "concrete and particularized" and "actual or imminent," not merely "conjectural" or "hypothetical." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023).  "And standing is not dispensed in gross; rather, plaintiffs must demonstrate

standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs have not met this burden. Clark and Lumb lack standing because they used IAV only *after* joining this lawsuit. And none of the remaining Plaintiffs (Cottrell, Rollier, and Szeto) suffered any injury-in-fact from Yodlee's conduct. As the Court recently held, the fact that Yodlee did not collect transactional data from these plaintiffs is "fatal to [their] ability to demonstrate standing for their claims." (Dkt. No. 600 at 5.) Without a transactional-data leg to stand on, Plaintiffs have not shown the requisite "concrete harm" from Yodlee's retention of their credentials or "basic" IAV data.[2] Plaintiff Szeto also separately lacks standing to assert storage-based claims because there is no evidence that Yodlee stored her data.

### 1. Clark and Lumb Did Not Use IAV Before Joining this Lawsuit.

"A plaintiff is not permitted to 'manufacture' an injury in fact through voluntary actions" and "cannot manufacture standing by inflicting harm on themselves." *Truyen Gia Phan v. Colvin*, 2014 WL 794255, at *7 (S.D. Cal. Feb. 25, 2014) (citing *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)); *Thielman v. Kotek*, 2024 WL 2700608, at *4 (D. Or. May 24, 2024) (citing *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1119 (9th Cir. 2022)). Plaintiffs Clark and Lumb did just that by joining this lawsuit *before ever using IAV*. (Dkt. No. 514-13 at 3:18-19, 4:5-7; Dkt. No. 514-12 at 3:18-19, 4:4-7).) All of their claims must therefore be dismissed.[3]

### 2. Cottrell, Rollier, and Szeto Had No Transactional Data Collected and Suffered No Injury from Yodlee's Retention of Credentials or "Basic" IAV Data.

As the Court has recognized, undisputed evidence shows that Yodlee did not collect transactional data for Cottrell, Rollier, or Szeto. (Dkt. No. 600 at 5.) This is "fatal" to their remaining claims.

**Unjust Enrichment.** The sole basis for Plaintiffs' unjust enrichment claim is their allegation that Yodlee monetized their transactional data. (*See, e.g.*, Dkt. No. 266 at 13-14, 25 (summary judgment order allowing unjust enrichment claims to proceed based solely on alleged sale of transactional data in data panels); Dkt. No. 492-5 at 23-24 (Plaintiffs' disgorgement model based entirely on Yodlee's alleged sales

---

[2] This is simply information that would appear on a paper check and the account balance, all of which is required to perform IAV. (*See* Dkt. No. 509-6 ¶ 29.)

[3] This is why Plaintiffs did not propose Clark or Lumb as a class representative. (Dkt. No. 492-5 at vi n.2.)

of transactional data); *accord* Dkt. No. 600 at 5:20-6:3, 6:11-13.)  The fact that Yodlee never obtained transactional data for Cottrell, Rollier, or Szeto therefore precludes their unjust enrichment claims.

**Invasion of Privacy.**  The same evidence also forecloses Cottrell, Rollier, and Szeto's invasion-of-privacy claims.  As the Ninth Circuit held just last year (after the Court's December 2022 summary judgment order), allegedly unlawful collection and storage of personally identifying records, "without more, does not give rise to a concrete injury necessary for standing." *Phillips*, 74 F.4th at 988-89, 995-96 (9th Cir. 2023).  (*See* Dkt. No. 553-2 at 8:8-9:8; Dkt. No. 581-3 at 9:7-11:2; Dkt. No. 593 at 21:3-23:9.)  This is consistent with Supreme Court precedent holding that a bare statutory violation, "divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).  Here, Plaintiffs' encrypted credentials and "basic" IAV data have been securely stored in Yodlee's system and have never been compromised.  (Dkt. No. 553-2 at 5:14-20.)  Plaintiffs have not suffered any out-of-pocket loss from Yodlee's storage of their data.  (*E.g.*, Dkt. No. 581-3 at 10 n.6 (citing Dkt. No. 510-2 at 335:11-23 (Cottrell); Dkt. No. 510-3 at 229:24-230:3 (Szeto)); Rios Decl. Ex. A (Clark Dep.) at 319:24-320:3; *id.* Rios Decl. Ex. B (Lumb Dep.) at 244:9-12.)  They have not lost this data or been deprived of its use, and indeed disclaimed any intent to sell their own data.  (Rios Decl. Ex. A (Clark Dep. at 62:3-63:5); *id.* Rios Decl. Ex. B (Lumb Dep. at 79:22-80:11); *id.* Dkt. No. 595-8 (Cottrell Dep. at 78:13-24); *id.* Dkt. No. 595-9 (Rollier Dep. at 253:14-254:9); *id.* Dkt. No. 595-10 (Szeto Dep. at 85:12-86:8).)

