1   EMILY JOHNSON HENN (SBN 269482)
    MEGAN L. RODGERS (SBN 310344)
2   **COVINGTON & BURLING LLP**
    3000 El Camino Real
3   5 Palo Alto Square, 10th Floor
    Palo Alto, CA 94306-2112
4   Telephone: (650) 632-4700
    Email: ehenn@cov.com
5   Email: mrodgers@cov.com

6   ZIWEI SONG (SBN 313842)
    DANIEL RIOS (SBN 326919)
7   **COVINGTON & BURLING LLP**
    Salesforce Tower
8   415 Mission Street, Suite 5400
    San Francisco, CA 94105-2533
9   Telephone: (415) 591-6000
    Email: ksong@cov.com
10  Email: drios@cov.com

11  ERIC C. BOSSET (*pro hac vice*)
    TARA SUMMERVILLE (*pro hac vice*)
12  **COVINGTON & BURLING LLP**
    One CityCenter
13  850 Tenth Street, NW
    Washington, DC 20001-4956
14  Telephone: (202) 662-6000
    Email: ebosset@cov.com
15  Email: tsummerville@cov.com

16  ANDREW LEFF (*pro hac vice*)
    **COVINGTON & BURLING LLP**
17  The New York Times Building
    620 Eighth Avenue
18  New York, NY 10018-1405
    Telephone: (212) 841-1000
19  Email: aleff@cov.com

20  *Attorneys for Defendant Yodlee, Inc.*

21                  **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
22                       **SAN FRANCISCO DIVISION**

23  DARIUS CLARK, JOHN H. COTTRELL,          Case No. 3:20-cv-05991-SK
    DAVID LUMB, KYLA ROLLIER, and JENNY
24  SZETO, individually and on behalf of all others    Honorable Sallie Kim
    similarly situated,
25                                           **REDACTED**
                    Plaintiffs,              **REPLY IN SUPPORT OF REVISED**
26                                           **MOTION FOR SUMMARY JUDGMENT**
            v.
27                                           Date:   December 16, 2024
    YODLEE, INC.,                            Time:   9:30 a.m.
28                                           Courtroom: C, 15th Floor
                    Defendant.

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................1

      A.    The Record Conclusively Establishes that Plaintiffs Lack Article III Standing.................1

            1.    Lumb and Clark Used IAV Only After Joining this Lawsuit. ...................1

            2.    Cottrell, Rollier, and Szeto Suffered No Concrete Injury.......................2

      B.    Plaintiffs Cannot Assert Their Claims Under California Law............................7

      C.    Uncontroverted Evidence Negates Essential Elements of Plaintiffs' Claims.....................8

            1.    Plaintiffs Have No CAPA Claim Against Yodlee. ...................................8

                  a)    Yodlee Did Not Represent Itself to Be a Plaintiff's Bank. .........................8

                  b)    Plaintiffs Have Not Been "Adversely Affected." ....................................10

                  c)    Yodlee Did Not "Directly" Violate CAPA.............................................11

                  d)    Rollier and Szeto's Claims Are Time-Barred. ...........................................12

            2.    Plaintiffs Have No Claim for Invasion of Privacy...................................12

                  a)    Plaintiffs Consented to the Complained-of Practices. ..............................12

                  b)    Yodlee's Conduct Was Not Highly Offensive...........................................14

            3.    Plaintiffs Have No Claim for Unjust Enrichment.................................15

III.  CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*,
2018 WL 11354864 (C.D. Cal. Jan. 24, 2018) ...................................................................10

*Addisu v. Fred Meyer, Inc.*,
198 F.3d 1130 (9th Cir. 2000) .............................................................................................3

*Bradshaw v. City of Los Angeles*,
2023 WL 3400634 (C.D. Cal. Mar. 10, 2023) .....................................................................5

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ................................................................................5

*Burgess v. Portfolio Recovery Assocs., LLC*,
2017 WL 2471802 (C.D. Cal. Mar. 23, 2017) ...................................................................15

*Cain v. State Farm Mutual Auto Insurance*,
62 Cal. App. 3d 310 (1976) ...............................................................................................12

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ...............................................................................................6

*Chinacast Education. v. Chen Zhuoguo*,
2018 WL 6074551 (C.D. Cal. Sept. 7, 2018) ......................................................................8

*Cottle v. Plaid*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................8

*Deteresa v. Am. Broad. Co., Inc.*,
121 F.3d 460 (9th Cir. 1997) .............................................................................................15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 983-84 (9th Cir. 2017) ..........................................................................................5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...............................................................................................5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......................................................................................14, 15

*Galen v. Cnty. of Los Angeles*,
477 F.3d 652 (9th Cir. 2007) .............................................................................3, 10, 14, 15

*Goins v. City & Cnty. of San Francisco*,
2018 WL 10455157 (N.D. Cal. Mar. 20, 2018)...................................................................3

*Golan v. Veritas Entm't, LLC*,
    2017 WL 2861671 (E.D. Mo. July 5, 2017) ...................................................13

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) ....................................................................8

*Hammerling v. Google LLC*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024) .....................................................13

*Heldt v. Guardian Life Ins. Co. of Am.*,
    2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ..................................................13

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ........................................................................14, 15

*Hilderman v. Enea TekSci, Inc.*,
    551 F. Supp. 2d 1183 (S.D. Cal. 2008).......................................................15

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
    738 F.3d 1085 (9th Cir. 2013) ..................................................................3, 9

*Imperial Merch. Servs., Inc. v. Hunt*,
    47 Cal. 4th 381 (2009) ...........................................................................10

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................15

*Javier v. Assurance IQ, LLC*,
    2023 WL 3933070 (N.D. Cal. June 9, 2023) ................................................12

*Jones v. Ford Motor Co.*,
    85 F.4th 570 (9th Cir. 2023) .....................................................................5

*Katz-Lacabe v. Oracle Am., Inc.*,
    2023 WL 7166815 (N.D Cal. Oct. 30, 2023)..................................................7

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................7, 8

*Lawrence v. Fincity Corp.*,
    716 F. Supp. 3d 851 (E.D. Cal. 2024).............................................4, 5, 6, 10

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ......................................................15

*Marsicano v. Bank of Am. N.A.*,
    2016 WL 10968664 (C.D. Cal. Dec. 19, 2016) .............................................12

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
   Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) .................................7

*Opperman v. Path, Inc.*,
   2016 WL 3844326 (N.D. Cal. July 15, 2018) ...........................................................................8

