Benjamin Steinberg (admitted *pro hac vice*)
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, 19th Floor
New York, NY 10122
Telephone: (646) 960-8601
Facsimile: (646) 960-8625
benjamin@scl-llp.com

Christian Levis (admitted *pro hac vice*)
Margaret MacLean (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DARIUS CLARK, ET AL., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YODLEE, INC., a Delaware corporation,<br><br>Defendant | Civil Case No. 3:20-cv-05991-SK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FOURTH AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Hon. Sallie Kim<br>Hearing Date: December 30, 2024<br>Hearing Time: 9:30 AM<br>Place:   Courtroom C – 15th Floor<br>         450 Golden Gate Ave.,<br>         San Francisco, CA 94102 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………......ii

I.   INTRODUCTION ..................................................................................................................1

II.   ARGUMENT..........................................................................................................................2

    A.   Yodlee's Disclosures on the Eve of Class Certification Were Unfair and Unforeseen.....................2

    B.   The Proposed Plaintiffs' Allegations Are Well-Supported and Verifiable ......................................5

    C.   *Lierboe* Does Not Preclude Plaintiffs' Amendment ........................................................................6

    D.   Any Prejudice to Yodlee is Insubstantial and Self-Inflicted.............................................................8

III.   CONCLUSION.....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Almeida v. Google, Inc.*,
   No. C-08-02088, 2009 WL 3809808 (N.D. Cal. Nov. 13, 2009) ...................................................... 7, 8

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
   465 F.3d 946 (9th Cir. 2006) ................................................................................................................ 11

*Bohannon v. McDonald*,
   No. 22-CV-04422, 2024 WL 4801851 (N.D. Cal. Oct. 4, 2024) .......................................................... 10

*Burke v. Basil*,
   No. 8:20-cv-00635, 2021 WL 3264424 (C.D. Cal. Apr. 13, 2021) ...................................................... 11

*Cabrera v. Bayer Healthcare*,
   No. CV 2:17-08525, 2024 WL 4228237 (C.D. Cal. June 24, 2024) ..................................................... 7

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ............................................................................................................................... 7

*Carswell v. Anderson*,
   No. 1:22-CV-00369, 2024 WL 3104549 (D. Idaho June 24, 2024) ..................................................... 10

*Cholakyan v. Mercedes-Benz*,
   281 F.R.D. 534 (C.D. Cal. 2012) ........................................................................................................... 6

*Davis v. City of Glendale*,
   No. CV-23-00016, 2023 WL 5333259 (D. Ariz. Aug. 18, 2023) ........................................................ 11

*Ellsworth v. U.S. Bank, N.A.*, No. C,
   12-02506 LB, 2013 WL 6730725 (N.D. Cal. Dec. 19, 2013) ................................................ 3, 8, 9, 10

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................................. 11

*Gau v. Hillstone Rest. Grp., Inc.*,
   No. 20-CV-08250, 2022 WL 2833977 (N.D. Cal. July 20, 2022) ....................................................... 12

*Hajro v. U.S. Citizenship & Immigr. Servs.*,
   743 F. App'x 148 (9th Cir. 2018) .......................................................................................................... 7

*Hensley-Maclean v. Safeway, Inc.*,
   No. 11-CV-01230, 2015 WL 3956099 (N.D. Cal. June 29, 2015) ........................................................ 8

*Heredia v. Sunrise Senior Living LLC*,
   No. 8:18-cv-01974, 2021 WL 811856 (C.D. Cal. Feb. 9, 2021) ........................................... 12

*Hitt v. Arizona Beverage Co., LLC*,
   No. 08CV809, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009) .............................................. 12

*Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*,
   No. CV 17-8070, 2018 WL 4961908 (C.D. Cal. May 18, 2018) ........................................... 6

*In re Exodus Commc'ns, Inc. Sec. Litig.*,
   No. C-01-2661, 2006 WL 2355071 (N.D. Cal. Aug. 14, 2006) ............................................ 7

*In re Facebook Priv. Litig.*,
   No. 10-CV-02389-RMW, 2015 WL 2453734 (N.D. Cal. May 22, 2015) ............................ 9

*In re Flash Memory Antitrust Litig.*,
   No. C 07-0086, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ............................................. 12

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) ............................................................................................. 11

*Japan Cash Mach. Co. v. MEI, Inc.*,
   No. 205CV01433, 2008 WL 11388723 (D. Nev. May 15, 2008) ......................................... 8

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 2017) ............................................................................................... 13

*Jones v. San Diego Metro. Transit Sys.*,
   No. 14-CV-1778, 2016 WL 3952154 (S.D. Cal. July 22, 2016) ..................................... 7, 13

*Kuahulu v. Employers Ins. of Wausau*,
   557 F.2d 1334 (9th Cir. 1977) ............................................................................................... 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ..................................................................................... 1, 6, 7, 8

*Lindblom v. Santander Consumer USA, Inc.*,
   No. 1:15-cv-00990, 2019 WL 4640684 (E.D. Cal. Sept. 24, 2019) .................................... 12

*MMD Bohannon v. McDonald*,
   No. 22-CV-04422, 2024 WL 4801851 (N.D. Cal. Oct. 4, 2024) ......................................... 10

*Orshan v. Apple Inc.*,
   No. 5:14-CV-05659, 2024 WL 4353034 (N.D. Cal. Sept. 30, 2024) .................................... 7

*Osakan v. Apple Am. Grp.*,
   No. C 08-4722, 2010 WL 1838701 (N.D. Cal. May 5, 2010) ....................................... 11, 13

