UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIUS CLARK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>YODLEE, INC.,<br><br>    Defendant. | Case No. 20-cv-05991-SK<br><br>**ORDER ON RELEVANCY OF PENDING MOTIONS TO EXCLUDE EXPERTS**<br><br>Regarding Docket Nos. 501, 503, 542, 548, 583 |

Motions to exclude the testimony from the following experts are currently pending: (1) Serge Egelman, Ph.D., (2) Nathaniel Good, Ph.D., (3) Adam Porter, Ph.D., (4) Tye L. Rattenbury, Ph.D, and (5) Ronald T. Wilcox, Ph.D. The Court has reviewed the parties' briefing on whether these experts are still relevant to Plaintiffs' remaining limited claim of invasion of privacy after the Court's rulings on the motion for class certification and motion for summary judgment. The only claim remaining is the individual claim by Plaintiffs Cottrell, Rollier, and Szeto for invasion of privacy based on Yodlee's storage of their bank credentialing information.

To state a claim for invasion of privacy based on the common law tort of intrusion, a plaintiff must allege: (1) that the defendant intentionally intruded into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (2) the intrusion be highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). As the California Supreme Court explained, "the defendant must have 'penetrated some zone of physical or sensory privacy . . . or obtained unwanted access to data' by electronic or other covert means, in violation of the law or social norms." *Id.* at 286 (quoting *Shulman v. Group W Productions, Inc*., 18 Cal. 4th 200, 232 (1998)). The right to privacy protected by the California Constitution is similar to the common law claim. *Id.* at 287.

The Court will address the remaining relevance of each expert witness in turn:

### A. Serge Egelman, Ph.D.

Plaintiffs argue that a substantial portion of Egelman's testimony remains relevant to Plaintiffs' remaining claim for invasion of privacy related to login credentials because, according to Plaintiffs, much of Egelman's testimony concerns the commercial reasonableness of Yodlee's retention of users' login credentials. For Plaintiffs' remaining claim for invasion of privacy, they must demonstrate that the alleged invasion was "highly offensive" to a reasonable person and unwarranted "so as to constitute an 'egregious breach of social norms.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009)). The inquiry into whether something is "highly offensive" "requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (citing *Hernandez*, 47 Cal. 4th at 287). Egelman's opinions relate to *industry* standard and norms, not *social* norms. Accordingly, the Court finds that his expert testimony is not relevant to Plaintiffs' remaining claim. The Court thus strikes the motion to exclude Egelman's testimony as moot. (Dkt. No. 501.)

### B. Nathaniel Good, Ph.D.

Plaintiffs argue that Good's testimony remains relevant to their individual privacy claims on the issues of consent and offensiveness. As Plaintiffs state, Good assessed whether Yodlee's Account-Linking Interface conformed to the Generally Accepted Principles surrounding user consent. (Dkt. No. 679 at p. 3 (citing Dkt. No. 492-52 (Good's Expert Report)).) However, whether Plaintiffs consented to Yodlee's storage of their bank credentialing information will be determined based on what interface screens the individual Plaintiffs actually saw. Whether or not Yodlee complied with generally accepted principals is irrelevant for this determination.

For the first time, in an effort to keep their expert relevant, Plaintiffs now argue that Good's testimony is also relevant to whether Yodlee's conduct was offensive. However, the issue for the jury to decide at trial will be whether Yodlee's *retention* of Plaintiffs' bank credentialing information was highly offensive. Again, with respect to *consent*, the jury will determine whether

1  Plaintiffs did or did not consent to Yodlee's retention of their bank credentialing information
2  based on what Plaintiffs actually saw. Offensiveness does not factor into this determination.
3  Accordingly, the Court finds that Good's expert testimony is no longer relevant to the remaining
4  claims. The Court thus strikes the motion to exclude Good's testimony as moot. (Dkt. No. 503.)

### C. Adam Porter, Ph.D.

Porter opines on Yodlee's source code and to rebut Rattenbury's opinions regarding Yodlee's use or nonuse of PayPal's Instant Account Verification ("IAV") user data in Yodlee's data panels and the development or training of Yodlee's enrichment and/or learning programs. (Dkt. No. 513-4.)

Plaintiffs clarified that they do not intend to claim damages based on Yodlee's monetization of their login credentials. (Dkt. No. 679 at p. 5.) Instead, to recover damages, Plaintiffs will seek to demonstrate the harm they allegedly suffered from Yodlee's retention of their bank credentialing information and/or will seek merely nominal damages. Additionally, Plaintiffs still intend to pursue punitive damages. However, Plaintiffs contend that evidence showing that Yodlee purposefully retained their login credentials for a commercial benefit remain relevant to Plaintiffs' privacy claim on the issues such as offensiveness and Yodlee's intent. Plaintiffs intend to demonstrate that Yodlee retained Plaintiffs' bank credentialing information to continue accessing their accounts for a commercial benefit, including accounts that Plaintiffs did not link to PayPal. It is not yet clear whether Porter's testimony may be relevant to rebut Plaintiff's arguments. To the extent that Plaintiffs argue to the jury that Yodlee retained Plaintiffs' bank credentialing information to obtain a commercial benefit such as obtaining data, Porter's testimony may become relevant to address how Yodlee handles consumers' data. Thus, Porter's testimony may be relevant at trial. Therefore, the Court will address the motion to strike Porter's testimony in a separate order. (Dkt. No. 542.)

### D. Tye L. Rattenbury, Ph.D.

This is the one expert whose testimony both parties agree is no longer relevant to the remaining claims. The Court thus strikes the motion to exclude Rattenbury's testimony as moot. (Dkt. No. 548.)

**E.      Ronald T. Wilcox, Ph.D.**

Wilcox's report is a rebuttal to Good's report.  Because the Court finds that Good's report is no longer relevant, Wilcox's report is similarly no longer relevant.  The Court thus strikes the motion to exclude Wilcox's testimony as moot.  (Dkt. No. 583.)

**IT IS SO ORDERED**.

Dated: February 18, 2025



SALLIE KIM
United States Magistrate Judge

4