MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DARIUS CLARK, JOHN H. COTTRELL, DAVID LUMB, KYLA ROLLIER, and JENNY SZETO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YODLEE, INC.,<br><br>Defendant. | Case No. 3:20-cv-05991-SK<br><br>**YODLEE, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY OF SERGE EGELMAN**<br><br>Judge: Hon. Sallie Kim<br>Hearing: July 22, 2024<br>Time: 9:30 a.m.<br>Courtroom: C – 15th Floor |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE, on the same date and time that Plaintiffs' pending motion for class certification will come for hearing (currently July 22, 2024), or as soon thereafter as this Motion may be heard before the Honorable Sallie Kim of the United States District Court, Northern District of California at the San Francisco Courthouse, Courtroom C – 15th Floor, 450 Golden Gate Ave., San Francisco, California 94102, Defendant Yodlee, Inc. ("Yodlee") will and hereby does move the Court to exclude the opinions of Plaintiffs' expert Serge Egelman. Yodlee's Motion is made pursuant to Federal Rule of Evidence 702 and Civil Local Rule 7. Yodlee's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and accompanying exhibits, all matters of which the Court may take judicial notice, all pleadings and papers on file in this action, and other written or oral argument that Yodlee may present to the Court.

## ISSUE TO BE DECIDED

Whether Dr. Egelman's opinions offered in his April 12, 2024 expert report should be excluded under Federal Rule of Evidence 702.

## RELIEF REQUESTED

Yodlee requests that the Court exclude all opinions offered by Dr. Egelman as set forth in his April 12, 2024 expert report pursuant to Federal Rule of Evidence 702.

DATED: June 12, 2024

Respectfully submitted,

*/S/ Megan L. Rodgers*
Megan L. Rodgers

*Attorneys for Defendant Yodlee, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND .................................................................................................................2

III. LEGAL STANDARD ..........................................................................................................2

IV. DR. EGELMAN'S OPINION BASED ON SO-CALLED "BEST PRACTICES" SHOULD BE EXCLUDED AS UNRELIABLE AND IRRELEVANT........................................3

    A. Dr. Egelman Fails to Show That His Curated "Best Practices" Reflect Yodlee's Industry. ..................................................................................................................4

    B. Dr. Egelman's So-Called "Best Practices" Were Not Reliably Applied to the Facts of This Case. ..........................................................................................................7

    C. Whether Yodlee Complies with Dr. Egelman's So-Called "Best Practices" Is Irrelevant to Plaintiffs' Claims. ...............................................................................8

V. DR. EGELMAN'S TESTIMONY ON INTENT, KNOWLEDGE, AND CONTRACT INTERPRETATION SHOULD BE EXCLUDED AS IMPERMISSIBLE EXPERT TESTIMONY. .....................................................................................................................9

VI. CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angioscore, Inc. v. Trireme Med., Inc.*,
   87 F. Supp. 3d 986 (N.D. Cal. 2015) ............................................................................................4

*Arjangrad v. JPMorgan Chase Bank, N.A.*,
   2012 WL 1890372 (D. Or. May 23, 2012) ............................................................................ *passim*

*Boyer v. City of Simi Valley*,
   2024 WL 993316 (C.D. Cal. Feb. 13, 2024) ................................................................................3, 8

*Brown v. Google, LLC*,
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ..........................................................................6, 10

*Bun v. City of Livermore*,
   2022 WL 2833971 (N.D. Cal. July 20, 2022) .................................................................................5

*Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*,
   2023 WL 8113301 (C.D. Cal. Oct. 6, 2023) ...............................................................................11

*In re Google Play Store Antitrust Litig.*,
   2023 WL 5532128 (N.D. Cal. Aug. 28, 2023) ..............................................................................3

*Hill v. Novartis Pharms. Corp.*,
   2012 WL 5451816 (E. D. Cal. November 7, 2012) .....................................................................10

*Holley v. Gilead Sciences, Inc.*,
   2023 WL 2469632 (N.D. Cal. Feb. 27, 2023) .............................................................................6, 9

*Kidwell-Bertagnolli v. Cnty. of Sonoma*,
   2024 WL 1589468 (N.D. Cal. Apr. 10, 2024) ..............................................................................6

*Krause-Pettai v. Unilever United States, Inc.*,
   2023 WL 6429805 (S.D. Cal. Sept. 30, 2023) ..............................................................................9

*Leakas v. Monterey Bay Mil. Hous., LLC*,
   2024 WL 496992 (N.D. Cal 2024) ...............................................................................................3