As this Court recognized, Plaintiffs' compensatory damages models for invasion of privacy "solely rely on Yodlee's purported use of transactional data."  (Dkt. No. 600 at 5:22-23.)  This confirms that Plaintiffs' alleged injuries are based entirely on the supposed value of transactional data – which Yodlee did not collect for Cottrell, Rollier, or Szeto – and ***not*** on any other data.  Even their "credentials-taking" model is based *not* on any innate value of credentials but instead on the supposed value of *transactional data* that Yodlee *hypothetically* "could" have collected using those credentials.  (*See* Dkt. No. 600 at 8 (concluding this model "is too speculative and is inextricably tied to Plaintiffs' unsupported theory that Yodlee did, in fact, obtain transactional data from" Cottrell, Rollier, and Szeto.)  Plaintiffs' counterfactual attempt to manufacture a concrete injury from credentials storage cannot support Article III standing.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (alleged future injury must be "certainly

impending"); *Phillips*, 74 F.4th at 991 (injury-in-fact must be "actual or imminent, not 'conjectural' or 'hypothetical'"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) ("[A] risk of harm must either *materialize* or *cause some other injury* in order to confer standing in a suit for damages.").  And Plaintiffs did not even propose a damages model for retention of "basic" IAV data.  In short, undisputed evidence shows that Cottrell, Rollier, and Szeto suffered no injury-in-fact because Yodlee did not actually collect transactional data from any of them, and there is no "concrete harm" from Yodlee's mere retention of credentials or "basic" IAV data.

**CAPA.**  The same evidence and legal principles establish that Cottrell, Rollier, and Szeto also lack Article III standing to assert a CAPA claim.  CAPA concerns a specific type of *misrepresentation* (phishing); it is not a privacy statute and "do[es] not protect substantive privacy rights." *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 872 (E.D. Cal. 2024).  "A potential injury to privacy under [this statute] is therefore dependent upon additional consequences to be actionable . . . as the mere acquisition of this information does not necessarily violate a person's privacy or intrude upon their seclusion." *Id.* at 871.  In other words, Plaintiffs must show that they suffered some "concrete and particularized" and "actual or imminent" injury as a result of the alleged misrepresentation to establish Article III standing for this claim. *See Phillips*, 74 F.4th at 991; *Lawrence*, 716 F. Supp. 3d at 867, 871.

As explained, Cottrell, Rollier, and Szeto cannot make this showing because mere collection and storage of credentials and "basic" IAV data does not qualify.  (*See* Dkt. No. 581-3 at 8:12-11:2, Dkt. No. 593 at 26:20-27:16.) *Lawrence* is instructive in this regard.  There, as here, the plaintiff asserted a CAPA claim based on the allegation that the defendant had unlawfully acquired and stored her bank login credentials and other financial information. *Lawrence*, 716 F. Supp. 3d at 865.  Applying *Phillips*, the *Lawrence* court explained that the bank account information protected by CAPA "is information that is maintained by an entity providing a good or service for the individual and that is required to be disclosed in certain circumstances . . . and, as held by the Ninth Circuit, is *not so sensitive that another's access to that information would be highly offensive to a reasonable person or otherwise gives rise to reputational harm or injury to privacy interests.*" *Id.* at 871 (citing *Phillips*) (cleaned up, italics added).  So too here. The *Lawrence* court ultimately concluded that the plaintiff's *additional* allegations that she paid for "ongoing costly credit monitoring services" and that Finicity had shared her data "with others" sufficiently

1  pled "concrete harm" to survive a motion to dismiss.  *Id.* at 873-875, 891.  But here, Plaintiffs can no

2  longer rely on mere allegations at this stage, and they have presented no evidence of "concrete harm"

3  arising from Yodlee's secure storage of credentials and "basic" IAV data.

### 3. There Is No Evidence that Yodlee Stored Szeto's Data.

5      Szeto also lacks standing to assert storage-based claims for the additional reason that there is no

6  evidence Yodlee stored her data.  (*E.g.*, Dkt. No. 581-3 at 11 n.7 (citing Dkt. No. 512-16 ¶ 8).)  She

7  therefore cannot demonstrate any "concrete harm" even if such storage was other actionable (which it is

8  not after *Phillips*).

### B. Plaintiffs Cannot Assert Claims Under California Law.

10     Choice of law is another threshold issue that precludes Plaintiffs' California-law claims.  Under

11  Ninth Circuit law, Plaintiffs' "phishing," invasion-of-privacy, and unjust enrichment claims are all

12  governed by the respective laws and community standards of the different states where they used IAV.

13  (*See, e.g.*, Dkt. No. 553-2 at 10:12-11:28 (explaining differences in phishing, privacy, and unjust

14  enrichment laws between states).)  The law in this circuit is clear that "states may permissibly differ on

15  the extent to which they will tolerate a degree of lessened protection for consumers to create a more

16  favorable business climate." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012) (reversing

17  certification of nationwide classes, including for unjust enrichment, under California law and holding that

18  the district court erred in concluding "that no foreign state has 'an interest in denying its citizens recovery

19  under California's potentially more comprehensive consumer protection laws'"), *overruled on other*

20  *grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

21  Moreover, as shown below, Plaintiffs' claims fail under those other states' laws.

22     The crux of Plaintiffs' **CAPA** and **unjust enrichment** claims is an alleged *misrepresentation*, and

23  under Ninth Circuit precedent the place of the wrong is the state "*where the misrepresentations were*

24  *communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the*

25  *misrepresented acts took place*." *Mazza*, 666 F.3d at 593-94 (emphasis added); *see also Lawrence*, 716

26  F. Supp. 3d at 871 (CAPA is a fraud-based claim).  This general choice-of-law holding in *Mazza* is firmly

27  established in this circuit (*see, e.g.*, Dkt. No. 553-2 at 12:2-8 (collecting decisions)) and, contrary to

28  Plaintiffs' argument (Dkt. No. 593 at 48:5-12), is *not* limited to product liability cases.  *See, e.g.*, *In re*

*Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015) (applying *Mazza* to wiretapping claims and concluding that each consumer's "state law claims should be governed by and decided under the wiretapping laws of the state in which the class member resides").