*Opperman v. Path, Inc.*,
   205 F. Supp. 3d 1064 (N.D. Cal. 2016) .........................................................................13, 15

*Peacock v. Pabst Brewing Co., LLC*,
   2024 WL 1160687 (E.D. Cal. Mar. 18, 2024) ...........................................................................9

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................................................................................13

*Phillips v. U.S. Customs & Border Prot.*,
   74 F.4th 986 (9th Cir. 2023) .....................................................................................................4

*Prima Asset Corp. v. Goh*,
   2017 WL 11662669 (C.D. Cal. Dec. 21, 2017) .........................................................................5

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
   2020 WL 5797826 (S.D. Cal. Sept. 29, 2020) ..........................................................8, 12, 13, 14

*Sanchez v. L.A. Dep't of Transp.*,
   39 F.4th 548 (9th Cir. 2022) .....................................................................................................5

*Shuman v. Squaretrade, Inc.*,
   2020 WL 7458001 (N.D. Cal. Dec. 18, 2020) ...........................................................................7

*Silver v. Stripe Inc.*,
   2021 WL 3191752 (N.D. Cal. July 28, 2021) ...........................................................................13

*SkinMedica v. Histogen*,
   869 F. Supp. 2d 1176 (S.D. Cal. 2012) ...................................................................................12

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ................................................................................................13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................................................4, 5

*United States v. Joseph*,
   716 F.3d 1273 (9th Cir. 2013) ................................................................................................10

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ................................................................................................................5

*Valero v. S.F. State Univ.*,
    2014 WL 1339618 (N.D. Cal. Apr. 2, 2014) ...........................................................................2

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ...........................................................................................13

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ..............................................................................................2

*Virgil v. Time, Inc.*,
    527 F.2d 1122 (9th Cir. 1975) ............................................................................................14

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)................................................................14, 15

**Statutes**

15 U.S.C. § 1681 ....................................................................................................................4

18 U.S.C. § 2710 ....................................................................................................................5

Cal. Bus. & Prof. Code § 22948 ....................................................................................... *passim*

## I.    INTRODUCTION

The opposition confirms that Yodlee is entitled to summary judgment.  The record conclusively establishes that none of the Plaintiffs suffered any concrete injury, none of the Plaintiffs used IAV in California, Yodlee never deceived Plaintiffs, and Yodlee never monetized PayPal IAV data for its own benefit.  These uncontroverted facts are fatal to each of Plaintiffs' claims under California's Anti-Phishing Act ("CAPA"), for invasion of privacy, and for unjust enrichment, including because Plaintiffs lack Article III standing, cannot invoke California law, and cannot prove the essential elements of their claims.

The opposition identifies no evidence to the contrary.  Instead, Plaintiffs attempt to manufacture a genuine dispute where none exists by ignoring some facts, mischaracterizing others, and relying on bare assertions and arguments in lieu of evidence.  For example, Plaintiffs disagree with the Court's finding that Yodlee collected no transactional data for Cottrell, Rollier, or Szeto, but again point to no evidence to dispute that finding.  Plaintiffs also incorrectly assert that Yodlee controlled the contents of PayPal's IAV flows, mischaracterizing documents that show no such thing while ignoring evidence cited by Yodlee that shows PayPal controlled the contents of its own IAV flows.  Plaintiffs continue to describe PayPal's IAV flow as "fake" and a "false login portal," despite unrebutted evidence that the flows and hyperlinked terms viewed by each Plaintiff disclosed Yodlee by name as a PayPal service provider and explained Yodlee's role in performing IAV.  And Plaintiffs continue to assert that Yodlee monetized PayPal IAV data for its own benefit, once again ignoring overwhelming evidence to the contrary and mischaracterizing other documents that actually confirm Yodlee used PayPal IAV data only to provide IAV services.

At this stage, Plaintiffs can no longer rely on allegations and bald assertions to sustain their claims.  On the full record, no genuine dispute remains that Plaintiffs cannot prove liability for phishing, invasion of privacy, or unjust enrichment.  The Court should grant Yodlee's motion in its entirety.

## II.    ARGUMENT

### A.    The Record Conclusively Establishes that Plaintiffs Lack Article III Standing.

#### 1.    Lumb and Clark Used IAV Only After Joining this Lawsuit.

Plaintiffs do not dispute that Lumb and Clark cannot manufacture standing by using IAV *after* joining this lawsuit.  (*See* Mot. at 10.)  Nor do they deny that IAV data produced by PayPal shows Lumb and Clark did not use IAV until December 2022 and April 2023, respectively, *after* joining this lawsuit in

October 2020.  (Dkt. No. 492-35.)  The opposition nevertheless argues that Lumb and Clark have standing, citing interrogatory responses from 2022 where they claimed to have used IAV in ███████████.  (Opp. at 15.)  But Plaintiffs fail to mention that they have since recanted those claims.  In 2023, Lumb and Clark testified in deposition that they did not know if they used IAV prior to joining this lawsuit.[1]  In January 2024, they served sworn discovery responses identifying the 2022 and 2023 linkages reflected in PayPal's data as the only occasions on which they used IAV.  (Dkt. No. 514-13 at 3:18-19, 4:5-7; Dkt. No. 514-12 at 3:18-19, 4:4-7.)  And in May 2024, Plaintiffs represented to the Court in their class certification motion that "Clark and Lumb are not being proposed as Class Representatives because, although they linked accounts to PayPal, *those linkages occurred after [August 24, 2020]*."  (Dkt. No. 492-5 at vi n.2 (italics added).)  Plaintiffs cannot manufacture a factual dispute with "uncorroborated and self-serving" testimony that has been debunked "by factual data" and disavowed through Plaintiffs' own subsequent admissions in discovery and before this Court.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Valero v. S.F. State Univ.*, 2014 WL 1339618, at *3 (N.D. Cal. Apr. 2, 2014).

### 2. Cottrell, Rollier, and Szeto Suffered No Concrete Injury.

As the Court recently recognized in its order denying class certification, there is no evidence that Yodlee collected transactional data for Cottrell, Rollier, or Szeto.  (Dkt. No. 600 at 5.)  The opposition claims "there is a material factual dispute" on this point, but the only support it cites is Plaintiffs' own prior arguments (Opp. at 12), which the Court already correctly rejected as being unsupported by evidence (Dkt. No. 600 at 5.)  As to claims focused on login credentials and the "basic" bank account information needed to perform IAV, Cottrell, Rollier, and Szeto all lack standing because they suffered no concrete injury from Yodlee's collection or storage of that data.  (Mot. at 10-13; *accord* Dkt. No. 600 at 6-7.)  As discussed below, Plaintiffs' arguments to the contrary are without merit.