*Ouimet v. USAA Cas. Ins. Co.*,
   No. EDCV 00-00752-VAP, 2004 WL 5865274 (C.D. Cal. July 14, 2004) ..........................4, 5

*Padilla v. Veyo LLC*,
   No. CV-23-02380, 2024 WL 3851213 (D. Ariz. Aug. 16, 2024)..................................................10

*Rieken v. Timberland Bank*,
   639 F. Supp. 3d 1128 (W.D. Wash. 2022)..................................................................................7

*Sandisk Corp. v. LSI Corp.*, No. C,
   09-02737, 2009 WL 3047375 (N.D. Cal. Sept. 18, 2009)..........................................................10

*Skilstaf, Inc. v. CVS Caremark Corp.*, No. C,
   No. 09-02514, 2010 WL 199717 (N.D. Cal. Jan. 13, 2010)........................................................7

*Soto v. Castlerock Farming & Transp., Inc.*,
   No. 1:09-CV-00701, 2013 WL 6844377 (E.D. Cal. Dec. 23, 2013).........................................12

*Stanton v. Aetna Life & Cas. Bermuda Ltd.*,
   No. CV1808937, 2021 WL 4146964 (C.D. Cal. Feb. 12, 2021) ................................................7

*Steinhauer v. Liberty Mut. Ins. Co.*,
   No. 3:18-cv-01416, 2020 WL 5743936 (D. Or. Sept. 25, 2020)..............................................13

*Sueoka v. United States*,
   101 F. App'x. 649 (9th Cir. 2004) ...............................................................................................1

*Velazquez v. GMAC Mort. Corp.*,
   No. CV 08-05444, 2009 WL 2959838 (C.D. Cal. 2009)..........................................................12

*Weldon v. Dyer*,
   No. 1:13-CV-00540, 2015 WL 1012371 (E.D. Cal. Mar. 6, 2015).........................................10

*Woods v. Google LLC*,
   No. 11-CV-01263-EJD, 2018 WL 4030570 (N.D. Cal. Aug. 23, 2018) ...............2, 3, 8, 9, 10

*Xyratex Tech., Ltd. v. Teradyne, Inc.*,
   No. CV0804545SJOPLAX, 2009 WL 10702550 (C.D. Cal. Aug. 20, 2009) ..........................8

*Zapien v. Wash. Mut., Inc.*,
   No. 07CV385, 2008 WL 11509012 (S.D. Cal. June 17, 2008) .................................................7

**Rules**

Fed. R. Civ. P. 15...................................................................................................................................2

## I. INTRODUCTION

Yodlee, Inc.'s ("Yodlee") Opposition to Plaintiffs' Motion for Leave to Amend Complaint ("Opposition" or "Opp.") (ECF No. 641) confirms that Yodlee obstructed Plaintiffs' class certification motion by unfairly withholding evidence about its collection of the Class Representatives' Transaction Data until 13 days before class certification. Precedent dictates that Yodlee's "gotcha" tactics should not foreclose class proceedings, particularly when they are specific to just a few Class Representatives and not the Class as a whole. The Ninth Circuit instructs that "leave to amend should be granted to add named plaintiffs" under these circumstances who can cure the typicality and adequacy issues raised by Yodlee's belated disclosures. *Sueoka v. United States*, 101 F. App'x. 649, 654 (9th Cir. 2004).

Yodlee is wrong that this Ninth Circuit precedent does not apply because the Court lacks subject matter jurisdiction. The authority Yodlee cites, *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003), applies only in narrow circumstances where no Article III case or controversy exists, such that there is no jurisdiction to grant amendment. That is not the case here. This Court continues to exercise jurisdiction over Plaintiffs and has repeatedly upheld their claims under theories that do not hinge on the collection of Transaction Data.

Yodlee also argues that Plaintiffs should have foreseen that Class Representatives' Transaction Data was not collected. This too is false. The data Yodlee produced before its belated disclosures showed it collected Transaction Data from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (after which each Class Representative linked accounts) and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ These high percentages show that Yodlee's purported failure to collect the Class Representatives' Transaction Data was, at best, anomalous, and that the Proposed Plaintiffs' allegations that their Transaction Data was collected are well-grounded in Yodlee's own data.

Yodlee's claims of prejudice fail too. Where, as here, the Proposed Plaintiffs assert the same claims as the existing Plaintiffs, courts refuse to find substantial prejudice based on the need to conduct limited discovery on new class representatives or refile prior submissions with small tweaks. Moreover, because Plaintiffs' amendment was necessitated by Yodlee's gamesmanship, any prejudice should be held against Yodlee not Plaintiffs.

In sum, Yodlee's Opposition fails to rebut that Plaintiffs have good cause to amend their Complaint

1

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FOURTH AMENDED CLASS ACTION COMPLAINT - CASE NO. 3:20-CV-05991-SK

and satisfy the criteria under Fed. R. Civ. P. 15. Plaintiffs sought their amendment promptly and in good faith, their amendment is not futile, and it will not prejudice Yodlee given it was necessitated by Yodlee's own gamesmanship. Plaintiffs' Motion for Leave to File Fourth Amended Class Action Complaint ("Motion" or "Mot.") should be granted.