*Maney v. Oregon*,
   2024 WL 1695083 (D. Or. Apr. 19, 2024) ...................................................................................3

*Mattos v. Walmart, Inc.*,
   2020 WL 4805433 (D. Or. Aug. 18, 2020) ...................................................................................5

*McHugh v. United Serv. Auto. Ass'n*,
   164 F.3d 451 (9th Cir. 1999) ......................................................................................................11

*Nelson v. Costco Wholesale Corp.*,
    2022 WL 1638838 (D. Ariz. May 24, 2022) ............................................................................5

*Neo4j, Inc. v. PureThink, LLC*,
    2023 WL 7093805 (N.D. Cal. Oct. 25, 2023) ..................................................................8, 11

*Romero v. Garland*,
    2024 WL 1099300 (S.D. Cal. Mar. 13, 2024) .....................................................................10

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*,
    927 F. Supp. 2d 1069 (D. Or. 2013) ....................................................................................10

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...............................................................................................8

*Tracy Anderson Mind & Body, LLC v. Roup*,
    2022 WL 17670418 (C.D. Cal. Dec. 12, 2022) .....................................................................8

*United States v. Ruvalcaba-Garcia*,
    923 F.3d 1183 (9th Cir. 2019) ...............................................................................................3

*Warner Bros. Int'l TV Distrib. v. Golden Channels & Co.*,
    2004 WL 7336849 (C.D. Cal. Jan. 6, 2004) ........................................................................10

*Woods v. City of Hayward*,
    2021 WL 4061657 (N.D. Cal. Sept. 7, 2021) ......................................................................10

**Rules**

Fed. R. Evid. 702 ................................................................................................................ *passim*

**Other Authorities**

https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-
    congress/priv-23a.pdf .............................................................................................................6

YODLEE, INC.'S MOTION TO EXCLUDE                     iv                              3:20-cv-05991-SK
EXPERT TESTIMONY OF SERGE EGELMAN

I.     INTRODUCTION

Plaintiffs allege that Yodlee "intruded upon Plaintiffs and Class members' seclusion . . . in a manner that was highly offensive . . . and was an egregious violation of social norms." Dkt. No. 359 (3d Am. Compl.) ¶ 166. Presumably to support this theory, Plaintiffs rely on opinion testimony from Dr. Serge Egelman, a "researcher" who opines on Yodlee's adherence to purported industry standards based on his review of a curated selection of produced documents. Dkt. No. 492-50, Egelman Report ("Report") ¶¶ 2, 107, 137. Dr. Egelman's opinions are neither reliable nor relevant and must be excluded under Rule 702.

*First*, Dr. Egelman puts forward a cherry-picked collection of what he calls "industry standards, norms, and best practices," which he collectively refers to as "Best Practices." Report ¶¶ 7, 10, 73. But Dr. Egelman fails to provide any support for the notion that his "Best Practices" are anything other than aspirational documents that are neither legal standards nor reflective of industry practice.

*Second*, and relatedly, Dr. Egelman uses those curated "Best Practices" to purportedly analyze Yodlee's IAV service based on his reading of emails and other case documents which the trier of fact can as easily review and draw its own conclusions from. Dr. Egelman fails to demonstrate that his method for evaluating Yodlee's IAV service is a reliable methodology grounded in any accepted body of learning rather than his own personal interpretation of the facts.

*Third*, whether Yodlee's IAV service complies with Dr. Egelman's made-for-litigation "Best Practices" says nothing about whether any of Yodlee's data practices constituted the "egregious breach of social norms" that California law requires for conduct to be "highly offensive," as evidenced by the fact that Plaintiffs cite to Dr. Egelman's report only once in connection with their opening class certification brief.[1]

*Fourth*, Dr. Egelman steps outside the bounds of any permissible expert testimony by opining on: (1) Yodlee's intent and PayPal's state of mind regarding PayPal's IAV service, and (2) the purported

---

[1] Though Plaintiffs' class certification motion cites only one—inflammatory, rhetoric-filled, and expertise-free—sentence of Dr. Egelman's report (Dkt. No. 493 (Class Cert. Mot.) at 1–2), the Court should exclude his entire opinion because Plaintiffs submitted his entire report in support of their motion. *See* Dkt. No. 492-50.

meaning of Yodlee's contract with PayPal. The Court should exclude Dr. Egelman's statements on these subjects as incompatible with Rule 702.