Similarly, the elements of Plaintiffs' **invasion of privacy** claims "requir[e] courts to assess whether expectations about privacy are reasonable or data collection is egregious, [and] privacy is an evolving area of law that is inherently tied to community standards." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 948 (N.D. Cal. 2023). That is why the court in *Katz-Lacabe*, applying *Mazza*, declined to apply California law to privacy claims based on plaintiffs' "interactions with the third-party websites [that did] not necessarily take place in California," even though the defendant in that case (like in *Mazza*) was "headquartered in California." *Id.*

The Court must reach the same conclusion here. Plaintiffs purport to bring their claims under California law (*e.g.*, Dkt. No. 359 at 38-39), but no Plaintiff used IAV from California: Clark used IAV from Ohio (Rios Decl. Ex. A (Clark Dep. at 20:23-21:4)), Cottrell from Texas (Dkt. No. 510-2 at 23:4-7), Lumb from Tennessee (Rios Decl. Ex. B (Lumb Dep. at 22:19-23:25)), Rollier from Florida (Dkt. No. 510-4 at 135:14-18), and Szeto from Georgia (Dkt. No. 510-3 at 27:20-28:20; Dkt. No. 514-5 at 4:18-19). Thus, none of the alleged misrepresentations "communicated to the plaintiffs" (*Mazza*, 666 F.3d at 593-94) in connection with their use of IAV are actionable under California law.

## C. The Record Disproves Essential Elements of Plaintiffs' Claims.

Even if Plaintiffs could overcome these threshold defects in their claims, summary judgment is warranted for Yodlee because there is no genuine dispute that Plaintiffs cannot prove the elements of their claims under either California law or the laws of the states where they used IAV, as explained below.

### 1. Plaintiffs Have No CAPA Claim Against Yodlee.

CAPA addresses "phishing, the act of posing as a legitimate company in an email, Web page, or other Internet communication in order to trick a recipient into revealing his or her personal information" and "to facilitate identity theft and other crimes." (*See* Dkt. No. 595-11 (*Senate Bill Analysis on S.B. 355*, 2005-06 Reg. Sess., at 1-3 (Aug. 26, 2005), https://leginfo.legislature.ca.gov/faces/billAnalysisClient. xhtml?bill_id=200520060SB355) ("CAPA Bill Analysis").) The statute makes it "unlawful for any person, by means of a Web page, electronic mail message, or otherwise through use of the Internet, to

solicit, request, or take any action to induce another person to provide identifying information by representing itself to be a business without the authority or approval of the business." Cal. Bus. & Prof. Code § 22948.2. "An individual who is *adversely affected* by a violation of Section 22948.2 may bring an action, but only against a person who has *directly violated* Section 22948.2." *Id.* § 22948.3(a)(2) (emphases added).

On this record, there is no genuine dispute that the PayPal IAV flows seen by Plaintiffs do not violate CAPA. PayPal and Yodlee are "legitimate compan[ies]" whose IAV service Plaintiffs voluntarily selected over an alternative method that did not require their credentials. (*See* CAPA Bill Analysis at 1-3.) Yodlee collected only the information that PayPal configured its IAV service to obtain, and only as requested by PayPal. (*See supra*, Parts II(A)-(B).) Plaintiffs received the benefit of IAV by instantly linking their accounts to PayPal. There is no evidence – absolutely none – to support an inference that IAV "facilitate[d] identity theft [or] other crimes" against Plaintiffs. *See* CAPA Bill Analysis at 1-3. (*See supra*, Part IV(A).) There is, moreover, no evidence that *Yodlee* represented itself to be a bank or otherwise "directly violated" CAPA, or that Plaintiffs have been "adversely affected" by any such violation. In addition, Rollier and Szeto's CAPA claims are time-barred. Finally, each Plaintiff's phishing claim also fails under the laws of the respective states where Plaintiffs saw and used PayPal's IAV flows.

### a)    Yodlee Did Not Represent Itself to Be a Bank.

Plaintiffs' CAPA claims require the Court to consider all relevant context in analyzing the challenged representations and their effect on Plaintiffs. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (a court evaluating a statement "must take into account 'all parts of the communication that are ordinarily heard or read with it'"); *Sponchiado v. Apple Inc.*, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) ("Plaintiffs cannot ignore . . . obvious language disclosing" the information they claim was omitted or misrepresented).