**Unjust Enrichment.**  The opposition contends transactional data is "irrelevant" to Plaintiffs' unjust enrichment claims because Yodlee also "monetizes" login credentials and the "basic" bank account information needed to perform IAV.  (Opp. at 14.)  This contention is refuted by the full record.  In 2022, the Court found a factual dispute as to this claim based solely on Plaintiffs' allegation that Yodlee sold

---

[1] *See* Declaration of Daniel Rios ("Rios Decl.") Ex. E at 133:6-25, 149:4-21, 158:2-159:15, 164:25-166:3, 169:19-170:8; *id.* Ex. F at 166:5-10.

their transactional data in data panels.  (Dkt. No. 266 at 13-14, 25; *see also* Dkt. No. 492-5 at 23-24 (Plaintiffs' disgorgement model based entirely on their data-panel allegations).)  Those allegations have since been debunked twice over – both through uncontroverted evidence that Yodlee programmatically excludes PayPal data from data panels (Mot. at 8), and through uncontroverted evidence that Yodlee did not collect transactional data from Cottrell, Rollier, or Szeto to begin with (Dkt. No. 600 at 5).

The opposition ignores these facts and instead cites Plaintiffs' bare allegation that Yodlee "monetizes" PayPal IAV data.  (Opp. at 14.)  To oppose summary judgment, however, Plaintiffs "must go beyond the pleadings and, by [their] own evidence, set forth specific facts showing that there is a genuine issue for trial."  *Goins v. City & Cnty. of San Francisco*, 2018 WL 10455157, at *2 (N.D. Cal. Mar. 20, 2018).  The opposition sets forth no such evidence.  While Plaintiffs claim that "Yodlee continued accessing PayPal users' bank accounts using stored Login Credentials," they do not dispute that this was done to perform the "balance refresh" component of PayPal's IAV service.  (Opp. at 7.)  Plaintiffs also claim that Yodlee analyzed PayPal IAV data "to understand the pattern in [that] data and create rules around it" but do not dispute that this was also done as part of PayPal's IAV service.  (*Id.*)  That is clear from the cited document itself, which explains that Yodlee performed the "data quality assessment" in question "*for internal trouble shooting only*" and as part of a "data quality project[] *for IAV*" (Dkt. No. 492-40 at -050–51 (italics added)), but Plaintiffs omitted those facts from their opposition brief.[2]

Plaintiffs cannot avert summary judgment by repeating their own baseless allegations, *Goins*, 2018 WL 10455157, at *2, or by making "misleading statements" based on evidence "taken plainly out of context" to assert a genuine dispute of material fact, *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1095 (9th Cir. 2013).  *See also Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) ("Bald assertions that genuine issues of material fact exist are insufficient."); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  On this record, there is no genuine dispute that Yodlee never sold PayPal IAV data; never collected transactional data from Cottrell,

---

[2] Plaintiffs also fail to mention that the PayPal IAV data used for this purpose was sampled from just three days of IAV activity: April 20, 21, and 22 of 2020.  (Dkt. No. 492-40 at -051.) None of the Plaintiffs used IAV on those dates, so they have no standing to assert any claims based on this data quality assessment activity.  (Dkt. Nos. 514-6 at 3-4 (Cottrell), 514-7 at 3-4 (Szeto), 514-8 at 3-4 (Rollier), 514-12 at 3-4 (Lumb), 514-13 at 3-4 (Clark).)

1  Rollier, or Szeto to begin with; and did not separately "monetize[]" login credentials or the "basic" bank

2  account information needed to perform IAV for "commercial benefit" as Plaintiffs claim (Opp. at 7, 14).

3      **Invasion of Privacy.**  Plaintiffs' alleged injuries for invasion of privacy are similarly based on the

4  debunked theory that Yodlee monetized their transactional data.  (Mot. at 11.)  Plaintiffs adduced no

5  evidence that they suffered any other harm as a result of Yodlee's actions (*id.*), and in fact sought to

6  calculate compensatory damages for invasion of privacy based "solely . . . on Yodlee's purported use of

7  transactional data."  (Dkt. No. 600 at 5; *see also id.* at 8 (recognizing that even Plaintiffs' "speculative"

8  damages theory based on login credentials "is inextricably tied to [their] unsupported theory that Yodlee

9  did, in fact, obtain transactional data from" Cottrell, Rollier, and Szeto).)  With no evidence to support

10  that theory, Plaintiffs resort to arguing that Yodlee collected and stored login credentials and the "basic"

11  bank account information needed to perform IAV.  But under controlling Supreme Court and Ninth Circuit

12  precedent, allegedly unlawful collection and storage of personally identifying records, "without more,

13  does not give rise to a concrete injury necessary for standing."  *Phillips v. U.S. Customs & Border Prot.*,

14  74 F.4th 986, 988-89, 995-96 (9th Cir. 2023); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

15      Plaintiffs attempt to distinguish *Phillips* by arguing that a privacy violation "by itself establishes

16  Article III standing."  (Opp. at 12-13.)  But Plaintiffs cannot invent a concrete injury where none exists

17  simply by characterizing their collection and storage allegations as "privacy" claims.  (*See id.*)  Indeed,

18  *Phillips* rejected this very argument when the plaintiffs in that case cited the same vein of invasion-of-

19  privacy case law that Plaintiffs rely on here.  *See* 74 F.4th at 992-93.  Mere collection and storage of

20  "illegally obtained records," *Phillips* explained, is not "a straightforward analogue" to the common-law

21  intrusion tort and is readily distinguishable from privacy cases where, for example, the defendant used

22  highly private and sensitive medical and genetic data for unauthorized testing (*Norman-Bloodsaw*);

23  covertly surveilled plaintiff and conducted an uninvited search and seizure of materials from his home

24  (*Mayfield*); read and used private messages; compiled and used biometric information; sought disclosures

25  that would jeopardize religious practices; or violated statutes that – unlike CAPA – protected substantive

26  privacy rights.  *Id.* at 993-95; *see also id.* at 994, 996 (distinguishing *Nayab*, which involved release of

27  "highly personal information" to third parties in violation of the Fair Credit Reporting Act); *Lawrence v.*