## II.    ARGUMENT

### A.    Yodlee's Disclosures on the Eve of Class Certification Were Unfair and Unforeseen

Yodlee's Opposition all but concedes that it withheld evidence about its collection of Transaction Data to derail Plaintiffs' class certification motion. Plaintiffs' Motion detailed how Yodlee concealed information about the "NUM_TRANS_RESP" data field until the eve of class certification by withholding it in response to the Court's October 26, 2023 Order (ECF No. 375 at 2), excluding it from its data dictionaries (ECF No. 520-13 at '437), and denying that such a data field existed when Plaintiffs requested Yodlee produce one to fill gaps in the "MAX_TSD" data that Yodlee produced. *See* Mot. at 3-4.

Yodlee's Opposition does not contest these facts or attempt to justify withholding this information for so long. Yodlee does not dispute that it first disclosed the meaning of the "NUM_TRANS_RESP" field on May 9, 2024 (*see* Opp. at 12-13 (citing ECF No. 534)), just 13 days before class certification and more than six months after Yodlee was ordered to identify such a field. ECF No. 375 at 2. Yodlee does not argue it described this data field earlier or raised its arguments about not collecting the Class Representatives' Transaction Data previously. *See* Opp. at 2-3 (citing ECF No. 534 at 3). Yodlee likewise does not offer any justification for why it withheld information about the "NUM_TRANS_RESP" data field throughout fact discovery despite Plaintiffs' repeated requests that Yodlee produce such a field. *See id.* Yodlee says it is "false" that it withheld information but provides no explanation beyond a one-sentence denial. *See* Opp. at 12-13. Unable to defend how it kept this information from Plaintiffs while at the same time funneling it to its experts, the only logical conclusion is that Yodlee did so purposefully to undermine Plaintiffs' class certification motion by creating a last-second issue that Plaintiffs would have inadequate time to address.

Courts firmly disfavor such "gotcha" tactics and grant leave to add class representatives so parties are not prejudiced by unforeseen disclosures shortly before class certification. *See Woods v. Google LLC*, No. 11-CV-01263-EJD, 2018 WL 4030570, at *10 (N.D. Cal. Aug. 23, 2018) (granting leave to add plaintiff after denying class certification when Google did not dispute the class representative's adequacy

until shortly before briefing); *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2013 WL 6730725, at *10 (N.D. Cal. Dec. 19, 2013) (granting leave to add plaintiffs after "last-minute" facts were raised about the class representative's adequacy during class certification briefing).

*Woods* is instructive. There, the plaintiff, an attorney, sought to represent a class of individuals who purchased Google's advertising services. 2018 WL 4030570, at *1. Shortly before class certification, Google claimed the plaintiff was an inadequate class representative because he had joined one of the firms representing the class as a partner. *Id.* The court agreed and denied class certification on this basis but granted leave to add a new class representative given the late timing of Google's adequacy argument. Even though the plaintiff knew the facts underlying Google's argument, the Court held he "could not know of this particular adequacy problem until Google made clear that it planned to raise the issue. And the circumstances did not sufficiently put [the plaintiff] on notice that the issue would arise" until a few months before class certification. *Id.* The facts here are even stronger as Plaintiffs did *not* know the fact underlying Yodlee's adequacy challenge, and Yodlee did not reveal its challenge, until *days* before class certification.

Seeking to shift blame on to Plaintiffs, Yodlee argues that Plaintiffs should have intuited earlier that Yodlee did not collect Class Representatives' Transaction Data based on nebulous information that showed nothing of the sort. *See* Opp. at 2-3. For instance, Yodlee claims that Plaintiffs should have known "all along" that Class Representatives' Transaction Data was not collected because Yodlee collected Transaction Data only "as needed" from some IAV users. *See id.* at 2. Yet that is precisely why Plaintiffs sought data specifying the accounts from which Yodlee collected Transaction Data, and why Plaintiffs requested Yodlee supplement its production with alternative data fields when they discovered that the MAX_TSD field was missing data between August 2019 and March 2021. *See* ECF No. 520-5 ¶¶ 8-9 (detailing Plaintiffs' demands that Yodlee produce a data field like "MAX_TSD" to fill the missing data). By falsely claiming that no alternative field existed (*id.* ¶ 9), Yodlee denied Plaintiffs the NUM_TRANS_RESP data it would later deploy to contest class certification 13 days before Plaintiffs' motion.

The partial data that Yodlee did disclose during fact discovery buoyed Plaintiffs' belief that Class Representatives' Transaction Data was collected. It showed that Yodlee collected Transaction Data from

3

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FOURTH AMENDED CLASS ACTION
COMPLAINT – CASE NO. 3:20-cv-05991

████████████████████████████████████████.[1] These high percentages showed it would have been statistically anomalous if none of the Class Representatives' Transaction Data were collected, not something that could have been foreseen absent the more complete data that Yodlee withheld. Indeed, it appears Plaintiff Szeto's Transaction Data went uncollected because of a remarkable aberration: ████████████████████████████████████████████████████████████████████████. *See* Levis Decl. Ex. 1 at '786 (████████████████████████████████████████████████████████████████████); *see also* ECF No. 411-27.

Yodlee also claims that Plaintiffs should have discerned that Class Representatives' Transaction Data was not collected based on a single email in which a Yodlee employee remarked, inaccurately, that Yodlee collected Transaction Data from a "very small . . . segment" of IAV users. *See* Opp. at 2 (citing ECF No. 178-81 at '250). Not only was this false—Yodlee collected Transaction Data from ████████████████████[2]—other more authoritative documents, like the data described above, shows that Yodlee collected Transaction Data from ████████████████████.