## II. BACKGROUND

In his report, Dr. Egelman purports to identify "relevant standards, norms, and best practices concerning (a) notice and transparency; (b) choice and consent; (c) data minimization and use limitation; (d) information security; and (e) monitoring and enforcement." Report ¶ 10. Dr. Egelman acknowledges that "industry standards, norms, and best practices" are not the same thing (*see* Ex. 27[2], Dr. Egelman Deposition Transcript ("Egelman Dep. Tr.") 57:1–58:25), but he uses them interchangeably and refers to them throughout his report as simply "Best Practices." Report ¶¶ 7, 10, 73. He selects these "Best Practices" by surveying various aspirational statements enunciated in non-binding government reports and white papers. After describing his "Best Practices," Dr. Egelman purports to "analyze whether Yodlee's handling of PayPal user data during the Relevant Period complied with" them, opining that Yodlee "departed from" these "Best Practices." Report ¶¶ 107–35. Under the guise of this analysis, Egelman summarizes produced documents and makes unsupported statements about, among other things, Yodlee's intent, PayPal's knowledge, and the meaning of the contract between Yodlee and PayPal. Report ¶¶ 26–30, 44, 46–47, 56, 57, 112, 121. Plaintiffs submitted Dr. Egelman's entire report with their Motion to Certify Classes, referencing it only once. Dkt. No. 493 (Class Cert. Mot.) at 1–2 (quoting Report ¶ 137); *id.*, Ex. 63.

## III. LEGAL STANDARD

Rule 702 requires that:

"(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

---

[2] Exhibit numbers cited in this motion correspond to the exhibits attached to Yodlee's Opposition to Plaintiffs' Motion to Certify Classes.

Fed. R. Evid. 702. Under the amended rule, expert testimony "must meet **all** of Rule 702's substantive standards for admissibility by a preponderance of evidence." *Maney v. Oregon*, 2024 WL 1695083, at *2 (D. Or. Apr. 19, 2024) (emphasis added). The proponent of the testimony has "the burden of proving admissibility." *Leakas v. Monterey Bay Mil. Hous., LLC*, 2024 WL 496992, *2 (N.D. Cal 2024). "[T]he FRE 702 admissibility standard does not change with the different stages of litigation or become more rigorous as a case progresses from class certification to the merits stage." *In re Google Play Store Antitrust Litig.*, 2023 WL 5532128, at *5 (N.D. Cal. Aug. 28, 2023). At any stage, a district court "abuses its discretion when it either abdicates its role as gatekeeper by failing to assess the scientific validity or methodology of an expert's proposed testimony, or delegates that role to the jury by admitting the expert testimony without first finding it to be relevant and reliable." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) (internal quotations omitted).

Rule 702 was recently amended to clarify that prior case law finding that "the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility" was "incorrect." *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Courts are "required to analyze the expert's data and methodology at the admissibility stage more critically than in the past." *Boyer v. City of Simi Valley*, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024). While "[s]ome challenges to expert testimony will" still "raise matters of weight rather than admissibility"—*e.g.*, "the fact that the expert has not read every single study that exists"—questions of weight come in only "once the court has found it more likely than not that the admissibility requirement has been met." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

## IV. DR. EGELMAN'S OPINION BASED ON SO-CALLED "BEST PRACTICES" SHOULD BE EXCLUDED AS UNRELIABLE AND IRRELEVANT.

Dr. Egelman fails to provide any support for the assertion that his so-called "Best Practices" are anything other than a cherry-picked set of aspirational statements that do not reflect Yodlee's industry. He then applies those cherry-picked "Best Practices" to a curated selection of documents produced in the litigation to render an opinion that would not help the trier of fact determine a fact in issue and would supplant the jury's role. His opinion, which is neither relevant nor reliable, must be excluded.

**A.     Dr. Egelman Fails to Show That His Curated "Best Practices" Reflect Yodlee's Industry.**

Rule 702 bars experts from asserting that a practice is "generally accepted" simply because they "believe it to be so." *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 WL 1890372, at *5 (D. Or. May 23, 2012). Nor may experts proffer "generally accepted principles" that are "based merely upon anecdotal, self-selected examples." *Angioscore, Inc. v. Trireme Med., Inc.*, 87 F. Supp. 3d 986, 1016–17 (N.D. Cal. 2015), *rev'd on other grounds*, 666 Fed. App'x. 884 (Fed. Cir. 2016). Yet that is exactly the approach that Dr. Egelman uses to advance the hodgepodge of "Best Practices" against which he compares Yodlee's IAV service.