Here, there is no evidence that *Yodlee* represented itself to be a Plaintiff's bank in any of the IAV flows that PayPal controlled and presented to Plaintiffs. In each of those IAV flows used by Plaintiffs, and before Plaintiffs provided any credentials, PayPal presented them with a list of bank names and logos and required Plaintiffs to affirmatively identify the bank to be contacted by PayPal through its service provider Yodlee. (*Supra*, Part II(C).) PayPal confirmed the selected bank on a later screen. (*Id.*) This is

how IAV works.  Indeed, every IAV flow expressly informed Plaintiffs that they were providing credentials to "link" their bank account to PayPal, and many of the screens also contained PayPal's name or logo.  (*See id.*; Dkt. No. 492-52 at Attachment 3.)  In addition, the screens where Cottrell, Clark and Lumb provided their credentials explicitly described Yodlee's role, which was similarly explained in the Terms and Conditions to which Rollier and Szeto agreed.  (*See supra*, Part II(C).)  To state the obvious, Yodlee cannot be said to have impersonated Plaintiffs' banks when the representations at issue expressly distinguished Yodlee from those entities.  (*See, e.g.*, Dkt. No. 600 at 7:8-16 (observing that "PayPal notified [IAV users] that Yodlee was involved" and "customers knew about Yodlee's need to access their sensitive bank information to complete a transaction").)

Moreover, as the Court has recognized, PayPal's IAV flows required Plaintiffs to affirmatively acknowledge and agree to terms and conditions that (1) identified Yodlee by name, (2) explained Yodlee's role in providing the IAV service, and (3) further explained that PayPal and its service providers, including Yodlee, may collect, store, or use personal information, including financial information, for business purposes.  (*See supra*, Part II(C); *accord* Dkt. No. 600 at 7.)  In sum, the PayPal IAV flows that were presented to Plaintiffs bear no resemblance to the kind of intentional deception for criminal purposes that anti-phishing laws were designed to prevent.  *See* CAPA Bill Analysis at 1-3; *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1053 (9th Cir. 2009) (redressable harms "should reflect those types of harms" the legislature "had in mind" when enacting the statute).

### b)    Plaintiffs Have Not Been "Adversely Affected" by Any Violation.

Plaintiffs also were not "adversely affected" by any purported violation.  (*See supra*, Part IV(A).)  In December 2022, Plaintiffs survived summary judgment on this issue based solely on their allegation that "they were adversely affected by Yodlee's obtaining of their sensitive financial information through deceit," which this Court said could constitute a "'concrete and particularized' injury" under Article III standing jurisprudence.  (Dkt. No. 266 at 26.)  Subsequent developments in the evidentiary record and controlling Ninth Circuit law, however, compel a different outcome here.  *See, e.g., Fred Segal, LLC v. CormackHill, LP*, 821 F. App'x 783, 786 (9th Cir. 2020) (a district court's earlier "summary judgment ruling does not preclude [the movant] from providing new or different evidence and law to support its argument" on the same issue later in the case); *accord Peralta*, 744 F.3d at 1081; Civil L.R. 56-3.

As explained above, the evidence adduced since the Court's December 2022 ruling confirms that Plaintiffs suffered no compensable injury as a result of any alleged misrepresentation.  (*See supra*, Parts II(D), IV(A); *see also* Dkt. No. 600 at 5-8.)  In fact, no Plaintiff has testified or produced other evidence to show that they were "induce[d] . . . to provide identifying information" by Yodlee representing itself to be their bank, *see* Cal. Bus. & Prof. Code § 22948.2.  To the contrary, Plaintiffs do not even *remember* the screens or text they viewed while using PayPal's IAV service.  (*See* Rios Decl. Ex. A (Clark Dep. at 134:5-10, 151:18-21, 154:5-9, 162:5-8, 166:5-9, 170:9-12); *id.* Rios Decl. Ex. B (Lumb Dep. at 194:13-18); *id.* Dkt. No. 595-8 (Cottrell Dep. at 174:13-17); *id.* Dkt. No. 595-9 (Rollier Dep. at 136:17-22); *id.* Dkt. No. 595-10 (Szeto Dep. at 120:12-24).)

As the Court has noted, "the statute itself does talk about harm" and "specifically says you have to be harmed [*i.e.*, "adversely affected"] by the collection of [protected] data."  (Dkt. No. 593 at 37:4-8.)  A bare violation – for example, collection of bank account information with no additional consequence – is not enough.  *See, e.g.*, *Lawrence*, 716 F. Supp. 3d at 871 ("A potential injury to privacy under [CAPA] is therefore dependent upon additional consequences to be actionable."); *see also Gordon*, 575 F.3d at 1053 (holding private right of action for "adversely affected" plaintiffs requires showing of "real" "harm").  CAPA (1) specifically lists bank account information among the "identifying information" protected from phishing and (2) expressly limits its private right of action to individuals who were actually "adversely affected" by a violation.  *See* Cal. Bus. & Prof. Code §§ 22948.1(b), 22948.3(a)(2).  Taken together, these provisions confirm that obtaining "identifying information" in violation of CAPA is ***not*** enough to confer a private right of action; otherwise, the express limitation that only "adversely affected" individuals may bring an action would be a nullity.  *See United States v. Joseph*, 716 F.3d 1273, 1278 (9th Cir. 2013) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *Imperial Merch. Servs., Inc. v. Hunt*, 47 Cal. 4th 381, 390 (2009) (courts interpreting California law "do not presume that the Legislature performs idle acts, nor do [they] construe statutory provisions so as to render them superfluous").