28

---

*Fincity Corp.*, 716 F. Supp. 3d 851, 871 (E.D. Cal. 2024) (distinguishing *Eichenberger*, which involved disclosure of private information to third parties in violation of the Video Privacy Protection Act).[3]

Plaintiffs also contend their standing does not depend on transactional data because they seek statutory and nominal "damages based on Yodlee's taking of Login Credentials and Banking Data." (Opp. at 13.)  But Plaintiffs asserted no theory of harm independent of their transactional data allegations.  (Dkt. No. 492-51 ¶¶ 78-88; *see* Dkt. No. 600 at 8.)  Merely asserting statutory and nominal damages claims with no showing of concrete injury does not establish standing.  *See, e.g.*, *Spokeo*, 578 U.S. at 341 ("Article III standing requires a concrete injury even in the context of a statutory violation."); *Prima Asset Corp. v. Goh*, 2017 WL 11662669, at *3 (C.D. Cal. Dec. 21, 2017) ("[A]llegations of statutory damages, without more, are insufficient to show an injury in fact."); *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021) (nominal damages go to redressability, not to injury in fact); *Bradshaw v. City of Los Angeles*, 2023 WL 3400634, at *7 (C.D. Cal. Mar. 10, 2023) ("Although a plea for nominal damages satisfies the redressability element of standing, Plaintiff must still plead an injury in fact.").

**CAPA.**  As the case law and legislative history make clear, CAPA is not a privacy statute.  (Mot. at 12.)  It prohibits a specific type of *misrepresentation* (phishing) and "do[es] not protect substantive privacy rights."  *Lawrence*, 716 F. Supp. 3d at 872 (citing *Robins v. Spokeo Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017)).  An alleged "injury to privacy under [CAPA] is therefore dependent upon additional consequences to be actionable"; merely alleging that a defendant unlawfully acquired and stored bank login credentials and other financial information does not suffice.  *Id.* at 865, 871 (citing *Phillips*).

Plaintiffs claim CAPA "protects a substantive right to privacy," but the decisions they cite for that proposition merely explained what a "substantive right to privacy" entails.  (*See* Opp. at 14.)  Neither even mentioned CAPA, let alone held that it protects such a right.  *See In re Facebook*, 956 F.3d at 598; *Eichenberger v. ESPN, Inc.*, 876 F.3d 983-84 (9th Cir. 2017).  *Lawrence*, in contrast, is squarely on point

---

[3] The other cases cited by Plaintiffs likewise involved stronger analogues to common-law intrusion than what the record supports here.  *See Jones v. Ford Motor Co.*, 85 F.4th 570, 572, 574 (9th Cir. 2023) (defendant allegedly violated "one of the most restrictive electronic surveillance laws ever promulgated" by "download[ing], copy[ing], and indefinitely stor[ing] . . . call logs and text messages"); *Sanchez v. L.A. Dep't of Transp.*, 39 F.4th 548, 554 (9th Cir. 2022) (alleged search and seizure in violation of Fourth Amendment); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) (defendant allegedly used plaintiffs' online activity to create "a cradle-to-grave profile without [their] consent"); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924-25 (N.D. Cal. 2023) (evidence showed private browsing data collected "without consent" could "uniquely identify a user with a high probability of success").

and directly refutes Plaintiffs' argument.  716 F. Supp. 3d at 872.  Plaintiffs have no answer to *Lawrence*, so they simply assert that it was "incorrectly" decided and urge the Court to "disregard[]" it.  (Opp. at 14.) Plaintiffs are wrong.  Not only did *Lawrence* correctly construe CAPA, its reasoning echoes this Court's own observations.  Specifically, *Lawrence* explained that bank account information protected by CAPA "is maintained by an entity providing a good or service for the individual," "is required to be disclosed in certain circumstances," "and, as held by the Ninth Circuit, is not so sensitive that another's access to that information would be highly offensive to a reasonable person or otherwise gives rise to reputational harm or injury to privacy interests."  716 F. Supp. 3d at 871 (citing *Phillips*) (cleaned up).  That analysis is fully consistent with this Court's recent order calling into question "whether the mere retention of sensitive bank information is sufficient to constitute an invasion of privacy" and "whether Plaintiffs could maintain a claim for invasion of privacy or violation of [CAPA]" given that "the only way that PayPal can verify that customers have sufficient funds in their accounts for the PayPal transactions is to use Plaintiffs' sensitive bank information."  (Dkt. No. 600 at 7.)  There is no ground to depart from that reasoning here.

The opposition also asserts that Plaintiffs suffered "'additional consequences' sufficient for Article III standing even under *Lawrence*" "because Yodlee used the Login Credentials it obtained in violation of CAPA to gather *additional* Banking Data."  (Opp. at 14.)  Not so.  The plaintiff in *Lawrence* made a similar argument, alleging that the defendant used consumers' bank login credentials to "acquire[] massive quantities of data for its own purposes" and "to refresh individuals' account information on an ongoing basis."  716 F. Supp. 3d at 865.  But *Lawrence* did not find standing based on those allegations; instead, the plaintiff survived dismissal at the pleading stage by alleging that the defendant had shared her data with others and that she had paid out of pocket for "ongoing costly credit monitoring services."  *Id.* at 873-875, 891.  Plaintiffs have presented no evidence of any such concrete injury here, whether from Yodlee's receipt of login credentials or its use of credentials to obtain bank account information for IAV.[4]

Because there is no "genuine question of material fact" that Plaintiffs all lack Article III standing, the Court should grant summary judgment for Yodlee on all remaining claims.  *See Cent. Delta Water*

---

[4] Szeto also lacks standing to assert storage-based claims because there is no evidence of Yodlee storing her data.  (Mot. at 13.)  Contrary to Plaintiffs' suggestion (Opp. at 11), Yodlee does not have a uniform "practice" of storing IAV data – as shown by the fact that it did not have data stored for Szeto.

1    *Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002) (plaintiffs must establish that "there is a

2    genuine question of material fact as to the standing elements" to survive summary judgment).