This belies Yodlee's claim that "Plaintiffs knew or should have known long before the class-certification stage" that none of Class Representatives' Transaction Data was collected, particularly when Yodlee withheld information about the "NUM_TRANS_RESP" field that bore directly on this question. Opp. at 2.[3] That Plaintiffs did not learn of this evidence until 13 days before class certification was the direct result of Yodlee's own gamesmanship and is not grounds to end class proceedings for millions of PayPal users. *See Ouimet v. USAA Cas. Ins. Co.*, No. EDCV 00-00752-VAP, 2004 WL 5865274, at *1 (C.D. Cal. July 14, 2004) ("A party may not shield information during discovery and later use it as a sword . . .").

---

[1] Excluding the period for which Yodlee did not produce complete data, Yodlee's records show it collected Transaction Data from ████████████████████████████████████████████████. *See* YODLEE_WESCH_0825522-0825803. ████████████████████████████████████████ Yodlee collected Transaction Data from ████████████████████████████████████████. *Id.*
[2] *See* YODLEE_WESCH_0825522-0825803.
[3] Even more speciously, Yodlee claims that Plaintiffs should have gleaned that Class Representatives' Transaction Data was not collected based on Yodlee's *general* denials that Plaintiffs suffered injury, which did not address whether it collected Class Representatives' Transaction Data. Opp. at 2 (citing its answer (ECF No. 99) and first summary judgment motion (ECF No. 107-4)); *id.* at 12. To the extent Yodlee's general denials focused on any specific issue, it was whether Plaintiffs suffered privacy harm in light of Yodlee's disclosures, not whether their Transaction Data was collected. *See* ECF No. 107-4 at 9-10.

### B. The Proposed Plaintiffs' Allegations Are Well-Supported and Verifiable

Yodlee's own records support the Proposed Plaintiffs' allegations that their Transaction Data was collected. Yodlee's records show it collected Transaction Data from ▓▓▓▓ (see Section II.A), after which six of the eight Proposed Plaintiffs allegedly linked their accounts, ▓▓▓▓, after which half of the Proposed Plaintiffs linked accounts.[4] See Mot. at 6. Far from "guesswork" (see Opp. at 10), the Proposed Plaintiffs' allegations correspond to the high collection percentages in Yodlee's own data, which Yodlee does not contest. Yodlee's collection percentages were likely even higher between August 2019 and December 2020—the gap period for which Yodlee failed to produce complete data—given that Yodlee collected Transaction Data from ▓▓▓▓.[5] This consistent, multi-year pattern of collecting Transaction Data from around three-quarters of PayPal users shows that the Proposed Plaintiffs' allegations are well-supported.

Indeed, despite possessing the account-linking records relevant to the Proposed Plaintiffs' allegations, Yodlee fails to identify a single fact contesting them, further indicating their accuracy. If, for example, Yodlee had evidence that its collection percentages dropped for any relevant period, or that it did not collect Transaction Data from any of the Proposed Plaintiffs, it could have informed the Court of this in its Opposition. That Yodlee did not, and in fact did not offer *any* evidence rebutting the Proposed Plaintiffs' allegations, shows that Yodlee did not locate anything in its records to contest them. *See* Opp. at 10-11. In sum, Yodlee's claim that there is "no basis" for the Proposed Plaintiffs' allegations (*id.* at 10) is, itself, a baseless claim that is undermined by Yodlee's own data showing it collected Transaction Data from most PayPal users around the times the Proposed Plaintiffs linked accounts.

Yodlee's claim that a "fishing expedition" would be needed to verify the Proposed Plaintiffs' allegations is similarly disingenuous. Opp. at 10. As explained in Plaintiffs' Motion, the Proposed Plaintiffs should be able to confirm their allegations using the account-linking records that Yodlee already produced, without any further discovery on Yodlee. Mot. at 7. That this confirmatory check is needed at all stems from Yodlee's deceptive practice of not informing users when it collects their Transaction Data. See ECF

---

[4] Yodlee collected Transaction Data from ▓▓▓▓. See YODLEE_WESCH_0825522-0825803. These figures exclude the months for which Yodlee did not produce complete data.

[5] See YODLEE_WESCH_0825522-0825803.

No. 492-5 at 7-9. Yodlee cannot fairly attack the Proposed Plaintiffs' allegations for being "on information and belief" when that is necessitated by Yodlee's own secrecy. *See Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*, No. CV 17-8070, 2018 WL 4961908, at *5 (C.D. Cal. May 18, 2018) (holding plaintiffs "may base their allegations 'on information and belief' . . . particularly where they are based on . . . facts not within their possession").

### C. *Lierboe* Does Not Preclude Plaintiffs' Amendment

When a plaintiff has standing but cannot proceed on class claims, the proper remedy in the Ninth Circuit is to permit "substitution or intervention" by a "proper class representative" to "allow the suit to proceed." *See Lierboe*, 350 F.3d at 1023 n. 6 (citing *Kuahulu v. Employers Ins. of Wausau*, 557 F.2d 1334, 1336-37 (9th Cir. 1977) (holding that the proper remedy is to "determine whether a substitute representative would be available.")). Yodlee does not dispute that this Ninth Circuit precedent requires new plaintiffs be added when class certification fails to due to curable typicality or adequacy concerns. *See* Opp. at 6-7. And Yodlee does not dispute that it collected Transaction Data from millions of PayPal users who could cure the Court's typicality and adequacy concerns here. *See* ECF No. 492-71 ¶ 7 (explaining [redacted] proposed Class Members had Transaction Data collected). The lone case Yodlee identifies where a court declined to add new plaintiffs under these circumstances involved other barriers to class certification that could not be resolved by new plaintiffs. *See* Opp. at 6 (citing *Cholakyan v. Mercedes-Benz*, 281 F.R.D. 534, 558 n.113 (C.D. Cal. 2012) (denying amendment because of "commonality" issues that could not be resolved through amendment).[6]