Dr. Egelman provides no methodology whatsoever for his selection of "Best Practices," nor does he identify other extant sources that he excluded. Although Dr. Egelman claims to have "put particular emphasis on the Best Practices that Yodlee has developed, supported, or claimed to abide by," the two sources whose principles Dr. Egelman claims Yodlee supports comprise only a quarter of Dr. Egelman's cited sources. Report ¶¶ 73–80.

Nor do the sources themselves suggest any basis for their inclusion. Three of the eight sources on which Dr. Egelman relies applied only to the federal government or to other industries. For example, Dr. Egelman concedes that the 1973 Department of Health, Education and Welfare report on which he relies applies only to data handled by the federal government. *See* Ex. 27 (Egelman Dep. Tr.) 116:13–20 (Q. "[B]y its own terms, the [HEW] report is only specifying actions to be taken by the Federal Government, correct? A. Yeah."). He likewise conceded that the 2008 Department of Homeland Security guidance memorandum, on which he relies, applies to DHS alone. *See id.* 123:21–125:4 ("Q. So this memorandum was written to apply to DHS alone, correct? A. That's correct."). Another source on which Dr. Egelman relies, the 2020 Network Advertising Initiative Code of Conduct, applies only to the advertising industry. *See id.* 130:8–9 ("I'm not aware that Yodlee is in the advertising business."). Other sources on which Dr. Egelman relies were not in existence for the entirety of Dr. Egelman's so-called "Relevant Period." Report ¶ 7. For example, Dr. Egelman relies on a 2017 Consumer Financial Protection Bureau ("CFPB") release, published three years after his "Relevant Period" began.

1  Moreover, as Dr. Egelman concedes, **none** of his eight sources bind Yodlee in any way. *See* Dep. Tr. 117:8–9 (1973 HEW report is not "binding on Yodlee"); 122:5–123:3 (1998 FTC report to Congress "isn't a statute"); 125:5–11 (2008 DHS internal memo has "[n]o legal effect on Yodlee"); 125:12–126:19 (2013 OECD recommendations are "not legally binding" on Yodlee); 128:2–22 (2017 CFPB release does not "establish binding requirements or obligations")[3]; 129:18–130:18 (2020 NAI Code of Conduct "has no binding effect on Yodlee"); 130:21–131:12 (2016 CFSI paper is not "legally binding on Yodlee"); 135:22–136:4 (IAPP statements are "not binding on Yodlee").

By basing his entire opinion on this hodgepodge of sources and providing no methodology for selecting them, Dr. Egelman fails to "adequately detail his methods, and explain *why* the methods he employed compelled the conclusions he reached in light of the facts of the case," which is required "[f]or a court to meaningfully assess whether an expert's methods and application have been reliable[.]" *Nelson v. Costco Wholesale Corp.*, 2022 WL 1638838, at *2 (D. Ariz. May 24, 2022) (emphasis in original). This failure is fatal to Dr. Egelman's opinion. *See Bun v. City of Livermore*, 2022 WL 2833971, at *19 (N.D. Cal. July 20, 2022) (refusing to consider opinion by expert who "does not explain any methodology or technique he used to arrive at his opinion"); *Mattos v. Walmart, Inc.*, 2020 WL 4805433, at *3 (D. Or. Aug. 18, 2020) (striking expert opinion because "it is unclear what methods or principles [the expert] relied upon . . . , let alone whether those methods are reliable").

Beyond that threshold defect, Dr. Egelman fails to show that his "Best Practices" are anything other than aspirational recommendations, and not evidence of relevant industry practice. "There is no reliable expert methodology inherent in merely reciting the content of aspirational [] guidance documents, without explaining their practical import." *Arjangrad,* 2012 WL 1890372, at *5. Far from providing any empirical support for the prevailing standards in Yodlee's industry, Dr. Egelman acknowledged that he did not "review the data handling practices of any of Yodlee's competitors" or "any other company that offers instant account verification service[.]" Ex. 27 (Egelman Dep. Tr.) 73:1–3, 11–14. He also does not

---

[3] Indeed, the Consumer Financial Protection Board paper expressly disclaims any such intention: "These Principles are not intended to alter, interpret, or otherwise provide guidance on—although they may accord with—the scope of [ ] existing protections. Thus, *the Principles do not themselves establish binding requirements or obligations relevant to the Bureau's exercise of its rulemaking, supervisory, or enforcement authority. In addition, the Principles are not intended as a statement of the Bureau's future enforcement or supervisory priorities*." Dkt. No. 493-27 at 2.