### c)    Yodlee Has Not "Directly Violated" the Statute.

Even if Plaintiffs had identified a CAPA violation in any of the PayPal IAV flows presented to them (which they did not), their claim would still fail because there is no evidence that Yodlee "directly"

committed any such violation, as required for Plaintiffs to invoke CAPA's private right of action.  *See* Cal. Bus. & Prof. Code § 22948.3(a)(2).  The "unambiguous meaning of the word 'directly' . . . is 'without any intervening agency or instrumentality or determining influence."  *Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019) (quoting Merriam-Webster's Third New International Dictionary); *accord United States v. Prasad*, 18 F.4th 313, 325 (9th Cir. 2021) (quoting similar definitions of "direct" from Merriam-Webster's Collegiate Dictionary, Oxford English Dictionary, and Black's Law Dictionary).

Here, there is no genuine dispute of material fact that Yodlee did not "directly" make any representations on the PayPal IAV screens presented to Plaintiffs.  It is uncontroverted that PayPal designed and hosted *the entire IAV flow until late 2019*, including the versions used by Rollier and Szeto.  (*Supra*, Part II(C).)  Even after PayPal began to transition in late 2019 to a version of the IAV flow that included a Yodlee-hosted screen where Clark, Lumb, and Cottrell provided their credentials, the relevant Statement of Work shows that PayPal customized that screen according to its own specifications, including as to "images and styles," the phrase "Link Your Bank," the name and logo of the user-selected bank, the hyperlinked terms, and more.  (*Id.*; *see* Dkt. No. 178-17 at 4-6 (SOW).)  Moreover, even in that IAV flow all the other screens were designed and hosted by PayPal.[4]  (Dkt. No. 512-12 at 1:24-26; Dkt. No. 512-14 at 52:16-54:13.)  On this record, no reasonable trier of fact could conclude that *Yodlee* induced Plaintiffs to provide their credentials; Yodlee had no communication with Plaintiffs.  Because there is no evidence that Yodlee "directly violated" the statute, Plaintiffs cannot maintain a CAPA claim against Yodlee.  *See* Cal. Bus. & Prof. Code § 22948.3(a)(2).

### d)    Rollier and Szeto's CAPA Claims Are Time-Barred.

Rollier and Szeto's CAPA claims fail for the additional reason that they are time-barred.  CAPA has a one-year statute of limitations, *see* Cal. Civ. Proc. Code § 340(a), and "[u]nder California law, a cause of action accrues when 'the wrongful act is done and the obligation or liability arises.'"  *Fowler v. Univ. of Phoenix, Inc.*, 817 F. App'x 442, 442 (9th Cir. 2020).  Here, any liability to Rollier or Szeto would have arisen when they used IAV in August 2017 and May 2018, respectively.  (*See* Dkt. No. 514-8 at 3:18-19, 4:4-6; Dkt. No. 514-7 at 3:18-19, 4:4-6.)  Moreover, "[n]o exception applies to delay the

---

[4] PayPal used both this new IAV flow and the previous version for almost a year from approximately October 2019 to November 2020.  (Dkt. No. 509-6 ¶¶ 14-16; Dkt. No. 512-12 at 1:17-26.)

1    accrual of or toll the statute[] of limitations," *Fowler*, 817 F. App'x at 442, because Rollier and Szeto

2    could have learned of the factual basis for their CAPA claims – i.e., that Yodlee was PayPal's third-party

3    service provider – by simply reading the express disclosures included in PayPal's IAV flow.  (*See supra*,

4    Part II(C); Dkt. No. 600 at 7:8-16 (observing that "PayPal notified [IAV users] that Yodlee was involved"

5    and "customers knew about Yodlee's need to access their sensitive bank information to complete a

6    transaction").)  *See also Marsicano v. Bank of Am. N.A.*, 2016 WL 10968664, at *3 (C.D. Cal. Dec. 19,

7    2016) (failure to read agreement "does not toll the statute of limitations for any claims that could have

8    been discovered by reading the documents").  CAPA's one-year statute of limitations therefore accrued

9    and barred Rollier and Szeto's claims by 2018 and 2019, respectively – well before they joined this lawsuit

10   in October 2020 (Dkt. No. 30).  *See, e.g.*, *Fowler*, 817 F. App'x at 442 (affirming order that "correctly

11   dismissed [plaintiff's] claims as time-barred").

### e)    Plaintiffs' "Phishing" Claims Fail Under Other States' Laws.

13        Plaintiffs also cannot maintain phishing claims against Yodlee under the laws of the states where

14   each used IAV – nor have they brought such claims.  (*See supra*, Part IV(B).)  For example, Ohio, where

15   Clark used IAV, has *no* phishing law at all.  Tennessee, where Lumb used IAV, also limits the individual

16   right of action for phishing to defendants who "directly violated" the law; and, as explained, Yodlee was

17   not "directly" responsible for any communications to Plaintiffs (*see supra*, Part IV(C)(1)(c)).  *See* Tenn.

18   Code § 47-18-5204(a)(2)(A).  And in Texas, Florida, and Georgia, where Cottrell, Rollier, and Szeto

19   respectively used IAV, they have *no* individual right of action at all for phishing.  *See* Tex. Bus. & Com.