3    **B.    Plaintiffs Cannot Assert Their Claims Under California Law.**

4    Under well-established Ninth Circuit law, each of Plaintiffs' "phishing," invasion-of-privacy, and

5    unjust enrichment claims are governed by the respective laws and community standards of the different

6    states where they used IAV because the crux of those claims is an alleged misrepresentation that each

7    Plaintiff encountered in a different state.  (Mot. at 13-14.)  *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666

8    F.3d 581, 593 (9th Cir. 2012) (reversing certification of nationwide classes for unjust enrichment based

9    on alleged misrepresentations), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v.*

10   *Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d

11   928, 948 (N.D. Cal. 2023) (California law did not govern privacy claims based on website interactions

12   that did "not necessarily take place in California" even if defendant was "headquartered in California").[5]

13   The opposition attempts to evade this precedent by arguing that California was the place of the

14   alleged wrong underlying Plaintiffs' claims.  Specifically, Plaintiffs claim that Yodlee violated CAPA in

15   California when it "completed" its data collection through "servers and personnel" in this state (Opp. at

16   16); that Yodlee violated their privacy in California when it stored retrieved data at a center in this state

17   (*id.* at 16-17 & n.71); and that Yodlee unjustly enriched itself in California when it "received" and

18   "exercised dominion over" retrieved data in this state (*id.* at 17).  These arguments are contrary to the law,

19   which makes clear that the place of the wrong for misrepresentation-based claims (whether styled as fraud,

20   invasion of privacy, or unjust enrichment) is where the plaintiff encountered the statement at issue, ***not***

21   where the defendant completed all downstream steps that allegedly followed.  *See Mazza*, 666 F.3d at 592.

22   Indeed, *Katz-Lacabe v. Oracle* rejected this exact argument because the theory that the defendant "became

23   liable for intrusion upon seclusion only when it synchronized, analyzed, and monetized user data" is an

24   "attempt to engineer a choice-of-law outcome at odds with the reasoning in *Mazza*."  2023 WL 7166815,

25   *2 (N.D Cal. Oct. 30, 2023); *accord Shuman v. Squaretrade, Inc.*, 2020 WL 7458001, at *1, *6 (N.D. Cal.

---

26   [5] Plaintiffs purport for the first time to dispute that Szeto was in Georgia when she used IAV (Opp. at 15

27   n.70), but there is no genuine dispute as to this fact.  Szeto testified that she "relocated temporarily [to
     Georgia] because of [her] job," was there "between May 1, 2018 to September 2018," and used IAV on
     May 20, 2018.  (Dkt. No. 510-3 at 28:3-25; Dkt. No. 514-5 at 4; Dkt. No. 514-7 at 3-4.)  Plaintiffs

28   submitted no evidence, including with their opposition brief, to show that Szeto used IAV in California.

Dec. 18, 2020) (rejecting attempt to shift the place of the wrong from Pennsylvania, where plaintiffs entered an allegedly deceptive transaction, to California, where defendant's downstream conduct allegedly contributed to plaintiffs' injury, because it "would fly in the face of [*Mazza*'s] reasoning"). So too here.[6]

### C.    Uncontroverted Evidence Negates Essential Elements of Plaintiffs' Claims.

Even if Plaintiffs could overcome these threshold defects, all of their claims would still fail because the record is clear that Plaintiffs cannot prove essential elements of those claims under California law.[7]

#### 1.    Plaintiffs Have No CAPA Claim Against Yodlee.

There is no dispute that PayPal and Yodlee are legitimate companies whose IAV service each Plaintiff voluntarily selected over available alternatives, and that Plaintiffs received the benefit of IAV by instantly linking their accounts to PayPal. (Mot. at 14-15.) There is also absolutely no evidence that IAV facilitated identity theft or any other crime against Plaintiffs. (*Id.*) The opposition dismisses these facts as "irrelevant" (Opp. at 18), but as explained below, Plaintiffs cannot establish multiple elements of their CAPA claims – and the fundamental reason is that this case involves nothing resembling the phishing crimes CAPA was enacted to prevent. *See, e.g.*, *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1053 (9th Cir. 2009) (redressable harms "should reflect those types of harms" the legislature "had in mind").

##### a)    Yodlee Did Not Represent Itself to Be a Plaintiff's Bank.

There is no evidence that Yodlee represented itself to be a Plaintiff's bank. (Mot. at 15.) Just the opposite: as this Court recently recognized, PayPal's IAV flows required Plaintiffs affirmatively to acknowledge and agree to disclosures that identified Yodlee by name, expressly distinguished Yodlee from the banks with the accounts to be linked, and explained Yodlee's role in providing the IAV service. (*See id.* at 15-16; Dkt. No. 600 at 7.) The opposition fails to show any genuine dispute on these facts.

*First*, Plaintiffs contend Yodlee deceived them by "surround[ing] the false login portal with banks' names, along with logos or URLs." (Opp. at 18.) As explained in Yodlee's motion, however, the bank

---

[6] Plaintiffs cited *Katz-Lacabe* to argue that the place of the wrong is where *PayPal* was headquartered (Opp. at 16-17), but the cited portion of that order, read in context, makes clear that the place of the wrong is where "Plaintiffs' interactions with the third-party websites" took place. *See* 668 F.Supp.3d at 948. Plaintiffs' other citations are inapposite. In *Opperman v. Path*, "neither party identifie[d] the 'place of the wrong.'" 2016 WL 3844326, at *10 n.6 (N.D. Cal. July 15, 2018). *Cottle v. Plaid* did not analyze the place of the wrong at all. 536 F. Supp. 3d 461 (N.D. Cal. 2021). And *Chinacast Education. v. Chen Zhuoguo*, 2018 WL 6074551 (C.D. Cal. Sept. 7, 2018), did not even involve a misrepresentation claim.

[7] Plaintiffs admit that they have no claims under the laws of other states. (Opp. at 25 n.82.)

names and logos confirm Plaintiffs' own prior selections identifying the bank to be linked.  (Mot. at 15-16.)  Viewed in context, they cannot plausibly be construed as representing that *Yodlee* was a Plaintiff's bank, especially when the PayPal IAV flows at issue expressly differentiated Yodlee's role from that of the bank to be linked.  (*Id.* at 3-8.)  *See also Hokto*, 738 F.3d at 1095 (Plaintiffs cannot use "misleading statements . . . taken plainly out of context" to manufacture a genuine dispute where none exists).

*Second*, Plaintiffs claim "Yodlee falsely represented that the account linking would occur by users 'log[ging]' into their bank accounts, and not by providing their Login Credentials to Yodlee."  (Opp. at 18.)  There is no evidence to support this assertion.  The PayPal IAV flow that Rollier viewed prompted users to "Enter your bank info so we can confirm you own the account"; it said nothing about logging into a bank.  (Mot. at 4 (Figure 1).)[8]  The PayPal IAV flow that Szeto viewed prompted users to "Use your . . . Bank login to *link* your bank," not to *log into* a bank.  (*Id.* at 6 (Figure 2) (italics added).)  And the PayPal IAV flows that Cottrell, Lumb, and Clark viewed required those Plaintiffs to acknowledge and agree to express disclosures, both within the IAV flow itself and via a hyperlink to PayPal's then-effective Privacy Statement, that explained Yodlee's role in performing IAV and unambiguously differentiated that role from the role of the bank to be linked.  (*Id.* at 7-8 (Figure 3).)