Yodlee instead argues that *Lierboe* and its progeny bar Plaintiffs' amendment. Yodlee is wrong. In *Lierboe*, the Ninth Circuit dismissed a case for lack of subject matter jurisdiction after the Montana Supreme Court confirmed that the plaintiff did not have a proper "stacking" claim under Montana law. *See* 350 F.3d at 1021. Because the plaintiff's claim never existed, the Ninth Circuit held she "never had

---

[6] Yodlee's argument that the "lack of transactional data" collected for the Class Representatives was not the "sole basis" for which the Court denied class certification is wrong. Opp. at 10 n.2. Nothing in the court's order suggests class certification was denied for other reasons. *See* ECF No. 600.

standing," and there was no Article III case or controversy on which to permit amendment.[7] *Id.* at 1023 n. 6.

This case is unlike *Lierboe*. The Court has subject matter jurisdiction because Plaintiffs have standing for at least some of their claims, and only one claim is needed to establish Article III standing. *See* Transcript of October 21, 2024 Hearing, ECF No. 637 at 6:18-22 ("I think there are some claims that remain . . . That's why we're going to have this briefing on the summary judgment."); *id*. at 6:25-7:1 ("I think there are potentially claims left, and that's what needs to be argued[.]").[8] Yodlee's claim that Plaintiffs lack standing for *all* of their claims (*see* Opp. at 5) contradicts the Court's statements, and, in any case, fails for the reasons set forth in Plaintiffs' summary judgment opposition. *See* ECF No. 626 at 11-14 (explaining Yodlee's collection and storage of Login Credentials and Banking Data is a traditional privacy harm sufficient to establish injury-in-fact and establishes standing under CAPA).[9] The Court thus retains jurisdiction over this case and should follow the Ninth Circuit precedent directing for the addition of new Plaintiffs.

*Lierboe* is also inapplicable because several former Plaintiffs in this case had standing, which

---

[7] Each case cited by Yodlee involves a similarly inapposite fact pattern. The courts in those cases found either (1) there was not a valid Article III case or controversy or (2) insufficient evidence that plaintiffs had standing for any claims at any stage of the litigation. *See* Opp. at 4-7 (citing *Zapien v. Wash. Mut., Inc.*, No. 07CV385, 2008 WL 11509012, at *3 (S.D. Cal. June 17, 2008) (denying substitution because "Court's order" "provided that [plaintiff] had no standing"); *In re Exodus Commc'ns, Inc. Sec. Litig.*, No. C-01-2661, 2006 WL 2355071, at *1 (N.D. Cal. Aug. 14, 2006) (denying intervention because there was "no evidence . . . as to whether [existing plaintiff] had standing"); *Almeida v. Google, Inc.*, No. C-08-02088, 2009 WL 3809808, at *3 (N.D. Cal. Nov. 13, 2009) (ordering plaintiff to renew motion to amend with "evidence sufficient to create an inference that he has standing"); *Rieken v. Timberland Bank*, 639 F. Supp. 3d 1128, 1134 (W.D. Wash. 2022) (denying substitution based on finding "prudential standing" was lacking); *Skilstaf, Inc. v. CVS Caremark Corp.*, No. C 09-02514, 2010 WL 199717, at *6 (N.D. Cal. Jan. 13, 2010), *aff'd*, 669 F.3d 1005 (9th Cir. 2012) (denying substitution because there is "no longer an Article III 'case or controversy'"); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 743 F. App'x 148, 150 (9th Cir. 2018) (denying motion to substitute because no plaintiff "had standing at the start of the suit."); *Jones v. San Diego Metro. Transit Sys.*, No. 14-CV-1778, 2016 WL 3952154, at *4 (S.D. Cal. July 22, 2016) (denying amendment where "named plaintiffs" had a "case of controversy"). Neither is true here.

[8] Yodlee cites several cases confirming *Lierboe* does not apply in this context. *See* Opp. at 6 (citing *Stanton v. Aetna Life & Cas. Bermuda Ltd.*, No. CV1808937, 2021 WL 4146964, at *3 n.2 (C.D. Cal. Feb. 12, 2021) (distinguishing *Lierboe* because plaintiff had standing); *Cabrera v. Bayer Healthcare*, No. CV 2:17-08525, 2024 WL 4228237, at *4 (C.D. Cal. June 24, 2024) (distinguishing *Lierboe* where it "has not been determined that Plaintiff lacks standing."); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016) (explaining a "would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted")).

[9] Yodlee's contention that Plaintiffs Clark and Lumb lack Article III standing because they did not use IAV until "after joining this lawsuit" is a merits challenge as to whether they can establish reliance, which is separate from the standing inquiry. *See Orshan v. Apple Inc.*, No. 5:14-CV-05659, 2024 WL 4353034, at *18 (N.D. Cal. Sept. 30, 2024) (holding "lack of reliance [does not] equal[] lack of standing").