1  "know if any other company providing online instant account verification service has implemented" the
2  "Best Practices" described in his report. *Id*. 138:3–9.  In fact, Dr. Egelman admitted that his "Best
3  Practices" are ***not*** standard in Yodlee's industry. *See id*. 73:4–10 ("[T]he companies that are storing users
4  banking passwords without adequate informed consent and using them for secondary purposes shouldn't
5  be occurring, and certainly Yodlee has competitors that are doing that same thing."). In short, his opinion
6  concerning what data handling practices are standard in Yodlee's industry is devoid of any support and
7  must be excluded under Rule 702.[4]

8  Courts routinely exclude "industry standard" expert testimony that is not based on evidence of
9  relevant industry practice. For example, in *Arjangrad*, an expert opined on "generally accepted HR
10 practices in major companies" and "cite[d] standards based vaguely on his 'experience' and 'common
11 sense.'" 2012 WL 1890372, at *5. The court excluded the expert's opinion because he failed to
12 "demonstrate that he applied a reliable methodology to gain insight into how companies' HR personnel
13 actually operate," and was instead "effectively asking the court to take his word for it." *Id*. *See also*
14 *Kidwell-Bertagnolli v. Cnty. of Sonoma*, 2024 WL 1589468, at *14 (N.D. Cal. Apr. 10, 2024) (refusing to
15 consider "unreliable" expert opinion regarding "best industry standards" where the expert "does not
16 identify these industry standards"); *Holley v. Gilead Sciences, Inc.*, 2023 WL 2469632, at *8 (N.D. Cal.
17 Feb. 27, 2023) (excluding industry standard expert's opinions that did not examine practices of other
18 companies in defendant's industry because it "appear[s] close to the line of subjective opinion that is
19 insufficient under Rule 702"); *Brown v. Google, LLC*, 2022 WL 17961497, at *11 (N.D. Cal. Dec. 12,
20 2022) (excluding expert testimony regarding purported industry standard on grounds that "the standard is
21 not really an objective one but is instead one that is based on [the expert's] personal opinion"). For the
22 same reasons, the Court should exclude Dr. Egelman's opinions concerning purported "industry
23 standards" as not based on any reliable methodology or empirical support. Fed. R. Evid. 702(c).

---

[4] Indeed, Dr. Egelman's sources refute on their face his characterization of them as industry-wide standards. *E.g.*, Dkt. No. 493-28 (CFSI paper) at 1 ("[T]here is still significant work to be done to ensure [CFSI's principles] are applicable across the industry."); FED. TRADE COMM'N, PRIVACY ONLINE: A REPORT TO CONGRESS (FTC report) at 41 (June 1998) ("[T]he trade association guidelines submitted to the [FTC] do not reflect industry acceptance of the basic [principles]."), *available at* https://www.ftc.gov/sites/default/files/documents/reports/privacy-online-report-congress/priv-23a.pdf.

B. **Dr. Egelman's So-Called "Best Practices" Were Not Reliably Applied to the Facts of This Case.**

After (unreliably) devising his so-called "Best Practices," Dr. Egelman uses his cherry-picked "Best Practices" to evaluate Yodlee's data practices based on curated evidence, ignoring anything that might call into question his conclusions. Dr. Egelman's opinion regarding Yodlee's conduct fails to "reflect[] a reliable application of [his 'Best Practices'] to the facts of the case." Fed. R. Evid. 702(d).

"Reliance on incomplete facts and data may make an expert opinion unreliable because an expert must know[ ] of facts which enable him to express a reasonably accurate conclusion." *Arjangrad*, 2012 WL 1890372, at *6 (internal quotes and citation omitted). The factual record cited in Dr. Egelman's report is both incomplete and inaccurate. For example, Dr. Egelman asserts without basis that Yodlee sells IAV transaction data in its data panels (Report ¶¶ 61–66, 69–70), but he did not review or consider any testimony or sworn statements of Yodlee employees refuting his unsupported assertion. *See, e.g.*, Supplemental Declaration of Nikhil Nadkarni, Dkt. No. 238 ¶ 11 ("PayPal's IAV transaction data is not, and has never been, included in Yodlee's data panels"); Declaration of Ibrahim Debbagh, Dkt. No. 385-2 ¶ 6 ("PayPal cobrand IDs were not included in the C-Panel").[5] And Dr. Egelman testified that Yodlee pulled transaction data "for just as many people as possible" (Ex. 27 (Egelman Dep. Tr.) 90:21–25), but the documents and billing data he reviewed show that Yodlee pulled one-time transaction data for only a fraction of all PayPal IAV users, as requested by PayPal. *See* Dkt. No. 411-27 (YODLEE_WESCH_0824499); *see also* Dkt. No. 178-81 (deposition Ex. No. 176,