20   Code § 325.006(a); Fla. Stat. § 668.704(1); Ga. Code § 16-9-109.1.

### 2.    Yodlee Is Not Liable for Invasion of Privacy.

22        Claims for invasion of privacy under California common law and the California Constitution

23   generally are analyzed together and require (1) violation of a reasonable expectation of privacy (2) in a

24   manner highly offensive to a reasonable person.  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286-87

25   (2009); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022), *aff'd*, 2024 WL 937247

26   (9th Cir. Mar. 5, 2024).  The record is now closed, and Plaintiffs have no evidence of an actionable privacy

27   invasion.  Additionally, they affirmatively consented to the terms and conditions of the IAV service they

28   selected.  *See* Cal. Civ. Code § 3515; *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017),

*aff'd*, 745 F. App'x 8 (9th Cir. 2018).  Consent both operates as a defense (*see* Dkt. No. 266 at 18:21-22) and negates the essential elements of an invasion-of-privacy claim.  *See, e.g.*, *Hammerling*, 2024 WL 937247, at *3 ("Plaintiffs have no reasonable expectation of privacy in . . . data" covered by privacy disclosures); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("a plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion," and "[i]f voluntary consent is present, a defendant's conduct will rarely be deemed 'highly offensive to a reasonable person'").

a)    <strong>Plaintiffs Consented to PayPal's IAV Terms.</strong>

 "Consent is a defense to this claim."  (Dkt. 266 at 18 (citing *Opperman*).)  Plaintiffs agreed to PayPal's online terms when they proceeded to use IAV after being "provided with an opportunity to review the terms of service in the form of a hyperlink."  *Silver v. Stripe Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021).  It is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service."  *Id.*  That is precisely what PayPal did here, and Yodlee properly relied on PayPal's disclosures.  *See id.* at *4 ("That the disclosures were provided by [PayPal] (as opposed to [Yodlee] directly) does not require a different result"); *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2, 4 (N.D. Cal. Mar. 9, 2021) (website disclosures support consent to conduct by third-party partner).

Every Plaintiff agreed to PayPal's terms expressly disclosing the complained-of conduct.  (*See supra*, Part II(C).)  Specifically, every IAV flow presented to Plaintiffs required them to affirmatively acknowledge and agree to PayPal's terms (1) identifying Yodlee by name, (2) disclosing Yodlee's role in providing IAV, and (3) further disclosing that PayPal and its service providers (including Yodlee) may collect, store, or use personal information, including financial information, for business purposes such as performing IAV.  (*Id.*)  "Plaintiffs acknowledged . . . that PayPal notified them that Yodlee was involved and that PayPal gave [them] an option out of Yodlee's involvement."  (Dkt. No. 600 at 7.)  Nothing more was required; as this Court observed, "users obviously understand that PayPal (or its employees or contractors) must access their bank accounts to verify their accounts have sufficient funds."  (*Id.*; *see supra*, Part II(C).)  Moreover, "[c]onsumers understand that, when they engage with a company like

1   PayPal, the company cannot identify every individual who assists in the transaction," and generally

2   "identif[ying] the role of third parties in the collection of data" is sufficient.  (Dkt. No. 266 at 18:1-5.)[5]

3        Plaintiffs Cottrell and Szeto, moreover, produced documents from their PayPal profiles evidencing

4   their permissions ██████████████████████████████████████████████████████████

5   ████████████████ and ████████████████████████████████████ (*See* Dkt. Nos. 514-10

6   at -23010, 514-11 at -23005.)  Because Plaintiffs consented to these IAV practices, they cannot maintain

7   that such practices contravened their privacy expectations.  *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*,

8   2023 WL 3568078, at *10 (N.D. Cal. Mar. 30, 2023) ("[C]ourts in this district have found that users of

9   applications implied consent through their conduct when they continued to use the applications despite

10  exposure to materials that disclosed the challenged practices."); *Javier*, 2021 WL 940319, at *2 ("Consent

11  generally defeats privacy claims . . . because a party that consents to having information collected has no

12  reasonable expectation of privacy.").

13       Courts routinely reject invasion-of-privacy claims based on similar disclosures.  *See, e.g.*,

14  *Hammerling*, 2024 WL 937247, at *1 & n.1, *3 (affirming dismissal of privacy claims where defendant's

15  privacy policy disclosed the complained-of data practices, including in broad reservations of rights to use

16  data to "[m]aintain & improve [its] services," "[d]evelop new services," and "[p]rovide personalized

17  services"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (similar; rejecting argument that

18  "general consent to [defendant's] data tracking and collection practices" did not cover alleged collection

19  of "qualitatively different" and "sensitive" data); *Silver*, 2021 WL 3191752, at *4 (privacy policy broadly

20  stating that "partners" would "use various technologies" to "collect information about your online

21  activity" sufficed to disclose installation of "tracking software" by a specific third party); *Heldt v.

22  Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *6 (S.D. Cal. Feb. 15, 2019) (granting summary

23  judgment where plaintiff signed authorization that included "broad" consent as to the complained-of data

24  practices); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) ("[W]hether

25  [defendant] disclosed the duration for which it would store [data] is not relevant to the issue of consent.").

26

27  ---
    [5] The Court's observation in 2022 that the "record is silent as to the disclosures to Plaintiffs before 2019"
28  (Dkt. No. 266 at 19) has been resolved through subsequent discovery of PayPal.  The record on this motion
    now contains all of the disclosures agreed to by the five remaining Plaintiffs.  (*Supra*, Part II(C).)