The opposition asserts the Court already held in 2022 that the PayPal IAV flows seen by Cottrell, Lumb, and Clark "appeared to be 'a direct link to their bank's website.'"  (Opp. at 18.)  That assertion is false; the cited portion of the Court's 2022 order referred to a different PayPal IAV flow.  (*See* Dkt. No. 266 at 17 (referring to Figure 1 of that order).)  Even as to that flow, the order does not support Plaintiffs' claim that PayPal's disclosures included only a "passing mention of Yodlee" and said "nothing" to "alert PayPal users that the portal . . . was not operated by their bank" (Opp. at 18), because PayPal's hyperlinked disclosures were not in the record at the time.  (Dkt. No. 266 at 5 ("Neither Plaintiffs nor Yodlee provide the Terms and Conditions.").)  Those disclosures are now in the record and confirm that Yodlee did not represent itself to be a Plaintiff's bank.  (*See* Mot. at 3-8.)  *See also Peacock v. Pabst Brewing Co., LLC*, 2024 WL 1160687, at *7 (E.D. Cal. Mar. 18, 2024) (granting summary judgment where the undisputed

---

[8] Contrary to Plaintiffs' argument, the fact that screens in Figure 1 "related to the micro deposit account-linking flow" does not mean they "would not have been seen by Plaintiffs."  (Opp. at 14 n.14.)  Uncontroverted evidence from PayPal establishes that the same screens used for micro-deposit linkages – where users entered account and routing numbers – would also have been seen by some (not all) PayPal users who attempted to link non-listed banks, as Rollier indisputably did.  (Dkt. No. 509-6 ¶ 11(b)(iv).)

evidence showed consumers "would [not] have been deceived by Defendant's marketing"); *In re 5-Hour Energy Mktg. & Sales Pracs. Litig.*, 2018 WL 11354864, at *8 (C.D. Cal. Jan. 24, 2018) (granting summary judgment when evidence showed "consumer[s] would not be misled").

*Third*, the opposition contends Yodlee "[did] not identify any language that would have put Plaintiffs on notice that the [interface] was . . . connected to Yodlee." (Opp. at 18-19.) This contention ignores evidence cited in Yodlee's motion showing that PayPal repeatedly and expressly disclosed Yodlee's role in the IAV process. (Mot. at 3-8.) Indeed, the Court recently recognized in its order denying class certification that "PayPal notified [Plaintiffs] that Yodlee was involved and . . . gave [them] an option out of Yodlee's involvement." (Dkt. No. 600 at 7; *see, e.g.*, Opp. Figures 2-4 (allowing users to select "No thanks, I'll enter random deposits"; "Enter account number manually instead"; and "Link your bank another way").) Plaintiffs may disagree with the Court (Opp. at 18 n.74), but "[b]ald assertions that genuine issues of material fact exist are insufficient" to avert summary judgment, *Galen*, 477 F.3d at 658.

### b)      Plaintiffs Have Not Been "Adversely Affected."

As Yodlee explained in its motion, Plaintiffs cannot sue under CAPA unless they were "adversely affected" by the alleged violation. (Mot. at 16-17.) Cal. Bus. & Prof. Code § 22948.3(a)(2). But Plaintiffs have adduced no evidence of any such adverse effect. To the contrary, uncontroverted evidence shows that none of them were injured by any supposed misrepresentation from Yodlee. (Mot. at 17.)

Plaintiffs have no answer to this evidence, so they misstate the law instead. The opposition claims Plaintiffs can pursue CAPA claims because they "had their identifying information taken online through deceit." (Opp. at 19.) But this allegation, even if true, would state only a bare violation of CAPA; it does not provide the "something more" needed to show that Plaintiffs were "adversely affected" by any violation. *See* Cal. Bus. & Prof. Code § 22948.3(a)(2); *Lawrence*, 716 F. Supp. 3d at 871. This is clear from the plain text of the statute. If, as Plaintiffs contend, obtaining bank account information in violation of CAPA was enough to confer a private right of action with no evidence of resulting harm (Opp. at 20), then the statute's express limitation that only "adversely affected" individuals may bring an action would be a nullity. (*See* Mot. at 17.) That is a misreading of the law. *See, e.g.*, *United States v. Joseph*, 716 F.3d 1273, 1278 (9th Cir. 2013) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); *Imperial Merch. Servs., Inc. v.*

*Hunt*, 47 Cal. 4th 381, 390 (2009) (courts interpreting California law "do not presume that the Legislature performs idle acts, nor do [they] construe statutory provisions so as to render them superfluous").

### c)    Yodlee Did Not "Directly" Violate CAPA.

As explained in Yodlee's motion, even if Plaintiffs had identified a colorable CAPA violation in the PayPal IAV flows they viewed (which they did not), uncontroverted evidence shows that Yodlee is not "directly" responsible for any such violation because PayPal, not Yodlee, dictated the contents of those IAV flows.  (Mot. at 17-18; Dkt. No. 512-14 at 52:16-54:13 (explaining that PayPal configured the IAV flow to its specifications); Dkt. No. 178-17 at 4-6 (Statement of Work showing how PayPal customized the screen where Clark, Lumb, and Cottrell provided their bank login credentials, including as to "images and styles," the phrase "Link Your Bank," the name and logo of the user-selected bank, the hyperlinked terms, and more); Rios Decl. Ex. A (2018 email stating "we don't own the flow" and "[PayPal] determine[s] when to ask for credentials"); *id.* Ex. B (2015 email stating "[PayPal] completely control[s] the UI, so it is really in their control"); *id.* Ex. C (2015 email stating "we do not control [PayPal's] UI"); *id.* Ex. D (2019 "list of UI customizations done . . . as per client [PayPal] requirement").)