Yodlee's own authority recognizes is an alternative basis for exercising subject matter jurisdiction, and does not "render[] [Article III jurisprudence] meaningless" as Yodlee claims. Opp. at 5-6. Yodlee's authority recognizes that where there is "evidence sufficient to create an inference that [the former plaintiff] ha[d] standing" (*Almeida*, 2009 WL 3809808, at *3), the court retains jurisdiction over the action and *Lierboe* does not apply. *See* Opp. at 5-6 (citing *Hensley-Maclean v. Safeway, Inc.*, No. 11-CV-01230, 2015 WL 3956099, at *4 (N.D. Cal. June 29, 2015) (distinguishing *Lierboe* because at least former plaintiff who "withdrew from the action" had standing)). Here, there is sufficient evidence that several former Plaintiffs had standing, including Plaintiff Wesch, who linked a financial account to PayPal using IAV in November 2019 and whose Login Credentials, Banking Data, and potentially Transaction Data were collected. ECF No. 626-11 at 2 (showing Wesch linked account via IAV in November 2019); ECF No. 492-42 at 3-4 (█████████████████████████████████████████████████████████████████████████).

### D. Any Prejudice to Yodlee Is Insubstantial and Self-Inflicted

To preclude Plaintiffs' amendment, Yodlee bears the burden of showing "substantial prejudice or substantial negative effect." *Xyratex Tech., Ltd. v. Teradyne, Inc.*, No. CV0804545, 2009 WL 10702550, at *7 (C.D. Cal. Aug. 20, 2009). Substantial prejudice can be shown where an amendment adds "new claims" or will "greatly alter[] the nature of the litigation." *Id.* Where "the factual issues" and "discovery involved" are "already at issue in [the] litigation" and "overlap" with the existing claims, a defendant does not meet its burden to show undue prejudice. *Id.*

Yodlee's prejudice claims are overblown and self-inflicted. As detailed above, Plaintiffs' amendment was necessitated by Yodlee's own misconduct: its false claim that it did not possess data about its collection of Transaction Data other than the "MAX_TSD" field, which deprived Plaintiffs of information about the "NUM_TRANS_RESP" field that Yodlee first disclosed 13 days before class certification. *See* Section II.A. Courts faced with similar misconduct have granted leave to amend over the defendants' claims of prejudice, finding such late disclosures provide "good cause" for amendment. *See Ellsworth*, 2013 WL 6730725, at *10 (finding "good cause" and "no prejudice" when plaintiff sought to amend to add new class representatives after "last-minute" facts were discovered the same month class certification motion was filed); *Woods*, 2018 WL 4030570, at *8-9 (finding good cause and no prejudice

1   when amendment sought to address adequacy issues Google delayed raising); *Japan Cash Mach. Co. v.*
2   *MEI, Inc.*, No. 205CV01433, 2008 WL 11388723, at *3 (D. Nev. May 15, 2008) (finding prejudice factor
3   weights in favor of granting leave to amend when the amendment was premised on documents that
4   "potentially should have produced earlier in the litigation").

5   Yodlee also overstates the scope of the Plaintiff-specific discovery in this case to make it seem as
6   if adding new Plaintiffs would delay it by "years." Opp. at 9, 14. This is untrue. All written discovery on
7   Plaintiffs, from date served to completion, was completed within one to four months,[10] not "four years" as
8   Yodlee falsely claims. *See* Opp. at 9, 14. Discovery on the Proposed Plaintiffs will take even less time
9   given that the Parties have already negotiated these discovery requests. "Courts have rejected cries of
10  prejudice in nearly identical circumstances." *See Woods*, 2018 WL 4030570, at *10 (same); *In re Facebook*
11  *Priv. Litig.*, No. 10-CV-02389, 2015 WL 2453734, at *5 (N.D. Cal. May 22, 2015) (finding no substantial
12  prejudice where the new "plaintiff [was] not seeking new categories or avenues of discovery," did not raise
13  "new issues or defenses," and "any additional discovery. . . [would] be limited to [the new class
14  representative]"); *Ellsworth*, 2013 WL 6730725, at *11-12 (finding "no prejudice" when only "some
15  additional discovery" about the "attributes" of the "new representative plaintiffs" is required).

16  Yodlee's reliance on the Court's prior denial of an unrelated amendment, which sought to add more
17  than 20 new "apps" to the case, is misplaced. Opp. at 9 (citing ECF No. 243 at 4). That proposed
18  amendment was substantially larger in scope and was not necessitated by Yodlee's improper withholding
19  of evidence. ECF No. 243, at 3. The Court's concerns that the prior amendment would "increase the scope
20  of discovery by 20 times" do not apply to the present one given Plaintiffs are not seeking new discovery
21  from Yodlee and any minor discovery burden will be borne by the Proposed Plaintiffs. *Id.* at 4.

22  Likewise, Yodlee cannot claim prejudice by speculating about "unique" issues relating to the
23  Proposed Plaintiffs that it fails to identify and unlikely exist. Opp. at 9. Yodlee will have the same discovery
24  from the Proposed Plaintiffs that it obtained from the existing Plaintiffs, which did not reveal any unique
25  issues given the standardized nature of Yodlee's data-collection practices. *Woods*, 2018 WL 4030570, at

---

[10] Yodlee served only one set of Requests for Production on November 19, 2021 (ECF No. 146 at 6), which Plaintiffs substantially completed production for by March of 2022. *See* ECF No. 154 at 3; Levis Decl. ¶ 3. It served its first set of interrogatories on February 16, 2022 (ECF No. 154 at 3), and its second set of interrogatories on December 13, 2023. Levis Decl. ¶¶ 4-5. Plaintiffs provided their initial responses to each set of interrogatories within a month, by March 21, 2022 and January 12, 2024 respectively. *Id.*

*10 (finding no undue prejudice where proposed plaintiff "offered" to sit for a deposition and discovery would be limited to the new plaintiff's "account" with the defendant).[11]