---

[5] *E.g.*, Ex. 24 (N. Nadkarni Dep. Tr.) 76:8–25 ("No IAV data is used in data panels."); Ex. 25 (P. Singh Dep. Tr.) 26:16–20 (90 days of transaction data insufficient for inclusion in data panels); Dkt. No. 189-4 (Yodlee 30(b)(6) Dep. Tr.) 83:13–15 ("[T]here is no IAV data which is used in our Data Panels business, none whatsoever."); Dkt. No. 189-5 (Jamison Dep. Tr.) 41:24 ("No IAV data goes into the data panels."), 156:1–2 ("IAV data is not used for our data panels business.").

Likewise, Dr. Egelman ignored (Report ¶¶ 60–63, 66, 125) unrebutted sworn testimony that Yodlee does **not** use IAV transaction data to train internal models for Transaction Data Enrichment. *E.g.*, Ex. 24 (N. Nadkarni Dep. Tr.) 79:2–5: "So by design, all the transaction data that comes in from IAV, although it might sit in the warehouse, is typically not used by our models because it's useless."); Ex. 25 (P. Singh Dep. Tr.) 32:2–5: "So are you aware of any instances where data other than data from PFM was used for enrichment? A. I do not recall that."). When presented with further sworn testimony from Yodlee's Head of Data Science and Innovation that "only transaction data that has been deemed suitable for inclusion in data panels"— not IAV data—"may be used to train [transaction data enrichment] models" (Ex. 21 ¶ 3), Egelman dismissed at deposition that on-point evidence as not "relevant." Ex. 27 (Egelman Dep. Tr.) 186:8–190:5.

1  YODLEE_WESCH_0010250) (Yodlee employee explains that PayPal requests transaction data only "for
2  a very small part of their target segment (the high risk segment)").

3        Dr. Egelman's repeated failure to consider record evidence that refutes his conclusions is an
4  additional basis for excluding his opinions under Rule 702.  *See Boyer*, 2024 WL 993316, at *2 (granting
5  motion to exclude because expert "did not review" evidence at issue "to ensure that his testimony would
6  be based on sufficient facts or data"); *Arjangrad*, 2012 WL 1890372, at *6 (striking expert testimony and
7  rejecting argument that "the completeness of the materials [plaintiff's expert] reviewed is an issue going
8  to the weight of his testimony, not its admissibility").

      **C.    Whether Yodlee Complies with Dr. Egelman's So-Called "Best Practices" Is Irrelevant to Plaintiffs' Claims.**

11        Even if Dr. Egelman's opinion were reliable (it is not), his "Best Practices" are insufficient to
12  reliably assess what constitutes an "egregious breach of social norms" or "highly offensive conduct." *See*
13  Fed. R. Evid. 702(a) (requiring "the expert's scientific, technical, or other specialized knowledge [to] help
14  the trier of fact to . . . determine a fact in issue.").  The lack of relevance of Dr. Egelman's opinion is laid
15  bare by the fact that Plaintiffs cite his report only once in their opening class certification brief, and only
16  for its highly inflammatory rhetoric. *See* Dkt. No. 493 (Class Cert. Mot.) at 1–2.  Whether Yodlee's IAV
17  service complied with Dr. Egelman's cherry-picked set of "Best Practices" says nothing about whether
18  any of Yodlee's data practices constituted the "egregious breach of the social norms" that California law
19  requires for conduct to be "highly offensive."[6]

20        Nor does anything else in Dr. Egelman's report.  "Reactions of the public are typically tested
21  through the use of consumer surveys." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th
22  Cir. 1997); *see also Tracy Anderson Mind & Body, LLC v. Roup*, 2022 WL 17670418, at *6 (C.D. Cal.
23  Dec. 12, 2022) ("A plaintiff generally relies on consumer surveys to assess whether consumers were
24  misled.").  Yet despite being well aware of the need for empirical support for his testimony about industry