---

Here too, Plaintiffs knowingly provided to PayPal and Yodlee the credentials and "basic" data that were required to perform IAV services they requested, and thus had no reasonable expectation of privacy over that data. (*See* Dkt. No. 600 at 7:8-16 (observing that "the only way that PayPal can verify that customers have sufficient funds in their accounts for the PayPal transactions is to use Plaintiffs' sensitive bank information," and "customers knew about Yodlee's need to access their sensitive bank data information to complete a transaction").)  Yodlee is therefore entitled to summary judgment on the first element of their invasion-of-privacy claims.  (*See* Dkt. No. 266 at 16 (noting that this element specifically requires that "*the plaintiff* has a reasonable expectation of privacy") (emphasis added).)[6]

### b)    Yodlee's Conduct Is Not Highly Offensive.

The invasion-of-privacy claims also fail because Yodlee's collection and storage of credentials and "basic" IAV data cannot reasonably be deemed "highly offensive."  *See Hernandez*, 47 Cal. 4th at 286-87.  "This District sets a high bar when assessing the 'highly offensive' requirement."  *Hammerling*, 615 F. Supp. 3d at 1088.  "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right."  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).  Further, an intrusion may not be actionable if it is "justified by one or more competing interests," or if "alternative means were not reasonably available."  *Hernandez*, 47 Cal. 4th at 287-88.  "[R]outine commercial behavior" does not constitute "highly offensive" conduct.  *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *14-15 (N.D. Cal. Mar. 26, 2013).  Even disclosure of sensitive personal information such as social security numbers, geolocation information, and browsing history does not suffice to meet this high bar.  *E.g.*, *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012); *accord Low*, 900 F. Supp. 2d at 1025 (collecting cases).

The record here falls well short of showing highly offensive conduct.  In December 2022, the Court denied summary judgment based on Plaintiffs' allegations of "actual sale of personal financial data" and

---

[6] Plaintiffs Lumb and Clark also consented to the complained-of conduct for the additional reason that they first used IAV *after* joining this lawsuit. (*See supra*, Part II(C)(3).)  Another reason Plaintiffs cannot show they had a reasonable expectation of privacy over the information at issue is because they shared the same information with numerous other entities.  (*See* Dkt. No. 553-2 at 7 n.11 (citing Dkt. No. 514-4 at 5:13-6:14; 510-1 at 5:18-25; 509-20 at 5:23-6:4).)

because the record did not then show whether three specific actions allegedly taken by Yodlee were done "to complete the [IAV] transaction": "obtaining 90 days of transaction history, searching all eligible accounts [accessible with provided credentials], and storing login credentials and data forever." (Dkt. No. 266 at 18:6-14; *but see id.* at 17:25-18:5, 18:10-11 (recognizing that it is not "highly offensive" for PayPal to use third parties like Yodlee to collect data "to complete the [IAV] transaction".)

Now, however, discovery is complete and no genuine dispute remains as to any of these factual issues. Abundant and unrebutted evidence shows that Yodlee does not monetize PayPal IAV data. (*E.g.*, *supra*, Part II(D).) The record is also clear that Yodlee pulls 90 days of transaction history only as requested by PayPal and to further PayPal's "legitimate business interest" in detecting and preventing fraud. (*E.g.*, *supra*, Part II(B); Dkt. No. 553-2 at 3:5-12.) Uncontroverted evidence also shows that Yodlee attempts to retrieve information at PayPal's request from all eligible accounts at the user-selected bank because that is how IAV works: PayPal displays all linkable accounts and balances to the user, who can then choose to link any or all of those accounts. (*E.g.*, *supra*, Part II(A).) Finally, the record shows that (i) Yodlee stores PayPal IAV data until PayPal requests deletion via an API (*id.*); (ii) PayPal knew since at least November 2015 that Yodlee would store 90 days of transactions to enable certain features for PayPal (Dkt. No. 553-2 at 19:18-20 (quoting Dkt. No. 512-3)); and (iii) PayPal entered into a SOW in January 2019 that *required* Yodlee to store credentials (*id.* at 19:17-18 (citing Dkt. No. 178-17)). None of these activities fell outside the ambit of "routine commercial behavior," and all were "justified by one or more competing interests." *See Folgelstrom*, 195 Cal. App. 4th at 992; *Hernandez*, 47 Cal. 4th at 287-88.[7]

Finally, and separately fatal to these claims, there is no evidence that any Plaintiff was injured as a result of any alleged invasion. (*See supra*, Part IV(A).) In December 2022, while discovery remained open (and before the Ninth Circuit's 2023 decision in *Phillips*), the Court allowed Plaintiffs to pursue

---

[7] In their 2022 summary judgment opposition Plaintiffs also acknowledged that Yodlee did not "automatically purge user data from its system" because it "lacked the capability" to do so and needed to "avoid performance issues." (Dkt. No. 178-3 at 9:9-13.) *See also Hernandez*, 47 Cal. 4th at 288 (competing interests may bar an invasion-of-privacy claim where "less intrusive alternative means were not reasonably available").

As Yodlee has explained in prior briefing, Plaintiffs' argument about Yodlee's purported contractual obligation to PayPal prior to 2019 is irrelevant because Plaintiffs do not (and cannot) argue that they have any rights as third-party beneficiaries under that contract, or that they even knew about, let alone relied on, any confidential agreements between Yodlee and PayPal. (*E.g.*, Dkt. No. 553-2 at 20:1-8.)

damages claims for invasion of privacy.  (*See* Dkt. No. 266 at 19:25-20:13.)  Now, however, fact discovery is complete, and the undisputed record shows that (1) Clark and Lumb have no standing to pursue their claims because they used IAV only after joining this lawsuit; (2) Cottrell, Rollier, and Szeto had no transactional data collected and suffered no compensable injury as a result of any alleged invasion; and (3) there is no evidence that Yodlee stored any data at all for Szeto.  (*See supra*, Part IV(A).)  On this record, there is no basis from which a trier of fact could award Plaintiffs damages for invasion of privacy.  *See also Marich v. MGM/UA Telecomms., Inc.* 113 Cal. App. 4th 415, 423 (2003) (privacy claims require that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm").