Plaintiffs have no answer to this evidence, so they misstate the facts again.  The opposition asserts that "Yodlee created, designed, and operated . . . the account-linking screens each Plaintiff encountered" (Opp. at 20), but its citations do not support that assertion.  Plaintiffs cite testimony explaining that IAV is a SaaS ("software as a service") product, but Yodlee's provision of the IAV *software* does not show that it controls clients' public-facing IAV screens.  (*Id.* at 20 & n.77.)  Plaintiffs also describe other apps' IAV flows as "closely mirror[ing]" PayPal's, suggesting Yodlee clients cannot customize their screens (*id.* at 20), but this speculation is refuted by uncontroverted evidence that PayPal customized its IAV flows according to its own specifications.  (*See* Mot. at 18.)  Finally, Plaintiffs argue that PayPal "cannot . . . customize the screens" because it "require[s] Yodlee's approval and assistance to do so" (Opp. at 20), but the documents they cite in fact show the opposite: while Yodlee had its own "insights/best practices" for IAV flows and would offer clients "advice," it did not "push" its preferences on clients and implemented PayPal's IAV flow according to PayPal's instructions.  (*Id.* at 5-6 & nn.19-25; *see, e.g.*, Dkt. No. 626-12 at -704 ("[PayPal] has requested that Yodlee implement platform change to support invoking different UI experience."); *id.* at -705 ("[PayPal] will . . . provide sign off before deploying the change in production.");

Dkt. No. 626-14 at -414 ("If they push back at least we tried.").)  In short, Plaintiffs have no CAPA claim against Yodlee because there is no genuine dispute that PayPal, not Yodlee, controlled the contents of the flows through which they used IAV.  (*See* Mot. at 17-18.)

**d)    Rollier and Szeto's Claims Are Time-Barred.**

Yodlee's motion demonstrated that Rollier and Szeto's claims are time-barred under CAPA's one-year statute of limitations because they did not sue Yodlee until October 2020, though they could have learned of the factual basis for their claims by reading the disclosures in the PayPal IAV flows they viewed in ███████ and ███████, respectively.  (Mot. at 18-19.)  Plaintiffs' only answer is a conclusory assertion that Rollier and Szeto did not have "actual knowledge" of their claims.  (Opp. at 21.)  Elsewhere, however, the opposition *admits* that PayPal's terms and conditions – which identified Yodlee by name and described its role in providing IAV (*infra*, Part II.C.2.a) – were "seen by Plaintiffs Szeto and Rollier" when they used IAV.  (*See* Opp. at 9.)  Moreover, "actual knowledge" is not required; inquiry notice is sufficient to start the running of the statute of limitations.  *See, e.g.*, *Marsicano v. Bank of Am. N.A.*, 2016 WL 10968664, at *3 (C.D. Cal. Dec. 19, 2016) (failure to read agreement "does not toll the statute of limitations for any claims that could have been discovered by reading the documents"); *Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *3 (N.D. Cal. June 9, 2023) (privacy policy put plaintiff "on inquiry notice of wiretapping claim . . . even if he did not know [defendant's] identity, or the full extent of the wiretapping involved").  There is no genuine dispute that Rollier and Szeto were at least on inquiry notice here.  (*See* Mot. at 18-19; Opp. at 9; *accord* Dkt. No. 600 at 7 (recognizing that "PayPal notified them that Yodlee was involved and that PayPal gave [them] an option out of Yodlee's involvement").)[9]

**2.    Plaintiffs Have No Claim for Invasion of Privacy.**

**a)    Plaintiffs Consented to the Complained-of Practices.**

Plaintiffs do not dispute that invasion-of-privacy claims are barred where online terms expressly disclose the conduct at issue.  (*See* Mot. at 20-21.)  As Yodlee demonstrated in its motion (*id.*), and as the

---

[9] Plaintiffs' citations do not show otherwise.  *SkinMedica v. Histogen* found a genuine dispute when the defendant failed to respond to the plaintiff's tolling arguments. 869 F. Supp. 2d 1176, 1199 (S.D. Cal. 2012).  In *San Diego County Credit Union v. Citizens Equity First Credit Union*, the plaintiff "had no reason to suspect" the factual basis for her claim.  2020 WL 5797826, at *5 (S.D. Cal. Sept. 29, 2020).  And *Cain v. State Farm Mutual Auto Insurance* merely observed that the discovery rule sometimes applies in privacy cases.  62 Cal. App. 3d 310 (1976).  None of those decisions held that claims are timely where, as here, plaintiffs could have learned of the underlying facts years before the statutory deadline.

Court recently acknowledged in its order denying class certification (Dkt. No. 600 at 7), that is exactly what PayPal's IAV flows did here. Plaintiffs' arguments to the contrary cannot be squared with the record.

*First*, Plaintiffs assert that the Court's 2022 summary judgment order "already considered and rejected Yodlee's argument that the account linking screens establish consent," and that "Yodlee no longer argues these screens establish consent." (*Id.* at 23.) Plaintiffs are wrong on both counts. The Court did not have the benefit of the full record – and did not even know the truth of when each Plaintiff used IAV – when it issued that order. Now, however, the record is clear that each Plaintiff acknowledged and agreed to PayPal terms disclosing the conduct at issue when they chose to use IAV. (*See* Mot. at 3-8; *see also* Dkt. Nos. 514-10, 514-11 (screenshots from Cottrell and Szeto's PayPal profiles confirming that those Plaintiffs had granted permissions to "Periodically check [their] bank account transaction details," "Store [their] bank account login info," and "check if [they have] enough funds to cover transactions").)

*Second*, the opposition quotes a fragment of a sentence from one PayPal disclosure and argues on that basis that PayPal's "non-descript terms" are insufficient to establish consent. (Opp. at 23.) As shown in Yodlee's motion, however, each Plaintiff was presented with clear disclosures that expressly (1) identified Yodlee by name, (2) explained Yodlee's role in providing the IAV service, and (3) further explained that PayPal and its service providers, including Yodlee, may collect, store, or use personal information, including financial information, for business purposes. (Mot. at 3-8.) Plaintiffs cannot show a genuine dispute of fact simply by ignoring the evidence that disproves their claims.[10]

---

[10] The opposition cites case law for the proposition that consent is limited to the conduct disclosed (Opp. at 23-24), but that does not help Plaintiffs here given that PayPal expressly disclosed the conduct at issue. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016); *Golan v. Veritas Entm't, LLC*, 2017 WL 2861671, at *8 (E.D. Mo. July 5, 2017). There is likewise no merit to Plaintiffs' argument that the cases cited by Yodlee involved clearer disclosures than PayPal's "vague and ambiguous terms." (Opp. at 24.) If anything, the PayPal disclosures ignored by the opposition are *more* detailed and specific than what courts have found sufficient to establish consent. (Mot. at 21.) *See, e.g.*, *Hammerling v. Google LLC*, 2024 WL 937247, at *1 & n.1, *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of privacy claims based on broad reservations of rights to use data to "[m]aintain & improve . . . services," "[d]evelop new services," and "[p]rovide personalized services"); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (statement that defendant "collect[s] information when you visit or use third-party websites" disclosed "collection of health-related data"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (statement that "partners" would "use various technologies" to "collect information about your online activity" disclosed third-party "tracking software"); *Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *5, *6 (S.D. Cal. Feb. 15, 2019) (statement that defendant would "use the information obtained . . . to determine eligibility for insurance" disclosed that defendant would "release[e] [plaintiff's] personal information"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) ("[W]hether [defendant] disclosed the duration for which it would store [data] is not relevant to the issue of consent.").