Yodlee's attempt to manufacture prejudice by overstating the amendment's potential impact on the case also fails. The Parties will not need to re-do expert reports as Yodlee claims. *See* Opp. at 14. The Parties' expert reports focused on class issues common to all Plaintiffs, and, to the extent necessary, could be supplemented with a few additional paragraphs relating to the Proposed Plaintiffs. *See Woods*, 2018 WL 4030570, at *10 (finding no prejudice where the addition of a plaintiff would require defendant "to tweak their expert reports" as "these actions are minimal and can be conducted quickly"). Nor does Yodlee explain how re-briefing class certification or summary judgment based on the same claims will be "undu[ly]" prejudicial; this too could be achieved by slightly tweaking the Parties' existing submissions. *See id.* (holding that "additional summary judgment or class certification proceedings" did not constitute "undue prejudice" because "the parties should be able to [] revise and resubmit their class certification briefs on a condensed timeline.").

Finally, Yodlee's claim that it will be prejudiced by having to verify the Proposed Plaintiffs' claims is not accurate.[12] Plaintiffs should be able to confirm this quickly, using the data Yodlee already produced, once they obtain their unique identifiers from PayPal.[13] This is not unduly prejudicial, as it requires no

---

[11] While Yodlee claims it would be entitled to "full discovery" to secure its "due process rights" (Opp. at 13-14), it does not state what additional discovery it believes is necessary beyond what it has obtained from existing Plaintiffs. The cases it cites stating discovery is generally proper do not advance this argument. Opp. at 14 (citing *Carswell v. Anderson*, No. 1:22-CV-00369, 2024 WL 3104549, at *2 (D. Idaho June 24, 2024) (rejecting relevancy objection to discovery requests); *Weldon v. Dyer*, No. 1:13-CV-00540, 2015 WL 1012371, at *9 (E.D. Cal. Mar. 6, 2015) (confirming right to obtain relevant discovery)).

[12] The cases Yodlee cites involved unsupported allegations of bad faith or knowledge (Opp. at 10 (citing *Sandisk Corp. v. LSI Corp.*, No. C 09-02737, 2009 WL 3047375, at *2 (N.D. Cal. Sept. 18, 2009) (finding allegations made on "information and beliefs" could not support a finding of "bad faith"); *MMD Bohannon v. McDonald*, No. 22-CV-04422, 2024 WL 4801851, at *2 (N.D. Cal. Oct. 4, 2024) (no allegations supporting a finding of "knowledge")) or residency allegations pled on "information and belief" that were not plausible. *Id.* (citing *Padilla v. Veyo LLC*, No. CV-23-02380, 2024 WL 3851213, at *2 n.3 (D. Ariz. Aug. 16, 2024) (rejecting allegations on "information and belief" that the driver is an "Arizona citizen" when plaintiffs "conceded they do not know the identity of the driver").

[13] As described in the Motion, Yodlee may need to produce Proposed Plaintiffs' specific data if they fall within the "gap" period for which Yodlee did not produce class wide data. Mot. at 7 n.6. Even if required, having to query its own database is minimal and not prejudicial. *See Ellsworth*, 2013 WL 6730725, at *10 (finding "some additional discovery" specific to "new representative[s]" is not prejudicial).

additional discovery from Yodlee[14] and only minimal information from PayPal.

Not a single case cited by Yodlee supports a finding of substantial prejudice here. Plaintiffs are not seeking to expand the litigation by asserting new claims or legal theories, which was the basis of prejudice in many of the cases Yodlee cites. *See* Opp. at 8 (citing *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952-53 (9th Cir. 2006) (denying amendment to assert a new theory that different drugs were counterfeit fifteen months after discovering such facts); *Burke v. Basil*, No. 8:20-cv-00635, 2021 WL 3264424, at *2 (C.D. Cal. Apr. 13, 2021) (denying leave to amend to add new causes of actions and parties)); Opp. at 12 (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (denying leave to amend to assert new claims "advance[ing] different legal theories and require[ing] proof of different facts."). Nor did Plaintiffs forego prior opportunities to amend given they were not aware of Yodlee's arguments and evidence until 13 days before class certification. *See* Opp. at 8 (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (dismissing case without leave to amend because the plaintiff had three prior opportunities to correct deficiencies)). Moreover, Plaintiffs are not misusing this amendment to find factual support for deficiently pled legal claims, as the existing discovery already proves their allegations. *Id.* at 11 (citing *Davis v. City of Glendale*, No. CV-23-00016, 2023 WL 5333259, at *8 (D. Ariz. Aug. 18, 2023) (denying request for "extensive discovery" to support otherwise conclusory allegations of negligent hiring and supervision).

The remaining cases Yodlee cites involve attempts to add plaintiffs because of deficiencies that were known or should have been known earlier in the proceedings. As detailed above, that was not the case here. *See* Section II.A. For example, in *Osakan v. Apple Am. Grp.*, No. C 08-4722, 2010 WL 1838701, at *4 (N.D. Cal. May 5, 2010), the original plaintiff had already entered a settlement agreement for the same claims. *Id.* Defendants raised this issue throughout the litigation, but the plaintiff elected to proceed and did not seek leave to add new plaintiffs until years later. *Id.* (finding prejudice because defendants had "prepar[ed] their defense" around the sole named plaintiff). That is the opposite of what occurred here: by claiming it did not possess other data about its collection of Transaction Data beyond the "MAX_TSD"

---

[14] Yodlee argues that locating Plaintiffs' data (as opposed to classwide data) was time consuming because it involved searching "███████████████████████████████████████████████." ECF No. 512-16 ¶¶ 6-7; Opp. at 10-11. It omits, however, that there was a much *easier* process to identify Named Plaintiffs' data, specifically, searching for identifiers assigned by PayPal that correspond with identifiers in Yodlee's own system. Mot. at 7 n.5. This process would have saved considerable time, had Yodlee been forthcoming about the identifiers in its possession.

field, Yodlee falsely represented that it lacked records relevant to the Class Representatives, forcing Plaintiffs to rely on other evidence that indicated their Transaction Data was collected.