---

[6] General expressions of support by Yodlee for the CFSI and CFPB do not convert their aspirational discussions into legal standards governing Plaintiffs' claims, and Dr. Egelman concedes none of his Best Practices are legally binding.  *See supra* p. 5 & n.3; *see, e.g.*, *Neo4j, Inc. v. PureThink, LLC*, 2023 WL 7093805, at *7 (N.D. Cal. Oct. 25, 2023) ("It is well established that experts are prohibited from testifying about the law or providing legal meaning.").

standards, and having performed "hundreds" of surveys in his career, (Ex. 27 (Egelman Dep. Tr.)38:12–17), Dr. Egelman never conducted a survey of PayPal users (*id*. 72:11–13, 137:25–138:2) to assess whether Yodlee's IAV service was "highly offensive." Dr. Egelman therefore admits that he "do[es not] know what PayPal users are or are not aware of," including whether they are "aware of" the sources underlying his "Best Practices." *Id*. 137:20–23. Dr. Egelman's opinions thus lack any empirical basis, rendering them nothing more than inadmissible speculation. *See Krause-Pettai v. Unilever United States, Inc.*, 2023 WL 6429805, at *6–7 (S.D. Cal. Sept. 30, 2023) (excluding expert testimony that was "not based on any empirical study on the relevant consumer universe and products") (cleaned up).

### V. DR. EGELMAN'S TESTIMONY ON INTENT, KNOWLEDGE, AND CONTRACT INTERPRETATION SHOULD BE EXCLUDED AS IMPERMISSIBLE EXPERT TESTIMONY.

Under the guise of expert opinion, Dr. Egelman seeks to testify concerning other prohibited topics: (1) Yodlee's and PayPal's purported knowledge or intent, and (2) the purported meaning of Yodlee's contract with PayPal. Dr. Egelman's proffered testimony regarding each of these issues should be excluded.

*First*, Ninth Circuit case law makes clear that "inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *See Holley*, 2023 WL 2469632, at *2 (cleaned up). Dr. Egelman improperly invades the space of the trier of fact by speculating about Yodlee's intent and PayPal's knowledge throughout his report. Regarding Yodlee's intent, he speculates, "*To keep its data storage a secret and continue accumulating more data*, Yodlee employees misled PayPal about its data-retention practices[.]" Report ¶ 44 (emphasis added).[7] He also speculated regarding PayPal's state of mind: "[PayPal] *believed* Yodlee was deleting PayPal user data and that this was an important factor in PayPal's decision to use Yodlee's IAV service" and "PayPal was *under the belief* that Yodlee did not store PayPal users' bank login credentials or data." Report ¶¶ 57, 112 (emphasis added).

Dr. Egelman's statements about Yodlee's intent and PayPal's state of mind are based not on expert analysis, but instead represent Dr. Egelman's personal interpretation of "[t]he emails that were shared

---

[7] At his deposition, Dr. Egelman further speculated that Yodlee "convinced PayPal to switch over the product they were using, *so it would sort of back justify Yodlee's collection of this data that they weren't supposed to be collecting under the previous product offering*." Ex. 27 (Egelman Dep. Tr.) 197:2–6 (emphasis added).

with" him by Plaintiffs' counsel. Ex. 27 (Egelman Dep. Tr.) 190:22–24; *see also id.* 198:8–199:2 (opinion regarding Yodlee's motivation based on "email exchanges documented in [Dr. Egelman's] report"). In fact, Dr. Egelman conceded that "someone without any of [his] knowledge could read [the] documents and come to the same conclusions . . . [or] to different conclusions." *See id*. 202:12–18.[8] His "non-specialized interpretation of factual questions based on" record evidence "is not a matter that calls for or falls within his expertise," *Woods v. City of Hayward*, 2021 WL 4061657, at *17 (N.D. Cal. Sept. 7, 2021).

"Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind, which often offers no more than the drawing of an inference from the facts of the case." *Woods*, 2021 WL 4061657, at *17 (quotation marks and citation omitted); *see also Warner Bros. Int'l TV Distrib. v. Golden Channels & Co.*, 2004 WL 7336849, at *6 (C.D. Cal. Jan. 6, 2004) (excluding expert testimony because "the intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent") (quotation marks and citation omitted); *Romero v. Garland*, 2024 WL 1099300, at *16 (S.D. Cal. Mar. 13, 2024) ("Opinions regarding motive, state of mind or intent" are "outside the scope of expert testimony because a jury is capable of drawing inferences from the evidence and drawing its own conclusion as to credibility.").