### c) Plaintiffs' Invasion-of-Privacy Claims Fail Under Other States' Laws.

Plaintiffs' invasion-of-privacy claims fare no better under the respective laws of the states where they used IAV.  (*See supra*, Part IV(B); Dkt. No. 553-2 at 10 n.15.)  For example, for the reasons explained above, Clark and Lumb cannot prove their claims under the laws of Ohio and Tennessee, respectively, because both jurisdictions require a highly offensive intrusion and recognize that consent is a defense.  *Lunsford v. Sterilite of Ohio, L.L.C.*, 165 N.E.3d 245, 253-55 (Ohio 2020); *Moran v. Lewis*, 114 N.E.3d 1254, 1257-58 (Ohio App. 2018); *Givens v. Mullikin*, 75 S.W.3d 383, 412 (Tenn. 2002); *Martin v. Senators, Inc.*, 418 S.W.2d 660, 664 (Tenn. 1967).  Cottrell's claim also fails under Texas law for the additional reason that there is no "evidence of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying."  *Cunningham v. Pro. Educ. Inst., Inc.*, 2018 WL 6709515, at *6 (E.D. Tex. Nov. 5, 2018), *R. & R. adopted*, 2018 WL 6701277 (E.D. Tex. Dec. 20, 2018).  Rollier's claim fails under Florida law for the additional reason that there is no evidence of an intrusion into a "private quarter," and Szeto's claim fails under Georgia law for the additional reason that there is no evidence of "a physical intrusion" or "bad faith."  *See Katz-Lacabe*, 668 F. Supp. 3d at 947 (discussing Florida law); *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) (applying Florida law); *Smith v. First Nat. Bank of Atlanta*, 837 F.2d 1575, 1580 (11th Cir. 1988) (applying Georgia law).

### 3. Yodlee Was Not Unjustly Enriched.

"The elements of an unjust enrichment claim are 'the receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Markels v. AARP*, 689 F. Supp. 3d 722 (N.D. Cal. Aug. 29, 2023).  In December 2022, this claim survived summary judgment based *solely* on Plaintiffs' theory that

Yodlee sold PayPal IAV data in data panels. (Dkt. No. 266 at 13-14, 25.) That allegation has remained the linchpin of Plaintiffs' unjust enrichment theory, and Yodlee's data panel revenue is the sole basis for Plaintiffs' disgorgement damages model. (*E.g.*, Dkt. No. 492-5 at 23-24; Dkt. No. 504-5 at 1:22-27, 17:22-19:28; Dkt. No. 533 at 11:5-12:22.) At this stage, however, the record is clear that Plaintiffs' data sale allegations were categorically false. (*E.g.*, *supra*, Part II(D).) Yodlee considers IAV data to be "useless" and not "suitable" for research and analytics purposes "[b]ecause it has no persistence." (*See id.*; Dkt. No. 512-18 at 78:17-79:11; Dkt. No. 512-19 at 30:17-31:6, 143:8-144:11.) Unrefuted evidence has shown that Yodlee's system programmatically excludes PayPal IAV data from research and analytics products, and as a result this data is not used to create data panels or to train TDE models. (*See supra*, Part II(D).) After over two years of discovery, no genuine dispute remains that Yodlee does not monetize and has never monetized PayPal IAV data. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (summary judgment should be granted when evidence "is so one-sided that one party must prevail as a matter of law"). For this reason, the unjust enrichment claim cannot stand any longer.[8]

## V.    CONCLUSION

For the foregoing reasons, Yodlee respectfully requests that the Court enter summary judgment for Yodlee on all remaining claims in this action.

Dated: October 25, 2024                                    Respectfully submitted,

                                                                    */S/ Megan L. Rodgers*
                                                                    Megan L. Rodgers

---

[8] Even if Plaintiffs had any evidence to support their unjust enrichment allegations, these claims would fail under the respective laws of the states where they used IAV. (*See supra*, Part IV(B); Dkt. No. 553-2 at 10 n.15.) For example, Clark, Lumb, Rollier, and Szeto's claims fail under the laws of Ohio, Tennessee, Florida, and Georgia, respectively, because there is no evidence that Yodlee knowingly and voluntarily received and retained any benefit conferred by Plaintiffs under inequitable or unjust circumstances. *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984); *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1235-36 (S.D. Fla. 2007); *Hollifield v. Monte Vista Biblical Gardens, Inc.*, 553 S.E. 2d 662, 670 (Ga. Ct. App. 2001). Rollier's claim also fails under Florida law for the additional reason that she received the full benefit for which she provided her data – the convenience of using IAV – and adequate consideration bars a claim for unjust enrichment. *Am. Safety Ins. Servs., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007). And in Texas, where Cottrell used IAV, unjust enrichment is not an independent cause of action at all. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App. 2006).

MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*