### b)    Yodlee's Conduct Was Not Highly Offensive.

Plaintiffs do not dispute that routine commercial behavior is not "highly offensive" conduct constituting an invasion of privacy.  (*See* Mot. at 22.)  *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *14-15 (N.D. Cal. Mar. 26, 2013); *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287-88 (2009) (intrusion may not be actionable if it is "justified by one or more competing interests," or if "alternative means were not reasonably available").  Plaintiffs cannot overcome this bar because all four of the "highly offensive" allegations on which they survived summary judgment in 2022 have since been disproven.  (Mot. at 22-23.)  The record now is clear that (1) Yodlee does not monetize PayPal IAV data, (2) Yodlee pulls 90 days of transaction history only as requested by PayPal and to further PayPal's "legitimate business interest" in detecting and preventing fraud, (3) Yodlee attempts to retrieve information at PayPal's request from all eligible accounts so PayPal can display all linkable accounts and balances for the IAV user to select, and (4) Yodlee stores PayPal IAV data to provide IAV services to PayPal, and only until PayPal requests deletion of the data via an API.  (*See id.* at 23 & n.7.)  The opposition fails to show otherwise.

*First*, Plaintiffs again assert that "whether Yodlee collected, stored, and used/monetized Plaintiffs' Transaction Data is a disputed issue."  (Opp. at 22.)  But with no supporting evidence, Plaintiffs' "[b]ald assertions that genuine issues of material fact exist are insufficient" to avert summary judgment.  *Galen*, 477 F.3d at 658.  Plaintiffs also cite the Court's 2022 ruling that "storing login credentials and data forever" might be deemed "highly offensive" if doing so was not necessary to perform IAV.  (Opp. at 22; Dkt. No. 266 at 18.)  As explained, however, Plaintiffs can no longer rely on that theory – both because the record shows Yodlee only stores data until PayPal requests its deletion via API and because there is no evidence that Yodlee stored data for purposes unrelated to its provision of IAV services.  (Mot. at 23.)[11]

*Second*, Plaintiffs contend the "highly offensive" element of their claims "cannot be resolved on summary judgment" (Opp. at 22), but the cases they cite either do not support that proposition, *see Virgil v. Time, Inc.*, 527 F.2d 1122, 1131 (9th Cir. 1975) (vacating denial of summary judgment), or involved

---

[11] Plaintiffs' related argument that Yodlee violated contractual obligations to PayPal (Opp. at 6-9, 22 n.79) is irrelevant because Plaintiffs have no rights under Yodlee's agreements with PayPal and cannot claim to have known about, let alone relied on, any such agreements.  (Mot. at 23 & n.7.)  Indeed, the opposition *admits* that whether not or "PayPal knew [Yodlee] was storing credentials . . . or wanted it to do so *has no bearing on whether this conduct is offensive to PayPal users*."  (Opp. at 22 n.79 (italics added).)

genuine disputes of material fact that do not exist here, *see Opperman*, 205 F. Supp. 3d at 1080. Where, as here, there is no record evidence to support any of Plaintiffs' "highly offensive" theories, courts can and do decide the issue as a matter of law. *See, e.g.*, *Deteresa v. Am. Broad. Co., Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) ("[T]here is a preliminary determination of offensiveness which must be made by the court in discerning the existence of a cause of action for intrusion. If the undisputed material facts show . . . an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (cleaned up)); *Burgess v. Portfolio Recovery Assocs., LLC*, 2017 WL 2471802, at *6 (C.D. Cal. Mar. 23, 2017) (granting summary judgment on "highly offensive" element); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1204 (S.D. Cal. 2008) (same).

*Third*, the opposition attempts to distinguish other cases where the "highly offensive" element was adjudicated as a matter of law by characterizing the IAV data at issue here as "far more private." (Opp. at 22-23.) Yodlee's motion, however, demonstrated that courts routinely find this element negated on stronger showings of "offensiveness" than what the record supports here, including where defendants actually monetized sensitive personal information by disclosing it to third parties for marketing purposes. (Mot. at 22-23.)[12] Plaintiffs have adduced no comparable evidence of offensive conduct here, and their invasion-of-privacy claims can and should be rejected as a matter of law. (*See also* Dkt. No. 266 at 18 (acknowledging that Yodlee's actions taken to perform IAV are "not highly offensive").)

### 3. Plaintiffs Have No Claim for Unjust Enrichment.

Uncontroverted evidence establishes that Yodlee never monetized PayPal IAV data for its own benefit. (Mot. at 8.) The opposition identifies no contrary evidence, and Plaintiffs' "[b]ald assertions that genuine issues of material fact exist are insufficient" to avert summary judgment. *Galen*, 477 F.3d at 658.

## III. CONCLUSION

Yodlee respectfully requests that the Court grant summary judgment in its favor on all claims.

---

[12] *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (alleging disclosure of personal browsing history to third parties); *Hernandez*, 47 Cal. 4th at 278 (alleging "video surveillance" of plaintiffs); *Folgelstrom*, 195 Cal. App. 4th at 989 (alleging disclosure of customer's credit card number and personal information to third parties for marketing purposes); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *1, 14-15 (N.D. Cal. Mar. 26, 2013) (alleging disclosure of "age, gender, [and] location" information "to advertising libraries for marketing purposes"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (alleging disclosure of "personal data" and "geolocation" information" to third parties).

Dated:  November 22, 2024

Respectfully submitted,

*/s/ Megan L. Rodgers*
Megan L. Rodgers

EMILY JOHNSON HENN (SBN 269482)
MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: ehenn@cov.com
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*