Each of the other cases cited by Yodlee involves similar defects that, unlike here, counsel knew or should have known at the beginning of the litigation. Opp. at 7-9, 13-14 (citing *Velazquez v. GMAC Mort. Corp.*, No. CV 08-05444, 2009 WL 2959838, at *4 (C.D. Cal. 2009) (denying motion to add "new plaintiffs, new claims, and new defendants" to avoid tolling issues that plaintiffs "knew or should have known prior to initiating [the] suit"); *In re Flash Memory Antitrust Litig.*, No. C 07-0086, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (finding prejudice where plaintiff moved to add new class representatives based on deficiencies that "should" have been discovered "at the inception of the litigation" and the amendment would "not cure the deficiencies" with "class certification"); *Gau v. Hillstone Rest. Grp., Inc.*, No. 20-CV-08250, 2022 WL 2833977, at *8 (N.D. Cal. July 20, 2022) (finding prejudice where defendant had "presumably relied [on]" the existing plaintiff's known "inadequacy as a class representative" in "litigating this case");[15] *Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701, 2013 WL 6844377, at *24 (E.D. Cal. Dec. 23, 2013), *report and recommendation adopted*, No. 1:09-CV-00701-AWI, 2014 WL 200706 (E.D. Cal. Jan. 16, 2014) (finding prejudice where plaintiff was "aware" that he "was not a proper class representative for years" and the defendant "prepar[ed] arguments and defenses" around this issue); *Hitt v. Arizona Beverage Co., LLC*, No. 08CV809, 2009 WL 4261192, at *2-3 (S.D. Cal. Nov. 24, 2009) (finding discovery "redo" with new plaintiffs prejudicial because defendant had "raise[d] defenses" specific to the named plaintiff and secured "admissions" she did not read the label she claimed was defective); *Heredia v. Sunrise Senior Living LLC*, No. 8:18-cv-01974, 2021 WL 811856 (C.D. Cal. Feb. 9, 2021) (finding prejudice where plaintiffs knew named plaintiffs could not represent class members who signed arbitration agreements over a year before moving to amend); *Lindblom v. Santander Consumer USA, Inc.*, No. 1:15-cv-00990, 2019 WL 4640684, at *10 (E.D. Cal. Sept. 24, 2019) (denying leave to amend where plaintiff knew over a year prior to the close of discovery that she may be an inadequate representative but did not move to amend until after class certification was

---

[15] In *Gau*, the Plaintiff was inadequate because he was already involved in litigation against the same defendant. No. 5:20-cv-08250, ECF No. 67 at 22.

denied).[16] As with *Osakan*, these cases are inapposite as they involved known or foreseeable issues that were timely disclosed, not ones withheld until the eve of class certification as Yodlee's were here.[17]

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to File the Fourth Amended Class Action Complaint should be granted.

Dated: December 12, 2024

/s/ *Christian Levis*
Christian Levis (admitted *pro hac vice*)
Margaret MacLean (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, New York 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
mmaclean@lowey.com
afiorilla@lowey.com

Anthony M. Christina (admitted *pro hac vice*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, Pennsylvania 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
achristina@lowey.com

Benjamin Steinberg (admitted *pro hac vice*)
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, 19th Floor
New York, NY 10122
Telephone: (646) 960-8601
Facsimile: (646) 960-8625
benjamin@scl-llp.com

---

[16] *Jones v. San Diego Metro. Transit Sys.*, No. 14-CV-1778, 2016 WL 3952154, at *5 (S.D. Cal. July 22, 2016), cited by Yodlee, denied amendment because there was no live "controversy" between the parties. That the defendant would be prejudiced by the substitution of new plaintiffs was only briefly mentioned in passing and that case did not, like here, involve newly discovered facts that defendant failed to previously disclose.

[17] Yodlee's reliance on *Johnson* and *Steinhauer* is likewise unavailing as the courts in those cases denied amendment to add the proper defendants because, prior to the amendment cutoff date, the defendants informed the plaintiffs of their mistake and plaintiffs nonetheless failed to seek amendment. *See* Opp. at 7-8 (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 2017); *Steinhauer v. Liberty Mut. Ins. Co.*, 2020 WL 5743936, at *3 (D. Or. Sept. 25, 2020)).

John Emerson (admitted *pro hac vice*)
**EMERSON FIRM, PLLC**
2500 Wilcrest Drive, Suite 300
Houston, TX 77042
Telephone: (800) 551-8649
Facsimile: (501) 286-4659
jemerson@emersonfirm.com

Robert Kitchenoff (admitted *pro hac vice*)
**WEINSTEIN KITCHENOFF & ASHER LLC**
150 Monument Road, Suite 107
Bala Cynwyd, PA 19004
Telephone: (215) 545-7200
kitchenoff@wka-law.com

Michele Carino (*pro hac vice* forthcoming)
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 622-6001
Mcarino@grwlegal.com

*Attorneys for Plaintiffs and the Proposed Classes*