*Brown v. Google* is instructive: There, a "technologist" opined on the intent behind a company's various design features, stating that the company was "motivated to ensure that any privacy controls are difficult to understand." 2022 WL 17961497, at *12. The court excluded this testimony as "impermissibly opin[ing] on Google's intent or state of mind." *Id.*; *see also Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1078 (D. Or. 2013) (expert "may not opine about the intent, motive, or state of mind of the [defendant] decisionmakers, the unexpressed reasons for their decisions, or what they may have been thinking"); *Hill v. Novartis Pharms. Corp.*, 2012 WL 5451816, at *2 (E. D. Cal. November 7, 2012) ("The Court finds this and other testimony regarding Defendant's intent, motives

---

[8] Dr. Egelman also wholly ignores other emails in the record that contradict his desired narrative and disregards the possibility of relevant oral communications over an eighteen-year span. For example, Dr. Egelman ignored a November 19, 2015 email in which Yodlee told seven PayPal employees in connection with contracting for the IAV + transactions service that "*Yodlee does store those transactions*[.]" Ex. 5 at '859 (deposition Ex. No. 183, YODLEE_WESCH_0062859); *see* Ex. 27 (Egelman Dep. Tr.) 139:19–142:19.

or state of mind to be impermissible and outside the scope of expert testimony."). For the same reasons, this Court should exclude Dr. Egelman's impermissible opinion testimony regarding Yodlee's intent and PayPal's state of mind.

*Second*, expert testimony "cannot be used to provide legal meaning or interpret [contracts] as written." *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). But that is what Dr. Egelman does, opining on the purported meaning of Yodlee's 2006 Master Services Agreement (MSA) with PayPal prominently in his report. *E.g.*, Report ¶¶ 26–30, 46–47, 56. For example, Dr. Egelman opines that "[a]s reflected in Section 5.1 of the IAV MSA . . . , Yodlee never had a legitimate reason to store PayPal users' bank account information or bank transaction data on an ongoing basis." Report ¶ 121. Dr. Egelman's statement that he is "not a lawyer and [is] not offering legal opinions on any contractual issues" does not change anything. Report ¶ 30; *see also* Ex. 27 (Egelman Dep. Tr.) 80:14–15 ("Q. So are you a lawyer, Dr. Egelman? A. I am not."). Rule 702 forecloses Dr. Egelman's expert testimony regarding the meaning of Yodlee's contracts with PayPal. *E.g.*, *Neo4j*, 2023 WL 7093805, at *8 ("To the extent that Kuhn opines on the permissibility of Suhy's actions or the legal effect and interpretation of any provision of the Neo4j Sweden Software License—such as what conduct is permitted or not permitted under the license—such testimony is improper legal opinion."); *Fischler Kapel Holdings, LLC v. Flavor Producers, LLC*, 2023 WL 8113301, at *3 (C.D. Cal. Oct. 6, 2023) (excluding "impermissible legal opinions that purport to interpret" certain contracts, notwithstanding that expert "testified that he is not an expert in analyzing legal agreements and is not an attorney").[9]

## VI.  CONCLUSION

As set forth above, Dr. Egelman's opinion is neither the product of reliable principles and methods reliably applied to the facts of the case nor relevant to a determination to be made by the factfinder. His opinion is thus foreclosed by Rule 702. Yodlee therefore respectfully requests that the Court grant Yodlee's motion to exclude in their entirety the proffered opinions and report of Dr. Egelman.

---

[9] To the extent that Plaintiffs offer Dr. Egelman's views regarding the Yodlee-PayPal contracts as purported evidence of PayPal's knowledge or state of mind, such statements are impermissible for the reasons stated above.

DATED: June 12, 2024

Respectfully submitted,

*/S/ Megan L. Rodgers*
Megan L. Rodgers

MEGAN L. RODGERS (SBN 310344)
**COVINGTON & BURLING LLP**
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
Email: mrodgers@cov.com

ZIWEI SONG (SBN 313842)
DANIEL RIOS (SBN 326919)
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: (415) 591-6000
Email: ksong@cov.com
Email: drios@cov.com

ERIC C. BOSSET (*pro hac vice*)
TARA SUMMERVILLE (*pro hac vice*)
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
Email: ebosset@cov.com
Email: tsummerville@cov.com

ANDREW LEFF (*pro hac vice*)
**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 841-1000
Email: aleff@cov.com

*Attorneys for Defendant Yodlee, Inc.*